MARK POE (S.B. #223714)
mpoe@gawpoe.com
RANDOLPH GAW (S.B. #223718)
rgaw@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

Attorneys for Plaintiffs Trendsettah USA,
Inc. and Trend Settah, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| TRENDSETTAH USA, INC. and TREND SETTAH, INC. | Case No. 8:14-CV-01664-JDS (DFMx) |
| Plaintiffs, | |
| v. | **PLAINTIFFS' OPPOSITION TO SWISHER'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| SWISHER INTERNATIONAL, INC. | |
| Defendant. | Hearing:  May 11, 2015<br>Time:  1:30 p.m.<br>Courtroom:  10C |

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ....................................................................................................1

LEGAL STANDARD ............................................................................................2

STATEMENT OF FACTS ....................................................................................3

ARGUMENT...........................................................................................................5

   I.  THE COMPLAINT ADEQUATELY ALLEGES ANTITRUST INJURY.5

      A.  Under the Pertinent Authority, Trendsettah's Allegations More Than Suffice to Allege a Section 2 Violation. .................................................5

      B.  The Authority On Which Swisher Relies Does Not Support Its Argument...............................................................................................8

  II.  A CLAIM FOR TRADE LIBEL DOES NOT REQUIRE THE HEIGHTENED PLEADING STANDARD THAT SWISHER SEEKS TO IMPOSE....................................................................................................12

 III.  TRENDSETTAH'S NEGLIGENT INTERFERENCE CLAIM IS SUBJECT TO CALIFORNIA SUBSTANTIVE LAW............................16

 IV.  TRENDSETTAH'S UCL CLAIM IS PREDICATED ON A BREACH OF FEDERAL ANTITRUST LAW, NOT STATE COMMON LAW....16

CONCLUSION......................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Am. Ad Mgmt., Inc. v. GTE Corp.*,
    92 F.3d 781 (9th Cir. 1996) ........................................................ 8

*Amarel v. Connell*,
    102 F.3d 1494 (9th Cir.1996) ..................................................... 6

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
    472 U.S. 585 (1985) .................................................................. 5

*Bell v. Novartis Pharm. Corp.*,
    No. 8:08-cv-30-T-17-EAJ, 2008 WL 2694893 (M.D. Fla. July 3,
    2008) ....................................................................................... 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................ 2, 3

*Brantley v. NBC Universal, Inc.*,
    675 F.3d 1192 (9th Cir. 2012) ................................................... 2

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
    479 U.S. 104 (1986) .................................................................. 11

*Caruso v. Galencare, Inc.*, 2014 WL 1796684 (M.D. Fla. May 6,
    2014) ....................................................................................... 14

*Cascade Health Solutions v. PeaceHealth*,
    515 F.3d 883 (9th Cir. 2008) ..................................................... 5

*Darush v. Revision LP*,
    No. CV 12-10296 GAF AGRX, 2013 WL 8182502 (C.D. Cal. July
    16, 2013) .................................................................................. 7

*Florida Seed Co., Inc. v. Monsanto Co.*,
    105 F.3d 1372 (11th Cir. 1997) ................................................. 11

*Fowler v. Taco Viva, Inc.*, 646 F. Supp. 152 (S.D. Fla. 1986) ............ 15

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
    352 F.3d 367 (9th Cir. 2003) ..................................................... 6

*Jackson v. N. Broward Cnty. Hosp. Dist.*,
    766 So.2d 256 (Fla. 4th DCA 2000) .......................................... 14, 15

*Klor's v. Broadway–Hale Stores*,
    359 U.S. 207 (1959) .................................................................. 7

*Leavitt v. Cole*,
    291 F.Supp.2d 1338 (M.D. Fla. 2003) ....................................... 15

*McGlinchy v. Shell Chemical Co.*,
    845 F.2d 802 (9th Cir. 1988) ..................................................... 12

*McMahon v. Pier 39 Ltd. P'ship*,
    No. C01-01125 CRB, 2001 WL 1463814 (N.D. Cal. Nov. 8, 2001) ............. 10

*Nedlloyd Lines B.V. v. Superior Court*,
    3 Cal. 4th 459 (1992) ................................................................ 13, 16

*Rebel Oil Co. v. Atl. Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995) ..................................................... 1, 6

*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*,

OPP. TO SWISHER MOT FOR J. ON PLEADINGS
CASE NO. 8:14-CV-01664-JDS (DFMX)

768 F.3d 938 (9th Cir. 2014) ................................................................7

*Retrophin, Inc. v. Questcor Pharm., Inc.*, SACV 14-26-JLS JPRX,
2014 WL 4244027 (C.D. Cal. Aug. 8, 2014) .................................1, 12

*Sadler v. Rexair, Inc.*, 612 F. Supp. 491 (D. Mont. 1985) .................................8, 9

*Schuylkill Energy Resources v. PP&L*,
113 F.3d 405 (3rd Cir. 1997).................................................................10

*Schuylkill Health Sys. v. Cardinal Health 200, LLC*,
No. CIV.A. 12-7065, 2014 WL 3746817 (E.D. Pa. July 30, 2014).................8

*Southern Cal. Ins. of Law v. TCS Educ. Sys.*,
No. CV 10-8026 PSG (AJWx), 2011 WL 1296602 (C.D. Cal. Apr.
5, 2011) .........................................................................................10, 11

*Spanish Broadcasting v. Clear Channel Communications, Inc.*,
376 F.3d 1065 (11th Cir. 2004)................................................11, 12

*Streamcast Networks, Inc., v. Skype Techs., S.A.*,
547 F. Supp. 2d 1086 (C.D. Cal. 2007)........................................9, 10

**STATUTES**

15 U.S.C. § 2...................................................................................passim

Section 1 and 2..................................................................................11

**RULES**

Fed.R.Civ.P. 8...................................................................................14

**INTRODUCTION**

Swisher's motion is only an attempt to delay the inevitable—the day that it will be held to account for attempting to destroy the business of an exponentially growing competitor, for no reason other than Swisher's desire to maintain its monopoly in the market for the small cigars known as "cigarillos."

Swisher attempts to interpose this delay by arguing that Trendsettah has not included enough details in its complaint to permit the Court to *reasonably infer* that Swisher's actions caused an "antitrust injury." The argument borders on frivolous:

> "If an incumbent monopolist takes steps to maintain its monopoly by foreclosing a would-be rival from entering . . . . [b]oth consumers and foreclosed rivals suffer antitrust injury."

*Retrophin, Inc. v. Questcor Pharm., Inc.*, SACV 14-26-JLS JPRX, 2014 WL 4244027 (C.D. Cal. Aug. 8, 2014) (quoting 2A Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 391e, at 328 (3d ed. 2007).

Trendsettah's complaint alleges that Swisher purposefully restricted the output of Trendsettah cigarillos—sold under the brand name "Splitarillos"—so that it could continue to use its monopoly position to charge supracompetitive prices for its own product. (Compl. ¶¶ 7, 24-31, 51-52, ECF No. 1, filed Oct. 14, 2014.) As one of the Ninth Circuit's leading antitrust cases puts it: "If the plaintiff puts forth evidence of restricted output and supracompetitive prices, that is direct proof of the injury to competition which a competitor with market power may inflict, and thus, of the actual exercise of market power." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). That is precisely what Trendsettah has alleged. Of course it is possible that at trial Swisher will be able to convince a jury that it squashed Trendsettah for reasons completely independent of its desire to maintain its ability to charge supracompetitive prices for cigarillos.

1  But for now, those facts have been sufficiently alleged, so the motion must be

2  denied.

3                              **LEGAL STANDARD**

4         Swisher's brief reads as if there is a heightened pleading standard for

5  antitrust claims.  There is not.  Just as with any other subject matter (aside from

6  the special matters itemized in Rule 9(b)), a Sherman Act plaintiff need only

7  "sketch the outline of the injury to competition with allegations of supporting

8  factual detail . . . [and] [s]uch allegations must raise a reasonable expectation that

9  discovery will reveal evidence of an injury to competition."  *Brantley v. NBC*

10  *Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012) (internal citations and

11  quotations omitted).  As shown below, Trendsettah's complaint does much more

12  than merely sketch the outline of an antitrust injury—it does everything but fully

13  prove up its claim.

14         The landmark pleading case of *Bell Atl. Corp. v. Twombly*, arose in the

15  antitrust context, and established that an antitrust plaintiff must only plead

16  "enough facts" so that those facts—along with the reasonable inferences to be

17  drawn therefrom—"state a claim to relief that is plausible on its face." 550 U.S.

18  544, 570 (2007).  The allegations at issue in *Twombly* well-illustrate the standard.

19  There, a class of consumers alleged that they had paid illegally high prices for

20  local phone calls and high-speed internet service based on the four successor

21  companies to the "Baby Bells" having engaged in "parallel behavior" designed to

22  shut out new competitors in those markets.  *Id.* at 550-51.  The plaintiff class

23  asked the court to simply accept its conclusory allegation that that parallel

24  behavior was the result of an agreement among the four major phone companies,

25  in violation of Section 1 of the Sherman Act.  *Id.* at 551.  The Supreme Court held

26  that the carriers' conclusory allegation of a conspiracy failed to reach the

27  "plausibility" threshold because:

28

1
2
3
4
5
6
7

> Without more, parallel conduct does not suggest conspiracy, and
> a conclusory allegation of agreement at some unidentified point
> does not supply facts adequate to show illegality.  Hence, when
> allegations of parallel conduct are set out in order to make a § 1
> claim, they must be placed in a context that raises a suggestion
> of a preceding agreement, not merely parallel conduct that could
> just as well be independent action.

8
*Id.* at 557.

9      Contrasting *Twombly's* facts with these, it is clear why the claim in
10 *Twombly* failed at the pleading stage, but this one succeeds.  Trendsettah alleges
11 that by refusing to fulfill orders for the hottest-selling Splitarillo flavors (Compl.
12 ¶¶ 24-28), and by disparaging and physically meddling with Trendsettah's
13 distribution chain (*id.* ¶¶ 36-39), Swisher caused the market supply of cigarillos to
14 drop by 20 million sticks in a single quarter (Q4 of 2012), and by 90 million sticks
15 over the first year of Swisher's illegal conduct.  (*Id.* ¶ 41.)  It does not require a
16 PhD in economics to "reasonably infer" from those facts that Swisher thereby
17 "restricted the supply of low-cost, high quality cigarillos to the American
18 consumer" (*id.* ¶ 7), which allowed it "to charge supracompetitive prices that
19 yielded a materially higher profit margin on the cigarillos it sells to American
20 consumers." (*Id.* ¶ 51.)  That is all that is required under *Twombly*, and now
21 Swisher must answer for it.

22                    **STATEMENT OF FACTS**

23     Swisher's motion is predicated on reciting *some* of the allegations in
24 Trendsettah's complaint, and then characterizing them as "generic" or mere "legal
25 conclusions."  Admittedly, Trendsettah's complaint does not quantify the dollar
26 value of the harm to the market for cigarillos, nor does it specify the pennies per
27 stick by which the removal of 90 million sticks from the cigarillo market caused
28 prices to rise.  But those details will be the subject of fact and expert discovery,

OPP. TO SWISHER MOT FOR J. ON PLEADINGS
CASE NO. 8:14-CV-01664-JDS (DFMX)

and are not the domain of pleadings.  Trendsettah's allegations sufficient to show antitrust injury are these:

In January 2011, Swisher agreed to manufacture and package an unlimited number of cigarillos to be sold by Trendsettah under the Splitarillos label. (Compl. ¶¶ 20-21.)  Splitarillos experienced explosive growth over the first several quarters the product was on the market, growing from a dead start to sales of over 60 million sticks per quarter by the third quarter of 2012.  (*Id.* ¶ 41.)  At that point, Swisher recognized that Splitarillos had become a major challenge to its monopoly of the cigarillo market, and thus took steps to restrict the output and cause price increases for Splitarillos by:  (1) refusing to fill orders for the most popular flavors of Splitarillos; shipping only dozens or hundreds of cases, when Trendsettah was placing orders for *thousands* of cases (*id.* ¶¶ 25-31)[1]; (2) demanding that Trendsettah pay $175.00 per thousand sticks, instead of the contracted price of $133.00 per thousand (*id.* ¶ 31); and (3) sabotaging the distribution of Splitarillos by spreading false information about Trendsettah's demise, and physically removing Splitarillos and their marketing materials from the shelves of wholesalers and distributors.  (*Id.* ¶¶ 36-39.)

Even if those factual allegations by themselves were insufficient for a court to "reasonably infer" an injury to the competitive market for cigarillos, Trendsettah's complaint specifically alleges such effects:

- by rendering Trendsettah "unable to satisfy the burgeoning demand for its product . . . Swisher restricted the supply of low-cost, high quality cigarillos to the American consumer."  (*Id.* ¶ 7.)

---

[1] Moreover, as alleged in the Complaint, Swisher would purposefully ship flavors of Splitarillos *not ordered* by Trendsettah instead of the popular flavors that Trendsettah could not keep in stock.  (*Id.* ¶¶ 25-31.)

- "Swisher's use of its monopoly power has allowed it to charge supracompetitive prices that yielded a materially higher profit margin on the cigarillos it sells to American consumers.  It is able to maintain these supracompetitive prices by restricting the output of its competitors, as alleged herein with respect to TSI." (*Id.* ¶ 51.)

- "existing competitors are unable to increase their output in the short run to make a significant dent in the supracompetitive prices that Swisher charges."  (*Id.* ¶ 52.)

- "Swisher further violated Section 2 by its refusal to deal with TSI to manufacture Splitarillos after January 2014.  That refusal was intended to maintain Swisher's monopoly, and caused further injury to both TSI and to competition generally, given the scarce alternatives faced by TSI for finding a party capable of manufacturing high quality cigarillos." (*Id.* ¶ 54.)

## ARGUMENT

## I.    THE COMPLAINT ADEQUATELY ALLEGES ANTITRUST INJURY.

Swisher's argument is that Trendsettah was obligated to—in its complaint—specifically allege the degree to which the foregoing conduct "*actually injured* consumers or competition."  (Swisher's Mot. for J. on Pleadings ("Mot.") at 8, emphasis in original.)  There is no authority for that proposition.

### A.    Under the Pertinent Authority, Trendsettah's Allegations More Than Suffice to Allege a Section 2 Violation.

In the context of Section 2 of the Sherman Act, the Ninth Circuit has recently explained that "[a]nticompetitive conduct is behavior that tends to impair the opportunities of rivals and either does not further competition on the merits or does so in an unnecessarily restrictive way." *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 894 (9th Cir. 2008)(citing *Aspen Skiing Co. v. Aspen*

1    *Highlands Skiing Corp.*, 472 U.S. 585, 605 n. 32 (1985)).  Swisher does not

2    appear to contest that the conduct alleged in the Complaint was anticompetitive,

3    but only contests whether that anticompetitive conduct caused an "antitrust injury"

4    sufficient to convey standing.  That question is easily answered.

5        "One form of antitrust injury is '[c]oercive activity that prevents its victims

6    from making free choices between market alternatives.'"  *Glen Holly Entm't, Inc.*

7    *v. Tektronix, Inc.*, 352 F.3d 367, 374 (9th Cir. 2003) (quoting *Amarel v. Connell*,

8    102 F.3d 1494, 1509 (9th Cir.1996).  Trendsettah alleges that Swisher's

9    anticompetitive conduct illegally reduced the supply of Splitarillos by at least 90

10   million sticks over 2013 alone.  (Compl. ¶41.)  The Complaint further quotes

11   emails between Trendsettah's principal and Swisher's Vice President of

12   Marketing, in which Trendsettah pleads with Swisher to fulfill its orders because

13   "I have over 400-500 customers presently and I owe most of them some

14   [Splitarillos orders]." (Compl. ¶ 27; *see also id.* ¶ 29 (quoting another Trendsettah

15   email:  "Please, it is time to step up and help me get through this time and give the

16   customers that we both depend on for growth in our brands the continuity what

17   they are DEMANDING.").)  The Complaint also alleges that Swisher's employees

18   literally obstructed the distribution chain for Splitarillos by "physically remov[ing]

19   Splitarillo products from [the] shelves" of wholesalers and distributors, and

20   "physically remov[ing] Splitarillo marketing and advertising materials as well."

21   (Compl. ¶¶ 38-39.)  It does not require an inferential leap to conclude that those

22   actions "prevent[ed] [consumers] from making free choices between market

23   alternatives.'"  *Glen Holly Entm't*, 352 F.3d at 374.

24       In the same vein, "[i]f the plaintiff puts forth evidence of restricted output

25   and supracompetitive prices, that is direct proof of the injury to competition . . . ."

26   *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995).  The entire

27   gravamen of Trendsettah's complaint is that Swisher restricted output of

28

Trendsettah's product (Compl. ¶ 41), which permitted it to maintain "supracompetitive prices" for its own product. (*Id.* ¶¶ 51-52.)

At one point, Swisher timidly suggests that Trendsettah cannot show antitrust injury because there were other small participants in the cigarillo market to whom Trendsettah's customers might have turned when Swisher choked off the supply of Splitarillos.  (Mot. at 9 ("TSI's own antitrust allegations demonstrate that consumers continued to have a choice of products and pricing from multiple competitors of both TSI and Swisher.").)  But the existence of multiple competitors does not give a monopolist free rein to stomp out its disfavored competitors:  "Conduct does not evade antitrust laws simply 'because the victim is just one merchant whose business is so small that his destruction makes little difference to the economy.'" *Darush v. Revision LP*, No. CV 12-10296 GAF AGRX, 2013 WL 8182502, at *5 (C.D. Cal. July 16, 2013) (quoting *Klor's v. Broadway–Hale Stores*, 359 U.S. 207, 209 (1959).)  Here, Trendsettah alleges that Swisher decided to direct its anticompetitive conduct at Splitarillos precisely because the explosive sales growth of Splitarillos was becoming a "challenge to [Swisher's] market dominance." (Compl. ¶ 23.)

No more is needed to state a claim under the pertinent authority.  Even if it were, it is perhaps the most basic law of economics that restricting the supply of a commodity leads to higher prices.  The Complaint shows that Swisher's conduct deprived the market of a minimum of 90 million cigarillos in 2013, despite Swisher having plenty of capacity to have filled those orders.  (*Id.* ¶¶ 41, 43.) Both before and after *Twombly*, all reasonable inferences are to be made in the plaintiff's favor on pleading motions.  *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).  While Trendsettah has not retained the economics experts who would be necessary to quantify the pennies-per-stick by which Swisher's conduct preserved its supracompetitive prices, it is eminently reasonable for the Court to infer that the

*universal* laws of economics apply to the cigarillo market.  Accepting that inference, the Court should further accept as true Trendsettah's basic allegation that restricting the output of Splitarillos deprived consumers of choice, and preserved the price of Swisher cigarillos at a "supracompetitive" price—i.e., a level higher than it otherwise would have been.  *See, e.g.*, *Am. Ad Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781, 791 (9th Cir. 1996) ("[I]t is difficult to imagine a more typical example of anti-competitive effect than higher prices[.]"); *Schuylkill Health Sys. v. Cardinal Health 200, LLC*, No. CIV.A. 12-7065, 2014 WL 3746817, at *4 (E.D. Pa. July 30, 2014) (explaining that a Sherman Act plaintiff does not need to allege price *increases* to adequately plead antitrust injury, but need only plead that the resulting price was "plausibly higher than the prices that would have existed without anticompetitive conduct.").

### B.   The Authority On Which Swisher Relies Does Not Support Its Argument.

The authority that Swisher relies on is either cited out of context, or completely inapposite to the allegations at issue in this case.  For example, Swisher's brief prominently relies on *Sadler v. Rexair, Inc.*, a 30 year-old case from the District of Montana.  612 F. Supp. 491, 493 (D. Mont. 1985), (cited at Mot. 5, 6, 11.)  Swisher cites that case for the proposition that it is "improper" for Trendsettah to "convert a straight-forward contract dispute into an antitrust lawsuit."  (Mot. at 6.)  But neither *Sadler*—nor any other authority—stands for a general proposition that where a breach of contract is alleged, an antitrust claim will not lie.

At issue in *Sadler* was a contract whereby the defendant, Rexair, agreed to supply the Plaintiff, Sadler, with "Rainbow" brand vacuum cleaners for retail sale. *Id.* at 493.  Three years into the relationship, Rexair cancelled the contract, prompting Sadler to sue both for breach of contract, and for violation of Sections 1 and 2 of the Sherman Act.  *Id.*  The court dismissed the Section 1 claim because

1   Sadler had failed to allege the requisite form of conspiracy, and dismissed the
2   Section 2 claim because Sadler had not alleged "an attempt to monopolize the
3   vacuum cleaner market, but rather the market for 'Rainbow' brand vacuum
4   cleaners." *Id.* at 494. That allegation was insufficient because "[a] 'brand'
5   monopoly over the manufacturer's own product (as opposed to a total market
6   monopoly) is not a violation of 15 U.S.C. § 2." *Id.* (parenthetical in original).
7   Here, by contrast, Trendsettah is not challenging Swisher's monopoly over its *own*
8   branded products, but over its anticompetitive conduct directed toward
9   *Trendsettah's product*, which conduct was designed to maintain Swisher's
10  monopoly of the entire cigarillo market.

11      Similarly, Swisher cites *Streamcast Networks, Inc., v. Skype Techs., S.A.*,
12  547 F. Supp. 2d 1086, 1096-98 (C.D. Cal. 2007), for the proposition that "TSI's
13  failure to allege that Swisher's breach of the relevant agreements has resulted in
14  [1] higher prices or [2] decreased output for the consuming public is a basis for
15  dismissal due to failure to plead an antitrust injury." (Mot. at 9.) For one thing,
16  Trendsettah *does* allege that Swisher's breach of the contract has resulted in (1)
17  higher prices and (2) decreased output for the consuming public. (*See* Compl. ¶¶
18  7, 22, 27-30, 41, 51-52.). For another, a review of the facts in *Streamcast* shows
19  why it has no bearing here. In *Streamcast*, the plaintiff had obtained from the
20  defendant a license to distribute a *free* piece of software that facilitated music
21  downloads. *Id.* at 1090. The defendant later pulled the license from the plaintiff,
22  and granted it to another competitor, prompting the plaintiff to file a 14-count
23  complaint, including Section 1 and 2 of the Sherman Act. *Id.* at 1091. The court
24  granted the defendants' motion to dismiss the Sherman Act claims, upon
25  recognizing that regardless of which company was licensed to distribute the
26  software, there could be no antitrust injury because the software "remained
27  available to a potentially infinite number of users worldwide, free of charge and
28  with no discernable decrease in quality." *Id.* at 1097. Accordingly, even

1    accepting that the *Streamcast* defendant's conduct was a breach of contract, it "did

2    not result in higher prices or decreased output for the consuming public." *Id.* In

3    contrast, because cigarillos are not *free and infinitely available*, a purposeful

4    restriction of the supply of a competitor's brand (whether in breach of a contract

5    or not) *does*, as alleged, result in higher prices *and* decreased output for the

6    consuming public.

7         In the same inapt vein, Swisher cites *McMahon v. Pier 39 Ltd. P'ship*, No.

8    C01-01125 CRB, 2001 WL 1463814 (N.D. Cal. Nov. 8, 2001), in support of its

9    contention that "courts routinely dismiss and affirm the dismissal of antitrust

10   claims where, as here, the plaintiff fails to adequately plead antitrust injury."

11   (Mot. at 9.) In truth, however, "the existence of antitrust injury is not typically

12   resolved through motions to dismiss." *Schuylkill Energy Resources v. PP&L*, 113

13   F.3d 405, 417 (3rd Cir. 1997). Even if the question of antitrust injury were

14   typically resolved at the pleading stage, *McMahon* is a terrible example for

15   Swisher to rely on, if it is intended to be analogous to this case. In *McMahon*, a

16   marina sought to evict a tour-boat operator from his leased berth, for operating a

17   commercial enterprise in contravention of the lease. *McMahon*, 2001 WL

18   1463814, at *1. The boat operator responded by filing a host of claims, including

19   a Section 2 claim. *Id.* at *2. The court dismissed that claim because the boat

20   operator failed to allege any way that the marina's actions harmed competition,

21   nor that the marina was a monopoly, nor even that the marina was in competition

22   with the plaintiff's business. *Id.* at *3, n.4. Here, in contrast, Trendsettah alleges

23   all three of those things.

24        The other two federal cases cited in support of the proposition that courts

25   "routinely" dismiss antitrust claims are equally inapposite. In *Southern Cal. Ins.*

26   *of Law v. TCS Educ. Sys.*, No. CV 10-8026 PSG (AJWx), 2011 WL 1296602

27   (C.D. Cal. Apr. 5, 2011), a minimally accredited law school filed (among many

28   other claims) a Section 2 claim against a private for-profit educational company,

when that company decided to invest in a rival law school, after having first

contemplated an investment in the plaintiff school.  *Id.* at *1-2.  The court granted

dismissal of the Section 2 claim because the complaint alleged only that the

defendant's investment would permit the rival school "to add new resources,

become more efficient, add online courses and additional law programs," and gain

"accreditation that would 'bring access to federal student financial aid programs,'"

[to] make [the rival school] more attractive to students."  *Id.* at *9.  Citing *Cargill,*

*Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 107 (1986), the court noted that it

is not a violation of the antitrust laws where one competitor merely launches a

"product or service improvement as a way to increase market share."  *Id.*  In

contrast, nothing about Trendsettah's complaint suggests (and Swisher does not

argue) that Swisher tried to snuff out Splitarillos for the salutary goal of promoting

competition in the cigarillo market, or to improve its own product.

Also, *Florida Seed Co., Inc. v. Monsanto Co.*, 105 F.3d 1372, 1375 (11th

Cir. 1997) stands merely for the proposition that "[t]he teaching of these

[collected] cases is clear:  distributors who are terminated following a merger

suffer no antitrust injury."  That proposition is fine, but with regard to *these*

*allegations*, it is just as irrelevant as *Sadler*, *Streamcast*, *McMahon*, and *Southern*

*California Institute of Law*.

In addition, the Eleventh Circuit case that Swisher calls "illustrative"—

*Spanish Broadcasting v. Clear Channel Communications, Inc.*, 376 F.3d 1065

(11th Cir. 2004)—is similarly irrelevant.  (Mot. at 10.)  There, a Spanish-language

broadcaster filed Section 1 and 2 claims against Clear Channel and another

Spanish broadcaster, for allegedly stealing employees, badmouthing the plaintiff's

stock, and "spreading rumors" about one of the plaintiff's executives.  *Id.* at 1070.

The Eleventh Circuit simply held that those alleged acts did not constitute harm to

competition in the Spanish broadcasting market, such as higher prices to

advertisers, restricted output to consumers, etc.  The court explained that while

"damage to a critical competitor *may* also damage competition in general, SBS bears the burden of drawing that implication with specific factual allegations," and that it had failed to do so. *Id.* at 1072-73 (emphasis in original). In contrast, Trendsettah *has* drawn that "implication," by making specific factual allegations as to how and why Swisher restricted the output of Splitarillos, and took additional steps to sabotage the distribution of Splitarillos to consumers.

Last, Swisher cites *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802 (9th Cir. 1988) as "instructive." (Mot. at 10.) But *McGlinchy* involved a distributor's Section 2 claim against the manufacturer whose products it distributed, just as *Sadler* and *Florida Seed* (and the cases it collects) did. 845 F.2d at 805. It is no surprise (as taught by *Florida Seed*) that a terminated distributor cannot allege harm to *competition* in the relevant product market. After all, it is simply not plausible that a manufacturer would have any rational reason to engage in anticompetitive conduct designed to limit the distribution of its *own* products. *McGlinchy*'s rationale is fine as far as it goes, but it says nothing to contradict the basic proposition that:

> "If an incumbent monopolist takes steps to maintain its monopoly by foreclosing a would-be rival from entering . . . . [b]oth consumers and foreclosed rivals suffer antitrust injury."

*Retrophin, Inc. v. Questcor Pharm., Inc.*, 41 F. Supp. 3d 906, 913 (C.D. Cal. Aug. 8, 2014) (quoting 2A Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 391e, at 328 (3d ed. 2007).

## II.   A CLAIM FOR TRADE LIBEL DOES NOT REQUIRE THE HEIGHTENED PLEADING STANDARD THAT SWISHER SEEKS TO IMPOSE.

Trendsettah's complaint alleges that in conjunction with unjustifiably restricting the output of Splitarillos, "Swisher had begun actively disparaging the Splitarillo product within the industry," and alleges as an example that "employees

of a Fresno, California-based distributor called SM Brothers, Inc. were told by Swisher representatives that TSI would no longer be receiving Splitarillos and that TSI was going out of business." (Compl. ¶¶ 36-37.)  Swisher's first response to those allegations is that Trendsettah's trade libel claim is subject to Florida, not California, substantive law.  (Mot. at 11-12.)  Swisher is wrong again.

The authority on which Swisher bases its argument provides that where a contract includes a choice-of-law provision, the specified body of law applies to disputes between the parties "'arising from or related to that agreement [and to] tortious breaches of duties emanating from the agreement or the legal relationship it creates.'"  (Mot. at 12 (quoting *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 470 (1992)).)  Swisher then leaps directly into a discussion of Florida law, without even trying to explain how the trade libel claim "arises from" or "emanate[s] from" the Private Label Agreement between the parties.  Indeed, Swisher's brief does not even cite or quote the purported term of the Private Label Agreement that it contends controls.

On its face, *Nedlloyd Lines* only applies to tort claims where the cause of action is based on "breaches of duties [1] emanating from the agreement or [2] the legal relationship it creates." 3 Cal. 4th at 470.  Swisher's duty to refrain from defaming Trendsettah does not "emanate" from the Private Label Agreement between the two.  Rather, it emanates from a generalized duty Swisher owes to Trendsettah—and to every other business in California—to abstain from spreading defamatory lies.  This duty no more "emanates" from the contract than does the duty that Swisher employees owe to Trendsettah employees, to abstain from physically assaulting them.  Furthermore, *Nedlloyd Lines* recognizes that the drafters of commercial contracts are typically "sophisticated parties" who write what they mean and mean what they write.  *Id.* at 468, 470.  If Swisher had meant that "all civil disputes between the parties shall be subject to the substantive law of Florida," presumably it would have written that term into the contract, instead of

writing only that "[t]his *Agreement* shall be governed by the laws of the State of Florida."  (*See* Ex. A to Decl. of Cindy Laquidara in Supp. of Mot. to Transfer Venue (Jan. 10, 2011 Private Label Agreement at A-10), ECF No. 16-1, filed Dec. 16, 2014)) (emphasis added).)[2]

Because Swisher doesn't base its trade libel arguments on the applicable law of California, nor on the law of Rule 8 generally, its challenge to the trade libel claim should be disregarded.  But even if Florida law applied, the claim is sufficiently alleged.  Swisher cites a number of Florida state cases to support its argument, but since this case is pending in federal court, the notice pleading standard set forth in Rule 8 controls, not whatever the pleading standard is in Florida state courts.

The very recent Florida trade libel case of *Caruso v. Galencare, Inc.*, exemplifies that standard.  No. 8:14-CV-539-T-33AEP, 2014 WL 1796684 (M.D. Fla. May 6, 2014).  There, just as here, the defendant sought dismissal on the ground that the complaint only "generally describes the defamatory speaker 'Defendant,' without identifying any particular person . . . only generally describes the allegedly slanderous statement as being a representation by 'Defendant' that [the plaintiff] was terminated for 'performance deficiencies,' and fails to provide a time frame within which the publication occurred."  *Id.* at *4.  The federal court rejected the defendant's citation to *Jackson v. N. Broward Cnty. Hosp. Dist.*, 766 So.2d 256, 257 (Fla. 4th DCA 2000)—which Swisher likewise relies on here (Mot. at 13)—holding that under federal procedure, a defamation plaintiff "need only satisfy the meager pleading standard of Fed.R.Civ.P. 8(a)."  *Id.* at *5.  Under that standard, the court held, "the complaint need only specify

---

[2] While invoking the choice-of-law provision, Swisher inexplicably does not quote the term, nor submit the contract with its motion, so Trendsettah directs the Court's attention to Swisher's filing on its failed motion to transfer venue.

1    allegations in a manner that provides [the defendant] with fair notice of [the

2    plaintiff's] slander claim and the grounds upon which it rests." *Id.*; *see also*

3    *Leavitt v. Cole*, 291 F.Supp.2d 1338, 1341 (M.D. Fla. 2003) ("A slander claim

4    may suffice if it sets forth the allegedly slanderous statement and generally

5    describes the manner and to whom it was uttered.").  Trendsettah's complaint

6    satisfies this standard.  (Compl. ¶¶ 36-37.)

7         As against these reasoned cases, Swisher offers only *Fowler v. Taco Viva,*

8    *Inc.*, a 30-year-old case where the court, without citation, simply declared that

9    "[t]o assert a viable claim for slander the Plaintiff must allege certain facts such as

10   the identity of the speaker, a description of the statement, and provide a time

11   frame within which the publication occurred."  646 F. Supp. 152, 157-58 (S.D.

12   Fla. 1986).  That proposition is just wrong under Rule 8, and in all events has been

13   superseded by the reasoned discussions of the applicable federal pleading standard

14   in *Caruso* and *Leavitt*.  Swisher also offers a citation to *Bell v. Novartis Pharm.*

15   *Corp.*, No. 8:08-cv-30-T-17-EAJ, 2008 WL 2694893 (M.D. Fla. July 3, 2008), a

16   case in which the court dismissed a *pro se* litigant's defamation claim against the

17   pharmaceutical giant, but based only on a citation to *Fowler v. Taco Viva*.

18        Other than the special matters identified in Rule 9(b), the pleading standard

19   of Rule 8 is universal in federal court, and the necessary factual detail for a claim

20   to proceed does not vary according to the forum state's procedural law.  Swisher is

21   unquestionably on notice that Trendsettah has alleged that its employee charged

22   with servicing a Fresno distributor called SM Brothers, Inc., in "the second quarter

23   of 2012," was the defamatory speaker described in paragraph 37 of the complaint.

24   Obviously, Swisher—as that person's employer—is better able to determine that

25   person's identity than Trendsettah is.[3]  Accordingly, even if Swisher's argument

26

---

27   [3] Nonetheless, Trendsettah is happy to get Swisher's investigation off the ground by
     sharing the man's first name: "Maurice."

28

OPP. TO SWISHER MOT FOR J. ON PLEADINGS
                                          CASE NO. 8:14-CV-01664-JDS (DFMX)

1   that Florida law applies were correct—which it isn't—Trendsettah has stated a

2   valid claim under Rule 8.

## III.   TRENDSETTAH'S NEGLIGENT INTERFERENCE CLAIM IS SUBJECT TO CALIFORNIA SUBSTANTIVE LAW.

5           Swisher argues that "[u]nder Florida law, no cause of action exists for

6   negligent interference with prospective economic relations," and that Count VIII

7   of the Complaint should accordingly be dismissed.  (Mot. at 14-15.)  But that

8   argument is of no moment for the same reasons described in the previous section.

9   That is, Swisher's duty not to interfere in Trendsettah's contracts with "Pitco

10  Foods, Import Warehouse, Inc., Colonial Grocers, Inc., McLane Company, Inc.

11  and Core-Mark International, Inc." (Compl. ¶ 79), was not a duty that "emanated"

12  or "arose from" the Private Label Agreement or "the legal relationship it

13  create[d]."  *Nedlloyd Lines*, 3 Cal. 4th at 470.  Rather, as with the defamation

14  claim, every actor in California has the generalized duty to refrain from

15  negligently or purposefully interfering in the contracts of California businesses,

16  regardless of whether they are bound together by a contract.

## IV.   TRENDSETTAH'S UCL CLAIM IS PREDICATED ON A BREACH OF FEDERAL ANTITRUST LAW, NOT STATE COMMON LAW.

19          Finally, Swisher argues that Trendsettah's UCL claim should be dismissed

20  because "TSI's antitrust claims are fatally defective."  (Mot. at 15.)  But as

21  explained above, they aren't, so it shouldn't be.

22          Swisher does not appear to argue that the UCL claim should be dismissed in

23  all events pursuant to the choice-of-law provision in the Private Label Agreement.

24  But if it did, it would again be mistaken.  The UCL claim is predicated on

25  Swisher's antitrust violations.  (Compl. ¶ 98.)  Here again, Swisher's duty to

26  refrain from violating Section 2 "emanates" from the Sherman Act, not from the

27  Private Label Agreement.  Swisher does not cite any case where a UCL claim

28  predicated on the defendant's breach of federal statutory law has been dismissed

1    pursuant to a choice-of-law provision in a contract between the litigants.  (Mot. at
2    15-16.)

3                                   **CONCLUSION**
4           For all of the foregoing reasons, Swisher's motion should be denied.

5

6    Dated:  April 20, 2015                    GAW | POE LLP

7

8                                   By:

9                                   Mark Poe
                                    Attorneys for Plaintiffs
10                                  Trendsettah USA, Inc. and Trend
                                    Settah, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28