UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV14-01664 JVS (DFMx) | Date | August 17, 2016 |
| Title | Trendsettah USA, Inc., et al. v. Swisher International Inc. | | |

| | |
|---|---|
| Present: The Honorable | James V. Selna |

| | |
|---|---|
| Karla J. Tunis | Not Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
| Not Present | Not Present |

**Proceedings:**     **(IN CHAMBERS)**
**Order GRANTING IN PART and DENYING IN PART Defendant's Motion for Judgment as a Matter of Law and Motion for New Trial**

**Order Setting Scheduling Conference**

Defendant Swisher International, Inc. ("Swisher") has moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(b). Docket No. 233. Swisher also seeks a new trial under Rule 59(a). Id. Plaintiffs Trendsettah USA, Inc. and Trend Settah, Inc. (together, "Trendsettah") filed an opposition. Docket No. 242. Swisher filed a reply. Docket No. 250.

For the reasons stated below, the Court **grants in part** and **denies in part** Swisher's renewed motion for judgment as a matter of law and **grants in part** and **denies in part** Swisher's motion for a new trial.

**1.     Background**

Swisher is a cigar manufacturer with its principal place of business in Florida. In January 2011, Swisher entered into a supply agreement with Trendsettah, another cigar manufacturer, to manufacture cigarillos for Trendsettah under the "Splitarillos" brand name. In early December 2011, Swisher notified Trendsettah that it was terminating the supply agreement because Trendsettah failed to meet certain minimum order requirements as specified in the agreement. After discussions between the parties, the parties amended the supply agreement to terminate in October 2012. In February 2013, after the supply agreement expired, Swisher and Trendsettah entered into another supply agreement, this time scheduled to terminate in February 2014. The parties did not renew

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV14-01664 JVS (DFMx) | Date | August 17, 2016 |
| Title | Trendsettah USA, Inc., et al. v. Swisher International Inc. | | |

the second supply agreement when it ultimately expired in February 2014.

     In October 2014, Trendsettah sued Swisher for various misconduct arising out of Swisher's alleged breach of the supply agreements. The complaint alleged nine causes of action: (1) monopolization and attempted monopolization in violation of the Sherman Act, 15 U.S.C. § 2; (2) monopolization and attempted monopolization in violation of Florida Antitrust Law, Fl. Stat. § 542.19; (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; (5) trade libel; (6) tortious interference with contract; (7) intentional interference with prospective business relationships; (8) negligent interference with prospective business relationships; and (9) unfair competition in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. Docket No. 1.

     In May 2015, the Court dismissed the state law claims for negligent interference and unfair competition for failure to state a claim. Docket No. 40. Several months later, in January 2016, the Court dismissed the state law claims for trade libel, tortious interference with contract, and intentional interference with prospective business relationships on summary judgment. Docket No. 99. Trial on the remaining antitrust and contract claims was then scheduled for March 2016.

     At trial, a jury found Swisher liable on the antitrust and contract claims. Docket No. 207 at 2-3.[1] Swisher now moves for judgment as a matter of law on the antitrust claims or, in the alternative, for a new trial on both the antitrust and contract claims. Docket No. 233.

**2.      Renewed Motion for Judgment as a Matter of Law**

     Swisher argues that it is entitled to judgment as a matter of law on Trendsettah's monopolization and attempted monopolization claims for four reasons: (1) Swisher had no antitrust duty to deal with Trendsettah; (2) Trendsettah failed to prove antitrust injury; (3) Trendsettah failed to prove actual or threatened monopoly power; and (4) Trendsettah failed to prove causal antitrust injury. Docket No. 233 at 11-35. As explained below, the Court grants Swisher's motion for judgment as a matter of law on the monopolization claim for failure to prove causal antitrust injury. The Court denies the motion in all other

---

[1] All citations are made to the CM/ECF pagination.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. SACV14-01664 JVS (DFMx)     Date   August 17, 2016

Title   Trendsettah USA, Inc., et al. v. Swisher International Inc.

respects.

    2.1.    Legal Standard

    Rule 50 authorizes the defendant to move for judgment as a matter of law anytime after the plaintiff's case-in-chief. Fed. R. Civ. P. 50(a). In determining whether to grant judgment as a matter of law, the court must determine whether the jury has a "legally sufficient evidentiary basis" to find for the plaintiff. Id. If the judge denies the motion, and the jury later returns a verdict against the defendant, the defendant may renew its motion for judgment as a matter of law after trial. Fed. R. Civ. P. 50(b); EEOC v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009). Like the preverdict motion, the postverdict motion also challenges the sufficiency of the plaintiff's evidence. Hagen v. City of Eugene, 736 F.3d 1251, 1256 (9th Cir. 2013). If the jury verdict is "supported by substantial evidence," the court must uphold the jury verdict. Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002). However, if the evidence "permits only one reasonable conclusion, and that conclusion is contrary to the jury," the court may grant judgment as a matter of law to the defendant. White v. Ford Motor Co., 312 F.3d 998, 1010 (9th Cir. 2002) (internal quotation marks omitted). When reviewing the evidence, the court must view the evidence "'in the light most favorable to the nonmoving party" and draw "all reasonable inferences" in favor of the nonmoving party. Torres v. City of Los Angeles, 548 F.3d 1197, 1205-06 (9th Cir. 2008).

    2.2.    The Court grants Swisher judgment as a matter of law on the monopolization claim for failure to prove causal antitrust injury.

    Section 2 of the Sherman Act prohibits businesses from monopolizing or attempting to monopolize interstate trade or commerce. 15 U.S.C. § 2. To show monopolization in violation of the Sherman Act, the plaintiff must show that (1) the defendant possessed monopoly power in a relevant market; (2) the defendant willfully acquired or maintained that power; and (3) the plaintiff suffered causal antitrust injury. SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996). By contrast, to show attempted monopolization, the plaintiff must show that (1) the defendant engaged in predatory or anticompetitive conduct; (2) the defendant had a specific intent to monopolize; (3) the defendant had a dangerous probability of achieving monopoly power; and (4) the plaintiff suffered causal antitrust injury. Rebel Oil Co. v. Atlantic Richfield Co., 51 F.3d 1421, 1432-33 (9th Cir. 1995) (citing McGlinchy v. Shell

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV14-01664 JVS (DFMx) | Date | August 17, 2016 |
|---|---|---|---|
| Title | Trendsettah USA, Inc., et al. v. Swisher International Inc. | | |

Chem. Co., 845 F.2d 802, 811 (9th Cir. 1988)).

     Swisher argues that Trendsettah failed to prove causal antitrust injury on both its monopolization and attempted monopolization claims. Docket No. 233 at 32-35. To show causal antitrust injury, the plaintiff must show that the defendant's anticompetitive conduct caused the plaintiff to suffer damages. Glen Holly Entm't, Inc. v. Tektronix Inc., 343 F.3d 1000, 1007-08 (9th Cir. 2003); Rebel Oil, 51 F.3d at 1433 ("To show antitrust injury, a plaintiff must prove that his loss flows from an anticompetitive aspect or effect of the defendant's behavior."). In complex antitrust cases like this one, this requires the plaintiff to provide an antitrust damages model that establishes how the defendant's alleged anticompetitive conduct injured the plaintiff. See Comcast Corp. v. Behrend, --- U.S. ---, 133 S. Ct. 1426, 1433 (2013) ("If respondents prevail on their claims, they would be entitled only to damages resulting from reduced . . . competition, since that is the only theory of antitrust impact accepted for class-action treatment by the District Court."); Image Tech. Servs., Inc. v. Eastman Kodak Co., 125 F.3d 1195, 1224 (9th Cir. 1997) ("The ISOs must segregate damages attributable to lawful competition from damages attributable to Kodak's monopolizing conduct."). Further, the model must be "'consistent with [the plaintiff's] liability case, particularly with respect to the alleged anticompetitive effect of the violation.'" Comcast, 133 S. Ct. at 1433 (quoting ABA Section of Antitrust Law, Proving Antitrust Damages: Legal and Economic Issues 57, 62 (2d ed. 2010)). Otherwise, the model may impermissibly allow recovery for damages that are unrelated to the defendant's anticompetitive conduct. If the model fails to "measure only those damages attributable to [the plaintiff's liability] theory," the model will not survive scrutiny. Id.

     2.2.1.     Monopolization

     Trendsettah failed to provide sufficient evidence of causal antitrust injury on its monopolization claim because its national damages models were inconsistent with its regional theory of antitrust liability. At trial, Trendsettah presented a regional theory of antitrust liability on its monopolization claim. The regional theory proposed that the relevant markets for Trendsettah's monopolization claims were twelve regional markets, and that Swisher had actual or threatened monopoly power in seven of the twelve regions. See, e.g., Docket No. 233-9 at 94 ("The other issue about relevant market is the relevant geographic market . . . . We pointed to evidence that these are regional markets based on the MSA regions or even state markets . . . ."). To establish causal antitrust injury in these

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV14-01664 JVS (DFMx)   Date  August 17, 2016

Title  Trendsettah USA, Inc., et al. v. Swisher International Inc.

regional markets, Trendsettah then presented two alternative damages models: the logistic model and the Good Times model. However, both models relied only on national data, not regional data. For example, the Good Times Model calculated damages using comparative national sales data from Trendsettah's competitor, Good Times USA. Docket No. 243-4 at 44-45 (testimony from Dr. DeForest McDuff ("McDuff"), Trendsettah's economic expert, describing Good Times and logistic damages models); Docket No. 233-9 at 82 ("The numbers that [McDuff] was presenting yesterday or two days ago, starting at 30 million and then some various iterations, those are national . . . . They're not tied to geography. That is the sum of the cause that [Trendsettah] suffered."). And because both models relied only on national data, neither model was consistent with Trendsettah's regional theory of monopolization. Moreover, Trendsettah has failed to explain how the jury could otherwise determine causal antitrust injury in the regional markets based when relying only on evidence regarding national antitrust injury. Indeed, McDuff's trial testimony made clear that monopoly power (or the dangerous probability thereof) did not exist in all Trendsettah regions and, in some cases, even in all states in a given region. The jury therefore lacked "sufficient evidentiary basis" to find causal antitrust injury on the monopolization claim. Fed. R. Civ. P. 50(a)(1). Accordingly, the Court grants Swisher judgment as a matter of law on the monopolization claim.[2]

Trendsettah's opposition argues that this argument is barred by the doctrine of judicial estoppel because Swisher has previously argued that the jury's damages award does not necessarily track expert testimony. Docket No. 242 at 26. This argument misunderstands the issue. The issue is not whether the antitrust verdict was consistent with McDuff's expert testimony regarding Trendsettah's causal antitrust injury. Rather, the issue is whether the jury had "sufficient evidentiary basis" to find causal antitrust injury. Docket No. 233-9 at 80 ("Said another way, I don't know how the jury could take the present evidence and award damages for the territories in which [McDuff] found either monopolization or attempted monopolization.").

### 2.2.2. Attempted monopolization

Trendsettah has produced sufficient evidence of causal antitrust injury on its attempted monopolization claim. Unlike with the monopolization claim, Trendsettah

---

[2] If the Court is mistaken in granting judgment as a matter of law on this basis, the Court would nevertheless grant a new trial for the reasons stated *infra*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV14-01664 JVS (DFMx)       Date    August 17, 2016

Title        Trendsettah USA, Inc., et al. v. Swisher International Inc.

presented *two* alternative theories of attempted monopolization at trial: one based on regional markets, and another based on a national market. See, e.g., Docket No. 233-9 at 98 ("If you agree with Swisher that it's a national market, then they do have a significant market share to get dangerous probability. They can be liable for attempted monopoly. I submit to you that this is kind of the simplest and the straightforward measures of antitrust damages because it counts all sales around the country."). Viewing the evidence regarding national antitrust injury in the light most favorable to Trendsettah, and drawing all reasonable inferences in favor of Trendsettah, a reasonable jury could find causal antitrust injury resulting from Swisher's attempt to monopolize a national market.

      Swisher does not directly dispute this. Swisher instead argues that the entire antitrust verdict must be rejected because it was inconsistent with the antitrust damages award. Specifically, Swisher argues that, because the damages award was based on Trendsettah's national antitrust injury, the jury could not consistently find both attempted monopolization in the national market but actual monopolization in the regional markets. Docket No. 250 at 25-26 (arguing that the Court may reject the jury verdict "given that the jury found Swisher liable for actual monopolization and there was never a claim that Swisher monopolized a national market"); Tr. Mot. JMOL Hr'g (June 27, 2016) at 35:24-47:10 ("So if the jury is checking the box on monopolization and checking the box on attempt, the only way to reconcile those two together is on the basis that the jury went with Dr. McDuff's regional markets. That brings us back to the mismatch between liability theory and the supposed proof of injury and damages."). The Court rejects this argument. Given the evidence presented at trial, a reasonable jury could find that Swisher attempted to monopolize a national market, but was successful in monopolizing only some regional markets. In that case, the antitrust damages award was consistent with the attempted monopolization verdict, even if inconsistent with the actual monopolization verdict. The jury therefore would have sufficient evidence of attempted monopolization, notwithstanding Trendsettah's failed monopolization claim. Accordingly, the Court denies Swisher judgment as a matter of law on the attempted monopolization claim.

      2.3.     The Court rejects Swisher's remaining three arguments for judgment as a matter of law.

      Swisher raises three additional arguments for judgment as a matter of law: (1) Swisher had no antitrust duty to deal with Trendsettah; (2) Trendsettah failed to show antitrust injury; and (3) Trendsettah failed to show actual or threatened monopoly power.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV14-01664 JVS (DFMx)     Date  August 17, 2016

Title  Trendsettah USA, Inc., et al. v. Swisher International Inc.

Docket No. 233 at 11-32. The Court rejects all three arguments.

      2.3.1.      Swisher waived its arguments regarding antitrust duty to deal and failure to establish actual or threatened monopoly power.

"A Rule 50(b) motion for judgment as a matter of law is not a freestanding motion. Rather, it is a renewed Rule 50(a) motion." Go Daddy, 581 F.3d at 961. "Because it is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion." Id. This requirement is strict: if the defendant fails to move for judgment on an issue in its preverdict motion, the defendant cannot move for judgment on that same issue in its postverdict motion. Id.; Freund v. Amersham, 347 F.3d 752, 761 (9th Cir. 2003) ("A party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion."). Nevertheless, courts must liberally interpret the defendant's preverdict motion when determining whether there is waiver. See Go Daddy, 581 F.3d at 961 ("Absent such a liberal interpretation, the rule is a harsh one." (internal quotation marks omitted)). Under the Ninth Circuit's "liberal" standard for determining waiver, id., "an inartfully made or ambiguously stated motion for a directed verdict . . . may constitute a sufficient approximation of a motion for a directed verdict to satisfy the requirements of Rule 50(b)," Farley Transp. Co. v. Santa Fe Trail Transp. Co., 786 F.2d 1342, 1347 (9th Cir. 1985) (internal citations and quotation marks omitted)).

At trial, Swisher waived its arguments regarding antitrust duty to deal and failure to establish actual or threatened monopoly power because Swisher's initial motion for judgment as a matter of law argued only that Trendsettah failed to show antitrust injury or causal antitrust injury. The trial transcript for Swisher's preverdict motion shows the following:

- Swisher begins its preverdict motion by stating: "The basis of Swisher's motion is that plaintiffs have not introduced evidence to prove every element of their antitrust claim . . . . Throughout the presentation, Your Honor, plaintiffs' case-in-chief has been based on really a breach of contract case and nothing more."

- After discussing potential double recovery on the antitrust and contract damages, Swisher continues: "Let me move into *the specific elements* of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV14-01664 JVS (DFMx)   Date  August 17, 2016

Title  Trendsettah USA, Inc., et al. v. Swisher International Inc.

   antitrust claim as well."

- Swisher first argues that Trendsettah has failed to show bare antitrust injury: "*With respect to competition*, Your Honor, the uncontroverted testimony from [Trendsettah's] own witnesses is that competition has increased, not decreased."

- Swisher next argues that Trendsettah has failed to show anticompetitive conduct: "*Moreover*, there has been no evidence presented of tortious interference in this case."

- After arguing that Trendsettah has failed to show antitrust injury or anticompetitive conduct, Swisher tries to end its preverdict motion: "*Based on all of those lacking elements*, . . . Swisher seeks a directed verdict on count one, the antitrust claim."

- The Court interjects, challenging Swisher's assertion that Trendsettah has failed to show anticompetitive conduct: "Well, can't the antitrust claim, both monopolization and attempt, be made without demonstrating disparagement?"

- After answering the Court, Swisher again tries to end its preverdict motion: "*Based on that argument*, Your Honor, Swisher moves for a directed verdict on the antitrust claim."

- On the Court's invitation, Swisher declines to raise any additional arguments: "Do you want to address any of the other claims?" "No, Your Honor."

- After Trendsettah presents its opposition, Swisher withdraws its argument regarding anticompetitive conduct and reasserts its initial argument regarding antitrust injury: "Your Honor, *I'm just going to rely on the arguments I made with respect to competition*. I think that the testimony was clear that competition increased, not just competitors. I think that is a fundamental element of the claim, and it was not established."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV14-01664 JVS (DFMx) | Date | August 17, 2016 |
| Title | Trendsettah USA, Inc., et al. v. Swisher International Inc. | | |

- After Swisher ends its preverdict motion, the Court *sua sponte* states that Trendsettah may have insufficient evidence of causal antitrust injury: namely, antitrust damages resulting from anticompetitive conduct in regional markets.

Docket No. 243-1 at 2-9 (emphases added). During this exchange, Swisher nowhere mentioned either an antitrust duty to deal or actual or threatened monopoly power when presenting its initial motion for judgment as a matter of law. Instead, Swisher specifically argued only that Trendsettah has failed to show antitrust injury or causal antitrust injury. See, e.g., id. at 2 ("Your Honor, *I'm just going to rely on the arguments I made with respect to competition*. I think that the testimony was clear that competition increased, not just competitors." (emphasis added)). Swisher has therefore waived its arguments regarding an antitrust duty to deal or actual or threatened monopoly power for purposes of the present motion.

Swisher's reply argues that it preserved the argument regarding an antitrust duty to deal because Swisher's initial motion for judgment as a matter of law argued that "plaintiffs' case-in-chief has been based on a really a breach of contract case and nothing more." Docket No. 250 at 16 (quoting Docket No. 233-9 at 70-71). The Court rejects this argument. Under the Ninth Circuit's "liberal" standards for waiver, the plaintiff may preserve an argument for a renewed motion for judgment as a matter of law even when the argument is "inartfully made or ambiguously stated." Farley Transp., 786 F.2d at 1347. However, Swisher's motion was neither "inartful[]" nor "ambiguous[]." Id. As the excerpts from the trial transcript make clear, Swisher specifically argued only that Trendsettah has failed to show antitrust injury or causal antitrust injury, and not that Swisher had no antitrust to deal or that its showing of monopoly power failed.

### 2.3.2. Trendsettah provided sufficient evidence of antitrust injury.

To show monopolization or attempted monopolization in violation of the Sherman Act, the plaintiff must show, among other things, "antitrust injury." SmileCare, 88 F.3d at 783. To show antitrust injury, the plaintiff must show that defendant's anticompetitive conduct harmed competition. Glen Holly, 343 F.3d at 1007-08 ("[I]t is inimical to the antitrust laws to award damages for losses stemming from acts that do not hurt competition." (citing Atlantic Richfield Co. v. USA Petroleum, Inc., 495 U.S. 328, 334 (1990)). Harm to competition can include restricted market output, supracompetitive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV14-01664 JVS (DFMx) | Date | August 17, 2016 |
| Title | Trendsettah USA, Inc., et al. v. Swisher International Inc. | | |

pricing, and poor product quality. See Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc., 2013 WL 5694452, at *15 (N.D. Cal. Oct. 18, 2013) ("Market power can be shown by actual harm to competition inflicted by the defendant, such as restricted output or supra-competitive prices, or by the defendant's dominant market share and barriers to entry in the relevant market.") (emphasis added); Stearns v. Select Comfort Retail Corp., 2009 WL 1635931, at *13 (N.D. Cal. June 5, 2009) ("The antitrust laws are intended to prevent harm to competition manifested as higher prices, lower output, or decreased quality in the products within a defined market.").

Trendsettah provided sufficient evidence of antitrust injury here. At trial, Trendsettah established that Swisher failed to timely deliver approximately 200 million cigarillos under the private label agreements. Docket No. 243-4 at 24 ("And there's a figure corresponding to that that says 202,309,970. Do you have an understanding as to what that number refers to?" "That is the total deficit over time as calculated by [Swisher's economic expert.]"). As the Court explained on summary judgment, this evidence is sufficient to establish harm to competition based on restricted market output. Docket No. 99 at 14-15. At trial, Swisher failed to rebut the evidence of restricted market output, for example, by showing that total market output for cigarillos would have remained the same even if Swisher had timely delivered cigarillos to Trendsettah. Indeed, that some firms may have entered and that overall market volume may have increased do not negate harm to competition, particularly when viewed from the perspective of still higher market volumes had Swisher performed. See id. Without such rebuttal evidence, a reasonable jury could find that the restricted market output for cigarillos harmed competition. White, 312 F.3d at 1010 (holding that judgment as a matter of law is permissible only when evidence "permits only one reasonable conclusion, and that conclusion is contrary to the jury"). The Court therefore denies judgment as a matter of law on this ground.

### 3. Motion for New Trial

Swisher also seeks a new trial on both the antitrust and contract claims. Swisher raises four arguments for retrial: (1) the Court erroneously failed to instruct the jury on Swisher's antitrust duty to deal; (2) the Court erroneously instructed the jury on indirect proof of monopoly power; (3) the contract verdict is contrary to the evidence regarding Trendsettah's contract damages; and (4) retrial on the antitrust claims requires retrial on the contract claims. Docket No. 233 at 35-39. As explained below, the Court grants a new

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV14-01664 JVS (DFMx) | Date | August 17, 2016 |
|---|---|---|---|
| Title | Trendsettah USA, Inc., et al. v. Swisher International Inc. | | |

trial on the antitrust claims for failure to instruct the jury on Swisher's antitrust duty to deal. The Court denies the motion in all other respects.

   3.1.   Legal Standard

Rule 59(a) authorizes courts to grant a new trial in three circumstances: (1) when the verdict is contrary to the clear weight of the evidence; (2) when the verdict is based on false or perjurious evidence; and (3) when necessary to prevent a miscarriage of justice. Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (quoting Passantino v. Johnson & Johnson Consumer Prods., 212 F.3d 493, 510 n.15 (9th Cir. 2000)). Unlike with a motion for judgment as a matter of law, when determining whether the verdict is contrary to the clear weight of the evidence, the court is not required to view the evidence in the light most favorable to the nonmoving party. Experience Hendrix LLC v. Hendrixlicensing.com Ltd., 762 F.3d 829, 842 (9th Cir. 2014). The court must instead independently weigh the evidence and assess the credibility of the witnesses. Id.

   3.2.   The Court grants a new trial on the antitrust claims.

Swisher seeks a new trial on the antitrust claims based on two errors in the jury instructions: (1) the Court erroneously failed to instruct the jury on Swisher's antitrust duty to deal, and (2) the Court erroneously instructed the jury on indirect proof of monopoly power. Docket No. 233 at 35-36. As explained below, the Court grants retrial on the antitrust claims for failure to instruct the jury on Swisher's antitrust duty to deal. However, the Court denies retrial for the incorrect jury instructions regarding indirect proof of monopoly power because Swisher waived this argument under the invited error doctrine.

       3.2.1.   The Court's failure to instruct the jury on Swisher's antitrust duty to deal was harmful error.

Swisher first challenges the Court's failure to instruct the jury regarding Swisher's antitrust duty to deal. Docket No. 233 at 35-36. "Harmless error applies to jury instructions in civil cases." Kennedy v. So. Cal. Edison Co., 268 F.3d 763, 770 (9th Cir. 2001). Under the harmless error standard, "[a]n error in instructing the jury in a civil case requires reversal unless the error is more probably than not harmless." Caballero v. City of Concord, 956 F.2d 204, 206 (9th Cir. 1992). In the Ninth Circuit, courts "presume

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV14-01664 JVS (DFMx)            Date   August 17, 2016

Title   Trendsettah USA, Inc., et al. v. Swisher International Inc.

prejudice where civil trial error is concerned." Galdamez v. Potter, 415 F.3d 1015, 1025 (9th Cir. 2005). Accordingly, the Ninth Circuit uses a two-step burden-shifting analysis on harmless error review. First, the moving party must show that the jury instruction was incorrect. Id. Second, if the moving party sustains its initial burden, "the burden shifts to the [non-moving party] to demonstrate 'that it is more probable than not that the jury would have reached the same verdict' had it been properly instructed.'" Id. (quoting Obrey v. Johnson, 400 F.3d 691, 701 (9th Cir. 2005)). Here, the Court's failure to instruct the jury regarding Swisher's antitrust duty to deal was not harmless error.

     First, Swisher has sustained its initial burden to show that the Court erred by failing to instruct the jury regarding Swisher's antitrust duty to deal. To see why, the Court must first review antitrust law regarding a business's duty to deal with competitors. Under antitrust law, businesses generally have no duty to deal with competitors. High Tech. Careers v. San Jose News, 996 F.2d 987, 990 (9th Cir. 1993) (citing Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 483 n.32 (1992)). Businesses therefore are "free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc., 555 U.S. 438, 448 (2009) (citing United States v. Colgate & Co., 250 U.S. 300, 307 (1919)). As a result, businesses typically do not face antitrust liability for their unilateral refusal to deal with their competitors. See In re Adderall XR Antitrust Litig., 754 F.3d 128, 135 (2d Cir. 2014), as corrected (June 19, 2014) ("Nor do business disputes implicate the antitrust laws simply because they involve competitors."). This right is not absolute, however. Aspen Skiing v. Aspen Highlands Skiing Corp., 472 U.S. 585, 601 (1985) ("[T]he high value that we have placed on the right to refuse to deal with other firms does not mean that the right is unqualified."). "Under certain circumstances, a refusal to cooperate with rivals can constitute anticompetitive conduct and violate § 2." Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP, 540 U.S. 398, 408 (2004). For example, businesses may be liable for antitrust violations when there are no legitimate business reasons for their refusal to deal. See Eastman Kodak, 504 U.S. at 483 n.32 ("But such a right is not absolute; it exists only if there are legitimate competitive reasons for the refusal." (citing Aspen Skiing, 472 U.S. at 602-605)). In these cases, federal courts will find that businesses have a duty to deal with competitors when (1) the business unilaterally terminates a voluntary course of dealing spanning several years, sacrificing short-term profits or (2) the business refuses to provide competitors with products that are already sold in a retail market to other customers. Trinko, 540 U.S. at 409-10; see also MetroNet Servs. Corp. v. Qwest Corp., 383 F.3d 1124, 1132-33 (9th Cir. 2004)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV14-01664 JVS (DFMx) | Date | August 17, 2016 |
| Title | Trendsettah USA, Inc., et al. v. Swisher International Inc. | | |

(analyzing the scope of the antitrust duty to deal under <u>Aspen Skiing</u> and <u>Trinko</u>); <u>Safeway Inc. v. Abbott Labs.</u>, 761 F. Supp. 2d 874, 893-94 (N.D. Cal. 2011) (same). Even with these exceptions, however, courts have been "very cautious" in imposing antitrust liability for purely unilateral conduct. <u>Trinko</u>, 540 U.S. at 408. Antitrust liability for purely unilateral conduct therefore remains "rare." <u>Linkline</u>, 555 U.S. at 448.

At trial, Trendsettah's claims for monopolization and attempted monopolization were based solely on Swisher's breach of the private label agreements. Trendsettah's antitrust claims thus do not trigger antitrust liability on their face. <u>Adderall</u>, 754 F.3d at 135 ("The mere existence of a contractual duty to supply goods does not by itself give rise to an antitrust 'duty to deal.'"). Accordingly, to impose antitrust liability on Swisher, the jury was required to first determine whether, as a threshold issue, Swisher properly refused to deal with Trendsettah regarding the private label agreements. <u>Trinko</u>, 540 U.S. at 408. The Court's failure to instruct the jury regarding Swisher's duty to deal was therefore error.

Second, Trendsettah has not met its burden to show that the Court's failure to give the refusal-to-deal instruction was harmless. In its opposition, at the hearing, and in supplemental briefing,[3] Trendsettah raised numerous arguments that, even if the refusal-to-deal instruction was given, the jury still would have found for Trendsettah. These arguments are principally based on three events from trial: (1) the jury found that Swisher had no legitimate business reason for its alleged anticompetitive conduct and acted with the specific intent to create a monopoly;[4] (2) Swisher's trial counsel expressly eschewed

---

[3] After the hearing, the Court ordered supplemental briefing to determine whether the jury's finding of specific intent on Trendsettah's attempted monopolization claim rendered harmless the Court's failure to give the refusal-to-deal instruction on the attempted monopolization claim. Docket No. 253. As Swisher correctly noted in supplemental briefing, anticompetitive conduct cannot be inferred from evidence of anticompetitive intent alone. See <u>William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.</u>, 668 F.2d 1014, 1028 (9th Cir. 1981) ("[D]irect evidence of intent alone, without corroborating evidence of conduct, cannot sustain a claim of attempted monopolization.") (collecting cases).

[4] Ostensibly, the jury's findings were based on evidence presented at trial that (1) Swisher's anticompetitive conduct began in the fourth quarter of 2012, twenty months into the parties' course of dealing; (2) Swisher entered into the private label agreements only after senior management learned that Trendsettah had approached its competitors with the same manufacturing proposal; and (3) Swisher sacrificed short-term profits by refusing to both fill more profitable orders for unflavored cigarillos and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV14-01664 JVS (DFMx) | Date | August 17, 2016 |
| Title | Trendsettah USA, Inc., et al. v. Swisher International Inc. | | |

arguing jury instructions at closing argument; and (3) the jury deliberated for less than three hours before reaching a verdict for Trendsettah on all claims. Mot. JMOL Hr'g Tr. (June 27, 2016) at 63-65, 68-69; see also Docket No. 258 at 8.

However, none of these arguments addresses the fundamental issue of prejudice here: the Court's failure to provide the refusal-to-deal instruction prejudiced Swisher because, without the instruction, the jury had no basis to determine whether Swisher's ordinary contract breach also constituted anticompetitive conduct under the antitrust law's special rules governing breach of contract claims between competitors. See generally Aspen Skiing, 472 U.S. at 600-05. As discussed *supra*, under these special rules, businesses generally have no duty to deal with their competitors, and thus typically face no antitrust liability for their breach of contract. Id. That the jury may have found specific intent under the Court's instructions, see Docket No. 208 at 49-50, 54-55, is no assurance that it would done so had it considered the special rules governing a monopolist's refusal to deal, and indeed the Court is skeptical that it would have done so. The Court's failure to instruct the jury on this unique aspect of antitrust law therefore prejudiced Swisher. Moreover, the Court's failure to provide the refusal to deal instruction effectively prohibited Swisher from arguing its refusal-to-deal defense at closing argument, thus doubly prejudicing Swisher's defense. Given this prejudice to Swisher, the Court cannot say that its failure to provide the refusal-to-deal instruction was harmless error. The Court therefore grants a new trial on the attempted monopolization claim and a conditional new trial on the monopolization claim.

   3.2.2.  Swisher waived its argument regarding the Court's instructions on indirect proof of monopoly power.

Swisher next argues that the Court incorrectly instructed the jury on indirect proof of monopoly power: specifically, that the Court incorrectly instructed the jury regarding barriers to entry and the entry and exist of competitors in the relevant market. Docket No. 233 at 36. Swisher waived this argument under the invited error doctrine.

Under the invited error doctrine, courts will not review challenges to jury instructions when the moving party itself proposed the challenged jury instructions. United States v. Hui Hsiung, 778 F.3d 738, 747-48 (9th Cir. 2015) ("Because the

---

transfer production of cigarillos to their Dominican Republic facilities. Docket No. 242 at 14-16, 28.

Case 8:14-cv-01664-JVS-DFM Document 262 Filed 08/17/16 Page 15 of 19 Page ID #:8897

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV14-01664 JVS (DFMx)                Date  August 17, 2016

Title  Trendsettah USA, Inc., et al. v. Swisher International Inc.

defendants were the ones who proposed the instruction in the first place, they cannot now claim that giving the instruction was error."); United States v. Baldwin, 987 F.2d 1432, 1437 (9th Cir. 1993) ("Where the defendant himself proposes the jury instruction he later challenges on appeal, we deny review under the invited error doctrine."); see also United States v. Lemusu, 135 F. App'x 52, 53 (9th Cir. 2005) (unpublished) ("As Herman jointly proposed the relevant jury instructions, his argument is also barred by the invited error doctrine." (citing Baldwin, 987 F.2d at 1437)); Yates v. GunnAllen Fin., 2006 WL 1821194, at *1 (N.D. Cal. June 30, 2006) ("Defendants cannot now claim that the jury was inadequately instructed on certain punitive damage issues because the instructions given by the court were either instructions submitted by defendants or joint instructions to which defendants had agreed."). Here, Swisher and Trendsettah jointly proposed the challenged jury instructions on indirect proof of monopoly power. Compare Docket No. 171 at 52 (Trendsettah's proposed jury instructions) with id. at 58 (Swisher's proposed jury instructions). This argument is therefore waived under the invited error doctrine.

    3.3.    The Court denies Swisher's request for a new trial on the contract claims.

The Court now turns to the contract claims. Swisher makes two arguments for retrying the contract claims: (1) the contract verdict was inconsistent with the evidence of Trendsettah's contract damages, and (2) retrial on the antitrust claims requires retrial on the contract claims. Docket No. 233 at 36-39. The Court rejects both arguments.

        3.3.1.    The contract verdict was consistent with the evidence of Trendsettah's contract damages.

Trendsettah brings its contract claims under Florida law. Docket No. ¶¶ 60-70. In Florida, a person injured by a breach of contract or bad faith "is entitled to recover a fair and just compensation that is commensurate with the resulting injury or damage." MCI Worldcom Network Servs., Inc. v. Mastec, Inc., 995 So. 2d 221, 223 (Fla. 2008) (citing Winn & Lovett Grocery Co. v. Archer, 171 So. 214 (Fla. 1936); Broxmeyer v. Elie, 647 So. 2d 893 (Fla. Dist. Ct. App. 1994)). "A plaintiff, however, is not entitled to recover compensatory damages in excess of the amount which represents the loss actually inflicted by the action of the defendant." Id. (citing 17 Fla. Jur. 2d Damages §§ 3-7 (2004)).

Swisher argues that the Court must grant a new trial on contract damages because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV14-01664 JVS (DFMx)                      Date   August 17, 2016

Title   Trendsettah USA, Inc., et al. v. Swisher International Inc.

the contract damages award exceeded Trendsettah's contract losses. Docket No. 233 at 36-37. Swisher's argument is as follows. The second private label agreement imposed monthly caps on the number of cigarillos that Swisher was required to supply. Docket No. 233-2 at 4-5 art. 3.1(c). Accordingly, Swisher could not be held liable in contract for unfilled orders that exceeded the monthly caps. See MCI Worldcom, 995 So. 2d at 223 (barring compensatory damages that exceed "the loss actually inflicted by the action of the defendant"). However, the jury incorrectly awarded damages for unfilled orders that exceeded the monthly caps. The contract damages award was based on the Good Times damages model, which calculated contract damages using the deficit figure from Swisher's economic expert, Dr. Alan Cox ("Cox"). See Trial Tr. (Mar. 18, 2016) at 112:14-15 ("Where was the source for the data for Slide 2 here?" "These data come from the expert report of Dr. Cox."). But Cox's deficit figure did not exclude unfilled orders that exceeded the monthly caps; the figure instead included all unfilled orders regardless of whether the order exceeded the monthly caps. Accordingly, Swisher concludes, the jury improperly awarded contract damages for unfilled orders that exceeded the monthly caps.

The Court rejects this argument. At trial, Trendsettah presented two contract damages models: the logistic model and the Good Times model. The logistic model calculated that contract damages were $17,656,350, Trial Tr. (Mar. 18, 2016) at 175:19-21, and the Good Times model calculated that contract damages were $9,062,679, Docket No. 243-4 at 44-45. The jury awarded Trendsettah $9,062,679 in contract damages, the same amount calculated under the Good Times model. Docket No. 207 at 3. This amount is slightly higher than an award under a "corrected" Good Times model,[5] but significantly lower than an award under the logistic model. The jury's acceptance of the Good Times model could reflect its discounting of excess sales in the logistic model; plainly, there is a reduction. But apart from the contract damages figure itself, there is no evidence, in the jury verdict or elsewhere, establishing that the jury did that. See id. ("[W]hat damages do

---

[5] In Swisher's view, the Good Times model must exclude unfilled orders that exceeded the monthly caps. After an independent review of Trendsettah's monthly deficit figures for the second private label agreement, see Pls.' Trial Ex. 137 at 1 ("Revised Ex. 10.a to Cox Report"), the Court determines that excluding excess orders would reduce the total deficit figure from 202,309,970 unfilled orders to 182,603,170 unfilled orders. This is a difference of 19,706,800 unfilled orders, or 9.74% of the total deficit figure. All such unfilled orders occurred in February 2013, the first month of the second private label agreement. Id. After February 2013, there were no unfilled orders that exceeded the monthly caps. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV14-01664 JVS (DFMx) | Date | August 17, 2016 |
| Title | Trendsettah USA, Inc., et al. v. Swisher International Inc. | | |

you find by a preponderance of the evidence that [Trendsettah] has sustained as a result of Swisher's breach of contract(s) with [Trendsettah] and/or it [*sic*] breach of the implied covenant of good faith and fair dealing in its contractual dealings with [Trendsettah]?" "$9,062,679."). Without such evidence, the Court cannot find that contract damages were "contrary to the clear weight of the evidence." Molski, 481 F.3d at 729. The Court therefore declines to retry the contract claims on this ground.

>    3.3.2.    Retrying the antitrust claims does not require retrying the contract claims.

As a general rule, courts may order a partial retrial that is limited to specific issues. However, courts have recognized an exception to this general rule: when the issue to be retried is "[in]distinct and [in]separable" from another issue, the court must order full retrial on both issues. Gasoline Prods. Co., Inc. v. Champlin Refining Co., 283 U.S. 494, 500 (1931) ("Where the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice."). Courts typically grant a full retrial under this exception in two circumstances: (1) when an error on one issue affected the jury verdict on another issue, and (2) when full retrial is necessary to avoid confusion and uncertainty with the jury on retrial. Morrison Knudsen Corp. v. Fireman's Fund Ins. Co., 175 F.3d 1221, 1255-56 (10th Cir. 1999) (citing National R.R. Passenger Corp. v. Koch Indus., Inc., 701 F.2d 108, 110 (10th Cir. 1983); 11 Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure § 2814 at 154-56 (2d. ed. 1995); Gasoline Prods., 283 U.S. at 500)). Neither circumstance applies here.

First, there is no evidence that the antitrust verdict affected the contract verdict. Although the antitrust and contract claims are based on Swisher's breach of the private label agreements, both categories of claims involve substantially different elements requiring substantially different kinds of evidentiary proof. For example, to find monopolization, the jury was required to find, *in addition to breach of the private label agreements*, that (1) Swisher possessed "monopoly power" in certain regional non-tipped cigarillo markets; (2) Swisher's breach constituted willful acquisition or maintenance of monopoly power in these markets; and (3) Swisher's breach caused antitrust injuries. SmileCare, 88 F.3d at 783 (quoting Pacific Express, Inc. v. United Airlines, Inc., 959 F.2d 814, 817 (9th Cir. 1992)). Proving each element in turn required proof of multiple sub-elements. Again, for example, to show that Swisher possessed "monopoly power,"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV14-01664 JVS (DFMx) | Date | August 17, 2016 |
| Title | Trendsettah USA, Inc., et al. v. Swisher International Inc. | | |

Trendsettah was required to provide either (1) direct evidence of monopoly power through restricted market output and supracompetitive pricing or (2) indirect evidence of monopoly power through (a) Swisher's dominant share of the various regional non-tipped cigarillo markets and (b) significant barriers to entry in those markets. Rebel Oil, 51 F.3d at 1434 (citing FTC v. Indiana Fed'n of Dentists, 476 U.S. 447, 460-61 (1986); Ryko Mfg. Co. v. Eden Serv., 823 F.3d 1215, 1232 (8th Cir. 1987); Ball Memorial Hosp. Inc. v. Mutual Hosp. Ins., Inc., 784 F.2d 1325, 1335 (7th Cir. 1986)). This required the jury to consider, among other things, complex economic evidence regarding restricted market output, supracompetitive pricing, and barriers to entry in regional tobacco product markets. See Rebel Oil, 51 F.3d at 1434.

     Trendsettah's contract claims required no such showing. To show breach of contract under Florida law, Trendsettah need only show that (1) Swisher and Trendsettah entered into the private label agreements; (2) Swisher breached the private label agreements; and (3) the breach damaged Trendsettah. Friedman v. New York Life Ins. Co., 985 So. 2d 56, 58 (Fla. Dist. Ct. App. 2008). But unlike with the antitrust claims, the jury did not need to consider complex economic evidence regarding regional non-tipped cigarillo markets to determine whether Swisher breached the private label agreements. Instead, the jury needed only to review the terms of the private label agreements and evaluate Swisher's performance under those terms. See id. Given the substantial differences between the contract and antitrust claims, the Court cannot find that the antitrust verdict improperly influenced or affected the original contract verdict. See Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 487 (3d Cir. 1997) (ordering retrial on sexual harassment claim when inclusion of time-barred sex discrimination claim "infected the entire verdict").

     Second, and for substantially the same reasons, there is no evidence that retrying the antitrust claims, while preserving the contract claims, would result in "confusion and uncertainty" with the jury on retrial. Morrison Knudsen, 175 F.3d at 1256. The fact that it was verbally conceded that Swisher's failure to deliver cigarillos was breach only underscores the Court's conclusion. Accordingly, the Court denies Swisher's motion for a new trial on the contract claims on this ground.

### 4. Conclusion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV14-01664 JVS (DFMx)                           Date   August 17, 2016

Title   Trendsettah USA, Inc., et al. v. Swisher International Inc.

For the reasons stated above, the Court **grants in part** and **denies in part** Swisher's renewed motion for judgment as a matter of law as follows:

(1)   The Court **grants** Swisher judgment as a matter of law on the monopolization claim; but

(2)   The Court **denies** Swisher judgment as a matter of law on the attempted monopolization claim.

The Court **grants in part** and **denies in part** Swisher's motion for a new trial as follows:

(1)   The Court **grants** Swisher a new trial on the attempted monopolization claim and a conditional new trial on the monopolization claim; but

(2)   The Court **denies** Swisher a new trial on the contract claims.

IT IS SO ORDERED.

The Court sets a Scheduling/Status Conference for Monday, September 19, 2016 at 10.00 A.M.  Counsel shall file a Joint Status Report, with their proposed schedule, not later than September 12, 2016.

:   00

Initials of Preparer   kjt