MARK POE (S.B. #223714)
 mpoe@gawpoe.com
RANDOLPH GAW (S.B. #223718)
 rgaw@gawpoe.com
SAMUEL SONG (S.B. #245007)
 ssong@gawpoe.com
VICTOR MENG (S.B. #254102)
 vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

Attorneys for Plaintiffs Trendsettah USA,
Inc. and Trend Settah, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| TRENDSETTAH USA, INC. and TREND SETTAH, INC.<br><br>            Plaintiffs,<br><br>    v.<br><br>SWISHER INTERNATIONAL, INC.<br><br>            Defendant. | Case No. 8:14-CV-01664-JDS (DFMx)<br><br>**PLAINTIFFS' POST-MANDATE MOTION FOR ATTORNEYS' FEES, EXPENSES, AND POST-JUDGMENT INTEREST; MEMORANDUM IN SUPPORT THEREOF**<br><br>Judge:      The Hon. James V. Selna<br>Courtroom:  Courtroom 10C<br>Date:       August 5, 2019<br>Time:       1:30 p.m. |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on August 5, 2019 at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable James V. Selna, United States District Court for the Central District of California, located in Courtroom 10C, 411 West Fourth Street, Santa Ana, CA 92701-4516, plaintiffs Trendsettah USA, Inc. and Trend Settah, Inc. (together, "Trendsettah") will, and hereby do, move for an order awarding:

1. Attorneys' fees to Trendsettah of at least $11,125,134.00;
2. $649,538.34 in disbursements incurred in prosecuting this action; and
3. Post-judgment interest of $669.74 from the April 14, 2016 Judgment (ECF No. 216) through the date of full payment.

Trendsettah respectfully submits this memorandum in support of its motion for reasonable attorneys' fees and expenses pursuant to the fee-shifting provision in the Private Label Agreements between the parties; the Clayton Act, 15 U.S.C. § 15; Federal Rule of Civil Procedure 54(d), and Civil Local Rule 54-10.  This motion is based on this Notice and the accompanying Memorandum of Points and Authorities; the concurrently filed Declarations of Mark Poe, Gerald Knapton, Eric Citron, Tatum Hilmoe, and Ramzy Rahib; the exhibits to those declarations; argument by counsel at the hearing before this Court; and all papers and records in this matter.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 that took place on July 1, 2019.

Dated:  July 8, 2019                                   GAW | POE LLP

By:  _____
                                                      Mark Poe
                                                      Attorneys for Plaintiffs

PLAINTIFFS' POST-MANDATE MOTION FOR
ATTORNEYS' FEES AND EXPENSES
CASE NO. 8:14-CV-01664-JVS (DFMX)

# **TABLE OF CONTENTS**

PROCEDURAL BACKGROUND ...................................................................2

    A.   The Jury's Verdict and Result of the Post-trial Motions ..........................2

    B.   Trendsettah's Prior Motion for Attorneys' Fees ....................................2

    C.   The Appeal and Mandate ........................................................................3

ARGUMENT ..............................................................................................4

I.    the components of trendsettah's request. ...........................................4

    A.   Attorneys' Fees .....................................................................................4

    B.   Disbursements and Costs .......................................................................6

    C.   Postjudgment Interest ...........................................................................6

II.   TRENDSETTAH'S REQUESTED HOURS AND RATES ARE REASONABLE. ....................................................................................6

    A.   Trendsettah Is Entitled to Recover Its Attorney Fees Under the Fee-Shifting Provision of the PLAs, and Under the Clayton Act. ..................6

    B.   The Hours Trendsettah's Counsel Expended Are Reasonable. .................8

    C.   The Rates Claimed By Trendsettah's Counsel Are Also Reasonable. .....10

    D.   Trendsettah Is Entitled To At Least A 2.0 Multiplier Under Governing Florida Law. ......................................................................................13

III.  Trendsettah IS ENTITLED TO ALL OF ITS DISBURSEMENTS. ...............17

IV.  TRENDSETTAH IS ENTITLED TO POST-JUDGMENT INTEREST FROM THE DATE OF THE INITIAL JUDGMENT. ................................................18

CONCLUSION ..........................................................................................19

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Adams v. City of Rialto*,
　　Nos. EDCV 04-155-VAP (SGLx), EDCV 04-1032 VAP, 2006 WL
　　7090890 (C.D. Cal. July 20, 2006)..........................................................................8

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
　　836 F.3d 1171 (9th Cir. 2016)................................................................................2

*In re Am. Apparel, Inc. S'holder Litig.*,
　　No. CV10-06352 MMM, 2014 WL 10212865 (C.D. Cal. July 28,
　　2014).........................................................................................................................11

*Armstrong v. Davis*,
　　318 F.3d 965 (9th Cir. 2003)..................................................................................8

*Blum v. Stenson*,
　　465 U.S. 886 (1984).................................................................................................10

*Burlington v. Dague*,
　　505 U.S. 557 (1992)..................................................................................................8

*Charlebois v. Angels Baseball LP*,
　　993 F. Supp. 2d 1109 (C.D. Cal. 2012)...............................................................11

*Christiansburg Garment Co. v. E.E.O.C.*,
　　434 U.S. 412 (1978)...................................................................................................7

*ConsumerInfo.com, Inc. v. Money Mgmt Int'l, Inc.*,
　　No. CV 07-04275, 2009 WL 52163 (C.D. Cal. Jan. 8, 2009)...........................11

*Masimo Corp. v. Tyco Health Care Group, L.P.*,
　　No. CV 02-4770 MRP, 2007 WL 5279897 (C.D. Cal. Nov. 5,
　　2007).....................................................................................................................9, 10

*Medcom Holding Co. v. Baxter Travenol Laboratories*,
　　200 F.3d 518 (7th Cir. 1999)..................................................................................7

*Missouri v. Jenkins*,
　　491 U.S. 274 (1989)................................................................................................11

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) .......................................................................... 8, 9

*Rutti v. Lojack Corp.*,
    No. 06-cv-350-DOC-JCX, 2012 WL 3151077 (C.D. Cal. July 31, 2012) ............................................................................................................ 11

*Schwartz v. Sec'y of Health and Human Servs.*,
    73 F.3d 895 (9th Cir. 1995) ............................................................................... 11

*Stetson v. Grissom*,
    821 F.3d 1157 (9th Cir. 2016) ........................................................................... 11

*Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*,
    676 F.2d 1291 (9th Cir. 1982) ............................................................................. 8

**Other State Cases**

*Bell v. U.S.B. Acquisition Co.*,
    734 So. 2d 403 (Fla. 1999) ................................................................................ 13

*Cysco Enterprises, Inc. v. Hardeman Family Joint Venture, Ltd.*,
    2002 WL 31833724 (Tex. App. Dec. 19, 2002) ................................................... 7

*Florida Patient's Comp. Fund v. Rowe*,
    472 So.2d 1145 (Fla. 1985) ............................................................................... 14

*Joyce v. Federated Nat'l Ins. Co.*,
    228 So. 3d 1122 (Fla. 2017) ........................................................................*passim*

*Pappert v. Mobilinium Assocs. V.*,
    512 So. 2d 1096 (Fla. Dist. Ct. App. 1987) ...................................................... 17

*Standard Guar. Ins. Co. v. Quanstrom*,
    555 So.2d 828 (Fla. 1990) ................................................................................... 1

**Federal Statutes**

15 U.S.C. § 15(a) .................................................................................................. 1, 7

28 U.S.C.
    § 1961(a) .......................................................................................................... 6, 18
    § 1961(b) ........................................................................................................ 18, 19

PLAINTIFFS' POST-MANDATE MOTION FOR
ATTORNEYS' FEES AND EXPENSES
CASE NO. 8:14-CV-01664-JVS (DFMX)

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

After nearly five years of litigation, Plaintiffs Trendsettah USA, Inc. and Trend Settah, Inc. (together, "Trendsettah" or "Plaintiffs") have prevailed in this dispute, on every important issue.  Over those five years, Trendsettah's counsel has not received a penny of compensation for their efforts.  They are now entitled to collect their due, along with all disbursements and statutory costs they and their client made over the course of this litigation.  Trendsettah is also entitled to postjudgment interest on the April 14, 2016 judgment, which the Ninth Circuit confirmed was the correct one.

Trendsettah is entitled to recover attorneys' fees both under the terms of the Private Label Agreement—which Swisher drafted and both sides affirmatively agreed to—and under 15 U.S.C. § 15(a), even though the parties did not agree to it. Because Florida law governs the parties' agreed fee-shifting provision, Trendsettah is further entitled to a 2.0 multiplier of its fees for this contingency case (i.e., $11,125,134), even if in retrospect the Court determines that Trendsettah's "likelihood of success was approximately even at the outset." *Standard Guar. Ins. Co. v. Quanstrom*, 555 So.2d 828, 834 (Fla. 1990).  If the Court more accurately "determines that success was unlikely at the outset of the case," then Plaintiffs should receive up to a 2.5 multiplier (i.e., $13,906.417.50). *Id.*  Indeed, since the date of the Court's first ruling on Plaintiffs' entitlement to a multiplier, the Florida Supreme Court has endeavored to "make clear" that in fee-shifting contingency cases under Florida law, "there is not a 'rare' and 'exceptional' circumstances requirement before a contingency fee multiplier can be applied." *Joyce v. Federated Nat'l Ins. Co.*, 228 So. 3d 1122, 1125 (Fla. 2017).  Furthermore, the Court's articulated rationale for *not* granting Plaintiffs a multiplier in the last round—Plaintiffs' limited success—is no longer true.

At this juncture it is clear that Plaintiffs have achieved an unbridled success, against long odds, and extremely efficiently—probably more efficiently than any

-1-

successful antitrust case in history. It would be unjust to issue a fee award that fails to reflect and reward that success and efficiency.

<strong>PROCEDURAL BACKGROUND</strong>

### A. The Jury's Verdict and Result of the Post-trial Motions

Trendsettah won the jury's verdict on all claims that were tried, resulting in a judgment for $44,446,482.00, plus costs, fees, and postjudgment interest. (Judgment entered April 14, 2016 (ECF No. 216).) The Court subsequently granted in part Swisher's post-trial motion for judgment as a matter of law, holding that Swisher was entitled to a new trial on the antitrust claims due to a perceived error in the jury instructions. (Order entered August 17, 2016 (ECF No. 262).) Thereafter, in light of the Ninth Circuit's ruling in *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171 (9th Cir. 2016), the Court granted Swisher's motion for reconsideration of the prior summary judgment order, concluding that Swisher was entitled to judgment as a matter of law against Trendsettah's antitrust claims for both actual and attempted monopolization. (Order entered Nov. 9, 2016 (ECF No. 274).) The judgment against Plaintiffs' antitrust claims effectively resulted in a final judgment whereby Trendsettah had succeeded only on its two contractual causes of action, and failed on its two antitrust causes of action. (*Id.*)

### B. Trendsettah's Prior Motion for Attorneys' Fees

Having prevailed only on its contractual claims, Trendsettah filed a motion to recover its attorneys' fees, costs, and disbursements pursuant to the fee-shifting provision found in the two "Private Label Agreements" that had governed the parties' relationship. (Mot. for Attorneys' Fees (ECF No. 284).) The Court granted in part and denied in part that motion. (Amended Order entered Feb. 28, 2017 (hereafter "Fee Order") (ECF No. 341).) In that order, the Court held, *inter alia*, that:

(A) Trendsettah was not entitled to recover fees for the time devoted solely to antitrust issues;

(B) Trendsettah's claimed number of hours was otherwise reasonable;

(C) Counsel were not entitled to the $870/$670 hourly rate proposed by their expert witness, because they were not antitrust lawyers;

(D) Nor were counsel entitled to their expert's proposed alternative rate of $800/$600 which was for "*all commercial partners*" (emphasis in Fee Order);

(E) Counsel should instead receive the third-quartile rate for "litigation partners" and "associates," of $744/$510;

(F) Trendsettah was not entitled to a multiplier under Florida law because although five of the six factors for such an adjustment were present, Plaintiffs had fallen short on the sixth factor, the "results obtained";

(G) Trendsettah was entitled to recover its disbursements and costs, except for half of its expert witness's fee ($193,006.92), because Plaintifs were unsuccessful on their antitrust claims.

Accordingly, the Court approved a fee award covering 2,953.9 hours for Gaw | Poe's attorneys, plus 1,079.2 hours of contract-attorney time, for a total amount of $2,130,822.15.  (Fee Order at 18.)  The Court also awarded $447,723.08 for disbursements, and $938,744.63 in prejudgment interest.  (*Id.* at 20-21.)  The final result was thus a partial win of **$12,579,968.86**.

### C.   The Appeal and Mandate

Trendsettah appealed the judgment against its antitrust claims (ECF No. 346), and Swisher cross-appealed, contending that the contract verdict should be vacated as well.  (ECF No. 345).  To assist on the appeal, Trendsettah engaged the renowned Washington, D.C.-based firm of Goldstein & Russell to serve as co-counsel with Gaw | Poe.  (Poe Decl. ¶ 2.)  Two years later, the Ninth Circuit agreed with Trendsettah, finding that the jury *had* been properly instructed, and that the jury's verdict should be reinstated.  (*See* ECF No. 349 (Mem. Dispo.).)  The Panel also granted Trendsettah's request that this Court—rather than the appellate

PLAINTIFFS' POST-MANDATE MOTION FOR
ATTORNEYS' FEES AND EXPENSES
CASE NO. 8:14-CV-01664-JVS (DFMX)

commissioner—determine the appropriate amount of attorneys' fees on remand, based on the Court's long experience with Plaintiffs' counsel, and familiarity with the case. (*Id.* ¶ 3, Ex. 1.)

Swisher thereafter filed a petition for panel rehearing and rehearing *en banc*, which was denied on April 18, 2019, when none of the judges on the Circuit deemed the petition sufficiently meritorious to warrant review. (Poe Decl. ¶ 4.) Swisher was not finished though. Professing its intention to petition for *certiorari*, Swisher filed a motion to stay issuance of the Ninth Circuit's mandate, which the court granted the next day, prior to hearing from Trendsettah. (*Id.* ¶ 5.) Trendsettah then filed its own motion for *issuance* of the mandate, explaining that Swisher's avowed *certiorari* petition neither presented a substantial question for the high Court's review, nor was supported by good cause for stay of enforcement. (*Id.* ¶ 6.) On June 24, 2019, the Panel agreed, ordering issuance of the mandate, which the clerk issued the same day. (ECF No. 353.)

## ARGUMENT

To facilitate the Court's review, Trendsettah first sets out each of the components of its request in this motion, then separately sets forth the legal justification for each.

## I.   THE COMPONENTS OF TRENDSETTAH'S REQUEST.

### A.   Attorneys' Fees

Trendsettah is entitled to a basic lodestar of $5,562,567.00 in fees, for the work of both Gaw | Poe LLP and Goldstein & Russell, and for the contract attorneys who were necessarily engaged to digest the over 700,000 pages of documents produced by the litigants in this case. Trendsettah's counsel are entitled to recover at the *current* hourly rates for attorneys of their experience, background, and skill. The claimed hours and rates for each attorney are set forth below. An analysis of those hours and rates, and an explanation of their reasonableness, is set forth in paragraphs 18-102 of the supporting expert declaration of Gerald Knapton, a partner

PLAINTIFFS' POST-MANDATE MOTION FOR
ATTORNEYS' FEES AND EXPENSES
CASE NO. 8:14-CV-01664-JVS (DFMX)

in the Los Angeles office of Ropers, Majeski, Kohn & Bentley, who has 27 years' experience in analyzing and opining on the reasonableness of attorney fee claims, including having been qualified as a testifying expert on fees in more than 50 matters.  (*See* Decl. of Gerald Knapton ¶¶ 18-102.)

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Gaw \| Poe LLP | | | |
| Mark Poe | 2,044.0 | $1,000 | $2,044,000.00 |
| Randolph Gaw | 981.8 | $1,000 | $981,800.00 |
| Victor Meng | 1,483.3 | $855 | $1,140,124.50 |
| Samuel Song | 733.6 | $855 | $571,366.00 |
| Flora Vigo | 40.1 | $855 | $34,285.50 |
| Goldstein & Russell, P.C. | | | |
| Eric Citron | 332.3 | $1,000 | $ 332,300.00 |
| Charles Davis | 199.25 | $600 | $119,550.00 |
| Kevin Russsell | 5.5 | $1,000 | $5,500.00 |
| Erica Evans | 22.3 | $350 | $7,805.00 |
| Contract Attorneys | | | |
| Combined | | $243-315 | $325,836.00 |
| **Totals** | | | $5,562,567.00[1] |

As previewed, Trendsettah is entitled to at least a **2.0** multiplier of this amount (i.e., $11,125,134), given that the success it acheived was "unlikely at the outset of the case," or at best "approximately even," and given that Trendsettah has now established *all six* factors entitling it to a multiplier under governing Florida law. *See* (Fee Order at 19); *Joyce v. Federated Nat'l Ins. Co.*, 228 So. 3d 1122 (Fla. 2017).

---

[1] With its reply brief, Trendsettah will supplement this total with a declaration setting forth the additional fees that were expended in preparing and briefing this motion and supporting papers, which were not available to Mr. Knapton when he conducted his analysis.

PLAINTIFFS' POST-MANDATE MOTION FOR
ATTORNEYS' FEES AND EXPENSES
CASE NO. 8:14-CV-01664-JVS (DFMX)

### B. Disbursements and Costs

Trendsettah is entitled under the Private Label Agreements to recover all of its "disbursements" in this action.  (*See* Poe Decl. ¶¶ 8-9, Ex. 2 at 10; 3 at 11.)  The disbursements total $649,538.34.  (*See* Poe Decl. ¶ 10, Ex. 4.)  The $25,780.45 in recoverable statutory costs that Trendsettah incurred have already been taxed by the clerk (ECF No. 347), but the Ninth Circuit ordered an additional $556.10 in costs on the appeal, which Trendsettah will separately claim in its proposed judgment following resolution of this motion.

### C. Postjudgment Interest

Trendsettah is entitled to postjudgment interest from the date of the original judgment until the date that Swisher satisfies the final judgment.  That rate is 0.55%, based on the weekly yield of the 1-year Constant Maturity Treasury bond for the week ending April 8, 2016.  28 U.S.C. § 1961(a) (specifying the rate), 1961(b) (specifying that interest is "computed daily to the date of payment").  As noted, the April 14 judgment was for $44,446,482.  Accordingly, the daily interest amounts to $669.74.[2]  With 1,209 days between the date of the initial (and correct) judgment and the date of the noticed hearing, Trendsettah is entitled to **$809,715.66** in post-judgment interest[3], with an additional $669.74 to accrue each day until the judgment is fully satisfied.

## II. TRENDSETTAH'S REQUESTED HOURS AND RATES ARE REASONABLE.

### A. Trendsettah Is Entitled to Recover Its Attorney Fees Under the Fee-Shifting Provision of the PLAs, and Under the Clayton Act.

When Swisher drafted the two PLAs that created and governed the relationship between these parties, it included a term titled "Attorneys' Fees."  (Poe Decl. ¶¶ 8-9, Ex. 2 at 10; 3 at 11.)  Under that term, the parties specifically agreed that they would "expeditiously reimburse" the other in "any action" in which one of

---

[2] ($44,446,482 x .0055) / 365.
[3] $669.74 x 1,209

PLAINTIFFS' POST-MANDATE MOTION FOR
ATTORNEYS' FEES AND EXPENSES
CASE NO. 8:14-CV-01664-JVS (DFMX)

1  them was "judicially determined" to be in "default in performance or observance of

2  any covenant herein," and that the prevailing party was entitled to recover the fees it

3  incurred "in pursuit of such judicial determination." *Id.*  In total, that provision

4  reads:

> 16.3  <u>Attorneys' Fees</u>.  In the event that either party shall bring any
> action upon any default in performance or observance of any covenant
> herein, the party judicially determined to be in such default shall
> indemnify the other against, or shall expeditiously reimburse such other
> party for, <u>*reasonable attorney's fees (including disbursements*</u>)
> incurred in pursuit of such judicial determination…

9  (Poe Declaration ¶¶  8-9, Ex. 2 at 10, Ex. 3 at 11 (emphasis added).)  As set forth

10  above, Trendsettah incurred $5,562,567.00 in fees in pursuit of precisely that

11  judicial determination, which is now the mandate of the Ninth Circuit.

12      Trendsettah is alternatively entitled to fees under Section 4 of the Clayton

13  Act, 15 U.S.C. § 15(a).  This section makes "fee awards mandatory for prevailing

14  plaintiffs."  *See Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 415 & n.5

15  (1978).

16      As between the two, the PLAs' fee-shifting provision has priority, because the

17  parties specifically *agreed* to it.  *See*, *e.g.*, *Medcom Holding Co. v. Baxter Travenol

18  Laboratories*, 200 F.3d 518, 520 (7th Cir. 1999) (noting that the scope of

19  recoverable fees pursuant to the parties' contract "covers more than what state

20  [statutory fee-shifting] law provides when the parties have not reached an

21  agreement."); *Cysco Enterprises, Inc. v. Hardeman Family Joint Venture, Ltd.*, 2002

22  WL 31833724, at *5 (Tex. App. Dec. 19, 2002) ("Parties are free to adopt a more

23  liberal (or more strict) standard for recovery of attorney's fees in their contract than

24  the statute provides, and the appellate court is bound by their choice.").

25      The long and the short of it is that Swisher specifically said that it would

26  "expeditiously reimburse" Trendsettah for fees it "incurred" in "any action" alleging

27  a default in performance.  (Poe Decl. ¶¶ 8-9, Ex. 2 at 10, Ex. 3 at 11.)  This is

28  precisely such an action, and Swisher will find no authority to support the notion

PLAINTIFFS' POST-MANDATE MOTION FOR
ATTORNEYS' FEES AND EXPENSES
CASE NO. 8:14-CV-01664-JVS (DFMX)

that as between two alternative bases for fee-shifting, the losing party is entitled to choose the one that minimizes its exposure.  As explained in *Joyce*, the Florida Supreme Court has thoroughly considered and rejected the rationale by which federal courts have trended away from allowing mulitipliers in contingency cases. 228 So. 3d at 1132 ("[W]ith all due deference to the United States Supreme Court, we do not accept the *Dague* majority's rationale for rejecting contingency fee multipliers.") (referencing *Burlington v. Dague*, 505 U.S. 557 (1992) (Scalia, J.).)

## B.   The Hours Trendsettah's Counsel Expended Are Reasonable.

A "district court must base its determination whether to award fees for counsel's work on its judgment as to whether 'the work product … was both useful and of a type ordinarily necessary to advance the … litigation.'" *Armstrong v. Davis,* 318 F.3d 965, 971 (9th Cir. 2003) (*quoting Webb. v. Bd. of Educ.,* 471 U.S. 234, 243 (1985)).  A fee award "should cover 'every item of service which, at the time rendered, would have been undertaken by a reasonably prudent lawyer to advance or protect his client's interest' in the case at bar.'" *Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*, 676 F.2d 1291, 1313 (9th Cir. 1982).

"In determining a reasonable number of hours, the Court must examine detailed time records to determine whether the hours claimed are adequately documented and whether any of them are unnecessary, duplicative or excessive." *Adams v. City of Rialto,* Nos. EDCV 04-155-VAP (SGLx), EDCV 04-1032 VAP, 2006 WL 7090890, at *9 (C.D. Cal. July 20, 2006).  Some duplication is necessary as "it is inherent in the process of litigating over time" and "cannot be a legitimate basis for a fee reduction." *Moreno v. City of Sacramento,* 534 F.3d 1106, 1112-13 (9th Cir. 2008).  "It is only where the lawyer does *unnecessarily* duplicative work that the court may legitimately cut the hours." *Id.* at 1113.

Courts "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Id.* at 1112.  As the Ninth Circuit recognizes:  "[L]awyers are not likely to spend unnecessary time on contingency fee

1  cases in the hope of inflating their fees.  The payoff is too uncertain, as to both the

2  result and the amount of the fee."  *Moreno,* 534 F.3d at 1112.

3        Trendsettah does not anticipate that Swisher will dispute the reasonableness

4  of the hours that Gaw | Poe and Goldstein & Russell expended on this case.  (Poe

5  Decl. ¶ 11.)  Such criticism would be particularly unavailing given that in the same

6  matter Swisher determined that it was necessary to engage two prominent national

7  law firms to litigate the same issues.  Those firms appear to have staffed dozens of

8  lawyers to the same matter that was staffed by just six primary attorneys from

9  Plaintiffs' side.[4]

10        An itemization and categorization of the tasks performed in the pretrial and

11  trial phase by the four attorneys from Gaw | Poe, and of the tasks performed by both

12  Gaw | Poe and Goldstein & Russell in the appellate phase is set forth in paragraphs

13  42-66 of the Knapton Declaration.  If the Court is interested to review individual

14  time entries, those are submitted as well, as Exhibits 6 and 7 to the Poe Declaration

15  and Exhibit D to the Citron Declaration.

16        Suffice it to say, the 6,926.35 hours billed by Trendsettah's counsel over the

17  five years of this litigation—from the drafting of the complaint to obtaining the

18  Ninth Circuit's mandate—is a small fraction of the hours that have been billed in

19  any comparable antitrust case.  Perhaps the closest comparator is *Masimo Corp. v.*

20  *Tyco Health Care Group, L.P.*, No. CV 02-4770 MRP (AJWx), 2007 WL 5279897,

21  at *7 (C.D. Cal. Nov. 5, 2007).  There, a jury returned a Sherman Act verdict in the

22  plaintiff's favor, yielding a $43.5 million judgment after trebling.  *Id.* at *1.  While

23  roughly the same as the result obtained by Trendsettah's counsel, Masimo's legal

24  team expended "approximately 23,000 hours of work" on the case, just to get

25  through the trial.  *Id.* at *3.  After excluding modest amounts for "efforts ancillary to

26

27  _____

[4] Of course Plaintiffs do not know precisely how many lawyers from Akerman and Gibson Dunn
28  have worked on this matter behind the scenes, but at least 17 attorneys from those firms have been
directly involved in email exchanges among counsel.  (Poe Decl. ¶ 15)

PLAINTIFFS' POST-MANDATE MOTION FOR
ATTORNEYS' FEES AND EXPENSES
CASE NO. 8:14-CV-01664-JVS (DFMX)

the litigation," "excessive mock trial and summary judgment exercises," and the attendance at trial of a superfluous attorney, the Court held that the number of hours was reasonable. *Id.* at *6.

Other examples of the time required to obtain a successful verdict in a Sherman Act case include:

- *Red Lion Med. Safety, Inc. v. General Elec. Co.*, No. 15-cv-308-RWS (E.D. Tex. 2017):  Plaintiffs' counsel claimed 11,863 hours to achieve the verdict in a Section 2 claim against General Electric.  (Poe Decl. ¶ 16, Ex. 8.)

- *Shuffle Tech. Int'l v. Scientific Games Corp.*, No. 15-cv-3702 (N.D. Ill. 2018):  Of two firms that represented the plaintiff in a successful Section 2 claim, the lead firm recorded 19,759 hours.  (Poe Decl. ¶ 17, Ex. 9.)

- *US Airways Inc. v. Sabre Holdings Corp.*, No. 11-cv-2725-LGS (S.D.N.Y. 2017):  To recover a $15 million Sherman Act verdict, O'Melveney & Myers reported that it had billed "more than **130,000** hours . . . to develop facts and craft arguments to successfully prosecute this case."  (Poe Decl. ¶ 18, Ex. 10 at 4 (emphasis added).) The firm accordingly requested a "reasonable" fee award of more than $122,000,000.  (*Id.* at 2.)

In sum, there can be no serious dispute that the number of hours claimed by Trendsettah is reasonable.

**C.   The Rates Claimed By Trendsettah's Counsel Are Also Reasonable.**

As explained in the accompanying expert analysis of Mr. Gerald Knapton, the hourly rates set forth for Trendsettah's counsel in Section I.A. above are consistent with prevailing market rates for similar-caliber litigators in the Central District of California.  (*See* Knapton Decl. ¶¶ 67-102.)  To determine a reasonable hourly rate, courts consider whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984).

1  The relevant community is the forum in which the district court sits.  *Schwartz v.*

2  *Sec'y of Health and Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).

3        In determining whether the requested rates are reasonable, courts may rely on

4  declarations from counsel, rates found reasonable in comparable cases, and its own

5  knowledge of hourly rates in the forum.  *ConsumerInfo.com, Inc. v. Money Mgmt*

6  *Int'l, Inc.*, No. CV 07-04275 SJO(Ex), 2009 WL 52163, at *7 (C.D. Cal. Jan. 8,

7  2009) (vacated on other grounds).  Courts may also rely on survey data.  *In re Am.*

8  *Apparel, Inc. S'holder Litig.*, No. CV10-06352 MMM (JCGx), 2014 WL 10212865,

9  at *24 (C.D. Cal. July 28, 2014).

10        Importantly to this posture—where the attorneys will not recover their fees

11  until many years after they were incurred—the Court is to award fees based on the

12  *current* prevailing rates, for attorneys with the experience that the prevailing counsel

13  *currently* possess.  *See*, *e.g.*, *Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d

14  1109, 1119 n.6 (C.D. Cal. 2012) (observing that "for the fee award to be reasonable,

15  it must be based on current, rather than historic, hourly rates.") (citing *Missouri v.*

16  *Jenkins*, 491 U.S. 274, 284 (1989) and collecting authority).  As the Supreme Court

17  observed in *Missouri v. Jenkins*, "[c]learly, compensation received several years

18  after the services were rendered—as it frequently is in complex civil rights

19  litigation—is not equivalent to the same dollar amount received reasonably promptly

20  as the legal services are performed, as would normally be the case with private

21  billings."  491 U.S. at 284; *see also Rutti v. Lojack Corp.*, No. 06-cv-350-DOC-JCX,

22  2012 WL 3151077, at *11 (C.D. Cal. July 31, 2012) ("it is well-established that

23  counsel is entitled to current, not historic, hourly rates.")  Indeed, the Ninth Circuit

24  holds that it is an abuse of discretion not to either (A) use current rates, or (B) apply

25  a "prime-rate enhancement" to historical fees.  *Stetson v. Grissom*, 821 F.3d 1157,

26  1166 (9th Cir. 2016).

27        The rates claimed in this fee motion are consistent with those that are *actually*

28  *paid* by consumers of legal services provided by antitrust and complex civil

PLAINTIFFS' POST-MANDATE MOTION FOR
ATTORNEYS' FEES AND EXPENSES
CASE NO. 8:14-CV-01664-JVS (DFMX)

1   litigators in the Central District.  (Knapton Decl.  ¶¶ 82-89, Ex. 7 at 71, Ex. 8 at 1.)

2   Mr. Knapton has developed his opinion as to the reasonable rates for Trendsettah's

3   counsel based on multiple sources, including the "2018 Real Rate Report," which

4   identifies attorney rates by location, experience, firm size, areas of expertise, and

5   industry, as well as specific practice areas, and is based on actual legal billing,

6   matter information, and paid invoices from more than 80 companies, as well as the

7   Thompson-Reuters "Legal Billing Reports," which are compiled from fee

8   reimbursement submissions under penalty of perjury in Chapter 11 bankruptcy

9   matters in federal court.  (*Id.* ¶¶ 79-82, 88-89.)

10          In adjudicating the prior fees motion, the Court agreed that Trendsettah's

11   counsel were entitled to rates in the "third quartile" of their peers who practice at

12   large firms in Los Angeles, but declined to award rates charged by either antitrust

13   lawyers or "all commercial partners," instead lumping counsel in with standard

14   "litigation" partners.  (Fee Order at 15-16.)  In declining to award the antitrust rate,

15   the Court cited the absence of "antitrust experience" claimed on the profile pages of

16   Gaw | Poe's attorneys.  (*Id.*)

17          Counsel's failure to tout their antitrust experience is merely a failure of

18   marketing, not experience, and court records speak for themselves.  Over the last

19   five years, in addition to this case, Gaw | Poe has served as lead Plaintiffs' counsel

20   in the following antitrust actions:  *ABC Distributing v. Living Essentials*, 15-cv-

21   2064-NC (N.D. Cal.); *U.S. Wholesale v. Living Essentials*, 18-cv-1077-CBM (C.D.

22   Cal.); *ABC Distributing v. Scandinavian Tobacco Gr.*, 18-cv-00140-PA (C.D. Cal.);

23   *LA International v. Prestige Brands Holdings, Inc.*, 18-cv-06809-MWF (C.D. Cal.);

24   and *Trepco Imports v. Arizona Beverages USA, LLC*, 18-cv-2605-JGB (C.D. Cal.).

25   Accepting the maxim that one must practice a thing for 10,000 hours to become an

26   expert at it, Plaintiffs have billed more than 13,500 hours on these antitrust matters.

27   (Poe Decl. ¶ 19.)

28

- 12 -

### D.   Trendsettah Is Entitled To At Least A 2.0 Multiplier Under Governing Florida Law.

For decades, the Florida Supreme Court has held that in contingency cases where "a contract provides the basis for the court-awarded fee," a court may apply a "contingency risk multiplier" or otherwise "award a greater fee based on the contingent nature of the fee agreement." *Bell v. U.S.B. Acquisition Co.*, 734 So. 2d 403, 411-12 (Fla. 1999). As noted, since the time of the Court's last ruling on this issue, the Florida Supreme Court confirmed that it is reversible error for a trial court to confine the contingency risk multiplier to "'rare' and 'exceptional' circumstances," as some courts had been in the habit of doing. *Joyce*, 228 So. 3d at 1123. As the Court had previously explained:

> [T]he primary policy that favors the consideration of the multiplier is that it assists parties with legitimate causes of action . . . in obtaining competent legal representation even if they are unable to pay an attorney on an hourly basis. In this way, the availability of the multiplier levels the playing field between parties with unequal abilities to secure legal representation."

*Bell*, 734 So. 2d at 411.

The virtues of this "primary policy" in favor of a multiplier are on full display here. Trendsettah had continuously been unable to secure representation until it found the undersigned,[5] and even then faced an opponent with virtually unlimited resources, who in succession retained the largest firm in Florida, and then one of the largest in California, to fight off Trendsettah's "legitimate causes of action." *Id.*

In *Joyce*, the Florida Supeme Court reiterated the factors "for determining whether a contingency fee multiplier is warranted" in the context of a contractual fee-shifting provision, listing them as:

(1) whether the relevant market requires a contingency fee multiplier

---

[5] *See* Decl. of Tatum Hilmoe ¶¶ 2-6; Decl. of Ramzy Rahib ¶¶ 2-6.

PLAINTIFFS' POST-MANDATE MOTION FOR ATTORNEYS' FEES AND EXPENSES
CASE NO. 8:14-CV-01664-JVS (DFMX)

1    to obtain competent counsel; (2) whether the attorney was able to

2    mitigate the risk of nonpayment in any way; and (3) whether any of

3    the factors set forth in *Rowe* are applicable, especially the amount

4    involved, the results obtained, and the type of fee arrangement

5    between the attorney and his client.

6  228 So. 3d at 1124 (referring to *Florida Patient's Comp. Fund v. Rowe*, 472 So.2d

7  1145 (Fla. 1985).)

8         Where those factors weigh in the prevailing plaintiff's favor, *Joyce* further

9  recited the framework by which a trial court should select an appropriate multiplier:

10    If the trial court determines that success was more likely than not at

11    the outset, it may apply a multiplier of 1 to 1.5; if the trial court

12    determines that the likelihood of success was approximately even at

13    the outset, the trial judge may apply a multiplier of 1.5 to 2.0; and if

14    the trial court determines that success was unlikely at the outset of the

15    case, it may apply a multiplier of 2.0 to 2.5.

16  *Id.* at 1125.

17         In its order on Trendsettah's prior motion, the Court analyzed the several

18  factors "for determining whether a contingency fee multiplier is warranted," *id.* at

19  1124, and found that they were all satisfied except for the "results obtained" factor.

20  (Fee Order at 19.)  The Court found this factor lacking based on its award of

21  summary judgment against the three business-tort causes of action that had been

22  pled in the complaint, and because "the Court overturned [Trendsettah's] antitrust

23  verdict," thereby drastically reducing the *results* Trendsettah obtained in the case,

24  *i.e.*, its damages.  (*Id.* (further observing that the antitrust claims "occupied a

25  significant amount of the case.").)

26         Of course this assessment of the "results obtained" is no longer apt.  The

27  Ninth Circuit concluded that the jury *had* been properly instructed, even if (contrary

28  to fact) Swisher had ever litigated the matter under its newfound "refusal to deal"

PLAINTIFFS' POST-MANDATE MOTION FOR
ATTORNEYS' FEES AND EXPENSES
CASE NO. 8:14-CV-01664-JVS (DFMX)

1    theory of the case.  (*See* Mem. Dispo. at 4 (ECF No. 349).)  The Ninth Circuit

2    further held that there was no "mismatch" between Plaintiffs' damages argument

3    and Swisher's liability for actual monopoly, because the jury was free to pair (A)

4    Swisher's theory of the scope of the relevant market, with (B) Trendsettah's theory

5    of national damages.  (*Id.* at 5.)  Finally, the Ninth Circuit *affirmed* this Court's

6    rejection of Swisher's JMOL arguments that Trendsettah (1) could not prove

7    attempted monopoly, and (2) had failed to prove antitrust injury.  (*Id.* at 5-6.)  In

8    short, the "results obtained" by Trendsettah are an unmitigated success, now that the

9    dust has settled.

10        That leaves only the Court's prior observation that the results obtained by

11   Trendsettah were limited due to the fact that the Court granted summary judgment

12   against the trade libel, tortious interference with contract, and intentional

13   interference with prospective economic relations claims.  (Fee Order at 19.)

14   Respectfully, the Court did not cite any authority for the notion that the elimination

15   of those causes of action had any impact on the actual or potential "results" of the

16   case, or that a multiplier is reserved for those rare and exceptional cases in which the

17   plaintiff wins on literally every cause of action it pled.  The fact of the matter is that

18   those three business torts were an afterthought once Trendsettah's antitrust claims

19   survived Swisher's pleadings motion.  (ECF No. 40.)  Reviewing the docket and

20   counsel's time records, the Court will see that those claims are scarcely mentioned

21   *anywhere* except in the summary judgment papers, where they took up just two

22   pages of Swisher's 25-page summary judgment brief, (ECF No. 67-1 at 22-24), and

23   warranted only one page of protest in Trendsettah's 23-page opposition brief.  (ECF

24   No. 80 at 21-22.)

25        Of course the reason so little ink or effort was spilled on those claims is that

26   they were insignificant to the potential "results [to be] obtained."  Indeed, those

27   claims were so inconsequential to the dispute that Plaintiffs did not even bother

28   asking their expert to opine on either liability or an amount of associated damages

- 15 -

for them.  (*See* Declaration of DeForest McDuff ¶ 6 (describing the scope of his engagement and the opinions he intended to offer) (ECF No. 84).)

Consideration of the "results obtained" means just that:  *results*.  In a case where prospective injunctive relief is not at issue, the only meaningful result from a Plaintiffs' perspective is the amount of money it is awarded when the jury comes back.  No one in his right mind would reason that the "results" for Trendsettah would have been better if it had won all seven causes of action it pled, but received a judgment for only the $200,000 that Swisher held out as the top-line damages. Equally, no one could rationally contend that Trendsettah would have achieved a poor result if it had lost *every* claim except attempted monopoly, but still won a $44,000,000 judgment.

This pragmatic assessment of "results" is the approach followed by Florida courts.  In *Peterson v. Hecht Consulting Corp.*, for example, the appellate court held that a fee award should be reduced under the "results obtained" factor where the prevailing party lost "its most lucrative count" at summary judgment, but charged ahead with devoting "an exorbitant amount of time" to its remaining contract claim, ultimately recovering just $3,000, which was "less than amounts offered by Appellants at the onset of the litigation."[6]  226 So. 3d 999, 1001-02 (Fla. Dist. Ct. App. 2017).  Similarly, in *Eckhardt v. 424 Hintze Mgmt., L.L.C.*, the court held that the poor "results obtained" were a basis for reduction where the plaintiff recovered only $4,250 on a total of less than $18,000 in controversy.  969 So.2d 1219, 1222 (Fla. Dist. Ct. App. 2007).

The same rationale is followed in determining appropriate fee awards in federal cases—it is the degree of "relief" that matters, not the number of causes of action won or lost.  In *Hensley v. Eckerhart*, for example, the Supreme Court

---

[6] On this point, the Court may recall Swisher's rejection of Plaintiffs' proposal for a settlement conference following denial of its summary judgment motion, instead professing its preference for trial.  (Poe Decl. ¶ 20, Ex. 11 (Tr. of Summ. J. Hr'g. at 31:19-32:11).)

PLAINTIFFS' POST-MANDATE MOTION FOR ATTORNEYS' FEES AND EXPENSES CASE NO. 8:14-CV-01664-JVS (DFMX)

observed that "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised," and emphasized that "[a]gain, the most critical factor is the degree of success obtained." 461 U.S. 424, 440, 436 (1983); *see also Pappert v. Mobilinium Assocs. V.*, 512 So. 2d 1096, 1098-99 (Fla. Dist. Ct. App. 1987) (quoting *Hensley* and observing: "We fail to see any significance in the fact that the Chapter 723 violations were alleged in different counts.").

Given that *all* of the factors identified in *Joyce* weigh in Trendsettah's favor, the next step is to determine the appropriate multiplier, which requires the Court to reflect back on its assessment of Trendsettah's prospects at the "outset of the case." 228 So. 3d at 1124-25.  According to an Antitrust Litigation Report published in April 2019, of the 182 cases with antitrust claims (excluding ones brought by the Department of Justice or the Federal Trade Commission) that did not settle between 2016 and 2018, defendants won 91.7% of them by summary judgment or judgment on the pleadings.  (Poe Decl. ¶ 21, Ex. 12 at 22-23.)  Given the difficulty of prevailing on Section 2 claims in general, let alone a Section 2 claim against the world's largest cigar maker, represented by a 600-person national powerhouse, Plaintiffs presume that the Court's first impression was not that "success was more likely than not." *Id.* at 1125.  No one would have thought that, including Swisher and its lawyers.  The truth is that success—particularly the smashing success that has now been achieved—was distinctly *unlikely* at that point, which the controlling precedent says would suggest "a multiplier of 2.0 to 2.5." *Id.*  Loathe to sell themselves short even with an eye to their prospects back in those early days, Plaintiffs would welcome even the low end of that range.

## III. TRENDSETTAH IS ENTITLED TO ALL OF ITS DISBURSEMENTS.

As the Court recognized in its prior order, the PLAs further entitle Trendsettah to recover all of its "disbursements." (Fee Order at 20.)  The Court

reviewed Trendsettah's itemized disbursements and "[did] not identify any unreasonable expenses." (*Id.*)  The Court nevertheless halved the disbursements that Trendsettah made to its expert witness, on the ground that because it lost the antitrust claims, "Trendsettah cannot recover fees for [Dr. McDuff's] antitrust work." (Id.)  Now that that predicate no longer holds, Trendsettah is entitled to the entirety of its disbursements.

The disbursements (including additional minimal expenses incurred for the appeal, and in support of this motion) are itemized at Exhibit 4 to the Poe Declaration.  The new tally is $649,538.34.

## IV.   TRENDSETTAH IS ENTITLED TO POST-JUDGMENT INTEREST FROM THE DATE OF THE INITIAL JUDGMENT.

Trendsettah is entitled to post-judgment interest at the rate specified in 28 U.S.C. § 1961(a), which here is a meager 0.55%.  As calculated *supra* at 2, that amount is $669.74 per day, or **$809,715.66** between the date of the April 14, 2016 judgment and the date of the noticed hearing.  On the assumption that Swisher declines to pay its debt on that day, its balance will grow by an additional $669.74 per day until the judgment is fully satisfied.  28 U.S.C. § 1961(b).

Anticipating that Swisher will argue that Trendsettah is not entitled to post-judgment interest because the April 14 Judgment was superseded by the December 14, 2016 Amended Judgment (ECF No. 296), the Ninth Circuit has already considered and rejected that argument.  In *AT&T v. United Computer Systems*, it held as follows:

> Where a prior judgment awarding damages has been vacated pursuant to the actions of an ultimately losing party, equitable principles favor calculating the interest in a manner that more fully compensates the prevailing party.  Any other result would penalize the prevailing party, and in certain circumstances might also encourage losing parties to

1    instigate postjudgment litigation so they can reap the benefits of a low

2    interest rate.

3    98 F.3d 1206, 1211 (9th Cir. 1996).  If there is any circumstance in which a losing

4    party would be encouraged to "instigate postjudgment litigation so they can reap the

5    benefits of a low interest rate," *id.*, it is the one here, where Swisher has essentially

6    been in possession of a $44 million free-money loan from Trendsettah for over three

7    years.  For Swisher to suggest that the interest on that loan should be reduced from a

8    measly 0.55% to a flat 0.0% would be contrary to the equitable principles

9    announced by the Ninth Circuit in *AT&T*.

10                              **CONCLUSION**

11       For the foregoing reasons, Trendsettah respectfully requests that the Court

12   award: (1) attorney's fees in the amount of $11,125,134.00, (2) reimbursement of

13   $649,538.34 in expenses, and (3) $809,715.66 in postjudgment interest, with an

14   additional $669.74 to be added to its tab each day until it satisfies the judgment.

15

16   Dated:  July 8, 2019                    GAW | POE LLP

17

18                                   By:  _____

19                                        Mark Poe
                                         Attorneys for Plaintiffs
20                                       Trendsettah USA, Inc. and Trend
                                         Settah, Inc.

21

22

23

24

25

26

27

28