THEODORE J. BOUTROUS JR.
  SBN 132099
  tboutrous@gibsondunn.com
DANIEL G. SWANSON
  SBN 116556
  dswanson@gibsondunn.com
MINAE YU
  SBN 268814
  myu@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

CYNTHIA E. RICHMAN
(admitted *pro hac vice*)
  crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
Telephone:  202.955.8234
Facsimile:  202.530.9691

JULIAN W. KLEINBRODT
  SBN 302085
  jkleinbrodt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission St., Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

JOSHUA R. MANDELL,
  SBN 225269
  joshua.mandell@akerman.com
AKERMAN LLP
725 South Figueroa Street, 38th Floor
Los Angeles, CA  90017-5438
Telephone:  213.688.9500
Facsimile:  213.627.6342

MICHAEL C. MARSH
(admitted *pro hac vice*)
  michael.marsh@akerman.com
RYAN ROMAN
(admitted *pro hac vice*)
  ryan.roman@akerman.com
AKERMAN LLP
One Southeast Third Avenue, 25th Floor
Miami, FL  33131
Telephone:  305.374.5600
Facsimile:  305.374.5095

*Attorneys for Swisher International, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRENDSETTAH USA, INC. and TRENDSETTAH, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SWISHER INTERNATIONAL, INC., <br><br> Defendant. | CASE NO. 8:14-cv-01664-JVS-DFM <br><br> **DEFENDANT'S NOTICE OF MOTION AND MOTION FOR (1) RELIEF FROM JUDGMENT PURSUANT TO RULE 60 OR (2) ORDER FOR EXPEDITED DISCOVERY** <br><br> [Memorandum of Points and Authorities; Declarations of Minae Yu, Ryan Roman and Alan Cox; [Proposed] Order Filed Concurrently] <br><br> **Hearing**: <br> Date:  August 19, 2019 <br> Time:  1:30 pm <br> Place:  Courtroom 10C, Santa Ana <br> Judge:  Honorable James V. Selna |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................. 1

II.   BACKGROUND .................................................................................. 3

      A.   TSI, Through Mr. Alrahib, Fraudulently Avoided Federal Excise
           Taxes ......................................................................................... 3

      B.   TSI Prevented Swisher From Uncovering the Fraud Earlier .................... 6

           1.   TSI Misrepresented Its Federal Excise Tax Payments and
                Financial Records ................................................................. 6

           2.   TSI's Expert Reports Misrepresented Its Claimed Injury
                and Damages ...................................................................... 9

      C.   TSI Misled the Court .................................................................. 10

      D.   TSI's Misconduct Infected The Entire Trial .................................... 11

III.  ARGUMENTS ................................................................................. 13

      A.   Swisher Should Be Relieved From Judgment for TSI's Fraud Upon
           the Court .................................................................................. 13

           1.   TSI's Misconduct Prevented The Usual Functioning Of
                The Judicial Process ........................................................... 14

           2.   TSI's Misconduct Was Critical to the Outcome of the
                Case ................................................................................. 17

      B.   Swisher Should Be Relieved From Judgment Under Rule 60(b)(2)
           Based On Newly Discovered Evidence ........................................... 20

      C.   Swisher Should Be Relieved From Judgment Under Rule 60(b)(3)
           Based on TSI's Fraud, Misrepresentation, and Misconduct .................. 21

      D.   Swisher Should Be Permitted to Amend this Motion with
           Additional Information Adduced in Discovery ................................. 23

      E.   Swisher's Motion is Timely .......................................................... 23

IV.   CONCLUSION ................................................................................. 25

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Cryovac, Inc.*,
  862 F.2d 910 (1st Cir. 1988)................................................................21, 22

*Aoude v. Mobil Oil Corp.*,
  892 F.2d 1115 (1st Cir. 1989)..............................................................16, 17

*In re B.J. McAdams, Inc.*,
  999 F.2d 1221 (8th Cir. 1993) ....................................................................3

*Bros Incorporated v. W.E. Grace Mfg. Co.*,
  351 F.2d 208 (5th Cir. 1965) .....................................................................21

*In re ChinaCast Educ. Corp. Sec. Litig.*,
  809 F.3d 471 (9th Cir. 2015) .....................................................................22

*City of Oakland v. The Oakland Raiders*,
  Case No. 3:18-cv-07444, Dkt. 55 (N.D. Cal. July 12, 2019) .....................2

*Eastman Kodak Co. of New York v. S. Photo Materials Co.*,
  273 U.S. 359, 47 S. Ct. 400, 71 L. Ed. 684 (1927) ..................................18

*Eppes v. Snowden*,
  656 F. Supp. 1267 (E.D. Ky. 1986)........................................................16, 17

*Feature Realty, Inc. v. City of Spokane*,
  331 F.3d 1082 (9th Cir. 2003) ...................................................................20

*Flextronics Int'l, USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd.*,
  230 F. Supp. 3d 896 (N.D. Ill. 2017).........................................................15

*Gould v. Mut. Life Ins. Co. of New York*,
  790 F.2d 769 (9th Cir. 1986) .....................................................................24

*Government's Corrected Appeal From Release Order and Motion, USA.
    v. Akrum Alarhib*,
  Case 1:19-cr-20165, Dkt. 21 (S.D. Fla. May 4, 2019) ...........................1, 6

*Harduvel v. Gen. Dynamics Corp.*,
  801 F. Supp. 597 (M.D. Fla. 1992)............................................................23

# TABLE OF AUTHORITIES
## (*Cont'd.*)

Page(s)

*Hazel–Atlas Glass Co. v. Hartford Empire Co.*,
    322 U.S. 238 (1944), *overruled on other grounds*, *Standard Oil Co. of
    Cal. v. United States*, 429 U.S. 17 (1976) .................................................... 17, 19, 23

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    No. C-90-20237-WAI, 1993 WL 135953 (N.D. Cal. Apr. 15, 1993) ...................... 21

*In re Intermagnetics Am., Inc.*,
    926 F.2d 912 (9th Cir. 1991) ............................................................................ 13, 17

*Jones v. Aero/Chem Corp.*,
    921 F.2d 875 (9th Cir. 1990) ................................................................. 3, 20, 21, 22

*Judgment, USA v. Bryant*,
    Case No. 1:15-20049, Dkt. 23 (S.D. Fla. November 10, 2016) ................................ 6

*Judgment, USA v. Bryant*,
    Case No. 1:16-20838, Dkt. 38 (S.D. Fla. February 28, 2017).................................. 6

*Kemper v. Merle Norman Cosmetics, Inc.*,
    15 F.3d 1086 (9th Cir. 1994) ................................................................................. 19

*Larez v. City of Los Angeles*,
    946 F.2d 630 (9th Cir. 1991) ................................................................................... 2

*In re Levander*,
    180 F.3d 1114 (9th Cir. 1999) ...............................................................13, 14, 16, 17

*Lonsdorf v. Seefeldt*,
    47 F.3d 893 (7th Cir. 1995) ................................................................................... 21

*Luna v. Bell*,
    887 F.3d 290 (6th Cir. 2018) ................................................................................. 20

*Magnetar Techs. Corp. v. Intamin, Ltd.*,
    801 F.3d 1150 (9th Cir. 2015) .......................................................................... 17, 18

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988) ............................................................................ 17, 18

*MMAR Grp., Inc. v. Dow Jones & Co.*,
    187 F.R.D. 282 (S.D. Tex. 1999) ....................................................................... 3, 23

# TABLE OF AUTHORITIES
(*Cont'd.*)

Page(s)

*Out of District Complaint, USA v. Akrum Alrahib*,
  Case No. 3:19-mj-01502 (S.D. Cal. April 12, 2019)....................................3

*Paulaner-Salvator-Thomasbrau AG v. Wolfgang Morandell Distrib., Inc.*,
  931 F.2d 60 (9th Cir. 1991) ......................................................................22

*Pearson v. First NH Mortg. Corp.*,
  200 F.3d 30 (1st Cir. 1999).................................................................3, 22

*Pierce Oil Corporation v. United States*,
  9 F.R.D. 619 (E.D.Va. 1949) ..................................................................24

*Pumphrey v. K.W. Thompson Tool Co.*,
  62 F.3d 1128 (9th Cir. 1995) .............................................13, 14, 16, 19

*Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*,
  818 F.3d 1320 (Fed. Cir. 2016) .........................................................21, 24

*Rodriguez v. IBP, Inc.*,
  243 F.3d 1221 (10th Cir. 2001) ...............................................................22

*Rozier v. Ford Motor Co*,
  573 F.2d 1332 (5th Cir. 1978) .................................................................21

*Schultz v. Butcher*,
  24 F.3d 626 (4th Cir. 1994) .............................................................21, 22

*Standard Oil Co. of California v. United States*,
  429 U.S. 17 (1976)...................................................................................24

*The United States v. Stonehill*,
  53 F. App'x 470 (9th Cir. 2002)...............................................................23

*Transit Casualty Co. v. Security Trust Co.*,
  441 F.2d 788 (5th Cir. 1971), cert. denied 404 U.S. 883 (1971) ..............23

*United States v. Beridze*,
  415 F. App'x 320 (2d Cir. 2011) ...............................................................19

*United States v. Estate of Stonehill*,
  660 F.3d 415 (9th Cir. 2011) .............................................13, 14, 17, 19

# TABLE OF AUTHORITIES
## (*Cont'd.*)

Page(s)

*United States v. Nicholson*,
   677 F.2d 706 (9th Cir. 1982) ................................................... 16

*United States v. Shaffer Equip. Co.*,
   11 F.3d 450 (4th Cir. 1993) ................................................... 13

*United States v. Waldrip*,
   981 F.2d 799 (5th Cir. 1993) ................................................... 19

*United States v. Whitmire*,
   19 F.3d 1442 (9th Cir. 1994) ................................................... 19

*Universal Oil Prod. Co. v. Root Ref. Co.*,
   328 U.S. 575 (1946).................................................................. 22

*USA v. Bryant*,
   Case No. 1:14-cr-00019, Dkt. 41 (W.D. Va. May 14, 2015) .................................... 6

*Victor Talking Mach. Co. v. Kemeny*,
   271 F. 810 (3d Cir. 1921) ................................................... 18

*Washington v. Showalter*,
   494 F. App'x 268 (3d Cir. 2012) ................................................... 3

*Werner v. Carbo*,
   731 F.2d 204 (4th Cir. 1984) ................................................... 24

*Wyle v. R.J. Reynolds Indus., Inc.*,
   709 F.2d 585 (9th Cir. 1983) ................................................... 15, 16, 18, 22

**Statutes**

15 U.S.C. § 15(a) ................................................................. 2

**Other Authorities**

https://www.ttb.gov/industry_circulars/archives/2011/11-03.html (last
   visited July 22, 2019)............................................................. 4

**Rules**

Fed. R. Civ. P. 60 ................................................................. 2

# TABLE OF AUTHORITIES
### (*Cont'd.*)

Page(s)

Fed. R. Civ. P. 60(b)(2) .................................................................. 1, 3, 20

Fed. R. Civ. P. 60(b)(3) .................................................................. 1, 3, 20

Fed. R. Civ. P. 60(c) ............................................................................ 23

Fed. R. Civ. P. 60(d) ..................................................................... 13, 23

Fed. R. Evid. 608(b) ............................................................................ 19

Fed. R. Evid. 702 ................................................................................ 18

Fed. Rule Evid 801(d)(2)(D) .................................................................. 6

Fed. Rule Evid 803(5) ............................................................................ 6

Fed. Rule Evid 803(8) ............................................................................ 6

Fed. Rule Evid 804(b)(3) ........................................................................ 6

**TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Swisher International, Inc. ("Swisher"), by and through its counsel of record, on August 19, 2019, at 1:30 p.m. or another time date and time determined by the Court, in Courtroom 10C of the United States District Court for the Central District of California, located at 411 West Fourth Street, Santa Ana, before the Honorable James V. Selna, will and hereby does move the Court for relief from judgment pursuant to Rule 60 of the Federal Rules of Civil Procedure and the Court's inherent authority. In the alternative, Swisher requests that the Court order accelerated discovery into TSI's misconduct described herein and allow Swisher to amend this motion based on the additional information adduced during such discovery.

Swisher brings this motion on the grounds that Plaintiffs Trendsettah USA, Inc. and Trend Settah International, Inc. (collectively, "TSI") and its CEO and founder, Mr. Akrum Alrahib, concealed critical facts during discovery and presented materially false and misleading information to the Court and the jury. Specifically, as Swisher recently learned, during the time relevant to this lawsuit, Mr. Alrahib conspired with TSI's importer to evade federal excise taxes of 52.75% due on TSI's cigarillos. The tax avoidance scheme distorted TSI's costs and substantially inflated its profits. TSI, however, concealed this fact from Swisher despite discovery requests calling for such information and presented false financial information to the jury and the Court during trial. Based on this materially false information, TSI secured a jury verdict in its favor. Without the fraudulent tax avoidance, TSI could not have established that it suffered any cognizable injury and its damages would have been negative.

Pursuant to the Court's inherent authority and Rule 60(d), the Court should relieve Swisher from any judgment obtained through fraud upon the Court and the jury. Such relief is justified because the concealed information was material to core issues in this matter. Swisher should also be relieved from judgment under Rule 60(b)(2) based on this newly discovered evidence, which if discovered earlier, likely would have altered

Gibson, Dunn & Crutcher LLP

the disposition of this case.  Rule 60(b)(3) also warrants setting aside any judgment in TSI's favor based on the substantial interference with Swisher's defense caused by TSI's misconduct.

    This Motion is made following a conference of counsel pursuant to L.R. 7-3, which took place from July 8, 2019 to July 12, 2019.  Declaration of Minae Yu ¶¶ 27, 28.  Opposing counsel has indicated that TSI opposes the Motion.  *Id.*  This Motion is based upon this Notice; the attached Memorandum of Points and Authorities; the declarations of Minae Yu, Ryan Roman and Alan Cox and exhibits thereto; all pleadings and documents on file, including trial exhibits, the minutes of the court clerk, the reporter's transcript; and such oral argument, and other evidence as the Court shall consider in connection with the hearing on this Motion.


DATED:  July 22, 2019.

THEODORE J. BOUTROUS JR.
DANIEL G. SWANSON
CYNTHIA E. RICHMAN
MINAE YU
JULIAN KLEINBRODT
GIBSON, DUNN & CRUTCHER LLP

JOSHUA R. MANDELL
MICHAEL C. MARSH
RYAN ROMAN

AKERMAN LLP


By:  /s/ Daniel G. Swanson
                    Daniel G. Swanson

Attorneys for Defendant
SWISHER INTERNATIONAL, INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

To quote from TSI's closing jury argument, "false in one, false in all."  That's what we have here.  After the Ninth Circuit issued its order affirming in part and reversing in part this Court's judgment, Swisher learned that TSI concealed critical facts during discovery and presented materially false and misleading information to the Court and the jury.  Specifically, during the time relevant to this lawsuit, TSI's CEO, Mr. Akrum Alrahib, conspired with TSI's importer to evade millions of dollars in federal excise taxes due on TSI's cigarillos.  The criminal tax evasion scheme entailed creating fake invoices and using TSI's bank accounts to covertly transfer funds to TSI's Dominican Republic manufacturer so that the Customs and Border Protection ("CBP") could not detect the actual first sales price of TSI's cigarillos and collect the full amount of taxes due on them.  As a result, TSI avoided paying federal excise taxes of 52.75% per cigarillo, received kickbacks in the form of free machinery and payroll checks for TSI employees, and artificially inflated its profits.  This was no innocent mistake. During a video-recorded interview, Mr. Alrahib confessed to tax evasion.[1]  Mr. Alrahib purposely defrauded the government for his and TSI's benefit.

Swisher learned of TSI's tax avoidance and illegal kickbacks when a grand jury indictment in Mr. Alrahib's criminal case became publicly available in April 2019, years after the trial in this matter.  It is now apparent that Mr. Alrahib's and TSI's tax evasion scheme was in full swing during the period relevant to this case and likely continued during (and even after) trial.  No doubt recognizing the devastating impact on its case from disclosure, TSI prevented Swisher from uncovering TSI's tax avoidance during discovery and at trial.  In discovery, for example, TSI refused to produce its federal

---

[1]  Despite his video recorded admissions, when plea negotiations stalled, Mr. Alrahib stopped meeting with federal agents and refused to accept responsibility for his conduct.  Declaration of Minae Yu, Ex. B [*Government's Corrected Appeal From Release Order and Motion, USA. v. Akrum Alrahib*, Case 1:19-cr-20165, Dkt. 21 (S.D. Fla. May 4, 2019)] at 5.  Mr. Alrahib has since plead not guilty at his arraignment. *Minute Order, Arraignment, USA. v. Akrum Alarhib*, Case 1:19-cr-20165, Dkt. 33 (S.D. Fla. May 10, 2019).

excise tax filings, claiming "irrelevance" and "undue burden." TSI  falsely represented that "the same information you seek will be available in TSI's sales records."  But it is now apparent that the financial records TSI passed off as accurate did not account for its illegal tax avoidance.

This left TSI free to present to the jury and the Court a falsely inflated picture of the profitability of its cigarillo sales  out of which its expert constructed a largely, if not entirely, sham claim for "lost profits."  To safeguard this fabrication from any risk of detection in the heat of trial, TSI successfully moved to exclude any questioning of Mr. Alrahib about his past experience with evading excise taxes.  Dkt. 112; Dkt. 163. Concealing the *ongoing* tax evasion, TSI argued that "Mr. Alrahib's failure to pay excise taxes almost a decade ago" had "nothing" to do with the trial's central issues.  Dkt. 112 at 1.  TSI proceeded to secure an 8-figure treble-damage jury verdict based on these false pretenses.  As the newly uncovered evidence now makes clear, however, since TSI had no right to evade taxes, the supposed lost "profits" awarded by the jury were not injury to TSI's "business or property" as required by Section 4 of the Clayton Act.  *See* 15 U.S.C. § 15(a); *Statement of Interest of the United States*, *City of Oakland v. The Oakland Raiders,* Case No. 3:18-cv-07444, Dkt. 55 at 5-7 (N.D. Cal. July 12, 2019) (lost cigarette tax revenue is not a cognizable injury under antitrust laws).  As this Court previously observed, "underpayment of excise taxes would plainly effect profitability." Dkt. 163 at 4.  When TSI's claimed "lost profits" are corrected for its tax evasion, its "damages" evaporate.  TSI's improper acts—both the underlying tax fraud and its acts of concealment and it misrepresentations—infected this case to its core.

The Court should not tolerate this.  Under Rule 60(d) and the Court's inherent authority, the Court should relieve Swisher from a judgment tainted by fraud upon the Court and the jury.[2]  Such relief is justified because the concealed information was

---

[2] Although TSI has not yet sought entry of final judgment, it has precipitated the filing of this motion by its efforts to force the release of Swisher's supersedeas cash bond. Dkt. 364.  While a final judgment should be entered before the Court rules on any of

material to TSI's case.  Relief from judgment is also warranted under Rule 60(b)(2) because TSI's tax avoidance and the falsity of its financial records were not previously known to Swisher and if discovered earlier, would have altered the outcome of this case. Rule 60(b)(3) also justifies vacating the judgment because TSI's improper acts substantially interfered with Swisher's defense.

The relief Swisher seeks is amply supported by the record and evidence submitted with this Motion.  At a minimum, they establish a highly colorable claim of fraud.  If the Court entertains any doubt about the strength of Swisher's showing at this stage, Swisher respectfully requests that the Court reopen discovery for a limited time to allow Swisher to seek further evidence and subsequently amend this motion with the aid of such evidence.  *See Pearson v. First NH Mortg. Corp.*, 200 F.3d 30, 35 (1st Cir. 1999); *MMAR Grp., Inc. v. Dow Jones & Co.*, 187 F.R.D. 282, 286 (S.D. Tex. 1999).

## II.    BACKGROUND

### A.    TSI, Through Mr. Alrahib, Fraudulently Avoided Federal Excise Taxes

For years, TSI fraudulently avoided paying federal excise taxes on cigarillos it imported from Dominican Republic through its importer, Havana 59.  TSI's tax avoidance was exposed to the public for the first time on April 12, 2019, when the Southern District of California unsealed the criminal indictment of Mr. Akrum Alrahib in connection with his arrest.  Yu Decl. Ex. A [*Out of District Complaint*, *USA v. Akrum Alrahib,* Case No. 3:19-mj-01502 (S.D. Cal. April 12, 2019)].  As TSI previously admitted, Mr. Alrahib is "the founder and chief executive officer, and oversees the day-to-day operations, of TSI."  Dkt. 162 at 3.  He is also one of the principals/shareholders of TSI, along with Mr. Ramzy Rahib, Ms. Mousa Rahib, and Mr. Salah Kureh.  *Id.*

the parties' post-judgment motions, Rule 60 does not prohibit early filing of this Motion.  Fed. R. Civ. P. 60; *cf. Larez v. City of Los Angeles*, 946 F.2d 630, 636 (9th Cir. 1991) ("Moreover, while it is true that the officers filed their new trial motion before the entry of judgment, nothing in Fed.R.Civ.P. 59 prohibits early filings."); *Washington v. Showalter*, 494 F. App'x 268, 271 (3d Cir. 2012) (holding that a motion for reconsideration that was filed prior to a formal entry of judgment was timely); *In re B.J. McAdams, Inc.*, 999 F.2d 1221, 1223 (8th Cir. 1993) ("Several cases have deemed timely motions that follow memoranda and orders or opinions, but that pre-date entry of judgment."); *see also Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990) (Rule 60 and Rule 59 to be construed similarly).

Gibson, Dunn & Crutcher LLP

Beginning in or around April 2013, Gitano Pierre Bryant, Jr., the President and owner of Havana 59, imported various tobacco products from Dominican Republic on behalf of TSI.  Yu Decl. Ex. A, Indictment at 4; Declaration of Ryan Roman, Ex. K, Amended Resp. to Rog #22 (identifying Havana 59 as a company that imported TSI's Splitarillos from outside the United States).  TSI's CEO, Mr. Alrahib, conspired with Mr. Bryant to create false invoices that fraudulently stated that TSI was purchasing cigarillos from Havana 59 at approximately $0.021 and $0.025 per cigar.  Yu Decl. Ex. A, Indictment at 5.  These falsified invoices were then presented to the CBP to drastically underreport and underpay federal excise taxes due on TSI's cigarillos.  *Id.* at 6.  In reality, TSI did not purchase any cigarillos from Havana 59.  *Id.*  Instead, TSI purchased the cigarillos from Productos del Tobacco ("Productos") at prices approximately between $0.07 and $0.09 per cigar, nearly 3 to 4 times the sales prices reported to the government.  *Id.*; *see also* Yu Decl. Ex. G, Attachments C-6 & E-12.  To avoid CBP's detection of the actual prices at which TSI procured its products, Mr. Alrahib arranged for TSI to wire money from TSI's bank account in California to Productos' bank account.  Yu Decl. Ex. A, Indictment at 11-12.

The first sales price is critical to the computation of the federal excise taxes, as it is the basis to which the federal excise tax rate of 52.75% is applied.[3]  The fraudulent concealment of the actual first sales price thus allowed TSI to avoid a significant amount of taxes due on its imported cigarillos (because the tax rate was applied to a much lower base).  Yu Decl. Ex. A, Indictment at 7-9, 12-13.  In addition, TSI received over $700,000 from Havana 59 as kickbacks in the form of payroll checks for TSI's employees and free cigar manufacturing equipment that TSI sent to Productos.  Yu Decl. Ex. B at 7; Ex. A, Indictment at 7.  As a result of this scheme, the government is seeking a forfeiture judgment of $9,914,921 against property in which Mr. Alrahib has an interest that is traceable to the violations.  *Id.* Ex. A, Indictment at 14.

---

[3]  *See* https://www.ttb.gov/industry_circulars/archives/2011/11-03.html (last visited July 22, 2019).

Gibson, Dunn &
Crutcher LLP

These facts are not mere allegations.  In a voluntary video-recorded interview conducted by Internal Revenue Service ("IRS") and Alcohol and Tobacco Tax and Trade Bureau ("ATTTB") agents on May 11, 2017, Mr. Alrahib admitted his participation in four separate tax evasion schemes involving at least five different co-conspirators.[4]  Yu Decl. Ex. B at 3.  During that interview, Mr. Alrahib provided a detailed account of his scheme with Mr. Bryant.  *Id.* 3-5, 10-11.  As Mr. Alrahib explained, "Tony Bryant approached me and says, look, I could import it for you, and I could save you money, and then I'll kick you back the money on the side. Okay." *Id.*  Mr. Alrahib knew that the kickbacks were from federal taxes evaded, explaining "I mean, that's what it was. Everybody knew that." *Id. see also id.* at 4 ("AGENT 2: No, I got -- let me figure -- but the rebate, though, is based on [Mr. Bryant] evading federal excise tax.  ALRAHIB: Yes. AGENT 2: Okay.  AGENT 1: Thank you.  ALRAHIB: Yes, it is. Of course it is. I don't know what else to say, but I know I'm screwing – I mean, it is. I mean, yes. We all know that.").  Mr. Alrahib's response to Mr. Bryant's invitation was "the cheaper you could get it for me, Tony, and the more I could save on the back end, thank you very much." *Id.* at 4.  In Mr. Alrahib's own words, "I rode Tony's train because his scheme was already moving. And then Tony said, you want to come and save money riding my train? Then I realized it's a scheme. Then when I saw his scheme, I said, wait a minute, I need to benefit from your scheme." *Id.* at 5.

When asked how the scheme allowed TSI to procure products cheaper, Mr. Alrahib explained "I wouldn't know how Tony was breaking up the importation tax.  He would just send me an email of how his BS breakdown was and then give us the invoice. That was it. And then from that invoice of the total amount, I was supposed to take back 40, 50 percent. . ." *Id.* at 4.  There was never any economic reality underlying the transactions between TSI and Havana 59.  As Mr. Alrahib explained, "let's say, for example, [the manufacturer] was charging me at the time 6 or 7 cents a stick, but Tony

---

[4]  The prosecutors have recently disclosed that Mr. Alrahib continued evading millions of dollars in taxes up to 2018.  Yu Decl. Ex. B at 5.

[Bryant] was claiming 2 cents a stick, so he never had extra money. He never had extra money because he never put the actual dollar amount that [the manufacturer] was charging us." *Id.* at 10.  When the federal agents asked "Tony [Bryant] never charged Trendsettah, being you, enough money to cover the actual cost of the product?," Mr. Alrahib stated, "No. Of course not. It was all a game." *Id.* at 10-11.  In a nutshell, the scheme entailed a round-trip transaction whereby Mr. Bryant would send fake invoices to TSI for a fraction of the federal excise taxes actually due, TSI would then pay Havana 59 the sham amount invoiced, and Havana 59 would then kickback about 40% of that amount to Mr. Alrahib.  *Id.* at 11 (explaining the scheme by analogy, saying "This water costs a dollar, right. But when Tony [Bryant] -- he's the importer, right?. . . He's showing that this water is 30 cents. And then from the 30 cents, he's supposed to give me 10 cents.").  As a result of this fraudulent scheme, TSI illegally secured its products at far cheaper prices and received free machinery for use in manufacturing TSI cigarillos and payroll payments as illegal kickbacks, all of which fraudulently inflated TSI's profits.

Mr. Alrahib's co-conspirator, Mr. Bryant, has since plead guilty to tax fraud and is currently serving seven years in prison.[5]  Mr. Alrahib's criminal trial is scheduled to commence on December 16, 2019.[6]

## B.   TSI Prevented Swisher From Uncovering the Fraud Earlier

### 1.   TSI Misrepresented Its Federal Excise Tax Payments and Financial Records

Despite numerous discovery requests specifically requesting information and documents relating to TSI's federal excise tax payments, its costs and profits, and the

---

[5]  *See* Yu Decl., Ex. D [*Judgment, USA v. Bryant*, Case No. 1:16-20838, Dkt. 38 (S.D. Fla. February 28, 2017)], Ex. E [*Judgment, USA v. Bryant*, Case No. 1:15-20049, Dkt. 23 (S.D. Fla. November 10, 2016)], Ex. F [*USA v. Bryant*, Case No. 1:14-cr-00019, Dkt. 41 (W.D. Va. May 14, 2015)].  Mr. Bryant's criminal cases did not disclose Mr. Alrahib or TSI's involvement in his tax fraud.

[6]  *See* Yu Decl. Ex. C, *Order Setting Trial, USA. v. Akrum Alrahib*, Case 1:19-cr-20165, Dkt. 56 (S.D. Fla. July 16, 2019).  Regardless of the outcome of the criminal trial, Mr. Alrahib's statements that he conspired to evade taxes on TSI's cigarillos are admissible here.  *See* Fed. Rule Evid 801(d)(2)(D), 803(5), 803(8), and 804(b)(3).

Gibson, Dunn & Crutcher LLP

sources of funds for its machinery, TSI concealed and misled Swisher about its federal excise tax payments and receipt of illegal kickbacks.[7]

In response to TSI's document requests seeking the federal excise tax filings made by or on behalf of TSI, TSI objected on the grounds that the production of the actual filings was burdensome and that documents were "irrelevant."  Roman Decl. Ex. C, Resp. to RFP #26-28.  Swisher responded explaining that "***FET payments are an essential component to calculating profits and profitability***, ***which, of course, is the baseline for the lost profits analysis TSI's allegations require***."  Roman Decl. ¶ 3, Ex. E (emphasis added).  Yet TSI continued resisting the production of its federal excise tax filings and represented to Swisher that "[t]he information Swisher seeks will already be found in TSI's financial records, sales orders and invoices, which it has agreed to produce." *Id.* ¶ 4, Ex. F.  In a subsequent email to Swisher, TSI reiterated that "[g]iven that the tax rates are publicly available, and given that the same information you seek will be available in TSI's sales records (***and it's fair to say that TSI has no incentive to overestimate its tobacco sales to the government***), we do not think the probative value of these filings outweighs the burden of collecting them."  *Id.* ¶ 7, Ex. I (emphasis added).  Through these misrepresentations, TSI prevented Swisher from obtaining TSI's false tax filings submitted to the government.

Similarly, TSI repeatedly sought to remove search terms relating to federal excise taxes in connection with its ESI production. *Id.* ¶¶ 5-6, 8, Exs. G-I.  Based on TSI's repeated representation that its federal excise tax payments could be discerned from the financial records it would produce and the publicly available tax rate (which would only be possible if TSI properly paid its taxes) and that TSI had no incentive to falsely report taxes to the government, Swisher agreed to remove search terms relating to federal

---

[7]  *See, e.g.,* Roman Decl. Ex. A, RFP #26-28 (seeking documents relating to TSI's federal excise tax payments), #29 (requesting TSI's contracts with its importer), #32-34 (seeking documents relating to TSI's financial records and claims of lost profits); Ex. B, Rog #17 (requesting TSI to identify its monthly profits on Splitarrilos); Ex. L, RFP #21-24 (seeking documents relating to TSI's importation of cigarillos from Productos), #26 (seeking documents relating to purchase of machinery used by Productos), #57 (seeking all documents relating to TSI's costs).

excise taxes.  *Id.* ¶ 8.  TSI, however, remained obligated to produce all documents from which TSI's federal excise tax payments could be ascertained, just as TSI had represented that it would do.  *Id.*  Subsequently, TSI's witnesses, including TSI's general counsel, Mr. Tatum Hilmoe, who was responsible for preparing and filing TSI's excise tax reports, testified in depositions that they had indeed produced all documents responsive to Swisher's discovery requests.  *See* Yu Decl. Ex. R [Hilmoe Dep.] at 87:3-12, 164:24-165:22; Ex. M [Alrahib Dep.] at 129:11-130:22, 261:20-23.  In reality, however, TSI withheld the critical fact that it avoided paying its federal excise taxes.

TSI also misled Swisher about its acquisition of machines used for producing TSI's cigarillos.  In response to an interrogatory asking about ***all*** sources of investment in TSI's machinery, TSI stated that a combination of TSI, its affiliated company ABC and Mr. Alrahib had paid for its machines.  Roman Decl. Ex. K, Resp. to Rog #20 (claiming that TSI invested millions of dollars to increase production capabilities), Ex. O, Resp. to Rog #11 (claiming that Mr. Alrahib and ABC paid $4 million to purchase machinery for loan to Productos).  Mr. Alrahib verified these discovery responses.  Ex. O, Verification.  Havana 59, however, provided over $700,000 worth of machines to Productos and TSI.  Yu Decl. ¶ 9, Exs. H – I (machine invoices from Havana 59).  As Mr. Alrahib's indictment now makes apparent, these machines were illegal kickbacks from Mr. Bryant.  *Id.*. Ex. B at 7; Ex. A, Indictment at 7.  TSI concealed a significant source of its machinery, rendering its discovery responses incomplete and misleading.

Far from being accurate and reliable, as TSI had warranted, the financial records it produced in this case were incomplete and materially misleading.  *See, e.g.,* Yu Decl. Exs. J-L.  These documents do not reflect the true cost of manufacturing and importing TSI's cigarillos.  They do not disclose the kickbacks from which TSI benefitted (for instance, they do not show that Havana 59 contributed to TSI's payroll).  Yet TSI's financial records were presented to Swisher as an accurate reflection of TSI's costs and profits, in discovery responses and in deposition testimony.  *See, e.g.,* Roman Decl. Ex. K, Resp. to Rog #17, Ex. P, Resp. to Rog # 17, Ex. S [Kureh Dep.] at 88:5-95:2, 100:22-

105:25, 113:1-7.

### 2. TSI's Expert Reports Misrepresented Its Claimed Injury and Damages

TSI's inaccurate and misleading financial records were in turn relied on by TSI's economic expert, Dr. Deforest McDuff, who made them the cornerstone of his injury and damages analysis. *See, e.g.,* Yu Decl. Ex. G at 42-48, Attachments C-1, C-6, C-7, D-13, D-14, E-12. Indeed in formulating his expert opinions, Dr. McDuff worked directly with both co-conspirators, Mr. Alrahib and Mr. Bryant, who submitted to his interviews. *See, e.g., id.* at 2-3, 23-25, 33-36. Whether or not Dr. McDuff became aware of the scheme, his work did nothing to disclose it. Dr. McDuff constructed two damages model for estimating TSI's alleged lost profits between 2013 and 2015 and its alleged future lost profits. *Id.* at 47-48. All of Dr. McDuff's damages calculations relied heavily on TSI's profit margins during 2013 and 2014 that were artificially inflated by the underpayment of federal excise taxes, which then distorted Dr. McDuff's entire analysis. *Id.* at 47-48, Attachments C-6 & C-7. Given the high rate of federal excise taxes of 52.75%, the impact of TSI's tax evasion on Dr. McDuff's analysis cannot be overstated. The unlawful avoidance of such a major component of cost impacted all aspects of TSI's operations. Declaration of Alan Cox ¶¶ 10-19, 46. By engaging in illegal conduct, TSI was able to lower its costs, offer unsustainably low prices and create spurious demand. *Id.* ¶ 46. Given its low gross margins, TSI's operating margins on imported cigarillos likely would have been negative had TSI paid the lawful cost of doing business. *Id.* ¶ 30.

One possible way to measure the impact of the fraud is to use cost data untainted by tax evasion. *Id.* ¶¶ 27-28. TSI's cost of purchasing Splitarillos from Swisher—which includes federal excise taxes and prices negotiated at arm's length—provides one measure of TSI's costs in a normal environment. *Id.* When TSI's profits from 2012 to 2015 are computed using this data, they turn into losses of more than $5.5 million. *Id.* ¶ 43. Future profits turn into losses of more than $13 million. *Id.* ¶ 44. This adjustment

illustrates the gravity of error in Dr. McDuff's analysis—injury and damages were created where none likely existed.

## C.    TSI Misled the Court

To eliminate any risk of the tax evasion scheme from being revealed at trial, TSI moved to exclude "any evidence or argument regarding any tax or regulatory enforcement actions that Mr. Alrahib faced in the years prior to TSI's manufacturing relationship with Swisher."[8]  Dkt. 112 at 1.  In support of its motion, TSI argued that "Mr. Alrahib's failure to pay excise taxes almost a decade ago has nothing to do with the two central issues in this case."  *Id.*  TSI repeatedly emphasized that Mr. Alrahib's tax evasion was a thing of the past, arguing that "***past*** crimes, wrongs or other acts" are not admissible and "[e]ven if Mr. Alrahib's ***past*** tax issues had some tangential relevance, that probative value is substantially outweighed by the danger of unfair prejudice[.]"[9] *Id.* at 1. While making these arguments to the Court, TSI concealed the fact that Mr. Alrahib's tax evasion was *ongoing* and *continued* while he served as TSI's CEO.[10]  On the basis of TSI's representations, however, the Court ruled in TSI's favor, reasoning that "[s]tripped of a proper link, the evidence is merely improper character evidence."  Dkt. 163 at 4.  Of course, the "proper link" existed but was suppressed by TSI.  Swisher was thus foreclosed from asking Mr Alrahib about excise tax evasion, a line of questioning that—absent perjury—would almost inevitably have led to disclosure of his (and TSI's) illegal acts.

TSI made other representations to the Court that involved misleading information.

---

[8]  Prior to founding TSI, Mr. Alrahib faced a civil forfeiture action for failing to pay excises taxes on tobacco products distributed through one of his prior businesses.  Yu Decl. Ex. [Akrum Dep.] at 48:11-51:12.

[9]  In its reply, TSI again made misleading statements that Mr. Alrahib's tax evasion was all in the past.  Dkt. 148-1 at 2; *see also id.* at 3 (arguing that Mr. Alrahib's prior bad acts should be excluded because it would unfairly suggest that Mr. Alrahib acted in accordance with his past behavior in managing TSI's business).

[10]  TSI even affirmatively argued that McDuff, its expert, had avoided using the profit experience (as opposed to sales history) of Good Times as a damages yardstick since Good Times' profits "would have been boosted by tax avoidance (assuming it did avoid taxes)."  Dkt. 148-1.

For example, Mr. Alrahib declared under oath in opposing summary judgment that "a combination of myself, TSI and an affiliated company called ABC Distributing Co. spent $4 million to purchase that specialized machinery." Dkt. 85 ¶ 10.  Mr. Alrahib did not disclose that these machines were procured in part for free as kickbacks from Havana 59.  Similarly, Mr. Kureh declared that in 2014 "TSI enjoyed a profit margin of around 37% for … Productos-manufactured Splitarillos," Dkt. 87 ¶ 9, even though the "profits" were the product of undisclosed tax evasion.

## D.    TSI's Misconduct Infected The Entire Trial

TSI's misconduct infected every aspect of the trial.  With Mr. Alrahib's tax evasion scheme concealed, TSI offered evidence and testimony reflecting false financial information to the Court and the jury, while presenting a case built on themes of "honesty" and "forthrightness."

TSI's case focused on Mr. Alrahib, who was called as its first witness.  On the stand, Mr. Alrahib offered testimony about nearly every element of TSI's claims.[11]  All of these issues were hotly contested and turned on Mr. Alrahib's credibility as a witness; yet TSI never disclosed Mr. Alrahib's fraudulent tax evasion scheme despite its materiality to his character for truthfulness.  Toward the end of his direct examination, Mr. Alrahib was asked about his efforts to acquire machinery for TSI and his personal investments in the company.  Yu Decl. Ex. U [Trial Tr., Day 2] at 102-103.  Rather than truthfully disclosing that he acquired at least some of the machines by conspiring with Mr. Bryant to evade taxes on TSI's cigarillos, Mr. Alrahib stated only that he had

---

[11]  Specifically, the topics Mr. Alrahib testified about include the parties' understanding of the contracts and alleged agreements at issue, *see, e.g.,* Yu Decl. Ex. U [Trial Tr., Day 2] at 28-29, 32-33, 42-45, 52, 86-87, 89-90; TSI's growth as a company and high demand for its products, *id.* at 53-55, 61, 91-92; Swisher's alleged failure to fulfil orders, *see, e.g., id.* at 51-52, 92-93, 95-96; TSI's breach of the contracts, including failing to provide reasonable forecasts to Swisher, *see, e.g. id.* at 38-40, 43, 45-49, 59-60, 64, 88-89; termination of the agreements, *see, e.g., id.* at 63; the impact of Swisher's alleged conduct on TSI's business, *see, e.g., id.* at 72-73; Swisher's alleged motivation underlying its conduct, *see, e.g., id.* at 67-68, 69-70; and the alleged barriers to entry that TSI faced in starting its own manufacturing or seeking alternative suppliers, *see, e.g., id.* at 91, 99-102.

1   invested about $12 to $15 million in the company.[12]  *Id.*

2        Following Mr. Alrahib, other TSI witnesses took the stand and presented a

3   materially false portrayal of TSI's financial records, its costs, profitability, injury and

4   damages.  For instance, after touting his credentials as a CPA and years of experience

5   conducting audits at Price Waterhouse Cooper, TSI's CFO, Mr. Kureh, testified that

6   every single item of revenue or expense was properly recorded in TSI's financial records

7   and that all this information was provided to TSI's expert.  Yu Decl. Ex. V [Trial Tr.,

8   Day 4] at 9-12, 13.  He further testified that TSI had higher profits on Productos-

9   manufactured products compared to Swisher-manufactured products because Productos'

10  costs were lower without disclosing the illegal activity that reduced those costs.  *Id.* at

11  20.

12       Dr. McDuff then took the stand and testified extensively about TSI's profit

13  margins, projected sales, lost profits and ultimately, the fact and extent of TSI's

14  damages.  *Id.* at 175-176, 179-182, 187-188, 190, 193-198.  In particular, TSI offered

15  and the Court admitted into evidence, Trial Exhibits 135 and 136, which showed an

16  artificially and illegally inflated profit margins for TSI.  *Id.* at 193-195; *see also* Yu Decl.

17  Exs. X-Z.  Building on the false profit margins, Dr. McDuff opined that TSI suffered

18  damages of $9,062,679 in the form of lost profits between 2012 and 2015 and

19  $5,752,815 in the form of lost future sales, totaling $14,815,494 in total damages under

20  the Good Times model. Yu Decl. Ex. V [Trial Tr., Day 4] at 193-197, 203; Ex. X; Ex.

21  Y; Ex. Z at 35, 53.

22       At the end of the trial, TSI repeatedly emphasized the importance of honesty and

23  full disclosure.  Indeed, TSI's trial theme was the honest startup TSI vs. lying monopolist

24  Swisher.  As TSI argued in its closing:

25           Let's start with comparing the witnesses. Here there is not much of a comparison
26           actually. I don't recall a single time in which any of our witnesses said something

27
28   [12]  Misleading and incomplete testimony concerning the source of the machines was
          also offered by other TSI witnesses.  *See, e.g.,* Yu Decl. Ex. V [Trial Tr., Day 4] at
          21-22, 85-86.

Gibson, Dunn &
Crutcher LLP

12

on the stand and then was confronted with a document showing that what he just said was untrue, but that happened many times with Swisher's witnesses and with their key witnesses.

Yu Decl. Ex. W [Trial Tr., Day 8] at 123.  TSI reiterated the importance of honesty, stating:

> There is an ancient Latin expression that goes: *Falsus in uno, falsus in omnibus*. It means false in one, false in all. Probably some of you are familiar with another phrasing of that which says: He who is dishonest in small things is dishonest in large things also.  That's what we have here. These people, we will show you in the exhibits, they were not just dishonest in court. They were also dishonest when talking to our clients about the contract, about the deal that they had made.

*Id.* at 130; *see also id.* at 127 (arguing that "Swisher's witnesses need to resort to—what is the word—lack of forthrightness. You know, you swear to tell the whole truth. You're not telling the whole truth. . .").

After the trial, the jury awarded TSI $9,062,679 as contract damages and $14,815,494 as antitrust damages.  Dkt. 206 at 3, 4.  These are the exact amounts Dr. McDuff computed based on TSI's false financial records.  Ex. Z at 35.

## III.   ARGUMENTS

### A.   Swisher Should Be Relieved From Judgment for TSI's Fraud Upon the Court

"[O]ur adversary system depends on a most [z]ealous safeguarding of truth and candor."  *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 463 (4th Cir. 1993).  When a party engages in misconduct that "harm[s] the integrity of the judicial process," a court may exercise its inherent authority to set aside judgment for fraud upon the court.  *In re Levander*, 180 F.3d 1114, 1119 (9th Cir. 1999); *accord In re Intermagnetics Am., Inc.*, 926 F.2d 912, 916 (9th Cir. 1991); *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1132–33 (9th Cir. 1995); Fed. R. Civ. P. 60(d).  Such relief should be granted where the moving party demonstrates (1) an effort by the opposing party "to prevent the judicial process from functioning 'in the usual manner'" and (2) the misconduct goes to "central issue[s] in the case."  *See United States v. Estate of Stonehill*, 660 F.3d 415, 445, 452

(9th Cir. 2011).  Both requirements are met here.

### 1. TSI's Misconduct Prevented The Usual Functioning Of The Judicial Process

"Most fraud on the court cases involve a scheme by one party to hide a key fact from the court and the opposing party."  *Stonehill*, 660 F.3d at 444.  Nondisclosure of material evidence amounts to fraud upon the court if it "was so fundamental that it undermined the workings of the adversary process itself."  *Id.* at 444; *In re Levander*, 180 F.3d at 1120.  TSI's concealment of material facts, repeated misrepresentations made during discovery, and presentation of false financial information to the Court and the jury meet this standard.  *In re Levander*, 180 F.3d at 1120 (finding nondisclosure constituted fraud upon the court where it effectively deprived the moving party of the opportunity to question the veracity of the statements made by the adversary); *Pumphrey*, 62 F.3d at 1133 (holding that defendant's non-disclosure of critical evidence amounted to fraud upon the court where defendant frustrated plaintiff's attempts to discover the relevant evidence during discovery).

TSI's concealment and misrepresentations permeated this entire case.  Despite numerous discovery requests obligating TSI to produce full and complete information concerning TSI's federal excise tax payments and its costs and profits, TSI concealed its unlawful tax avoidance and illegal kickbacks.[13]  TSI misled Swisher by representing that it was properly paying taxes and misrepresented to Swisher that it would and did produce documents showing the amount of federal excise taxes due and paid on TSI's cigarillos.[14]  Swisher expressly informed TSI that it was seeking information relating to its excise tax obligations because of their impact on TSI's profits and TSI's theory of damages; TSI itself acknowledged that tax avoidance would improperly boost a company's profitability.  Dkt. 148-1.  Yet not only did TSI conceal its tax avoidance, it

---

[13]  *See* supra 6-8.

[14]  See supra 6-8.

produced financial records that materially misstated TSI's costs and inflated its profits and passed off these documents as an accurate reflection of its financial state.[15]  It then elicited an expert's testimony that rested on this false edifice and sought and won treble damages based on his calculation of "lost profits" that were at most lost opportunities to evade taxes and enjoy "kickbacks."[16]

Moreover, TSI insulated this strategy from challenge at trial by convincing this Court that Mr. Alrahib's admitted past tax evasion was not relevant to this case.  Dkt. 112 at 1; Dkt. 148-1 at 2.  While making this argument, TSI concealed the truth, disclosure of which would have made the relevance of the subject of excise tax evasion glaringly obvious.

TSI cannot avoid the consequences of these actions by isolating itself from Mr. Alrahib.  As the jury was instructed, Mr. Alrahib was the founder and CEO of TSI and oversaw its operations on a day-to-day basis. Dkt. 208 at 9.  His actions—including his illegal actions—were for the direct benefit of TSI.  At the same time, Mr. Alrahib was comprehensively involved in this litigation from the very start up through trial.  He verified discovery responses, spoke directly with TSI's expert and testified for TSI at deposition and trial.  Mr. Alrahib was present at trial and was introduced to the jury by TSI's counsel as "[o]ur client[] [sitting] at the end, Akrum Alrahib."  Yu Decl. Ex. T [Trial Tr., Day 1] at 15.  He was referenced dozens of times in TSI's counsel's opening statement.  In the closing, TSI's counsel told the jury that "you might say Mr. Alrahib and Mr. Ramzy Rahib are the parties here."  Yu Decl. Ex. W [Trial Tr., Day 8] at 149.  Mr. Alrahib's knowledge and intentions are properly imputable to TSI.  *See, e.g.*, *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 590 (9th Cir. 1983) (affirming district court's dismissal where plaintiff denied during discovery that it paid illegal rebates because the knowledge of senior officers who were aware of the rebates was imputable to the corporation); *Flextronics Int'l, USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd.*,

---

[15]  *See* supra 6-8.

[16]  *See* supra 12-13.

230 F. Supp. 3d 896, 909 (N.D. Ill. 2017).

Mr. Alrahib had ample opportunity—indeed a duty—to come clean in this litigation.  He never did.  For example, during his deposition, Mr. Alrahib was asked about his prior failure to pay state excise taxes and its impact on TSI's business with McLane Company.  Yu Decl. Ex. M [Alrahib Dep.] at 47:7-51:12, 290:4-294:2.  He initially denied knowing McLane's reasons for ceasing dealings with TSI in 2014, but later admitted that it was due to his prior tax problems.  *Id.* at 290:2-25, 293:23-294:2; Yu Decl. Exs. O-Q.  Yet instead of acknowledging his continued practice of "riding the train" of tax evasion, he attributed his failures to naiveté, expressed remorse for his past mistake, and claimed he had learned from his past errors.  Yu Decl., Ex. M [Alrahib Dep.] at 48:11-51:12; *see also id.* Ex. N at TSI237228 (pointing to TSI's CPA and attorney to suggest his changed ways).[17]

Mr. Alrahib's knowledge is also properly imputable to TSI's other senior executives.  In particular, Mr. Kureh, TSI's CFO and a licensed CPA, knew the importance of keeping proper financial records for this case—indeed his testimony was offered to lend credence to TSI's financial documents and Dr. McDuff's testimony based on those records.  Likewise, TSI's general counsel, Mr. Hilmoe was responsible for preparing and filing TSI's excise tax returns, Yu Decl. Ex. U [Trial Tr., Day 2] at 172, and "was aware of the necessity for compliance with the rules of discovery and the rules of professional responsibility" and "aware of the damage failure to abide by these rules can wreck *[sic]* in the specific case at hand and the larger framework of confidence in the adversary trial system." *Pumphrey*, 62 F.3d at 1133.  Both were aware that Mr. Alrahib had problems with paying taxes; in fact, the issue came up as recently as 2014 when McLane refused to do business with TSI because of Mr. Alrahib's problems.  Their failure to investigate TSI's proper payment of excise taxes (if in fact they were unaware of the evasion) is "the equivalent of knowledge of the truth." *Wyle*, 709 F.2d at 590;

---

[17]  Mr. Alrahib also testified about TSI's acquisition of machinery at trial, at deposition and in declaration submitted to the Court, without ever disclosing the existence of kickbacks in the form of machinery.

*United States v. Nicholson*, 677 F.2d 706, 710–11 (9th Cir. 1982) (one who is aware of a high probability of the existence of a fact, but deliberately ignores the fact, is deemed to have knowledge of the fact); *Eppes v. Snowden*, 656 F. Supp. 1267, 1280 (E.D. Ky. 1986) (fraud practiced upon court by partner imputed to other partners who remained silent).

In sum, TSI and its executives "interfere[d] with the judicial system's ability impartially to adjudicate [this] matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989).  Due to this misconduct, TSI's tax evasion and its artificially-inflated claims to "lost profits" "w[ere] not—and could not have been—an issue at [trial], as neither the court nor [Swisher] knew that the [scheme] existed." *In re Levander*, 180 F.3d at 1120.  This conduct—misleading the Court and the jury, allowing false evidence to be presented and preventing the adversary from challenging it through concealment—amount to fraud upon the Court.  *Id.*; *In re Intermagnetics*, 926 F.2d at 916 (deceiving the court is one species of fraud upon the court); *Hazel–Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 245–46 (1944) (deliberately planned scheme to present fraudulent evidence constitutes fraud upon the court), *overruled on other grounds*, *Standard Oil Co. of Cal. v. United States*, 429 U.S. 17 (1976); *Eppes*, 656 F. Supp. at 1272 (finding fraud upon the court where a party presented false evidence during trial because "[w]e were all mislead.").

### 2. TSI's Misconduct Was Critical to the Outcome of the Case

The information that TSI concealed from Swisher "went to the central issue[s] in the case" and was "critical to the outcome of the case." *Stonehill*, 660 F.3d at 452.  Mr. Alrahib's fraudulent scheme and TSI's avoidance of federal taxes are directly relevant to virtually every issue the jury was asked to decide, including TSI's theory of liability, the existence and extent of damages and the credibility of TSI's witnesses.

TSI could not have procured the jury verdict in its favor without competent evidence of injury and damages. *See Magnetar Techs. Corp. v. Intamin, Ltd.,* 801 F.3d

1150, 1160 (9th Cir. 2015) (affirming grant of summary judgment where speculative evidence was insufficient to establish lost profits and injury resulting from such losses); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988) (affirming summary judgment for failure to establish amount, causation, or fact of damages after excluding plaintiff's expert opinion for failure to consider other causes of loss profits and simply attributed all of the lost profits to defendant).[18]  The newly uncovered fraud establishes, however, that "[TSI's] entire case rest[ed] on a false foundation." *Aoude*, 892 F.2d at 1117.  TSI's theory of injury and damages are critically dependent on TSI's profitability during the years the tax avoidance scheme was ongoing.

But as is now clear, TSI's profits during those years were a fiction.  As this court previously held, the "underpayment of excise taxes would plainly effect profitability." Dkt 163 at 4.  Because Mr. Alrahib's criminal conduct distorted TSI's costs, prices, demand and profitability, there is no competent, non-speculative evidence to show that there was any injury or the extent of damages caused by Swisher's conduct.  Cox Decl. ¶¶ 46-47.  "Lost profits" that are little more than lost opportunities to reap unlawful windfalls cannot support injury or damages. *Victor Talking Mach. Co. v. Kemeny*, 271 F. 810, 819 (3d Cir. 1921) ("[T]he learned trial judge fell into error when he permitted the jury to find damages by way of unrealized profits from evidence of profits which the plaintiff had made when engaged with the defendant in an unlawful business."); *Wyle*, 709 F.2d at 591 ("Although PFEL's illegal conduct could not be raised as a complete bar to its antitrust action, Sea-Land could have used that evidence to controvert the existence of damages or limit the amount.").

The unreliability of TSI's financial records also render any damages computed by Dr. McDuff defective, unreliable and inadmissible. *See* Fed. R. Evid. 702 (expert

---

[18] *See also* Dkt. 208, Instruction No. 33 (instructing the jury that TSI may not recover if its alleged injuries resulted from other causes such as TSI's mismanagement of its business), Instruction No. 37 ("If you find that the evidence of TSI sales and/or profit margins is not reasonable, and that lost profits may only be calculated using speculation or guesswork, you may not award damages for lost profits based on sales or profit margins.").

witness may testify only if "the testimony is based on sufficient facts or data.").  TSI's tax avoidance distorted all aspects of its operations such that no "probable loss could be ascertained as a matter of reasonable inference." *Eastman Kodak Co. of New York v. S. Photo Materials Co.*, 273 U.S. 359, 379, 47 S. Ct. 400, 405, 71 L. Ed. 684 (1927); *Magnetar*, 801 F.3d at 1159; *McGlinchy*, 845 F.2d at 808.  The best estimate of TSI's profits based on cost data untainted by tax fraud indicates that damages are likely *negative*.  Cox Decl. ¶¶ 43-45, Table 3.  Undoubtedly, the results of the trial would have been different if all these facts were presented to the jury.

TSI's concealment of Mr. Alrahib's tax fraud had other material effects on the trial as well.  Honesty was a central theme in TSI's case at trial.  TSI devoted considerable time in its closing attacking the credibility of Swisher's witnesses and extolling the supposedly unblemished credibility of its own witnesses.  As the CEO, founder and a shareholder of TSI, Mr. Alrahib's credibility was particularly critical to TSI's case.  Without the jury crediting Mr. Alrahib's testimony, TSI could not have prevailed at trial on any of its claims.

But as a result of TSI's misconduct, Mr. Alrahib's tax evasion scheme was concealed from the jury.  Mr. Alrahib's intentional evasion of excise taxes, however, would have been a fully valid area of inquiry in light of its relevance to core issues in this case and the importance of Mr. Alrahib's testimony.[19]  Mr. Alrahib's connivance in the creation of false documents to present to the government likewise would have been probative of his character for untruthfulness.[20]  After going to lengths to conceal Mr.

---

[19] *See* Fed. R. Evid. 608(b); *Kemper v. Merle Norman Cosmetics, Inc.*, 15 F.3d 1086 (9th Cir. 1994) (failure to file certain tax returns relevant to character for truthfulness); *United States v. Beridze*, 415 F. App'x 320, 328 (2d Cir. 2011) (cross-examination regarding witness's failure to pay income taxes permissible because it was "probative of his character for truthfulness").

[20] *See United States v. Whitmire*, 19 F.3d 1442 (9th Cir. 1994) ("Contrary to the district court's conclusion here, evidence of forgery may be admissible under Rule 608(b) as being probative of truthfulness or untruthfulness."); *United States v. Waldrip*, 981 F.2d 799, 803 (5th Cir. 1993) ("Rule 608 authorizes inquiry only into instances of misconduct that are clearly probative of truthfulness or untruthfulness, such as perjury, fraud, swindling, forgery, bribery, and embezzlement.").

1   Alrahib's tax evasion from Swisher, TSI simply "is in no position to dispute the

2   effectiveness of the scheme in helping to obtain a favorable jury verdict." *Pumphrey*,

3   62 F.3d at 1133 (citing *Hazel–Atlas* at 246–47).

4        The materiality of TSI's misconduct in each of these instances would

5   independently justify relief from judgment.  Combined together, there can be little doubt

6   that Mr. Alrahib's fraud and TSI's tax evasion "significantly change the picture already

7   drawn by previously available evidence." *Stonehill*, 660 F.3d at 435.  Accordingly, the

8   Court should grant Swisher relief from judgment.

9   **B.   Swisher Should Be Relieved From Judgment Under Rule 60(b)(2) Based On Newly Discovered Evidence**

10

11        Swisher should be relieved from judgment on the separate and independent

12   ground that newly discovered information concerning the fraudulent avoidance of taxes

13   on TSI's cigarillos, if discovered before trial, would have changed the disposition of this

14   case.  Under Rule 60(b)(2), courts may relieve a party from final judgment or order based

15   on "newly discovered evidence which by due diligence could not have been discovered

16   in time to move for a new trial under Rule 59(b)."  Fed. R. Civ. P. 60(b)(2).  To prevail

17   under Rule 60(b)(2), the movant must show that (1) the evidence relied on in fact

18   constitutes "newly discovered evidence" within the meaning of Rule 60(b); (2) the

19   movant exercised due diligence to discover this evidence; and (3) the newly discovered

20   evidence would have likely changed the disposition of the case.  *Feature Realty, Inc. v.*

21   *City of Spokane,* 331 F.3d 1082, 1093 (9th Cir. 2003); *Jones.*, 921 F.2d at 878; *Luna v.*

22   *Bell*, 887 F.3d 290, 294 (6th Cir. 2018).  These requirements are readily satisfied here.

23        First, Mr. Alrahib's tax evasion scheme was in existence at the time of the trial,

24   as Mr. Alrahib carried out his fraudulent scheme throughout 2013 and 2014 and likely

25   afterward.  The existence of this fraud, however, was not discovered until 2019.  Second,

26   Swisher exercised diligence to discover this information.  Swisher propounded all

27   appropriate discovery prior to trial, and the newly discovered information was called for

28   by such discovery requests.  Swisher had no basis to contest TSI's representations during

Gibson, Dunn & Crutcher LLP

20

the discovery period until it learned of Mr. Alrahib's criminal indictment and discovered that TSI had withheld material information from Swisher.   Lastly, information concerning TSI's tax avoidance, if it had been timely provided, likely would have changed the disposition of the case.   As discussed above, TSI's failure to pay federal excise taxes on its cigarillos goes to the core issues in the case.  *See*, *supra*, 17-20.  The Court should therefore relieve Swisher from judgment based upon this newly discovered evidence.

## C.   Swisher Should Be Relieved From Judgment Under Rule 60(b)(3) Based on TSI's Fraud, Misrepresentation, and Misconduct

Relief from judgment is also warranted here because TSI's misconduct prevented Swisher from fully and fairly presenting its case or defense.  *See Jones*, 921 F.2d at 878–79; Fed. R. Civ. P. 60(b)(3).  A party may obtain relief under Rule 60(b)(3) if it can show (1) "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party" and (2) that such fraud prevented it from fully and fairly presenting its case or defense.  *Jones*, 921 F.2d at 879.  Both elements are amply supported by the present record.

First, TSI engaged in conduct that warrants relief under section 60(b)(3).  "Failure to disclose or produce materials requested in discovery can constitute 'misconduct' within the purview of this subsection." *Jones*, 921 F.2d at 879; *Intel Corp. v. Advanced Micro Devices, Inc.*, No. C-90-20237-WAI, 1993 WL 135953, at *4 (N.D. Cal. Apr. 15, 1993).  Even unintentional failure to produce information or documents responsive to discovery request fall within Rule 60(b)(3).  *Jones*, 921 F.2d at 879; *Anderson v. Cryovac, Inc.*, 862 F.2d 910 (1st Cir. 1988); *Schultz v. Butcher,* 24 F.3d 626, 629-30 (4th Cir. 1994).  Additionally, "Fed. R. Civ. P. 60(b)(3) applies to both intentional and unintentional misrepresentations." *Lonsdorf v. Seefeldt*, 47 F.3d 893, 896 (7th Cir. 1995); *accord Bros Incorporated v. W.E. Grace Mfg. Co*., 351 F.2d 208, 211 (5th Cir. 1965); *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc*., 818 F.3d 1320, 1325 (Fed. Cir. 2016).  The range of improper conduct TSI engaged in throughout

the course of this lawsuit encompass all of the above categories.  Among other things, TSI failed to produce information and documents disclosing the actual federal excise taxes paid on its products despite numerous discovery requests calling for the information; several TSI witnesses offered misleading testimony during trial, deposition and in declarations submitted to the Court; TSI employees and witnesses misrepresented that they produced all information and documents called for by discovery; and TSI witnesses, including Dr. McDuff and TSI's CFO Mr. Kureh, misrepresented TSI's profitability.

Second, TSI's conduct substantially interfered with Swisher's defense of this case.  Significantly, a more lenient standard of materiality is applied under Rule 60(b)(3) as compared to Rule 60(b)(2).  For instance, Rule 60(b)(3) "does *not* require that the information withheld be of such a nature as to alter the result in the case," but rather simply requires that the misconduct "prevented the losing party from fully and fairly presenting his case or defense." *Rozier v. Ford Motor Co*, 573 F.2d 1332, 1339 (5th Cir. 1978) (emphasis added); *accord Jones,* 921 F.2d at 879; *Paulaner-Salvator-Thomasbrau AG v. Wolfgang Morandell Distrib., Inc.,* 931 F.2d 60 (9th Cir. 1991); *Schultz*, 24 F.3d at 631.  In the case of intentional misconduct, as where concealment was knowing and purposeful, the moving party can rely on a rebuttable presumption of substantial interference.  *Anderson*, 862 F.2d at 925; *Jones*, 921 F.2d at 879.

As discussed above, TSI's various misconduct likely changed the outcome of this case.  *See, supra,* 17-20.  Hence the more lenient standard of "substantial interference" is certainly satisfied here.  Moreover, substantial evidence shows that TSI's concealment of the tax evasion scheme was intentional and deliberate.  As discussed above, Mr. Alrahib was aware that he was evading taxes, but TSI intentionally concealed the information from Swisher. *See, supra,* 14-17.  His knowledge and intent as the CEO of TSI is imputable to the corporation.  *Wyle*, 709 F.2d at 590; *see also In re ChinaCast Educ. Corp. Sec. Litig*., 809 F.3d 471, 476 (9th Cir. 2015).  Thus, the burden shifts to TSI to rebut a presumption of substantial interference with clear and convincing

1   evidence.  *Anderson*, 862 F.2d at 925; *Jones*, 921 F.2d at 879.  TSI cannot carry that

2   burden.

3   **D.    Swisher Should Be Permitted to Amend this Motion with Additional**
        **Information Adduced in Discovery**

4

5       The grounds for granting this Motion are amply supported by the record.

6   However, to the extent the Court finds that Swisher has not yet met its burden, Swisher

7   should be permitted to conduct limited discovery to investigate additional facts, evidence

8   and grounds for relief that may exist.[21]  *See Universal Oil Prod. Co. v. Root Ref. Co.*,

9   328 U.S. 575, 580 (1946) ("The inherent power of a federal court to investigate whether

10  a judgment was obtained by fraud, is beyond question. [Citation] The power to unearth

11  such a fraud is the power to unearth it effectively."); *Pearson*, 200 F.3d at 35; *Rodriguez*

12  *v. IBP, Inc.*, 243 F.3d 1221, 1229 (10th Cir. 2001).  Swisher should then be permitted to

13  amend this motion with additional facts, evidence and grounds for relief adduced during

14  the limited discovery.  *See also The United States v. Stonehill,* 53 F. App'x 470, 471 (9th

15  Cir. 2002) (district court should "assist [the moving party] in obtaining relevant evidence

16  and should not rule on their motion to vacate until it has received and considered all

17  evidence that [they] may obtain within a reasonable time); *MMAR*, 187 F.R.D. at 286

18  (permitting discovery on Rule 60(b) motion and considering amended motion based on

19  information produced during discovery).   Swisher anticipates that, with TSI's

20  cooperation on an accelerated basis and barring any unforeseen circumstances, such

21  discovery could be completed within 90 days.  Swisher would then amend this motion

22  thirty days from the completion of the limited discovery.

23  **E.    Swisher's Motion is Timely**

24      Swisher's motion for relief is timely.  Relief from judgment procured through

25  fraud upon the court is not circumscribed by any time limit.  Fed. R. Civ. P. 60(d).

26  _____

27  [21]  Such discovery would be limited in scope and time to investigate the specific issues
        of Mr. Alrahib's tax fraud, its impact of TSI's financial records and the individuals

28      who were knowledgeable about and participated in concealing TSI's illegal tax
        avoidance.  If the Court so orders, Swisher will submit the proposed discovery re-
        quests that it intends to propound on TSI.

Indeed, a court may set aside even decades old judgment that has been procured by fraud on the court.  *See Hazel-Atlas,* 322 U.S. at 251 (setting aside a twelve year old judgment obtained through fraud on the court).

Motions for relief from judgment under section 60(b)(2) and 60(b)(3) must be made "within a reasonable time" and "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c).  "If the appeal results in a substantive change, then the time would run from the substantially modified order entered on mandate of the appellate court." *Transit Casualty Co. v. Security Trust Co.*, 441 F.2d 788, 791 (5th Cir. 1971), cert. denied 404 U.S. 883 (1971); *accord Harduvel v. Gen. Dynamics Corp.*, 801 F. Supp. 597, 602 (M.D. Fla. 1992).  Because the Ninth Circuit has reversed this Court's prior judgment, the one-year time limit on relief under Rule 60(b) starts from the Court's entry of judgment on remand.  That clock has not yet even started to run.

Swisher's motion also satisfies the reasonable time requirement.  Swisher learned of Mr. Alrahib's indictment just months ago in April 2019.  In the meantime, Swisher also pursued relief through other procedural channels, including seeking an *en banc* review from the Ninth Circuit and preparing a petition for certiorari to the Supreme Court.  Under these circumstances, Swisher's motion was made within a reasonable time. *See Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984); *Pierce Oil Corporation v. United States*, 9 F.R.D. 619, 621 (E.D.Va. 1949).[22]

---

[22] The Ninth Circuit's mandate does not deprive this Court of the authority to grant this motion either.  *Standard Oil Co. of California v. United States*, 429 U.S. 17, 18 (1976) ("Like the original district court judgment, the appellate mandate relates to the record and issues then before the court, and does not purport to deal with possible later events.  Hence, ***the district judge is not flouting the mandate by acting on the motion***.") *Id.* at 32 (emphasis added); *Gould v. Mut. Life Ins. Co. of New York*, 790 F.2d 769, 775 (9th Cir. 1986) ("[A] district court may decide postjudgment motions without leave of the appellate court, once the appellate mandate has issued."); *Rembrandt*, 818 F.3d at 1329 ("We also reject JJVC's argument that the mandate rule precludes consideration of Rembrandt's Rule 60(b) motions.  Our prior decision in this case did not address, explicitly or implicitly, Rembrandt's request for a new trial under Rule 60(b).").

## IV.   CONCLUSION

For the foregoing reasons, Swisher respectfully requests that the Court grant this motion and relieve Swisher from judgment and make such other orders as are just in the circumstances.   In the alternative, Swisher requests that the Court order accelerated discovery into TSI's misconduct and allow Swisher to amend this motion based on the additional information adduced during such discovery.

Dated: July 22, 2019

THEODORE J. BOUTROUS JR.
DANIEL G. SWANSON
CYNTHIA E. RICHMAN
MINAE YU
JULIAN KLEINBRODT

GIBSON, DUNN & CRUTCHER LLP

JOSHUA R. MANDELL
MICHAEL C. MARSH
RYAN ROMAN

AKERMAN LLP


By:  /s/ Daniel G. Swanson
                Daniel G. Swanson

Attorneys for Defendant
SWISHER INTERNATIONAL, INC.

Gibson, Dunn &
Crutcher LLP

25