# TRENDSETTAH'S OPPOSITION TO SWISHER'S RULE 60 MOTION

## (Redacted Version of Document Sought to Be Sealed)

MARK POE (S.B. #223714)
 mpoe@gawpoe.com
RANDOLPH GAW (S.B. #223718)
 rgaw@gawpoe.com
SAMUEL SONG (S.B. #245007)
 ssong@gawpoe.com
VICTOR MENG (S.B. #254102)
 vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

Attorneys for Plaintiffs
Trendsettah USA, Inc. and Trend Settah, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| TRENDSETTAH USA, INC. and TREND SETTAH, INC.<br><br>Plaintiffs,<br><br>v.<br><br>SWISHER INTERNATIONAL, INC.<br><br>Defendant. | Case No. 8:14-CV-01664-JDS (DFMx)<br><br>**TRENDSETTAH'S OPPOSITION TO SWISHER'S RULE 60 MOTION**<br><br>Judge:      The Hon. James V. Selna<br>Courtroom: Courtroom 10C<br>Date:       August 19, 2019<br>Time:       3:00 p.m. |

1

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND .................................................................................... 2

      A.    Federal Excise Taxes ................................................................................ 2

      B.    Swisher's Discovery Efforts Concerning Excise Taxes ............................ 4

      C.    The Timing of Swisher's Discovery of this "Critical" Information .......... 6

      D.    The Entire Premise of Swisher's Motion is Wrong. .................................. 7

LEGAL STANDARD .............................................................................................. 10

ARGUMENT ........................................................................................................... 12

I.     SWISHER DOES NOT IDENTIFY ANY "FALSE" EVIDENCE THAT WAS PRESENTED TO THE COURT OR JURY. .................................................. 12

II.    RELIEF UNDER SUBSECTIONs (B)(2) AND (B)(3) IS TIME-BARRED .. 13

III.   SWISHER FAILS TO IDENTIFY ANY FRAUD ON THE COURT. ........... 15

IV.   THE MANDATE RULE PRECLUDES REVISITATION OF THE EVIDENCE ANYWAY. .................................................................................. 22

V.    THE MANDATE RULE AND PRECEDENT PRECLUDE SWISHER'S EFFORT TO DELAY EXECUTION BY UNFOUNDED DISCOVERY. ...... 24

CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Appling v. State Farm Mut. Auto. Ins. Co.*,
  340 F.3d 769 (9th Cir. 2003) ........................................................................ 21, 22

*Bowie v. Maddox*,
  677 F. Supp. 2d 276 (D.D.C. 2010) .................................................................. 25

*Casey v. Albertson's Inc.*,
  362 F.3d 1254 (9th Cir. 2004) ......................................................................... 11

*Cowherd v. Litteral*,
  2018 WL 6004667 (E.D. Ky. Nov. 15, 2018) ..................................................... 13

*De Saracho v. Custom Food Mach., Inc.*,
  206 F.3d 874 (9th Cir. 2000) ............................................................................ 11

*Feature Realty, Inc. v. City of Spokane*,
  331 F. 3d 1082 (9th Cir. 2003) .................................................................... 10, 14

*In re Four Seasons Sec. Laws Litig.*,
  63 F.R.D. 422 (W.D. Okla.), *aff'd*, 525 F.2d 500 (10th Cir. 1975) .................... 11

*Gould v. Mutual Life Insurance Company of New York*,
  790 F.2d 769 (9th Cir. 1986) ............................................................................ 23

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
  322 U.S. 238 (1944) ......................................................................................... 21

*Jones v. Aero/Chem Corp.*,
  921 F.2d 875 (9th Cir. 1990) ............................................................................ 10

*Jones v. Swanson*,
  512 F.3d 1045 (8th Cir. 2008) .......................................................................... 15

*Jules Jordan Videos, Inc. v. Kaytel Video Distrib.*,
  No. 05-CV-0517-SJO-JTLX, 2011 WL 13262041 (C.D. Cal. June
  27, 2011), *aff'd* 468 F. App'x 676 (9th Cir. 2012).............................................. 24

*Latshaw v. Trainer Wortham & Co.*,
    452 F.3d 1097 (9th Cir. 2006) ............................................................. 18

*In re Levander*,
    180 F.3d 1114 (9th Cir. 1999) ............................................... 11, 20, 21

*Lindy Pen Co. v. Bic Pen Corp.*,
    982 F.2d 1400 (9th Cir. 1993), *overruled on other grounds by*
    *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th
    Cir. 2016) ................................................................................................ 25

*M2 Software Inc. v. Madacy Entm't*,
    463 F.3d 870 (9th Cir. 2006) (J. Pregerson, concurring) ...................... 7

*Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of
    Contemporary Dance, Inc.*,
    466 F.3d 97 (2d Cir. 2006) ................................................................... 11

*McGhee v. Joutras*,
    1996 WL 706919 (N.D. Ill. Dec. 5, 1996) ........................................... 13

*Moore v. Landers*,
    2010 WL 2486270 (W.D. Wis. June 16, 2010)................................... 13

*Nevitt v. United States*,
    886 F.2d 1187 (9th Cir. 1989) ............................................................. 15

*Norris v. F.B.I.*,
    1990 WL 134276 (9th Cir. Sept. 18, 1990).......................................... 13

*Norwood v. Vance*,
    2013 WL 1738625 (9th Cir. Apr. 23, 2013)........................................ 14

*Pizzuto v. Ramirez*,
    783 F.3d 1171 (9th Cir. 2015) ............................................................. 22

*Pumphrey v. K.W. Thompson Tool Co.*,
    62 F.3d 1128 (9th Cir. 1995) ........................................... 18, 20, 21, 25

*Rembrandt Vision Technologies, L.P. v. Johnson & Johnson Vision
    Care, Inc.*,
    818 F.3d 1320 (Fed. Cir. 2016) ..................................................... 23, 24

*Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*
    *(Rembrandt I)*,
    725 F.3d 1377 (Fed. Cir. 2013) ................................................................ 23, 24

*In re Roussos*,
    541 B.R. 721 (Bankr. C.D. Cal. 2015) ............................................................. 21

*Searcy v. Esurance Ins. Co.*,
    2016 WL 4149964 (D. Nev. Aug. 1, 2016)...................................................... 22

*Shelstad v. W. One Bank*,
    1997 WL 753568 (9th Cir. Dec. 4, 1997) ....................................................... 17

*Singh v. I.N.S.*,
    213 F.3d 1050 (9th Cir. 2000) ........................................................................ 13

*Swisher Int'l v. Schafer*,
    550 F.3d 1046 (11th Cir. 2008) ........................................................................ 3

*United States v. Estate of Stonehill*,
    660 F.3d 415 (9th Cir. 2011) .......................................................................... 17

*United States v. Ramirez*,
    710 F.2d 535 (9th Cir. 1983) .......................................................................... 13

*United States v. Shoemaker*,
    626 F. App'x 93 (5th Cir. 2015)...................................................................... 17

*United States v. Sierra Pac. Indus., Inc.*,
    862 F.3d 1157 (9th Cir. 2017) ................................................................*passim*

*Valdez v. Saxon Mortg. Servs., Inc.*,
    No. 2:14-CV-03595-CAS, 2014 WL 7968109 (C.D. Cal. Sept. 29,
    2014) ............................................................................................................... 20

*Warren v. Garvin*,
    219 F.3d 111 (2d Cir. 2000) ........................................................................... 14

*Weese v. Schukman*,
    98 F.3d 542 (10th Cir. 1996) .......................................................................... 13

*Winding v. Wells Fargo Bank*,
    2012 WL 603217 (E.D. Cal. Feb. 23, 2012), *aff'd* 706 F. App'x 918
    (9th Cir. 2017) ................................................................................................ 13

*Zendel v. ABC Video Prods.*,
   No. 10-cv-2889-VBF, 2013 WL 1396572 (C.D. Cal. Mar. 29, 2013) ................................................................................ 11

**Federal Statutes**

7 U.S.C.
   § 518d(g)(3)(A) ................................................................ 3

26 U.S.C.
   § 5703(a)(1) .................................................................... 7

**Other Authorities**

Fed. R. Civ. P. 60(b)(1) ..................................................... 14

Fed. R. Civ. P. 60(b)(2) .............................................. 10, 11

Fed. R. Civ. P. 60(b)(3) .............................................. 11, 14

Fed. R. Civ. P. 60(b)(6) ..................................................... 17

Fed. R. Civ. P. 60(c)(1) ............................................. 11, 14

Fed. R. Civ. P. 60(c)(1) ............................................... *passim*

Fed. R. Evid 609 .............................................................. 19

L.R. 7-4 ............................................................................ 10

1

**INTRODUCTION**

2      Swisher's motion is not well-founded.  Despite its breathless accusation that

3 Trendsettah presented "false" evidence to the Court and jury, through 25 pages of

4 briefing and over 500 pages of supporting materials, Swisher fails to identify even

5 one false statement that was made in written discovery, at deposition, in expert

6 reports, or at trial.  Instead, Swisher's hypothesis is that *if* the allegations in the

7 indictment are true, the importer Havana 59 *should have* paid higher excise taxes, it

8 *should have* passed *all* of those amounts on to Trendsettah, and that the evidence

9 regarding Trendsettah's cost-basis *should have* been accordingly higher.

10      It is imperative to understand this distinction:  Despite Swisher's reckless use

11 of the adjectives "false" and "inaccurate" throughout its brief, its argument is not

12 that the evidence presented to the Court and jury was *actually* incorrect or false; its

13 argument is that in a hypothetical world constructed ex-post, the evidence *should*

14 *have* been different.  In 25 pages of briefing, it cites no precedent for vacating a

15 judgment based on a speculative chain of counterfactuals, when the evidence in the

16 years-old trial was *in fact* correct as adjudicated.

17      Even then, Swisher disregards its own responsibility for advocacy.  Among

18 its chief arguments is that when Trendsettah conducted the direct examinations of

19 Mr. Alrahib, Mr. Kureh, and Dr. McDuff, *Trendsettah's* counsel should have

20 elicited information regarding excise taxes.  What about Swisher's counsel?  Were

21 they potted plants?  If Swisher had believed—as its new counsel now asserts three

22 years after the jury's verdict—that excise taxes are "critical to the outcome of the

23 case" (Mot. at 17), why didn't Swisher's counsel ask *even a single question on that*

24 *topic* over eight depositions, why didn't it pursue the subpoena it had served on

25 Havana 59 (the importer that was liable for the taxes), why didn't its expert witness

26 offer any thoughts on the criticality of excise taxes, and why didn't it ask even a

27 single question about excise taxes over the 1,000+ pages of the trial transcript?

28      Swisher proclaims that "TSI prevented Swisher from uncovering TSI's tax

1  avoidance during discovery and at trial" (Mot. at 2), but how?  The only means

2  Swisher identifies is Trendsettah's objection to three RFPs. (*Id.* at 7.)  But

3  Trendsettah's grounds for objection were limited to "relevance" and "undue

4  burden." (Roman Decl. Ex. C, RFP Nos. 26-28.)  If Swisher disagreed with those

5  grounds, why didn't it move to compel?  Moreover, as Swisher well knows,

6  Trendsettah's excise tax filings would not have yielded any information relevant

7  either to this case, or to Swisher's current arguments, because Trendsettah is not the

8  importer, and thus does not pay federal excise taxes.  (*See* Decl. of Tatum Hilmoe

9  ¶¶ 3-5.)  In any event, Trendsettah's counsel were extremely busy with their *own*

10 development and presentation of the case; they didn't have time to do both sides'

11 homework, nor to help opposing counsel develop its strategy on "critical issues,"

12 nor to elide points in direct examination that might prove useful to the other side.

13    Even then, what does Swisher want?  It neither identifies the judgment or

14 order from which it seeks relief, nor asks the Court for any particular remedy.

15 (Mot. at 1-25.)  While federal courts often step in to help *pro se* litigants figure out

16 what they want, and how to get there, Swisher should not need the Court's help to

17 figure out what ruling it is challenging, and what remedy it wants.

18    More importantly, the entire premise of Swisher's argument—that Dr.

19 McDuff's calculations *would have* been different if the allegations in the indictment

20 are true—is incorrect.  (*See Factual Background*, part D, *infra*.)  Trendsettah was

21 invoiced for (and paid) the excise tax amounts claimed by Havana 59, and those

22 amounts are fully supportive of the cost basis that Dr. McDuff used.

23                    **FACTUAL BACKGROUND**

24    **A.   Federal Excise Taxes**

25    Swisher's brief is replete with allegations about "TSI's failure to pay federal

26 excise taxes on its cigarillos," and allegations that Trendsettah concealed "the

27 critical fact that it avoided paying *its* federal excise taxes." (Mot. at 21, 8 (emphasis

28 added).)  These assertions reveal a misunderstanding of both the facts (*infra* at part

D), and of the law on federal excise taxes.  As explained in the indictment, it is the *importer* that is "required to pay Federal Tobacco Excise Tax directly to CBP." (Yu Decl. Ex. A at 2, ¶ 5).  Because Trendsettah does not have an importer's license, it never had "excise tax obligations," as Swisher misleadingly contends. (Mot. at 14; *cf.* Hilmoe Decl. ¶¶ 3-5.)  Accordingly, even if Swisher had brought a motion to compel Trendsettah to produce its other types of tax filings (an extremely burdensome proposition), it would not have obtained *any* relevant information on the issue it complains about here.  (*Id.* ¶¶ 6-11, 16.)  On this point, it is telling that despite the government learning about Mr. Bryant's conduct (and Mr. Alrahib's alleged involvement) back in May 2017 (Yu Decl. Ex. B at 3), no taxing authority has ever claimed that Trendsettah either underpaid, or is delinquent on, federal excise taxes.[1]

In truth, it was Havana 59 that supposedly underpaid the excise taxes on the Splitarillos it imported.  (Yu Decl. Ex. A at 6 ¶¶ 7-8.)  This fact is critical to understand, because Swisher served a subpoena on Havana 59 in this litigation. (Gaw Decl. ¶ 29, Ex. 8.)  Trendsettah did not move to quash the subpoena, or take any other action.  (*Id.*)  Rather, it was *Swisher* who "met and conferred" with Havana 59, and came up with "an agreed order to resolve the issues raised in Swisher's Motion to Compel Non-Parties Havana 59," in satisfaction of Swisher's subpoena.  (*Id.* ¶¶ 30-31, Exs. 9 & 10.)  Apparently Swisher's position is that after it received Trendsettah's objections to the three document requests in August 2015, it was so cowed that it threw in the towel on this "critical issue," and therefore declined to pursue it ever again, even by exploring the issues with the importer responsible for tendering those payments in the first place, and with whom Swisher

---

[1] Swisher also refers to its document request for Fair and Equitable Tobacco Reform Act ("FETRA") filings, but FETRA does not impose an excise tax for importing tobacco products, so is 100% irrelevant.  (Hilmoe Decl. ¶¶ 12-15); *Swisher Int'l v. Schafer*, 550 F.3d 1046, 1049-50 (11th Cir. 2008); 7 U.S.C. § 518d(g)(3)(A).

1   had worked out an "agreed order to resolve the issues." (*Id.*)

2       **B.   Swisher's Discovery Efforts Concerning Excise Taxes**

3         As noted, Swisher served just three document requests that conceivably

4   called for production of information related to federal excise taxes.  (Roman Decl.

5   Ex. C at 12, Nos. 26-28.)  In its August 28, 2015 responses, Trendsettah served an

6   identical two-sentence objection to each request, on grounds of relevance and

7   burden.  (*Id.*)  The parties thereafter exchanged email on these requests, with

8   Trendsettah standing on its objections.[2]  (Mot. at 7.)  Swisher casually accuses Gaw

9   | Poe of making "misrepresentations" in that exchange (*id.*), but fails to deliver the

10  punchline, by explaining *what* was misrepresented.  In any event, Swisher did not

11  bring a motion to compel any responsive documents, nor otherwise pursue the issue

12  in discovery.  (Gaw Decl. ¶¶ 22-25.)  In fact the record indicates that Swisher

13  stopped pressing for excise tax filings due to Trendsettah's request that any such

14  undertaking be reciprocal.  (*Id.* ¶ 26.)

15        Nevertheless, Swisher declares that Trendsettah "remained obligated to

16  produce all documents from which TSI's federal excise tax payments could be

17  ascertained." (Mot. at 8.)  The supposed basis for this "obligation" is Swisher's

18  assertion that "TSI had represented that it would [do so]." (*Id.*)  But where does

19  such a "representation" appear?  Nowhere.  Swisher might be referring to counsel's

20  anticipation in August 2015 (before a single document had been produced) that the

21  tax information "will be available in TSI's sales records." (*Id.* at 7.)  Swisher does

22  not cite authority or logic for how that expectation turned into an "obligat[ion] to

23  produce all documents" related to excise taxes.  And if this "critical" information

24  was not found in Trendsettah's sales records as expected, why didn't Swisher say

25  

---

26  [2] Swisher *still* seems to misunderstand the nature of the documents that it called for.
    As shown in the Gaw and Hilmoe declarations, the information called for by the
27  RFPs *was* (and *remains*) irrelevant, and it *would* have been highly burdensome to
    collect.  (Gaw Decl. ¶¶ 22-26; Hilmoe Decl. ¶¶ 3-16.)
28

one word about this absence of "critical" information until new counsel came along and brainstormed its supposed significance four years later?

In a similar vein, Swisher declares that "TSI repeatedly sought to remove search terms related to federal excise taxes." (Mot. at 7.)  This is a strange thing to say, because Swisher then acknowledges that Trendsettah *agreed* to run the disputed terms through its ESI and offered the search results, and *admits* that it was *Swisher's counsel* who "agreed to remove search terms relating to federal excise taxes" (after seeing the hit report).  (*Id.*)  The exchange between counsel on this issue is submitted herewith.  (Gaw Decl. ¶¶ 2-15, Exs. 1-4.)  Moreover, Trendsettah's production was exceedingly thorough.  It produced all documents that hit upon one or more of Swisher's search term (over 420,000 documents, compared to Swisher's relatively paltry production of fewer than 80,000 documents).  (*Id.* ¶¶ 2-12.)  It also produced 5 GB of data from its principals' phones, including all text messages sent between Mr. Alrahib and Mr. Bryant (over 2,800 messages).  (*Id.* ¶¶ 13-15.)  Trendsettah also produced its Quickbooks file, which contained general ledger/journal entry level data on every single transaction involving Trendsettah (including anything to do with taxes), but Swisher did not even look at the file until 3 weeks before the start of trial.  (*Id.* ¶ 16-21 & Ex. 5.)

Swisher took seven depositions of Trendsettah employees in this case.  (*Id.* ¶ 32.)  Other than asking Mr. Alrahib a couple of questions about his 2004 forfeiture proceedings, it did not ask a single witness a single question about excise taxes, including Dr. McDuff.  (*Id.* ¶¶ 32-39 & Exs. 11-17.)  In fact, Swisher did not ask *any* questions of Trendsettah's costs related to Splitarillos.  (*Id.*).  Swisher's expert Dr. Cox prepared three expert reports in this matter, all three of which set forth various challenges to Dr. McDuff's damages model.  (*Id.* ¶¶ 40-43 & Exs. 18-21.) Dr. Cox did not mention anything about excise taxes on Splitarillos, nor did he challenge Dr. McDuff's supposed failure to account for taxes in his cost-basis calculation.  (*Id.*)  Furthermore, Swisher served 22 interrogatories, none of which

called for information about excise taxes.  (*Id.* ¶¶ 27-28 & Exs. 6-7.)

The trial lasted eight days.  Swisher did not ask a single witness a single question about Trendsettah's (non-existent) obligation to pay excise tax, nor did it ask how much excise tax had been passed on by third parties to Trendsettah, nor the basis of any such calculation.  (*See* 3/15/16 Trial Tr. – 3/30/16 Trial Tr.)  Will Swisher say that after receiving Trendsettah's objections in August 2015, it was so cowed by the assertions of "irrelevance" and "undue burden" that it was forced to ignore this "critical" issue over the ensuing seven months, through eight depositions, three expert reports, and eight days of trial?

On this record, all of Swisher's hyperbolic rhetoric about "concealment" is nonsense.  Trendsettah refers the Court to paragraphs 2-26 of the Gaw Declaration for a fulsome description of Trendsettah's document collection and production.  A more accurate description of what Swisher complains about in this motion is that excise taxes "were of no interest to Swisher in discovery or trial, and the 'criticality' of that issue was not asserted until over three years after the jury had returned its verdict, after it engaged new counsel."  If parties could vacate judgments upon viewing the proceedings in hindsight, and wishing they had pursued different discovery and presented a different theory of the case, the judiciary would never get anything done.

**C.   The Timing of Swisher's Discovery of this "Critical" Information**

Swisher acknowledges that it learned of Mr. Alrahib's indictment when it issued on April 12, over two months before the mandate issued, and while Swisher's petition for rehearing was still pending.  (Mot. at 24.)  Thereafter, Swisher filed its motion to stay the mandate on April 23, featuring Mr. Alrahib's indictment as a primary argument.  (Request for Judicial Notice ("RJN"), Ex. B at 9.)  In its May 9 opposition to Trendsettah's cross-motion to *issue* the mandate, Swisher again relied extensively on the indictment.  (RJN, Ex. C at 12-16.)  While "fraud on the court" is equally a basis for a motion to recall the mandate as it is for

a Rule 60 motion, *M2 Software Inc. v. Madacy Entm't*, 463 F.3d 870, 871 (9th Cir.
2006) (J. Pregerson, concurring), Swisher did not timely ask the Panel for the relief
it requests here.  As explained below, its strategic decision to hold its arguments in
reserve (until after the mandate issued) prevents them from being considered now.

### D.   The Entire Premise of Swisher's Motion is Wrong.

Despite the oft-repeated warning that a prosecutor can indict a sandwich,
Swisher appears to treat the indictment as established fact.  Taking the indictment
as conclusive evidence, it leaps from the allegation that *Mr. Alrahib and Havana 59*
conspired to underpay excise taxes, to tell the Court that "TSI avoided paying
federal excise taxes of 52.75% per cigarillo," and "present[ed] to the jury and the
Court a falsely inflated picture of the profitability of its cigarillo sales out of which
its expert constructed a largely, if not entirely, sham claim for 'lost profits.'"  (Mot.
at 1, 2.)  But as stated already, Trendsettah has never had *any* obligation to pay
excise taxes.  *Supra* at 3; *see also* 26 U.S.C. § 5703(a)(1).

It is important to note that the indictment says nothing about whether, and
how much, *Trendsettah* was invoiced by Havana 59 to cover the importer's excise
taxes, nor how much it paid.  In lieu of any hint from the government, Swisher fills
in that gap with pure speculation that Havana 59's entire underpayment must have
been passed along to Trendsettah.  It then proclaims its speculation to the Court as
established fact.

The premise of Swisher's argument is wrong.



---

[3] These are merely examples that counsel dug up from a hard drive that contains a
partial collection of the Trendsettah email accounts of Mr. Alrahib and Salah Kureh,
the then-CFO.  (Poe Decl. ¶ 3.)

1  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

2  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

3  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

4  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

5  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

6  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

7      Swisher insinuates fraudulent conduct by Dr. McDuff, by alluding to his

8  having "worked directly with both co-conspirators."  (Mot. at 9.)  It points to

9  Attachment C-6 of Dr. McDuff's report, where the "the cornerstone of his injury

10  and damages analysis" is found.  (*Id.*)  But how does Dr. McDuff's "inaccurate and

11  misleading" data compare to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

12  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

13  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  (Yu Decl. Ex. G at 95.)

14  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

15  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

16  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

17  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

18  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓  (Decl. of Salah Kureh ¶¶ 2-5, Exs. A & B).

19  Between that document and Swisher's subpoena to Havana 59, the record shows

20  that if Swisher had had any interest in excise taxes years ago, it had all of the

21  information it needed to pursue the inquiry.  If it *had* undertaken the inquiry at the

22  time, it would have learned that its argument in this brief is baseless.

23      To head off a similarly flimsy argument by which Swisher might seek to

24  provide cover for its blunder, the indictment alleges that "ALRAHIB purchased the

25  _____

26  [4] ▓▓▓▓▓▓▓▓▓▓▓▓▓

27  [5] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

28  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

(Gaw Decl. ¶ 45, Ex. 22 (Caldropoli Dep. at 21:9-22:15).)

1  cigars directly from the Dominican Republic-based manufacturer, at a price of

2  between approximately $0.04 and $0.07 per cigar." (Yu Decl. Ex. A at 6 ¶ 9.)  In

3  the same paragraph, it explains that "[i]n total, ALRAHIB caused approximately

4  $9,914,921 to be sent to the Dominican Republic-based manufacturer." (*Id.*)  The

5  government's "per cigar" calculation is off.  The evidence shows that Trendsettah

6  purchased a total of 307,940,495 sticks from its Dominican supplier.  (Yu Decl. Ex.

7  Y.)   And according to the government, the "total" amount paid to that manufacturer

8  was $9,914,921.  (*Id.* Ex. A at 6 ¶ 9.)  That works out to an average price of 3.2¢

9  per cigar.

10

11  (Yu Decl. Ex. G at 95).  But even

12  if the *range* the government alleges of a first-sale price of $.04-.07 per stick were

13  correct, it would imply a tax-included cost basis of $.06-.11,

14  (Yu Decl. Ex. X.).

15  Even if this were a time for "error correction"—and even if an indictment were

16  "evidence"—the evidence suggests that ***there is no error to correct***.  At bottom, no

17  matter how one calculates it, the underlying "cost per stick" that drove Dr.

18  McDuff's lost profits calculation is 100% consistent both with the Havana 59 excise

19  tax invoices, and with the "evidence" alleged in the indictment.

20      Swisher's reckless ploy to yet again undermine the jury's verdict has been

21  exposed.  Knowing the above facts, it becomes obvious why the government has

22  not indicted Trendsettah for underpaying the taxes—there is no evidence that it did.

23  The evidence indicates that Trendsettah paid the appropriate amount of funds to Mr.

24  Bryant.  The indictment suggests that *Mr. Bryant* failed to remit those funds to the

25  U.S. Treasury, as the importer who was responsible for their tender.  While Mr.

26  Alrahib is alleged to have conspired with Mr. Bryant in that endeavor, the foregoing

27

28

1   casts serious doubt on the validity of the indictment against Mr. Alrahib.[6]

2       At this point, Swisher should use its reply brief to offer an apology to

3   Trendsettah, Trendsettah's counsel, and especially to Dr. McDuff.  Somehow,

4   however, we expect Swisher to double-down on its pratfall.  Accordingly,

5   Trendsettah will proceed to show why Swisher's legal arguments are as baseless as

6   its factual understanding.

7   **LEGAL STANDARD**

8       Along with failing to identify what "judgment or order" it is challenging, and

9   failing to tell the Court what "relief" it seeks,[7] Swisher's 25-page brief fails to

10  apprise the Court of the legal standards that govern this motion.  (Mot. at 1-25.)  Per

11  usual, Trendsettah will do the homework that Swisher eschews.

12      Swisher's motion is brought pursuant to subsections (b)(2), (b)(3), and (d) of

13  Rule 60.  (unpaginated Not. of Mot.)

14      Rule 60(b)(2) pertains to "newly discovered evidence."  Under that

15  subsection, "the movant must show the evidence (1) existed at the time of the trial,

16  (2) could not have been discovered through due diligence, and (3) was 'of such

17  magnitude that production of it earlier would have been likely to change the

18  disposition of the case.'"  *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir.

19  1990).  With special import to the question of *which* judgment Swisher seeks relief

20  from, is the requirement that evidence "in the possession of the party before the

21  judgment was rendered is not newly discovered."  *Feature Realty, Inc. v. City of*

22  *Spokane*, 331 F. 3d 1082, 1093 (9th Cir. 2003) (denying relief where the movant's

23  attorneys had "received that information eight days before entry of judgment.").

24  _____

25  [6] Indeed, the magistrate overseeing Mr. Alrahib's case has cast doubt on the government's version of events with respect to other issues in that proceeding.

26  (RJN, Ex. A ¶ 8 ("I reject the Government's characterization of Defendant's statements as dishonest.").)

27  [7] *See* L.R. 7-4 ("The notice of motion shall contain a concise statement of the relief

28  or Court action the movant seeks.")

Furthermore, "'[n]ewly discovered evidence', as that term is used in Rule 60(b)(2), means evidence in existence at the time of the trial or of the judgment, not future events." *In re Four Seasons Sec. Laws Litig.*, 63 F.R.D. 422, 432 (W.D. Okla.), *aff'd*, 525 F.2d 500 (10th Cir. 1975).

Rule 60(b)(3) pertains to "fraud" "misrepresentation," or "misconduct by an opposing party." Under that subsection, the movant "must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense." *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000). In addition, this subsection "require[s] that [the alleged] fraud . . . not be discoverable by due diligence before or during the proceedings." *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004).

Under either subsection (b)(2) or (b)(3), the motion "must be made . . . no more than a year after the judgment or order." Fed. R. Civ. P. 60(c)(1). This "one-year limitation period for Rule 60(b) motions is 'absolute.'" *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 466 F.3d 97, 100 (2d Cir. 2006). "While enforcement of the time limit may seem unfair, the general purpose of Rule 60(b) is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Zendel v. ABC Video Prods.*, No. 10-cv-2889-VBF, 2013 WL 1396572, at *7 (C.D. Cal. Mar. 29, 2013).

Rule 60(d) ups the ante even further. Under that subsection, "not all fraud is fraud on the court." *In re Levande*r, 180 F.3d 1114, 1119 (9th Cir. 1999). Rule 60(d) extends only to "fraud which does or attempts to, [1] defile the court itself, or [2] is a fraud perpetrated *by officers of the court* so that the judicial machinery can not perform in the usual manner." *Id.* (emphasis added, quoting 7 *James Wm. Moore et al.*, *Moore's Federal Practice* ¶ 60.33, at 515 (2d ed. 1978).) Under Rule 60(d), "non-disclosure by itself does not constitute fraud on the court." *Id.* Even

"perjury by a party or witness, by itself, is not normally fraud on the court."  *Id.*

**ARGUMENT**

### I.   SWISHER DOES NOT IDENTIFY ANY "FALSE" EVIDENCE THAT WAS PRESENTED TO THE COURT OR JURY.

Despite Swisher's pervasive and reckless use of the adjectives "false" and "inaccurate" (Mot. at 1-25), it is important to note that Swisher does not identify a single *false* piece of evidence that was actually presented to the jury.  Its argument is that if the Court were to hold a collateral mini-trial to adjudicate Trendsettah's historical tax liability, and that if Swisher's theory of that liability were to be borne out in that proceeding, then the Court should undertake a thought experiment by which the parties and witnesses board a time machine to take that *future* result back to March 2016, present the updated adjudication to the jury, and consider whether it would have awarded a different amount of damages.  Even ignoring all of the foregoing legal standards that constrain Rule 60 motions, in the 230-year history of the federal judiciary, Swisher has not identified a single precedent whereby a subsequent adjudication was conducted to determine whether the evidence presented in a prior adjudication (accurate at the time) *should have* been different than it was.

To clarify, Swisher does not allege that Trendsettah *actually* had higher costs than were reported to the jury, or that it *actually* had a lower profit margin.  (Mot. at 1-25.)  Accurately described, Swisher's argument is only that Trendsettah *should have* had higher costs and/or lower profit margins back in 2013-15—an argument that part D of the *Factual Background* shows is untrue.

As explained in that section, Swisher's argument as to what Trendsettah's costs *should have been* is based on its misunderstanding of how excise taxes work.  But even then, Swisher does not cite a single case in which a court has agreed to vacate a years'-old judgment in order to determine through an ex-post proceeding whether the then-accurate evidence presented to the jury *should have* been different,

1   if one or another of the parties had conducted itself differently than in real life, or if

2   one of the parties had pursued discovery that at the time it had decided to forgo.

3        Even setting aside Swisher's demonstrated factual error, Swisher has

4   presented *no competent evidence* to undermine Dr. McDuff's calculations.

5   Swisher's motion relies upon two things.  The first is a government indictment (Yu

6   Decl., Ex. A), which is not "evidence."  *See, e.g.*, *United States v. Ramirez*, 710

7   F.2d 535, 545 (9th Cir. 1983); *see also McGhee v. Joutras*, 1996 WL 706919, at *7

8   (N.D. Ill. Dec. 5, 1996) ("But if the indictment 'is not evidence of any kind' (and as

9   the universal forms of jury instruction confirm, it is not), it would offend reason

10  to *admit* the indictment or any reference to it into evidence in a civil case (and that

11  is so *a fortiori* in this case, where defendant Dorn is not himself even the indicted

12  person).").  The second is a government brief (Yu Decl., Ex. B) that purports to

13  recount Mr. Alrahib's statements, which is also not evidence.  *See Singh v. I.N.S.*,

14  213 F.3d 1050, 1054 n.8 (9th Cir. 2000) (statements in brief are not evidence).

15       On Rule 60 motions, "[t]he proffered evidence must be admissible."

16  *Winding v. Wells Fargo Bank*, 2012 WL 603217, at *9 (E.D. Cal. Feb. 23, 2012),

17  *aff'd* 706 F. App'x 918 (9th Cir. 2017); *Norris v. F.B.I.*, 1990 WL 134276, at *2 (9th

18  Cir. Sept. 18, 1990) (same).  Furthermore, "[w]hen alleging a claim of fraud on the

19  court, the plaintiff must show by clear and convincing *evidence* that there was fraud

20  on the court, and all doubts must be resolved in favor of the finality of the

21  judgment."  *Weese v. Schukman*, 98 F.3d 542, 552 (10th Cir. 1996) (emphasis

22  added).

## II.   RELIEF UNDER SUBSECTIONS (B)(2) AND (B)(3) IS TIME-BARRED.

24       As noted, it is unclear what "judgment or order" Swisher seeks relief from.

25  *See, e.g.*, *Cowherd v. Litteral*, 2018 WL 6004667, at *1 (E.D. Ky. Nov. 15, 2018)

26  ("Mr. Cowherd did not identify the judgment from which he seeks relief, as

27  required by Rule 60(b)."); *Moore v. Landers*, 2010 WL 2486270, at *1 (W.D. Wis.

June 16, 2010) ("Moore's motion is unfocused and difficult to understand, particularly because he fails to identify what final judgment or order he is challenging."). Regardless, Swisher's vague request is precluded by the temporal constraints that govern both subsections (b)(2) and (b)(3). Under subsection (c)(1), a motion under either section "must be made" "no more than a year after the entry of the judgment or order."

Swisher's motion would not be apt to a *prospective* judgment because, as explained in the *Legal Standard* section above, evidence "in the possession of the party before the judgment was rendered is not newly discovered." *Feature Realty, Inc.*, 331 F. 3d at 1093. Swisher says that it learned the evidentiary basis for its motion in April 2019. (Mot. at 24.) Accordingly, if it means to ask this Court for relief from either (A) the Ninth Circuit's June 24 mandate, or (B) some *future* judgment that is yet to be (unnecessarily) entered by this Court, then the "new evidence" it presents is not "new" to that ruling.

Going the other direction, Swisher's only two potential options are the April 14, 2016 judgment (ECF No. 216)—which the Ninth Circuit's ruling indicates was the correct one because it "[]instates the jury's verdict in its entirety" (ECF No. 349 at 7)—or the December 14, 2016 amended judgment (ECF No. 296), which the Ninth Circuit has already reversed. (*See* ECF No. 349.) But "relief" from either judgment would come far beyond the one-year limit imposed by Rule 60(c)(1).

"This limitations period is 'absolute.'" *Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000) (quoting 12 James Wm. Moore, *Moore's Federal Practice* § 60.65[2][a], at 60–200 (3d ed. 1997).) In the Ninth Circuit, the one-year statute of repose found in Rule 60(c)(1) is not a matter of discretion or exception, but a matter of jurisdiction. As explained in *Norwood v. Vance*, "[t]o the extent that Norwood's motion seeks relief under Rule 60(b)(1) or Rule 60(b)(3), the district court lacked jurisdiction to consider it because Norwood filed the motion more than one year after judgment was entered." 2013 WL 1738625, at *1 (9th Cir. Apr. 23, 2013)

(citing *Nevitt v. United States*, 886 F.2d 1187, 1188 (9th Cir. 1989)).

It is also established in the Ninth Circuit that "the one-year limitation period is not tolled during an appeal." *Nevitt*, 886 F.2d at 1188 (explaining that although the Ninth Circuit had "not expressly held that pendency of an appeal does not toll the one year period, we do so now."). True to form, Swisher does not mention the controlling precedent of *Nevitt*, as it is ethically obligated to do. Instead, it directs the Court to a 48-year old case from the Fifth Circuit, and a 27-year old case from the Middle District of Florida, to contend that the one-year period of repose does not apply "if the appeal results in a substantive change." (Mot. at 24 (quoting *Transit Cas. Co. v. Sec. Trust Co.*, 441 F.2d 788, 791 (5th Cir. 1971).)

Even if this proceeding were venued in a different circuit, the exception would not allow Swisher to challenge either the April 2016 or December 2016 judgments. That is because in those jurisdictions the clock is restarted only if the resulting "change" to the prior judgment was such as to present a new basis for the moving party's challenge, which had not existed under the prior judgment. *See Jones v. Swanson*, 512 F.3d 1045, 1049 (8th Cir. 2008) (disallowing the exception because although the amount of damages was reduced by the appellate court, the amended judgment did not change the liability ruling that the motion targeted). Here, even if there were any merit to Swisher's argument that the cost basis of Trendsettah's Dominican-supplied cigarillos *should have* been different, the same data was used for both the contract and antitrust damages calculations, such that the grounds for Swisher's motion have existed for well over three years, and thus pertain to *every* judgment that has been entered in this case.

## III.   SWISHER FAILS TO IDENTIFY ANY FRAUD ON THE COURT.

Swisher's challenge under Rule 60(d) also fails at the starting gate. With respect to the issue of timing, "relief for fraud on the court is available only where the fraud was not known at the time of settlement or entry of judgment." *United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1168 (9th Cir. 2017) (citing *Hazel-*

*Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944) (limiting relief to "after-discovered fraud"). As with the Rule 60(b) challenges, Swisher's vagueness about which judgment it is challenging is important. Its Rule 60(d) argument cannot target either the mandate or some future judgment that it wants the Court to enter, because its knowledge of the "fraud" it alleges predates either.

It is important to recognize that there *was* a point at which Swisher could have properly pursued this relief. The Ninth Circuit's order to reinstate the verdict issued on February 8, 2019. (ECF No. 349.) Swisher says that it learned the details of the indictment when it "became publicly available" in April 2019. (Mot. at 24.) At that point (or at latest when the interview excerpts were published on May 4), Swisher knew all that it needed to know, and there existed "after-discovered fraud" with respect to the Ninth Circuit's order. But while Swisher made various arguments to the Ninth Circuit about the indictment over the ensuing two months (*see*, *e.g.*, RJN Ex. B at 9; Ex. C at 12-16), it declined to raise the arguments that it makes now. This was presumably a strategic choice, based on Swisher's reception by the Ninth Circuit, and its expectation that given the Court's past vacatur of the verdict, this might be a friendlier forum.[8] In any event, by holding its arguments in reserve when it had the chance to timely make them, Swisher was overtaken by events. The mandate issued on June 24, meaning that the evidence can no longer be described as "after-discovered." Similarly, if the Court issues a new judgment after resolving attorneys' fees (which there is no need for), Swisher's evidence will not be "after-discovered" evidence as to that judgment either.

What little caselaw exists on the issue indicates that a litigant cannot game the system by presenting only part of its arguments to the appellate court, and then

---

[8] An independent strategic benefit of Swisher presenting its arguments here is that the Ninth Circuit would have conclusively disposed of them within 30 days. By filing the arguments in this Court in the first instance, Swisher can appeal any denial, and ask this Court to stay execution for another 2-3 years.

1   come back to the trial court to lay out more detailed arguments on the same subject.

2   For example, in *Shelstad v. W. One Bank*, the plaintiff sought the trial judge's

3   recusal based on alleged relationships between the judge's relatives and the bank.

4   1997 WL 753568, at *1 (9th Cir. Dec. 4, 1997).  That judge later dismissed the

5   plaintiff's claims, which was affirmed on appeal.  *Id.*  Upon remand to a new judge,

6   the plaintiff sought relief under Rule 60, which the new judge denied and the Ninth

7   Circuit again affirmed.  In that opinion, the Ninth Circuit rejected the idea that the

8   plaintiff's evidence was "new" as of the time he got back to the trial court, because

9   "[w]hat Shelstad describes as new evidence in the Rule 60(b)(6) motion was cited

10  to the previous panel in a motion to recall or amend the mandate."  *Id.* at *2 n.2.

11      It makes no difference that when Swisher presented its *general* arguments

12  about the indictment to the Ninth Circuit, it kept its Rule 60 arguments in its hip

13  pocket.  *See*, *e.g.*, *United States v. Shoemaker*, 626 F. App'x 93, 97 (5th Cir. 2015)

14  (holding that the trial court's willingness upon remand to entertain new arguments

15  about alleged *Brady* violations violated the mandate rule, because the defendant had

16  raised the *Brady* issues generally before the appellate court, even if he had couched

17  his arguments differently).

18      Even without the timing problem, what Swisher alleges is not fraud on the

19  court within the meaning of Rule 60(d).  As the Ninth Circuit explained two years

20  ago in *United States v. Sierra Pacific Industries, Inc.*, "'[o]ut of deference to the

21  deep-rooted policy in favor of the repose of judgments . . . courts of equity have

22  been cautious in exercising [this] power.'"  862 F.3d 1157, 1167 (9th Cir. 2017)

23  (quoting *Hazel-Atlas*, 322 U.S. at 244).  Furthermore, "'[i]n determining whether

24  fraud constitutes fraud on the court, the relevant inquiry is not whether fraudulent

25  conduct prejudiced the opposing party, but whether it harmed the integrity of the

26  judicial process.'"  *Id.* at 1167-68 (quoting *United States v. Estate of Stonehill*, 660

27  F.3d 415, 443 (9th Cir. 2011).  The alleged "fraud" must be proven by "clear and

28  convincing evidence," *Estate of Stonehill*, 660 F.3d at 444, and "[f]raud on the court

1   must be an 'intentional, material misrepresentation.'" *Sierra Pac.*, 862 F.3d at 1168

2   (quoting *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1097 (9th Cir. 2007)).

3   "Liberal application is not encouraged, as fraud on the court 'should be read

4   narrowly, in the interest of preserving the finality of judgments.'" *Latshaw v.*

5   *Trainer Wortham & Co.*, 452 F.3d 1097, 1104 (9th Cir. 2006) (quoting *Toscano v.*

6   *Comm'r*, 441 F.2d 930, 934 (9th Cir.1971)).  Furthermore, it "'must involve an

7   unconscionable plan or scheme which is designed to improperly influence the court

8   in its decision.'" *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1133 (9th

9   Cir. 1995) (quoting *Abatti v. Comm'r*, 859 F.2d 115, 118 (9th Cir. 1988)).  Finally,

10  "the relevant misrepresentations must go 'to the central issue in the case,' [citation],

11  and must 'affect the outcome of the case.'" *Sierra Pacific*, 862 F.3d at 1168

12  (quoting *Estate of Stonehill*, 660 F.3d at 452).

13      As previously noted, Swisher's 25 pages of briefing do not refer the Court to

14  *any* of these articulations of the controlling standard of law.  Its arguments do not

15  meet any of these standards.  Trendsettah addresses the issues seriatim.

16      First, as shown in Part D of the *Factual Background*, Swisher' speculation

17  that Trendsettah was not invoiced for (and did not tender to its importer) the

18  appropriate amount of excise taxes is mistaken.  So, regardless of Mr. Alrahib's

19  alleged participation in a private conspiracy, the cost basis that formed the

20  "cornerstone" of Dr. McDuff's damages calculations (Mot. at 7) would have been

21  the same anyway.  Swisher argues that if Mr. Alrahib would have described his (as

22  yet, only alleged) conspiracy with Mr. Bryant when the undersigned conducted Mr.

23  Alrahib's direct examination, Swisher could have attacked his credibility.  But to

24  prove fraud on the court, the movant cannot point to a "non-disclosure," but must

25  identify a "misrepresentation" that "go[es] to the central issue in the case." *Sierra*

26  *Pac.*, 862 F.3d at 1168 (citation omitted).  The "central issue" in this case was not

27  whether Mr. Alrahib is a model citizen; it was whether Swisher was a monopolist

28  who engaged in anticompetitive conduct towards Trendsettah with anticompetitive

1    intent.  That "central issue" is irrelevant to the question of Mr. Alrahib's alleged

2    conspiracy with Mr. Bryant.  It is also irrelevant to whether Trendsettah paid proper

3    excise tax money to its importer (which the evidence shows that it did).

4         Nevertheless, Swisher declares—without citation to any evidence—that Mr.

5    Alrahib's credibility was "particularly critical to TSI's case." (Mot. at 19.)  It refers

6    to the undersigned's closing argument (*id*. at 12) and his invocation of a proverb

7    about honesty.  But the record shows that those arguments were not about

8    bolstering *Mr. Alrahib's* credibility;[9] they were about showing the complete lack of

9    credibility of Swisher's key witnesses.  That fact is reflected in the *eight pages* of

10   transcript that follow the three-line clause that Swisher references.  (3/29/16 Trial

11   Tr. at 124:1-131:16).)  If the Court is inclined to consider what drove the "outcome

12   of the case," *Sierra Pacific*, 862 F.3d at 1168, Trendsettah refers it to these pages.

13   Contrary to Swisher's newest conceptualization —that the case turned on Mr.

14   Alrahib's testimony—the Court no doubt remembers that the reason why the jury

15   returned a verdict for Trendsettah in less than three hours is because Swisher's

16   witnesses' testimony, and its own internal documents, conclusively established its

17   liability under Trendsettah's claims.  In any event, "evidence" of an indictment

18   (whether future or present) could not have been admitted in the first place.  And

19   barring a non-existent conviction, Mr. Alrahib could not have been impeached

20   under Rule 609.  Thus, Swisher is left with the argument that extensive testimony

21   regarding excise taxes, who paid them, and how they may or may not properly

22   figure into a cost-basis, "must [have] affect[ed] the outcome of the case." *Id*.  There

23   is *no way* that this trial record can be reconstructed to make that argument plausible.

24        The same analysis applies to Swisher's breathless description of Mr.

25

26   _____

[9] Even in the single sentence that Swisher refers to, counsel did not even refer to Mr.

27   Alrahib specifically, or claim that he is *generally* credible; counsel said only that
     Swisher had not shown anything close to a false statement "a single time" during the

28   trial.  (Yu Decl. Ex. W at 3 (3/29 Tr. at 123:22-25).)

1   Alrahib's alleged receipt of $700,000 worth of machinery and employee payroll as

2   "kickbacks" from the alleged conspiracy.  As an initial matter, it is telling to note

3   that while these "kickbacks" play a central role in the *Background* section of

4   Swisher's brief (Mot. at 1-11), it struggles to find a place to deploy this "evidence"

5   in the *Arguments* section.  That is, it does not even try to explain how Trendsettah's

6   (alleged) receipt of $700,000 in machinery and payroll would be "the central issue

7   in the case," or "must [have] affect[ed] the outcome of the case," ***both of which*** are

8   required to grant a Rule 60(d) motion.  *Sierra Pac.*, 862 F.3d at 1168.  Although

9   "kickback" is often a useful litigation pejorative, it is just as frequently "not

10  meaningful." *Valdez v. Saxon Mortg. Servs., Inc.*, No. 2:14-CV-03595-CAS, 2014

11  WL 7968109, at *11 (C.D. Cal. Sept. 29, 2014) (quoting *Cohen v. Am. Sec. Ins.*

12  *Co.*, 735 F.3d 601, 611 (7th Cir. 2013).)  Here, the alleged receipt of machinery and

13  payroll worth $700,000 doesn't even affect the main thing that Swisher complains

14  about (the cost-basis of the imported cigars).  (*See* Yu Decl. Ex. G at 47 (McDuff

15  Report explaining that he excluded "fixed expenses" from his "lost profits"

16  calculation).)  The most that Swisher can make of this evidence (if it were proven to

17  be true) is that it would have undermined Trendsettah's claim to have spent $4

18  million on machinery.  But Swisher presents no evidence to suggest that this

19  machinery *was* included in the $4 million figure.  Even if it had been, Swisher does

20  not offer even a *rhetorical* argument as to how the question of whether Trendsettah

21  spent $4 million, or $3.3 million, was "the central issue in the case," and "must

22  [have] affect[ed] the outcome of the case." *Sierra Pac.*, 862 F.3d at 1168.

23      Again harkening back to the governing legal standard, "not all fraud is fraud

24  on the court." *Levander*, 180 F.3d at 1119.  A cognizable claim of "fraud on the

25  court" "must involve an unconscionable plan or scheme *which is designed to*

26  improperly influence the court in its decision." *Pumphrey*, 62 F.3d at 1133

27  (emphasis added).  Accordingly, things like falsification of evidence, paying a

28  witness to give false testimony, and self-dealing in bankruptcy court are the types of

1   schemes that can be recognized as fraud on the court.  *See id.* (presenting false

2   video evidence to the jury about the testing of an allegedly misfiring handgun);

3   *Hazel-Atlas*, 322 U.S. at 242-43 (attorneys paying a witness $8,000 for false

4   testimony); *In re Roussos*, 541 B.R. 721, 729 (Bankr. C.D. Cal. 2015) (false

5   declaration by the debtor-in-possession that it sold its assets at arm's length, when

6   the sale was actually to a company that the debtor "secretly controlled").

7        Even if literally every allegation in the indictment is true, it does not concern

8   a scheme "which [was] designed to improperly influence" this Court.  *Pumphrey*,

9   62 F.3d at 1133.  The indictment alleges that the scheme began in April 2013, and

10   was designed by Havana 59 for the purpose of avoiding *its* tax liability.  (Yu Decl.

11   Ex. A.)  The scheme was supposedly created 18 months before this action was even

12   filed, and as shown herein, did not affect the presentation of the substantive

13   evidence before the Court and jury.  (Yu Decl. Ex. A at 5.)  Nothing about that

14   scheme sought to "defile the court itself," or consisted of "a fraud perpetrated by

15   officers of the court"—as it must to even state a cognizable argument under Rule

16   60(d).  *In re Levander*, 180 F.3d at 1119.  Swisher resorts to arguing that the

17   scheme was "material[ ] to [Mr. Alrahib's] character for truthfulness."  (Mot. at 11.)

18   But neither undisclosed evidence pertaining to "character for truthfulness," nor

19   later-discovered evidence of "past bad acts" has *ever* been recognized as a "fraud on

20   the court."  Rather, it would appear—as indicated by Swisher's repetitive and

21   lengthy rendition of the "scheme"—that its true goal is to influence this Court's

22   assessment of the *bona fides* of Trendsettah (the actual litigant, which the

23   indictment does *not* accuse of any wrongdoing).  (Yu Decl. Exs. A, B.)  That is not

24   a proper basis for a Rule 60(d) motion either.

25        Moreover, even if Trendsettah had falsely represented that responsive

26   information did not exist (which again, it did not) in response to Swisher's

27   discovery requests, it is not a "fraud on the court" because the representation was

28   made to Swisher and not to the Court.  *Appling v. State Farm Mut. Auto. Ins. Co.*,

340 F.3d 769, 774, 780 (9th Cir. 2003). And Swisher's lack of diligence as to the topic of excise taxes, or as to Trendsettah's expenses in general (*see* Gaw Decl. ¶¶ 2-46), means there is no "grave miscarriage of justice." *Appling*, 340 F.3d at 780.

Finally, it must be noted that Swisher comes right up to the line of accusing Gaw | Poe of fraud on the court, but relies on insinuation rather than actual allegation. *See Pizzuto v. Ramirez*, 783 F.3d 1171, 1181 (9th Cir. 2015) ("Pizzuto . . . relies instead on a series of allegations and implications. It takes more than 'say so' to transform routine advocacy . . . into a fraud on the court."). For what it's worth, Swisher's insinuation is just as poorly received as an overt allegation.[10]

Swisher describes TSI's "trial theme" as "the honest startup TSI vs. lying monopolist Swisher." (Mot. at 12.) Frankly, this is still our theme, and Swisher continues to reinforce its validity. How else could it tell the Court—dozens of times—that *Trendsettah* is liable for excise taxes, and that Trendsettah and its counsel presented "false evidence" to the judge and jury?[11]

## IV.   THE MANDATE RULE PRECLUDES REVISITATION OF THE EVIDENCE ANYWAY.

Given the narrow scope of the remand, Swisher's misunderstanding regarding the implication of the indictment should not be entertained on the additional ground that doing so would violate the mandate. In a 12-line footnote, Swisher seeks to preempt this point by citing caselaw holding that Rule 60 motions based on "later events" can still be adjudicated post-mandate. (Mot. at 24 n.22 (quoting *Standard Oil Co. of Cal. v. United States*, 429 U.S. 17, 18 (1976)).) As

---

[10] *Cf. Searcy v. Esurance Ins. Co.*, 2016 WL 4149964, at *2 (D. Nev. Aug. 1, 2016) (lamenting "the startling ease with which [the moving] counsel accuses opposing counsel and deponents of unethical and even felonious misconduct").

[11] There is no room for false equivalence. In opposing the fees motion, Swisher *did* direct the Court to overruled authority, fail to cite controlling authority, and misquote the PLA. *See* Reply ISO Fees Motion (ECF No. 384 at 11-12).) And Swisher *was* described in open court by the presiding judge as having misrepresented the record, "Every time I checked." (*Id.*)

1    explained though, the issues in the indictment are not "later events"—literally

2    everything Swisher relies on in its motion existed while the case was still pending

3    before the Ninth Circuit, months before the mandate issued.  Moreover, these "later

4    events" were specifically explained to the appellate panel.  (*See* ECF No. 357-3

5    (Swisher's Opp. to Mot. to Issue Mandate).)

6         Accordingly, the issues in Swisher's motion are not "later events;" they are

7    merely "later arguments."  Swisher does not direct the Court to any case where a

8    Rule 60 movant (A) proffered the underlying evidence to the appellate court,

9    (B) received an adverse judgment from that court, then (C) was permitted to make

10   new *arguments* about that same evidence by way of a Rule 60 motion.  Instead, it

11   directs the Court to *Gould v. Mutual Life Insurance Company of New York*, 790

12   F.2d 769 (9th Cir. 1986) and *Rembrandt Vision Technologies, L.P. v. Johnson &

13   Johnson Vision Care, Inc.*, 818 F.3d 1320 (Fed. Cir. 2016).  (Mot. at 24 n.22.)  But

14   *Gould* is affirmatively helpful to Trendsettah's position, not Swisher's.  There, the

15   Plaintiff raised a new issue in her petition for rehearing and rehearing *en banc*

16   having to do with federal jurisdiction.  790 F.2d at 771.  The court denied that

17   petition, prompting Gould to bring a Rule 60 motion on the same issue in the

18   district court, which it denied.  *Id.*  On appeal from *that* denial, the Ninth Circuit

19   held that because it had "rejected [Gould's new] contention by denying rehearing,"

20   the "implication" of that denial was that the district court lacked jurisdiction to

21   entertain the argument, and thus properly denied it.  *Id.* at 774-75.

22        Nor does *Rembrandt* help.  There, the Federal Circuit had initially affirmed a

23   grant of JMOL in favor of the defendant following a trial.  *Rembrandt Vision

24   Techs., L.P. v. Johnson & Johnson Vision Care, Inc. (Rembrandt I)*, 725 F.3d 1377

25   (Fed. Cir. 2013).  At some unspecified time, the plaintiff learned that the

26   defendant's expert had provided undisputedly false testimony in the trial.

27   *Rembrandt*, 818 F.3d at 1323 ("*Rembrandt II*").  The district court denied an

28   ensuing new trial motion by the plaintiff, but on the second trip back to the Federal

Circuit, the appellate court ordered a new trial. *Id.* at 1322. In doing so, it rejected the defendant's argument that the mandate rule precluded the new trial, because "our prior decision in this case did not address" that issue. *Id.* at 1329. The opinion does not appear to say *when* the false testimony was discovered by the plaintiff, but since *Rembrandt II* held that that evidence *was* sufficient grounds for a new trial to the plaintiff, it is impossible to imagine that *Rembrandt I* had *known* about the false testimony when it ordered judgment for the *defendant*. It wouldn't make sense.

More instructive is *Jules Jordan Videos, Inc. v. Kaytel Video Distrib.*, No. 05-CV-0517-SJO-JTLX, 2011 WL 13262041 (C.D. Cal. June 27, 2011), *aff'd* 468 F. App'x 676 (9th Cir. 2012). There, the Court recognized that "'[t]he Rule of Mandate requires a lower court to act on the mandate of an appellate court, without variance or examination, only execution.'" *Id.* at *2 (quoting *United States v. Garcia-Beltran*, 443 F.3d 1126, 1130 (9th Cir. 2006)). It further observed that "the unquestionable commandment of the Ninth Circuit is for the 'jury verdict in favor of [plaintiffs] based on copyright infringement [to be] REINSTATED.'" *Id.* (quoting appellate ruling). Accordingly, it denied the defendant's Rule 60 motion, observing: "'At some point, litigation must come to an end. That point has now been reached.'" *Id.* at *3 (quoting *Facebook, Inc. v. Pac Nw. Software, Inc.*, 640 F.3d 1034, 1042 (9th Cir. 2001). After five years, the same can be said about this case. The Ninth Circuit remanded only the issue of fees to this Court, with the same "unquestionable commandment" that was issued in *Jules Jordan*, *id.* at *2— that the Court is to reinstate the verdict in its entirety.

## V.   THE MANDATE RULE AND PRECEDENT PRECLUDE SWISHER'S EFFORT TO DELAY EXECUTION BY UNFOUNDED DISCOVERY.

Swisher's request to re-open discovery "to investigate additional facts, evidence, and grounds for relief that may exist" (Mot. at 23), fails for the same reason. The Ninth Circuit *knew* about the indictment two months before issuing the mandate, but it did not remand for further proceedings in which this Court would

- 24 -

1   investigate the implications of the indictment.  A decision to overlook the plain

2   instruction to reinstate the jury's verdict—instead deciding to reopen the case for

3   further proceedings—would be "counter to the spirit of the circuit court's decision,"

4   and is therefore impermissible.  *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400,

5   1404 (9th Cir. 1993), *overruled on other grounds by SunEarth, Inc. v. Sun Earth*

6   *Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016).

7          The cases Swisher cites for reopening discovery based on Rule 60 do not

8   arise in the context of the trial court being in receipt of a mandate from the appellate

9   court setting forth a singular directive to reinstate the verdict.  Instead, they arise in

10   the mundane posture of a district court considering a post-trial Rule 60 motion.

11   (*See* Mot. at 3 (citing *Pearson v. First NH Mortg. Corp.*, 200 F.3d 30 (1st Cir.

12   1999) and *MMAR Grp., Inc. v. Dow Jones & Co.*, 187 F.R.D. 282, 286 (S.D. Tex.

13   1999).)  Even then, Swisher acknowledges that the movant must have a "colorable"

14   claim.  (*Id.*)  But when it comes to "fraud on the court"—which is the only asserted

15   ground for relief that is not time-barred—Swisher has not identified anything rising

16   close to that extraordinary standard, which is limited to fraudulent schemes

17   "designed" for the litigation; not alleged criminal conduct "designed" to underpay

18   taxes.  *Pumphrey*, 62 F.3d at 1133.  Even then, "'[c]olorable' is defined as

19   'appearing to be true, valid, or right.'"  *Bowie v. Maddox*, 677 F. Supp. 2d 276, 285

20   (D.D.C. 2010) (quoting Black's Law Dictionary 282 (8th ed. 2004).)  As shown in

21   part D of the *Factual Background*, the basis of Swisher's motion is more accurately

22   described as "appearing to be [mistaken, irrelevant, and wrong]," not "true, valid, or

23   right." *Id.*

24                              **CONCLUSION**

25          Rather than prolong this aging litigation, the Court should fulfill the

26   mandate by ordering that the April 14, 2016 judgment be reinstated, and awarding

27   Trendsettah the fees that it seeks in its concurrently pending motion.

28

1

2        Dated:  July 29, 2019                    GAW | POE LLP

3

4                                        By: ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
                                              Mark Poe
5                                             Attorneys for Plaintiffs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28