THEODORE J. BOUTROUS JR.
 SBN 132099
 tboutrous@gibsondunn.com
DANIEL G. SWANSON
 SBN 116556
 dswanson@gibsondunn.com
MINAE YU
 SBN 268814
 myu@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

CYNTHIA E. RICHMAN
(admitted *pro hac vice*)
 crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: 202.955.8234
Facsimile: 202.530.9691

JULIAN W. KLEINBRODT
 SBN 302085
 jkleinbrodt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission St., Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

MICHAEL C. MARSH
(admitted *pro hac vice*)
 michael.marsh@akerman.com
RYAN ROMAN
(admitted *pro hac vice*)
 ryan.roman@akerman.com
AKERMAN LLP
98 Southeast 7th Street, Suite 1100
Miami, FL 33131
Telephone: 305.374.5600
Facsimile: 305.374.5095

*Attorneys for Swisher International, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRENDSETTAH USA, INC. and TREND SETTAH, INC.,<br><br>              Plaintiffs,<br><br>      v.<br><br>SWISHER INTERNATIONAL, INC.,<br><br>              Defendant. | CASE NO. 8:14-cv-01664-JVS-DFM<br><br>**DEFENDANT SWISHER INTERNATIONAL, INC.'S NOTICE OF MOTION AND MOTION FOR SANCTIONS**<br><br>**Hearing**<br>Judge:   Hon. James V. Selna<br>Date:    March 27, 2023<br>Time:    1:30 p.m.<br>Ctrm:    10C |

Gibson, Dunn & Crutcher LLP

REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ....................................................................................... 1

II.   BACKGROUND ........................................................................................ 3

     A.    TSI Sues Swisher Seeking Millions Of Dollars In Lost Profits ............... 3

     B.    Alrahib's Indictment For Tax Evasion Is Unsealed, Revealing That
        Splitarillos Were Not Profitable ....................................................................... 5

     C.    The Court Grants Swisher Rule 60(b) Relief As To TSI's Antitrust
        Claims But Cannot Grant Rule 60(b) Relief As To TSI's Contract
        Claims ....................................................................................................... 7

III.   LEGAL STANDARD ............................................................................... 9

IV.   DISCUSSION ............................................................................................ 9

     A.    TSI Engaged In A Years-Long Scheme Of Bad-Faith Misconduct
        That Warrants Sanctions Under The Court's Inherent Power ................. 10

        1.   This Court's Rule 60 Order Is Sufficient To Support Sanctions ........ 11

        2.   TSI Acted In Bad Faith And Willfully Abused The Judicial
          Process ............................................................................................... 12

     B.    The Court Should Award Swisher The Fees And Costs Incurred
        Because Of TSI's Misconduct ................................................................ 17

        1.   Swisher Is Entitled To All Of Its Fees And Costs Because TSI
          Initiated This Action In Bad Faith ................................................... 18

        2.   Swisher's Fees Are Reasonable ...................................................... 22

        3.   Swisher's Costs Are Fully Recoverable .......................................... 23

     C.    In The Alternative, The Court Should Grant Swisher Leave To
        Conduct Discovery Regarding The Propriety Of Sanctions ................... 24

V.    CONCLUSION ....................................................................................... 25

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*AlphaMed Pharms. Corp. v. Arriva Pharms., Inc.*,
    432 F. Supp. 2d 1319 (S.D. Fla. 2006) ...................................................... 18

*Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*,
    2015 WL 12732433 (C.D. Cal. Dec. 14, 2015) .......................................... 16

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*,
    69 F.3d 337 (9th Cir. 1995) ................................................................. 11, 17

*Armstrong v. Davis*,
    318 F.3d 965 (9th Cir. 2003) ...................................................................... 23

*In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    415 F. Supp. 3d 498 (E.D. Pa. 2019) ......................................................... 24

*Byrne v. Nezhat*,
    261 F.3d 1075 (11th Cir. 2001) .................................................................. 24

*Carruthers v. Flaum*,
    365 F. Supp. 2d 448 (S.D.N.Y. 2005) ....................................................... 18

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) .............................................................. 3, 9, 10, 19

*Combs v. Rockwell Int'l Corp.*,
    927 F.2d 486 (9th Cir. 1991) ...................................................................... 11

*CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*,
    2019 WL 6527951 (S.D. Cal. Dec. 4, 2019) ............................... 19, 20, 22

*Directors Guild of Am., Inc. v. Voltage Pictures, LLC*,
    2020 WL 11421252 (C.D. Cal. Dec. 7, 2020) ........................................... 22

*Englebrick v. Worthington Indus., Inc.*,
    944 F. Supp. 2d 899 (C.D. Cal. 2013) ....................................................... 15

*Erum v. Cnty. of Kauai*,
    2008 WL 2598138 (D. Haw. June 30, 2008) ............................................. 12

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
*(continued)*

Page(s)

*Fink v. Gomez,*
239 F.3d 989 (9th Cir. 2001) ........................................................................... 10, 12

*Fox v. Vice,*
563 U.S. 826 (2011) ......................................................................................... 17, 22

*Gomez v. Reinke,*
2008 WL 3200794 (D. Idaho Aug. 7, 2008) ........................................................ 24

*Gomez v. Vernon,*
255 F.3d 1118 (9th Cir. 2001) ........................................................................... 2, 10

*Goodyear Tire & Rubber Co. v. Haeger,*
581 U.S. 101 (2017) ..................................................... 3, 9, 17, 18, 21, 22, 23

*In re Itel Secs. Litig.,*
791 F.2d 672 (9th Cir. 1986) .................................................................................. 10

*IV Sols., Inc. v. Off. Depot Emp. Welfare Benefit Plan,*
2009 WL 10314274 (C.D. Cal. May 13, 2009) ..................................................... 15

*Lahiri v. Universal Music & Video Distrib. Corp.,*
606 F.3d 1216 (9th Cir. 2010) ........................................................................ 11, 17

*Lu v. United States,*
921 F.3d 850 (9th Cir. 2019) .................................................................................... 9

*Malhiot v. S. Cal. Retail Clerks Union,*
735 F.2d 1133 (9th Cir. 1984) ................................................................................ 11

*Medversant Techs., L.L.C. v. Morrisey Assocs., Inc.,*
2011 WL 13124039 (C.D. Cal. Mar. 11, 2011) ...................................................... 12

*Meyer v. Gwinnett Cnty.,*
2021 WL 3716658 (N.D. Ga. July 26, 2021) ......................................................... 12

*Moreno v. City of Sacramento,*
534 F.3d 1106 (9th Cir. 2008) ................................................................................ 23

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.,*
392 U.S. 134 (1968) ................................................................................................ 21

Gibson, Dunn & Crutcher LLP

iv

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*In re Personalweb Techs., LLC Patent Litig.*,
   2021 WL 796356 (N.D. Cal. Mar. 2, 2021) ...................................................... 22, 24

*In re Ray*,
   951 F.3d 650 (5th Cir. 2020) ...................................................................... 11, 12

*RG Abrams Ins. Co. v. Law Offs. of C.R. Abrams*,
   342 F.R.D. 461 (C.D. Cal. 2022)...................................................................... 22

*Roadway Exp., Inc. v. Piper*,
   447 U.S. 752 (1980).......................................................................................... 2, 10

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
   402 F.3d 1198 (Fed. Cir. 2005) .......................................................................... 12

*SEC v. Premier Holding Corp.*,
   2020 WL 8099514 (C.D. Cal. Nov. 30, 2020) ...................................................... 13

*Synergetics, Inc. v. Hurst*,
   2007 WL 2422871 (E.D. Mo. Aug. 21, 2007) ...................................................... 12

*In re Szanto*,
   2020 WL 1170140 (Bankr. D. Or. Mar. 10, 2020)................................................ 20

*Taylor v. Nat'l Collegiate Student Loan Tr. 2007-1*,
   2021 WL 872494 (D. Utah Mar. 9, 2021) .......................................................... 14

*Trendsettah USA, Inc. v. Swisher Int'l, Inc.*,
   31 F.4th 1124 (9th Cir. 2022).................................. 1, 2, 8, 9, 14, 15, 16, 17

*Trendsettah USA, Inc. v. Swisher Int'l, Inc.*,
   761 F. App'x 714 (9th Cir. 2019)........................................................................ 5

*Ty Inc. v. Softbelly's Inc.*,
   2005 WL 326974 (N.D. Ill. Feb. 9, 2005) .......................................................... 12

*United States v. Alexander*,
   106 F.3d 874 (9th Cir. 1997) ............................................................................ 11

*Valley Eng'rs Inc. v. Elec. Eng'g Co.*,
   158 F.3d 1051 (9th Cir. 1998) .......................................................................... 21

Gibson, Dunn &
Crutcher LLP

## TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Wyle v. R.J. Reynolds Indus., Inc.*,
   709 F.2d 585 (9th Cir. 1983) ..................................................................... 13

**Rules**

Fed. R. Civ. P. 11 ................................................................................... 2, 19

Fed. R. Civ. P. 26 ......................................................................................... 2

Fed. R. Civ. P. 37 ......................................................................................... 2

Fed. R. Civ. P. 60 ........................1, 2, 8, 9, 10, 11, 12, 13, 16, 18, 20, 21, 22, 23, 24, 25

**TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 27, 2023, at 1:30 p.m., or as soon thereafter as this matter may be heard by the above-entitled Court, located at 411 West Fourth Street, Santa Ana, California, before the Honorable James V. Selna, Defendant Swisher International, Inc. ("Swisher") will and hereby does move for sanctions under the Court's inherent authority against Plaintiffs Trendsettah USA, Inc. and Trend Settah, Inc. (collectively, "TSI") in the amount of $19,859,625.66, or in such amount as the Court deems proper to compensate Swisher for the fees and costs incurred defending against TSI's bad-faith conduct throughout this litigation.

This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities, the concurrently filed Declaration of Ryan Roman, the concurrently filed Declaration of Minae Yu, the concurrently filed Declaration of Daniel G. Swanson, the concurrently filed Declaration of Michael Marsh, the concurrently filed Declaration of Alaina Fotiu-Wojtowicz, the record in this action, and such oral argument and other evidence as the Court shall consider prior to or at the time of the hearing on this Motion.

Dated:  February 6, 2023

THEODORE J. BOUTROUS JR.
DANIEL G. SWANSON
CYNTHIA E. RICHMAN
MINAE YU
JULIAN KLEINBRODT

GIBSON, DUNN & CRUTCHER LLP

MICHAEL C. MARSH
RYAN ROMAN

AKERMAN LLP


By: */s/        Theodore J. Boutrous Jr.*
           Theodore J. Boutrous Jr.

*Attorneys for Defendant*
SWISHER INTERNATIONAL, INC.

# I.    INTRODUCTION

Swisher International Inc. ("Swisher") has spent nearly a decade—and tens of millions of dollars—defending against the claims of Trendsettah USA, Inc. and Trend Settah, Inc. ("TSI") seeking recovery of lost profits supposedly attributable to contractual breaches and anticompetitive conduct by Swisher.   But, as Swisher discovered after trial, TSI's case was built on a foundation of criminal misconduct, fraud, and misrepresentation.  After the case had been tried to a jury and reviewed by the Ninth Circuit, a federal district court unsealed an indictment revealing that TSI's founder and then-CEO, Akrum Alrahib, had been party to a criminal conspiracy to evade federal excise taxes on TSI's imported cigarillos.  Had TSI paid those taxes, it would have had no profits at all—and thus could not possibly have incurred lost profits as a result of Swisher's alleged misconduct.  As the Ninth Circuit held in affirming Rule 60(b) relief on the antitrust claims, TSI's "fraudulent avoidance of federal excise taxes thwarted Swisher's ability to sufficiently defend against" those claims.  *Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 31 F.4th 1124, 1128 n.1 (9th Cir. 2022).  And because "Trendsettah's contract and antitrust claims were inextricably intertwined as a factual matter," Dkt. 341 at 9, with TSI relying on the *same* falsified evidence of lost profits to support both sets of claims, that finding necessarily means that TSI's *entire* case was a sham.

Today, Alrahib sits in federal prison for this tax evasion and associated witness tampering.  Yet TSI still has not been held to account for the time, money, and energy it forced Swisher to expend litigating claims that were predicated on TSI's fraudulent scheme.  On the contrary, TSI has managed to profit from its misconduct to the tune of nearly $10 million by concealing its criminal tax evasion long enough for the favorable judgment on its contract claims to escape the one-year window for relief from judgment under Federal Rules of Civil Procedure 60(b)(2) and (b)(3).

TSI's fraud should not go unredressed.  The Court should exercise its inherent power to impose monetary sanctions on TSI because TSI's fraudulent conduct in this case is a paradigmatic example of a party "act[ing] in bad faith, vexatiously, wantonly,

or for oppressive reasons." *Gomez v. Vernon*, 255 F.3d 1118, 1133–34 (9th Cir. 2001) (quoting *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766 (1980)).   Alrahib admitted in his interview with federal law enforcement that he was "aware that he was evading federal excise tax" from the inception of the scheme in 2013—a year before this case was filed.   Dkt. 426 at 4. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████   *See* Declaration of Minae Yu ("Yu Decl."), Ex. 31.   Convinced that TSI could do so, Alrahib caused TSI to bring this suit without disclosing TSI's tax evasion.

Instead, TSI actively resisted Swisher's discovery efforts and misled Swisher concerning TSI's finances.   It produced financial records that omitted the unpaid excise taxes and gave the appearance of profitability.   It moved *in limine* to exclude any evidence regarding prior tax or regulatory enforcement actions against Alrahib.   And it produced witnesses who presented a materially false portrayal of TSI's financial situation, including an economic expert who presented a completely inaccurate damages analysis based on TSI's fraudulent financial records.

When Alrahib's indictment was unsealed, TSI persisted in its obfuscation, insisting that TSI in fact *had* paid all of its taxes and that its damages expert accurately accounted for all incoming and outgoing payments.   When this line of argument became untenable, TSI changed course and argued that Swisher was not entitled to relief because the "oversight" by TSI's expert in failing to account for unpaid federal excise tax should have been obvious all along.   Dkt. 514 at 3.   This Court discounted TSI's prevarications in granting Swisher's motion for Rule 60(b) relief on the antitrust claims, finding, by clear and convincing evidence, that the "fraud would have likely changed the disposition of the case" and that its absence "from the record substantially interfered with Swisher's defense."   Dkt. 426 at 18.   The Ninth Circuit agreed.   *Trendsettah*, 31 F.4th at 1137–38.

These (and many other) acts of misconduct are independently sanctionable under Rule 11, Rule 26(g), and Rule 37(c).   But "[i]n circumstances such as these in which all

of a litigant's conduct is deemed sanctionable, requiring a court first to apply Rules and statutes containing sanctioning provisions to discrete occurrences before invoking inherent power to address remaining instances of sanctionable conduct would serve only to foster extensive and needless satellite litigation." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 51 (1991).  And because all of TSI's conduct is sanctionable, Swisher is entitled to an award of all of its attorney's fees and costs as a sanction for TSI's misconduct in initiating, and then relentlessly and unabashedly pursuing, this fraudulent litigation.  As the Supreme Court has made clear, in "exceptional cases" where "a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may . . . make a blanket award" and "shift all of a [defendant's] fees" as compensation for the plaintiff's misconduct.  *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 110 (2017).  This is such an exceptional case.

TSI has forced Swisher to spend nearly $20 million defending against claims that TSI knew rested on a criminal scheme to defraud the government.  More than two years ago, the Court informed the parties that it would entertain "post-trial motions for sanctions of various types" arising from TSI's long-running pattern of misconduct.  Dkt. 591 at 4.  Now is the time to hold TSI responsible for its abuse of the judicial process and to provide redress to Swisher for the financial harm inflicted by TSI's bad-faith litigation scheme.  The Court should impose sanctions under its inherent power and award Swisher all of its fees and costs incurred since the beginning of this litigation—$19,859,625.66.

## II.    BACKGROUND

### A.    TSI Sues Swisher Seeking Millions Of Dollars In Lost Profits

TSI brought this case against Swisher in October 2014, alleging that Swisher (1) monopolized, or attempted to monopolize, the untipped cigarillo market in violation of Section 2 of the Sherman Act by restricting TSI's production of its own "Splitarillo" brand of cigarillos and (2) breached Private Label Agreements with TSI and violated the implied covenant of good faith and fair dealing by refusing to fulfill TSI's orders for

Splitarillos.  Dkt. 1 ¶¶ 46–55, 60–70.[1]  Each of these claims was predicated on TSI's allegation that Splitarillos were a "high quality and low cost" product that was rapidly "captur[ing] a larger and larger share of the cigarillo market."  *Id.* ¶ 6.  TSI claimed that it "suffer[ed] millions of dollars of lost profits" because of Swisher's alleged misconduct.  *Id.* ¶ 7.

During discovery, TSI produced documents, witnesses, and expert testimony that supposedly substantiated its narrative that Splitarillos were a popular and profitable upstart in the untipped cigarillo market whose growth had been unfairly impaired by Swisher's conduct.  Among other things, TSI produced (1) financial records purporting to show its profits on the sale of Splitarillo products, *see* Dkt. 426 at 12; Declaration of Ryan Roman ("Roman Decl.") ¶¶ 3–19, 23, 25, 32 & Exs. 1–18, 21, 29; (2) deposition testimony from Salah Kureh, TSI's CFO, confirming that TSI produced sufficient accurate financial records to allow calculating monthly profits, *see* Roman Decl., Ex. 22 at 16; *see also id.*, Ex. 31 ¶ 9 (declaring at summary judgment that TSI enjoys a profit margin of 37% on Splitarillos); (3) deposition testimony from Alrahib, TSI's 30(b)(6) designee, *see id.*, Ex. 23; and (4) expert analysis by Dr. Robert Deforest McDuff, who relied on TSI's financial records and representations to produce a damages model estimating that TSI had lost tens of millions of dollars in past and future profits because of Swisher's misconduct, *see* Dkt. 426 at 14; Roman Decl., Ex. 34 at 7–8, 51–53.

At the same time, TSI resisted discovery that would have uncovered its fraudulent tax scheme, including by objecting to a request from Swisher for "documents showing or reflective of federal excise tax paid with respect to Splitarillos," Dkt. 426 at 15, and by generally failing to disclose materials that could have revealed kickbacks paid by TSI's coconspirators.  At the close of discovery, Swisher moved for summary judgment on the ground that TSI failed to show injury, Dkt. 67 at 9–16, but the Court denied the

---

[1]   TSI also asserted state-law tort claims based on the same allegations, which this Court rejected.  *See* Dkt. 40 at 9–10; Dkt. 99 at 16–19; Dkt. 216 at 2.

motion on the ground that TSI had produced evidence "that it suffered lost revenue and inhibited economic growth" because of Swisher's actions, Dkt. 99 at 14.

At trial, TSI presented live testimony from Alrahib, who attended trial as TSI's representative and was introduced by TSI's counsel as "[o]ur client[]," Dkt. 310 at 15:22; Dkt. 311 at 14:20–171:16, and from Kureh, who testified that TSI's financial records were accurate and had all been provided to Dr. McDuff, Dkt. 313 at 11:9–13:23. Yet TSI continued to thwart Swisher's efforts to probe its excise-tax practices, including by persuading the Court to exclude any evidence or argument regarding past tax-related enforcement actions against Alrahib. Dkt. 426 at 15; Roman Decl. ¶ 36 & Ex. 33. The jury ultimately awarded TSI $9,062,679 on its contract claims and $14,815,494 on its antitrust claims, Dkt. 216 at 2—the exact past and future lost profits estimates that Dr. McDuff presented at trial based on TSI's fraudulent financial records, Yu Decl. ¶ 10 & Ex. 8 at 36. TSI stipulated that the awards were duplicative and elected the more comprehensive antitrust award, which was trebled to $44,446,482. Dkt. 216 at 3. The Court subsequently granted Swisher's motion for reconsideration of its motion for summary judgment on TSI's antitrust claims, Dkt. 274; Dkt. 296, but the Ninth Circuit reversed and remanded with instructions to reinstate the jury's verdict, *Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 761 F. App'x 714 (9th Cir. 2019).

**B.**     **Alrahib's Indictment For Tax Evasion Is Unsealed, Revealing That Splitarillos Were Not Profitable**

The Ninth Circuit issued its decision reinstating the jury's verdict on February 8, 2019. Two months later, a federal district court unsealed a criminal indictment charging Alrahib with participation in a criminal conspiracy designed to evade the 52.75% federal excise tax on imported cigarillos. Yu Decl. ¶ 2 & Ex. 1. Shortly thereafter, prosecutors publicly filed excerpts of Alrahib's interview with federal law enforcement in which he admitted to evading federal excise taxes to lower TSI's costs. *Id.* ¶ 3 & Ex. 2 at 3–5. Further details emerged in 2020, when the full transcript of Alrahib's interview became available, *id.* ¶ 23 & Ex. 18, and in 2021, when Alrahib pleaded guilty to the charges

and offered a factual proffer as part of a plea agreement, *id.* ¶ 70 & Exs. 56–57.[2]

*Id.*, Ex. 18 at 5, 26–28, Ex. 19.

*Id.* at 27–29, 126–29.

*Id.* at 142; *id.*, Ex. 22 at 2.

*Id.*, Ex. 18 at 49–51.

By Alrahib's own account, TSI's scheme to evade taxes on imported Splitarillos began to take shape in 2013, when Alrahib embarked on a fraudulent billing arrangement with Tony Bryant, an importer of cigarillos. *Id.* at 49–52, 65–70. Under their scheme, Bryant invoiced TSI for only a fraction of the excise taxes owed on imported Splitarillos. *Id.* at 42–47. From the excise taxes paid by TSI, Bryant remitted a portion to the government, kept a portion for himself, and returned a portion to TSI in the form of kickbacks. *Id.* As Alrahib admitted, he structured the scheme in this way

*Id.* at 112. To ensure that Bryant provided the promised kickbacks, TSI had Bryant pay the excise taxes upfront and provided him post-dated checks from which he would later be reimbursed. *Id.* at 48–49, 112–13.

---

[2] Alrahib was also indicted for witness tampering and obstruction of justice based on his efforts to bribe a potential witness to evade a grand jury subpoena for testimony in Alrahib's tax-evasion case. *See* Yu Decl. ¶¶ 18, 70 & Exs. 15, 57 at 5–6.

1   ███████████████████████████████████████████████ *Id.*, Ex. 32 at 1; *see*

2   *also id.* ¶¶ 39–45 & Exs. 33–39.

3          TSI ultimately terminated its relationship with Bryant after Bryant fell behind on

4   his kickbacks.  But this did not put an end to its criminal scheme.  Rather, ████████

5   ███████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████ *Id.*,

7   Ex. 18 at 83–99. ██████████████████████████████████████████████

8   █████████████████████████████████ *Id.* at 82–85, 100.  At the same time, TSI assisted

9   its customers in evading state excise taxes because, according to Alrahib, █████████

10  ███████████████████████████████████████████████████████████ *Id.*

11  at 125.  To this end, ██████████████████████████████████████████

12  █████████████████████████████████████ *Id.* at 122–26.

13         Alrahib admitted that TSI's profitability depended on the millions of dollars saved

14  through this fraudulent tax-evasion scheme, which allowed TSI to undercut its

15  competition and increase its profitability.  *Id.* at 48–50.  During his interview with

16  federal law enforcement, Alrahib confirmed that "there's no way [TSI] could compete"

17  if it had to pay the full costs of manufacturing and importing Splitarillos, *id.* at 49, and

18  that "evading federal excise taxes . . . that's how we could compete in the marketplace,"

19  *id.* at 48; *see also id.* at 131 (explaining that ████████████████████████████

20  █████████████████████████████████████████████████).

21  **C.    The Court Grants Swisher Rule 60(b) Relief As To TSI's Antitrust Claims**

22  **But Cannot Grant Rule 60(b) Relief As To TSI's Contract Claims**

23         Once TSI's fraud came to light, Swisher promptly moved for relief from judgment

24  under Federal Rule of Civil Procedure 60.  Dkt. 377.  The Court granted Swisher's

25  motion with respect to both the antitrust and contract claims under Rule 60(d), which

26  authorizes a court to "set aside a judgment for fraud on the court," because "TSI engaged

27  in misconduct that undermined the judicial process which went to the central issues in

28  the case."  Dkt. 426 at 16.  In the alternative, the Court granted relief under Rules

60(b)(2) and (b)(3), which authorize a court to set aside a judgment based on "newly discovered evidence" and "fraud, misrepresentation, or misconduct by an opposing party," because there was clear and convincing evidence that "newly discovered evidence of fraud was uncovered in 2019" that "would have likely changed the disposition of the case." *Id.* at 18.  But because relief under Rules 60(b)(2) and (b)(3) cannot be granted "more than a year after the entry of the judgment," Fed. R. Civ. P. 60(c)(1), and because only the judgment on the antitrust claims had been entered within a year of Swisher's Rule 60 motion, relief from the contract judgment was not available under Rules 60(b)(2) and (b)(3).  Dkt. 426 at 18 n.2.[3]

The Ninth Circuit affirmed in part and reversed in part.  *See Trendsettah*, 31 F.4th at 1128.  It did not disturb any of this Court's factual findings with respect to TSI's criminal scheme or its effect on the case.  In fact, the Ninth Circuit expressly endorsed all of the Court's relevant findings, including that:

- "Alrahib stated in his interview with an internal revenue agent that he was aware of the tax evasion and 'that's how we could compete in the marketplace.' Alrahib explained that 'there's no way [they] could compete' without the benefits bestowed by the fraudulent evasion of federal excise taxes," *id.* at 1137;

- "[TSI's] tax evasion allowed it to set artificially low prices and continue to compete effectively in the relevant markets, thereby incurring its asserted damages," *id.*; and

- "[TSI's] fraudulent avoidance of federal excise taxes thwarted Swisher's ability to sufficiently defend against [TSI's] antitrust claim premised on its inability to compete in the face of Swisher's purported anticompetitive conduct," *id.* at 1128 n.1.

Based on these findings, the Ninth Circuit affirmed that relief from the antitrust judgment was warranted under Rules 60(b)(2) and (b)(3) because "[i]f Swisher had been able to present evidence of Alrahib's fraud to the jury, it would have likely changed the

---

[3]  The Court also awarded Swisher $7,956,246.60 in fees, $2,506,233.95 in costs, and post-judgment interest.  Dkt. 622 at 14.

disposition of the case, and enabled Swisher to fully and fairly present its defense to the antitrust claims." *Id.* at 1138 (cleaned up). But the Ninth Circuit concluded that relief was not available under Rule 60(d) because the record contained insufficient evidence that TSI made misrepresentations "directly aimed *at the court*." *Id.* at 1134 (cleaned up) (emphasis added). Because Rule 60(d) was the only ground on which this Court could grant relief from the judgment on TSI's contract claims, the Ninth Circuit ordered reinstatement of the verdict on those claims. *Id.* at 1128.

### III.   LEGAL STANDARD

Federal courts possess inherent authority "to fashion an appropriate sanction for conduct which abuses the judicial process," including by shifting legal fees and costs the other side would not have paid "but for" the sanctioned misconduct. *Goodyear*, 581 U.S. at 107 (quoting *Chambers*, 501 U.S. at 44–45). A court may award "'all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop'" if the sanctioned party "'initiate[d] a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior,'" or perpetrated a bad-faith scheme that "'so permeated the suit as to make that misconduct a but-for cause of every subsequent legal expense.'" *Lu v. United States*, 921 F.3d 850, 860–61, 863 (9th Cir. 2019) (quoting *Goodyear*, 581 U.S. at 110, 114).

### IV.   DISCUSSION

This Court should exercise its inherent power to impose sanctions against TSI because TSI's nearly decade-long effort to conceal its tax-evasion conspiracy—while simultaneously attempting to recover millions of dollars of purported lost profits—is a stunning example of bad faith and abuse of the judicial process. The facts here present one of the exceptional cases where the Court would be justified in awarding Swisher *all* of the fees and costs incurred since the litigation began. But for TSI's misconduct— bringing a sham case seeking to recover the fruits of its fraudulent tax-evasion scheme— Swisher would not have incurred any of the $19,859,625.66 it has expended defending this litigation. At a minimum, the Court should award Swisher the $19,620,230.16 in

1   fees and costs it incurred litigating (1) the antitrust and state-law claims and (2) the Rule

2   60 motion.  If the Court concludes that additional fact-finding is necessary, the Court

3   should grant Swisher leave to conduct discovery into the nature and scope of TSI's (and

4   its counsel's) misconduct.

5   **A.    TSI Engaged In A Years-Long Scheme Of Bad-Faith Misconduct That**

6   **Warrants Sanctions Under The Court's Inherent Power**

7            Even where, as here, discrete acts of misconduct are independently sanctionable

8   under statute or the Federal Rules of Civil Procedure, a court may elect to rely only on

9   its inherent power to impose sanctions where "all of a litigant's conduct is deemed

10  sanctionable." *Chambers*, 501 U.S. at 51.  "A court has the inherent power to sanction

11  a party" that "'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons,'

12  as well as for 'willful[] abuse [of the] judicial processes.'"  *Gomez*, 255 F.3d at 1133–

13  34 (quoting *Roadway*, 447 U.S. at 766).

14           Bad faith "includes a broad range of willful improper conduct." *Fink v. Gomez*,

15  239 F.3d 989, 992 (9th Cir. 2001).  "'For purposes of imposing sanctions under the

16  inherent power of the court, a finding of bad faith does not require that the legal and

17  factual basis for the action prove totally frivolous; where a litigant is substantially

18  motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim

19  will not bar the assessment of attorney's fees.'"  *Id.* (quoting *In re Itel Secs. Litig.*, 791

20  F.2d 672, 675 (9th Cir. 1986)).  The Ninth Circuit has upheld findings of bad faith where

21  parties have intentionally concealed relevant evidence, *Anheuser-Busch, Inc. v. Nat.*

22  *Beverage Distribs.*, 69 F.3d 337, 349 (9th Cir. 1995); "falsif[ied] a deposition," *Combs*

23  *v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991); and engaged in a pattern of

24  misrepresentations, *Malhiot v. S. Cal. Retail Clerks Union*, 735 F.2d 1133, 1137–38 (9th

25  Cir. 1984).  Bad faith may also be found based on the "cumulative effect" of a party's

26  misconduct.  *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1222

27  (9th Cir. 2010).

28           TSI's extraordinary misconduct easily clears the threshold for sanctions.  In fact,

this Court has already found as much.

### 1.     This Court's Rule 60 Order Is Sufficient To Support Sanctions

Rule 60(b)(3) permits a district court to grant relief from a judgment in cases of "fraud[,] . . . misrepresentation, or misconduct by an opposing party." This Court found in its Rule 60 order that "Swisher has shown that relief is appropriate under . . . Rule 60(b)(3) by clear and convincing evidence." Dkt. 426 at 18. It is therefore law of the case that TSI's conduct in this litigation rises to the level of fraud, misrepresentation, or misconduct. *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

A finding of fraud, misrepresentation, or misconduct under Rule 60(b)(3) is sufficient to support a finding of "bad faith" for purposes of imposing sanctions under the Court's inherent power. For example, in *In re Ray*, 951 F.3d 650 (5th Cir. 2020), "the district court granted [a] Rule 60(b) motion" on the ground that the plaintiff "intentionally gave false testimony" during trial. *Id.* at 652. The court subsequently exercised its inherent power to bar the plaintiff's attorney from practicing before it. *Id.* at 653. Although the attorney "argue[d] that the district court['s] . . . findings were not supported by clear and convincing evidence," the Fifth Circuit disagreed because it had "already upheld the district court's judgment granting [the defendant's] Rule 60(b) motion on grounds that [the defendant] established by clear and convincing evidence, that [the plaintiff] engaged in fraud or other misconduct that prevented [the defendant] from fully and fairly litigating its case." *Id.* at 654 (cleaned up); *see also Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1205 & n.7 (Fed. Cir. 2005) (concluding that "[t]here can be no claim that [the plaintiff's] conduct is not sanctionable" where it "d[id] not contest the[] facts" underlying the district court's order granting relief from judgment under Rule 60(b)(3)). The same is true here, where the Court ordered Rule 60(b) relief on TSI's antitrust claims after finding by clear and convincing evidence that, by concealing its fraudulent tax-evasion scheme, TSI engaged in "fraud, misrepresentation, or misconduct" that "prevented [Swisher] from fully and fairly presenting its . . . defense." Dkt. 426 at 18.

If anything, the burden for imposing sanctions under the Court's inherent power is *lower* than the burden for Rule 60(b) relief.  Although "[t]he Ninth Circuit has not addressed . . . the burden of proof on bad faith for purposes of sanctions," *Medversant Techs., L.L.C. v. Morrisey Assocs., Inc.*, 2011 WL 13124039, at *6 n.45 (C.D. Cal. Mar. 11, 2011), district courts have interpreted Circuit case law to hold that "a finding of bad faith by clear and convincing evidence is unnecessary to sanction [a party] pursuant to the court's inherent powers," *Erum v. Cnty. of Kauai*, 2008 WL 2598138, at *6 (D. Haw. June 30, 2008).   And, of course, a finding that a party engaged in fraud, misrepresentation, or misconduct necessarily encompasses "bad faith," which requires only that the litigant be "substantially motivated by" an improper purpose.  *Fink*, 239 F.3d at 992.  Indeed, courts routinely award sanctions under their inherent power even where Rule 60(b) relief is *not* warranted.  *See, e.g.*, *Meyer v. Gwinnett Cnty.*, 2021 WL 3716658, at *3 (N.D. Ga. July 26, 2021) ("[T]he Court denied Defendants' motions to the extent they requested relief from the verdict pursuant to Rule 60(b) and attorney's fees pursuant to 28 U.S.C. § 1927.  However, the Court granted Defendants' motions for sanctions and dismissed this case with prejudice."); *Synergetics, Inc. v. Hurst*, 2007 WL 2422871, at *8 (E.D. Mo. Aug. 21, 2007) ("'Despite the court's inability to award sanctions pursuant to Rule 60(b)(3), the court possesses the inherent power to sanction a party who acts in bad faith, vexatiously, wantonly, or for oppressive reasons.'" (quoting *Ty Inc. v. Softbelly's Inc.*, 2005 WL 326974, at *6–7 (N.D. Ill. Feb. 9, 2005))).

As a result, this Court's Rule 60 order already establishes the bad faith necessary to support sanctions.  The only question remaining is the proper amount of sanctions.

## 2.     TSI Acted In Bad Faith And Willfully Abused The Judicial Process

The existing record—as well as additional evidence that came to light while this case was on appeal—confirms that TSI's conduct is sanctionable.  This bad-faith conduct, which infected every stage of the proceedings, can be divided into three interrelated phases.

1        **a.        TSI's Bad-Faith Misconduct In Filing The Complaint**

2        The Complaint that TSI filed in October 2014 was predicated entirely on the

3   assertion that "Swisher's actions to inhibit the growth of its competitor TSI caused TSI

4   to suffer *millions of dollars of lost profits* between the time that those efforts began and

5   the present." Dkt. 1 ¶ 7 (emphasis added). But TSI could not have suffered any bona

6   fide lost profits as a result of Swisher's conduct because *Splitarillos were not profitable*.

7        TSI knew this at the time it filed the Complaint. Alrahib admitted that he had

8   initiated a fraudulent scheme in 2013 that enabled TSI to evade the 52.75% federal

9   excise tax on imported cigarillos. Yu Decl., Ex. 18 at 41–44. The record is now clear

10  that TSI's other executives and shareholders actively participated in the scheme, as well.

11
12
13
14                                                                          *See supra*

15  Section II.B. And according to Alrahib, "[e]verybody knew" that the purpose of this

16  scheme "was evading federal excise tax." Yu Decl., Ex. 18 at 41. That knowledge and

17  intent are imputed to TSI. *See Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 590 (9th

18  Cir. 1983) (imputing bad-faith misrepresentations of "senior officers" to corporation for

19  sanctions purposes); *SEC v. Premier Holding Corp.*, 2020 WL 8099514, at *8 (C.D. Cal.

20  Nov. 30, 2020) ("Scienter can be imputed to a corporation when its director or officer

21  acts within the scope of his authority, actual or apparent.").

22        And TSI knew at the time that it filed the Complaint that this scheme was crucial

23  to its profitability. As Alrahib later explained, "'there's no way [TSI] could compete'

24  without the benefits bestowed by the fraudulent evasion of federal excise taxes."

25  *Trendsettah*, 31 F.4th at 1137. Indeed, Swisher's expert, Dr. Alan Cox, confirmed that

26  TSI would have gone out of business by early 2014 if it had not been evading its federal

27  tax obligations. *Id.* at 1129. Because TSI knew that it "had no basis to bring" this action,

28  it necessarily "w[as] brought in bad faith." *Taylor v. Nat'l Collegiate Student Loan Tr.*

*2007-1*, 2021 WL 872494, at *4 (D. Utah Mar. 9, 2021).

Nevertheless, TSI pressed ahead with full knowledge that the discovery of its tax-evasion conspiracy would doom its claims and with the intent to conceal its fraud from Swisher and the Court.  In fact,

Yu Decl., Ex. 31 at 1.

**b.**     **TSI's Bad-Faith Misconduct During Discovery And At Trial**

TSI continued to make crucial misrepresentations and omissions as the case proceeded to discovery.  In response to Swisher's requests for TSI's financial statements, TSI produced manipulated records that it falsely stated would be sufficient to determine TSI's monthly profits.  *See* Dkt. 426 at 12; Roman Decl. ¶¶ 3–19, 23, 25, 32 & Exs. 1–18, 21, 29.  At the same time, TSI objected to Swisher's requests for TSI's federal excise tax filings as overly burdensome and irrelevant, and misled Swisher into accepting scaled-back productions that omitted details that would have revealed TSI's fraud.  *See* Dkt. 426 at 15; Roman Decl. ¶¶ 9, 12, 14 & Exs. 8, 11, 13.

When asked about the accuracy of TSI's financial records during deposition, TSI's senior officers persisted in their efforts to conceal the scheme.  Kureh stated that the financial records produced by TSI contained "accurate information" that Swisher could "absolutely" rely upon to ascertain TSI's profitability, Roman Decl., Ex. 22 at 16, even though Kureh had been a key player in TSI's fraud for at least a year by that point, Yu Decl. ¶¶ 38–45 & Exs. 32–39; *see also id.* Ex. 18 at 114.  And Alrahib expressed remorse about his past tax evasion during a deposition, despite the fact that he was at that very moment engaged in a multi-million-dollar tax fraud on behalf of TSI.  *See* Roman Decl., Ex. 23 at 3–7, 11–15.  The law is clear that "[p]roviding false or incomplete information during a deposition . . . constitutes the sort of willfulness, bad faith, or fault" warranting sanctions.  *Englebrick v. Worthington Indus., Inc.*, 944

Gibson, Dunn & Crutcher LLP

F. Supp. 2d 899, 909 (C.D. Cal. 2013), *aff'd*, 620 F. App'x 564 (9th Cir. 2015); *see also IV Sols., Inc. v. Off. Depot Emp. Welfare Benefit Plan*, 2009 WL 10314274, at *9 (C.D. Cal. May 13, 2009) ("It is difficult to conceive an act of misconduct graver than the outright fabrication of evidence that Plaintiffs here undertook, and the perjury committed to undergird it.").

Before trial, TSI moved *in limine* to bar Swisher from presenting evidence related to Alrahib's history of tax evasion, including the fact that one of TSI's biggest customers had terminated its relationship with TSI because of that history.  Dkt. 112 at 1–2. Relying on TSI's false representations that Alrahib's misconduct was in the past, the Court granted the motion and excluded Alrahib's prior tax evasion as "improper character evidence."  Dkt. 163 at 4.  As both this Court and the Ninth Circuit later concluded, "the absence of this evidence of fraud from the record substantially interfered with Swisher's defense."  Dkt. 426 at 18; *see also Trendsettah*, 31 F.4th at 1137–38.

TSI's pattern of concealment culminated at trial with the presentation of witness testimony and documentary evidence that deliberately falsified TSI's precarious financial situation and continued to conceal its criminal tax-evasion scheme.  TSI called Alrahib to testify on nearly every element of its claims, and his "credibility was central to the trial."  Dkt. 426 at 13.  But, as a result of TSI's motion *in limine*, Swisher was unable to impeach Alrahib with his history of tax evasion.  *Id.*  In addition, TSI presented Trial Exhibits 135 and 136, Yu Decl., Exs. 6–7, which showed artificially inflated profit margins for Splitarillos that depended entirely on tax evasion, even though Alrahib later admitted to federal law enforcement that he knew those exhibits included the fraudulent balance sheets he maintained with Productos, Dkt. 426 at 13–14; Yu Decl., Ex. 18 at 83–85.  And TSI presented a completely inaccurate damages calculation by its economic expert, Dr. McDuff, which relied on this false evidence to estimate the lost profits that the jury ultimately awarded to TSI in full.  Dkt. 483 at 9–10; Yu Decl., Ex. 8 at 36.  As Dr. Cox, explained, "if one accounted for the excise taxes [TSI] should have paid, the damages model . . . would have estimated no damages."  *Trendsettah*, 31 F.4th at 1129

(cleaned up).   "[I]t is well-settled that fabricating and submitting knowingly false evidence amounts to willful and bad faith conduct."  *Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 2015 WL 12732433, at \*23 (C.D. Cal. Dec. 14, 2015).  And tellingly, TSI has never "advance[d] any contention that the jury would have reached the same verdict for antitrust liability and damages if it were fully apprised of Alrahib's fraudulent evasion of federal excise taxes."  *Trendsettah*, 31 F.4th at 1137.

### c.    TSI's Bad-Faith Misconduct After The New Evidence Emerged

TSI's efforts to conceal its tax fraud did not end when Alrahib's indictment was unsealed.  On the contrary, TSI argued in its opposition to Swisher's Rule 60 motion that it *had* "paid the appropriate amount of funds to Mr. Bryant" to cover the excise taxes, but that "*Mr. Bryant* failed to remit those funds to the U.S. Treasury."  Dkt. 397 at 16 (emphasis in original).  TSI also submitted a sworn declaration in support of one of its motions for reconsideration stating that Dr. McDuff's lost profits calculation remained accurate notwithstanding the new evidence of tax evasion.  Dkt. 454-2 ¶ 5–6.

After the Court granted Swisher's Rule 60 motion, TSI shifted its position.  In two motions for reconsideration, TSI insisted that the fraud had been so "obvious" that Swisher should be faulted for not discovering it earlier.  Dkt. 514 at 9, 17; *see also* Dkt. 454 at 10–11, 26.  The Court rejected these arguments in multiple successive orders, which the Ninth Circuit refused to review on an interlocutory basis, *Trendsettah USA, Inc. v. Swisher Int'l Inc.*, No. 20-80024, Dkt. 9 (9th Cir. Apr. 23, 2020), refused to disturb when TSI sought a writ of mandamus, *Trendsettah USA, Inc. v. U.S. Dist. Ct.*, No. 20-71247, Dkt. 16 (9th Cir. July 21, 2020), and ultimately affirmed in relevant part, noting that "Trendsettah's own expert did not detect the fraud that Trendsettah posits was hidden in plain sight," *Trendsettah*, 31 F.4th at 1137.

In sum, from the very start of this litigation, TSI has engaged in repeated acts of concealment, falsification, and dishonesty in order to hide the fact that its claims rested on a pillar of fraud.  Such repeated, brazen misconduct unquestionably rises to the level of sanctionable bad faith.  *See, e.g.*, *Lahiri*, 606 F.3d at 1222 (affirming sanctions for

1   pattern of misrepresentations); *Anheuser-Busch*, 69 F.3d at 349 (affirming sanctions
2   where party knew of and concealed relevant evidence).

3   **B.      The Court Should Award Swisher The Fees And Costs Incurred Because Of**
4   **TSI's Misconduct**

5          In light of TSI's pervasive bad-faith misconduct, the Court should sanction TSI
6   in the amount of all of Swisher's fees and costs causally connected to that misconduct—
7   namely, the full $19,859,625.66 that Swisher has expended since the inception of this
8   litigation.[4]

9          Sanctions under a court's inherent authority, "when imposed pursuant to civil
10  procedures, must be compensatory rather than punitive in nature." *Goodyear*, 581 U.S.
11  at 108.   In other words, a sanctions award must satisfy a "but-for" test:   "The
12  complaining party . . . may recover 'only the portion of his fees that he would not have
13  paid but for' the misconduct." *Id.* at 109 (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)).
14  "This but-for causation standard generally demands that a district court assess and
15  allocate specific litigation expenses." *Id.*   In "exceptional cases," however, the but-for
16  standard "permits a trial court to shift all of a party's fees, from either the start or some
17  midpoint of a suit, in one fell swoop." *Id.* at 110.   In such cases "a court escapes the
18  grind of segregating individual expense" on the premise that "all fees in the litigation,
19  or a phase of it, meet the applicable test:   They would not have been incurred except for
20  the misconduct." *Id.* at 111.

21         This is an exceptional case in which the Court should award Swisher all of the
22  fees and costs it incurred from the inception of the litigation.   At a minimum, the Court
23  should award Swisher the fees and costs it incurred litigating (1) the antitrust and state-
24  law claims and (2) the Rule 60 motion.

25

26  _____

27  [4]  If the Court's earlier award of fees and costs to Swisher remains in force at the
28  conclusion of this litigation, *see supra* n.3, Swisher will make an election of remedies
     to avoid any double recovery.

Gibson, Dunn & Crutcher LLP

**1.      Swisher Is Entitled To All Of Its Fees And Costs Because TSI Initiated This Action In Bad Faith**

The Supreme Court described a case almost exactly like this one in explaining when a court would be justified in awarding all of a party's fees under *Goodyear*'s "but-for" test:  "If a plaintiff *initiates a case in complete bad faith*, so that every cost of defense is attributable only to sanctioned behavior, the court may . . . make a blanket award."  *Goodyear*, 581 U.S. at 110 (emphasis added).  Similarly, if a lawsuit "would have settled at a specific time—for example, when a party was legally required to disclose evidence fatal to its position—then the court may grant all fees incurred from that moment on."  *Id.* at 111.

As described above, TSI initiated this action "in complete bad faith."  *Supra* Section IV.A.2.a.  The only injury TSI alleged in the Complaint was lost profits, but TSI knew when it filed the Complaint that it would have had no profits to be lost absent TSI's criminal tax-evasion conspiracy.  As this Court recognized, "TSI had no rights to the 'profits' that were, by Alrahib's admission, stolen from the government."  Dkt. 426 at 14; *see AlphaMed Pharms. Corp. v. Arriva Pharms., Inc.*, 432 F. Supp. 2d 1319, 1348 (S.D. Fla. 2006) ("It is beyond dispute that [a plaintiff] cannot recover lost profits that are predicated on the completion of illegal activity." (cleaned up)); *Carruthers v. Flaum*, 365 F. Supp. 2d 448, 470 (S.D.N.Y. 2005) ("[Claims that] are predicated on the completion of illegal activity . . . are not recoverable for that reason alone.").

But for TSI's concealment of its fraudulent scheme from Swisher, the Court, and (allegedly) its attorneys, this action would not (and could not) have been filed by an attorney consistent with Rule 11; would not have proceeded beyond the pleadings stage; would not have withstood Swisher's motion for summary judgment, which argued there was insufficient evidence of damages; and would never have gone to trial.  And but for these concrete manifestations of TSI's fraudulent misconduct, Swisher would not have incurred any of the substantial fees and costs that it expended during this nearly decade-long litigation.  Accordingly, TSI's misconduct was a but-for cause of *all* of Swisher's

expenses in this case.

Courts have awarded all of a party's fees and costs as sanctions on similar facts. In *Chambers*, for example, the Supreme Court held that "the District Court acted within its discretion in assessing as a sanction for Chambers' bad-faith conduct the entire amount of [the plaintiff's] attorney's fees," 501 U.S. at 55, where the defendant's "actions were part of a sordid scheme of deliberate misuse of the judicial process designed to defeat [the plaintiff's] claim by harassment, repeated and endless delay, mountainous expense and waste of financial resources." *Id.* at 56–57 (cleaned up). The misconduct in that case included the refusal to allow inspection of corporate records, *id.* at 38, meritless motions and pleadings designed to delay proceedings, *id.* at 38, and frivolous appeals, *id.* at 40. Rejecting the defendant's claim that "the fact that the entire amount of fees was awarded means that the District Court failed to tailor the sanction to the particular wrong," the Supreme Court explained that "full attorney's fees were warranted due to the frequency and severity of [the defendant's] abuses of the judicial system and the resulting need to ensure that such abuses were not repeated." *Id.* at 56. So, too, here.

Similarly, in *CrossFit, Inc. v. National Strength & Conditioning Ass'n*, 2019 WL 6527951 (S.D. Cal. Dec. 4, 2019), the district court awarded all of the movant's fees and costs in response to a pervasive pattern of bad-faith misconduct. There, "the [defendant] withheld evidence, withheld documents, and didn't give accurate or correct answers" in response to discovery, which "led [the plaintiff] to spend a ton of money trying to compel and force the [defendant] to meet its discovery obligations," and ultimately required the plaintiff "to defend against the [defendant's] motion for summary judgment, a motion that would have never been filed and [the plaintiff] would never have had to oppose . . . had withheld documents . . . been produced." *Id.* at *23 (cleaned up). The court found that "this [wa]s the sort of 'exceptional case'" that was litigated "in complete bad faith, so that every cost of litigating it once the obstructionism began is attributable to sanctioned behavior," and "therefore conclude[d] that it is appropriate to grant [the

Gibson, Dunn &
Crutcher LLP

19

1   plaintiff] the fees it seeks 'in one fell swoop.'" *Id.* at *24 (cleaned up).

2       And in *In re Szanto*, 2020 WL 1170140 (Bankr. D. Or. Mar. 10, 2020), the court

3   similarly reasoned that, because "the complaint itself was frivolous and without any

4   objective basis," and the plaintiff "fil[ed] motions and documents that lacked merit and

5   were filed only to create delay or confusion," the action "[wa]s an exceptional case

6   [such] that defendants are entitled to an award of all of their reasonable attorney fees

7   and expenses in defending against plaintiff's complaint." *Id.* at *8.

8       The fact that the passage of time barred Swisher from obtaining Rule 60(b) relief

9   on TSI's contract claims does not diminish Swisher's entitlement to sanctions in the full

10  amount of its fees and costs in this litigation.  Quite the opposite.  TSI's contract claims

11  rested on the same spurious theory of lost profits as its antitrust claims.  *See* Dkt. 1 ¶ 64

12  ("TSI has been damaged by Swisher's breaches of the contracts.  TSI has lost millions

13  of dollars in profits because it could not satisfy the outstanding demand for Splitarillo

14  products due to Swisher's refusal to fulfill TSI's orders.").  TSI's evidence of lost profits

15  on its contract claims was just as false and misleading as was its evidence of lost profits

16  on its antitrust claims.  *See* Dkt. 426 at 12 ("These misleading financial records were in

17  turn relied on by TSI's economic expert, Dr. [McDuff], who used them as the basis of

18  his damages analysis.").  And the lost-profits damages awarded for the contract claims

19  and the antitrust claims were identical except for the latter's inclusion of lost *future*

20  profits; indeed, TSI stipulated that it could not recover lost profits on both sets of claims.

21  Dkt. 216 at 3.

22      The *only* reason TSI's contract claims survived was because TSI managed to

23  conceal the fraudulent underpinnings of its suit until the one-year window for seeking

24  relief from judgment on the contract claims under Rules 60(b)(2) and (b)(3) had elapsed.

25  Dkt. 426 at 18 n.2.  Far from militating against sanctions, TSI's ill-gotten recovery on

26  its contract claims—which remains intact as a direct result of TSI's longstanding

27  deception—confirms that sanctions should be awarded in the full amount of Swisher's

28  fees and costs in this litigation.  After all, "[t]he principle that a wrongdoer shall not be

1   permitted to profit through his own wrongdoing is fundamental in our jurisprudence."

2   *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 151 (1968) (Marshall, J.,

3   concurring in the result); *see also Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051,

4   1058 (9th Cir. 1998) ("There is no point to a lawsuit, if it merely applies law to lies.

5   True facts must be the foundation for any just result.").

6        At a minimum, the Court should award Swisher all of the fees and costs incurred

7   litigating (1) the antitrust and state-law claims and (2) the Rule 60 motion.  *See* Dkt. 426

8   at 18.[5]  The Supreme Court has confirmed that "a district court may take into account its

9   overall sense of a suit, and may use estimates in calculating and allocating an attorney's

10  time." *Goodyear*, 581 U.S. at 110 (cleaned up).  Although this Court's findings of bad-

11  faith conduct by TSI apply with equal force to TSI's antitrust and contract claims,

12  awarding Swisher the fees and costs incurred litigating the antitrust claims that were the

13  subject of Rule 60(b) relief would provide a suitable "estimate" for achieving "rough

14  justice" in the event the Court concludes that it is barred from awarding fees and costs

15  in connection with the contract claims.  *Id.*  And because Swisher's Rule 60 motion and

16  the ensuing motions for reconsideration and appeals are "attributable only to" TSI's

17  misconduct, those expenses are fully recoverable.  *Id.*

18       An award limited to the antitrust and state-law claims and Rule 60 motion should

19  include expenses incurred defending the contract claims but that would not have been

20  worth the candle had Swisher not also faced treble damages under TSI's antitrust claims.

21  *Goodyear* is no bar to compensating a defendant for expenses incurred because of

22  sanctionable conduct even if the expenses also furthered other aspects of the defendant's

23  case.  *See Fox*, 563 U.S. at 837 ("[T]he 'but-for' standard we require may in some cases

24  allow compensation to a defendant for attorney work relating to both frivolous and non-

---

25

26   [5]  Because Swisher secured dismissal of TSI's state-law claims—which were derivative
27        of its antitrust claims and relied upon the same tainted factual allegations—a lesser
         compensatory sanction should include the fees and costs Swisher incurred because
28        of those claims.  *See supra* n.1.

1    frivolous claims . . . [i]f an attorney performs work useful to defending against both, but

2    did so only because of the defendant's monetary exposure on the frivolous charge.").

3        **2.     Swisher's Fees Are Reasonable**

4        If the Court determines that Swisher's legal expenses were incurred "because of"

5    TSI's bad-faith misconduct, it must then determine whether the *amount* of fees requested

6    is reasonable.  *See CrossFit*, 2019 WL 6527951, at *24.  As the party seeking fees,

7    Swisher "must support the request with evidence regarding the number of hours worked

8    and the rates claimed."  *RG Abrams Ins. Co. v. Law Offs. of C.R. Abrams*, 342 F.R.D.

9    461, 523 (C.D. Cal. 2022) (cleaned up).  At that point, "[t]he party opposing the fee

10   request bears the burden of rebuttal that requires submission of evidence to the district

11   court challenging the accuracy and reasonableness of the hours charged or the facts

12   asserted by the prevailing party in submitted affidavits."  *Id.* (cleaned up).  "[F]or

13   guidance on the reasonableness of fees" imposed under their inherent power, courts

14   "look[] to the lodestar amount, which is presumptively reasonable."  *In re Personalweb*

15   *Techs., LLC Patent Litig.*, 2021 WL 796356, at *5 (N.D. Cal. Mar. 2, 2021).  This

16   lodestar is calculated "by multiplying the number of hours reasonably expended by the

17   prevailing party's attorneys on the litigation by a reasonable hourly rate."  *Directors*

18   *Guild of Am., Inc. v. Voltage Pictures, LLC*, 2020 WL 11421252, at *2 (C.D. Cal. Dec.

19   7, 2020).

20       The hourly rates billed by Swisher's counsel—Gibson, Dunn & Crutcher LLP,

21   Akerman LLP, and Brodsky Fotiu-Wojtowicz, PLLC—are detailed in the attached

22   Declaration of Daniel G. Swanson ("Swanson Decl."), Declaration of Michael Marsh

23   ("Marsh Decl."), and Declaration of Alaina Fotiu-Wojtowicz ("Fotiu-Wojtowicz

24   Decl."), respectively  As Swisher explained in its November 2020 fees motion, these

25   rates are reasonable based on the experience, skillset, and reputations of the attorneys

26   who worked on this matter, and they are consistent with billing rates for attorneys with

27   similar qualifications in the Los Angeles market, as detailed in the Real Rate Report

28   published by Wolters Kluwer ELM Solutions.  *See* Dkt. 604-2 at 23–29.  TSI "d[id] not

Gibson, Dunn &
Crutcher LLP

challenge Swisher's proposed hourly rates for its attorney's fees" at that time, and "[t]he Court agree[d] that the rates are reasonable given the prevailing rates in the Central District of California."  Dkt. 622 at 12.

Swisher has also submitted extensive billing records detailing the hours its attorneys reasonably expended litigating this action—both in its entirety and in litigating TSI's antitrust and state-law claims and the Rule 60 motion.  *See* Swanson Decl., Exs. 2– 7, 14–15; Marsh Decl. Exs. 3–9; Fotiu-Wojtowicz Decl., Exs. 3–4.  Because "the award of fees should cover 'every item of service which, at the time rendered, would have been undertaken by a reasonably prudent lawyer to advance or protect his client's interest' in the case at bar," *Armstrong v. Davis*, 318 F.3d 965, 971 (9th Cir. 2003), and because courts "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case," *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112–13 (9th Cir. 2008), all of these efforts should be compensated.

Multiplying the hourly rates of Swisher's counsel by the time reasonably expended on this litigation yields a lodestar amount of $16,211,104.40.  *See* Swanson Decl. ¶ 69; Marsh Decl. ¶ 46; Fotiu-Wojtowicz Decl. ¶ 8.  Limiting fees to those incurred litigating TSI's antitrust and state-law claims and Rule 60 motion yields a lodestar amount of $15,971,708.90.  *See* Swanson Decl. ¶ 70.

### 3. Swisher's Costs Are Fully Recoverable

This Court should also award Swisher's costs.  *See Goodyear*, 581 U.S. at 107 ("[O]ne permissible sanction is . . . an order, like the one issued here, instructing a party that has acted in bad faith to reimburse legal fees *and costs* incurred by the other side." (emphasis added)).  District courts routinely award costs as part of a compensatory sanction where, as here, records are submitted in unredacted form and adequately linked to the sanctioned conduct.  *See, e.g., Personalweb*, 2021 WL 796356 at *14.  Swisher's total costs litigating this action were $3,648,521.26, only a small fraction of which would be eligible for removal should the Court award costs for the state-law, antitrust, and Rule 60 litigation, only.  Swanson Decl. ¶¶ 71–73; Marsh Decl. ¶ 47.

**C.     In The Alternative, The Court Should Grant Swisher Leave To Conduct
Discovery Regarding The Propriety Of Sanctions**

The record in this case clearly establishes that the very filing of this action was a sanctionable act of bad-faith misconduct.  TSI managed to avoid detection of its original deception for nearly a decade only by engaging in further bad-faith and vexatious behavior that is independently sanctionable, from producing fraudulent financial records during discovery to insisting that Alrahib's prior history of tax fraud was irrelevant and prejudicial.  These facts, which have already been established by this Court and the Ninth Circuit, are sufficient to justify the sanctions sought by Swisher.

Nevertheless, if the Court concludes that there are any open questions concerning the propriety of sanctions, the Court should grant Swisher leave to conduct further discovery.  Although "[d]iscovery on a sanctions motion is often unnecessary," it is well established that "district courts have broad discretion with respect to discovery matters and can permit discovery on the question of sanctions."  *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 415 F. Supp. 3d 498, 503 n.5 (E.D. Pa. 2019) (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1084 (11th Cir. 2001)).  Courts in the Ninth Circuit regularly exercise this discretion to order discovery concerning the propriety and amount of sanctions.  *See, e.g.*, *Gomez v. Reinke*, 2008 WL 3200794, at *14 (D. Idaho Aug. 7, 2008).

Should the Court determine that discovery is necessary, it should make clear that this discovery extends to any potentially sanctionable misconduct on the part of TSI's counsel.  Despite insisting that they were unwitting pawns of their client's fraud, TSI's counsel acknowledged that they had, at a minimum, turned a blind eye to the conduct that they later deemed to be hidden in plain sight.  In open court, TSI's counsel admitted that their own acts of "misrepresentation" could "maybe" be "negligent," and conceded that any objective observer would ask the obvious question and "say, well, you should have investigated . . . you should have inquired of your client about the nature of the excise taxes paid, et cetera." Yu Decl., Ex. 16 at 8.  Although Swisher brings this motion

1    against only TSI, it reserves the right to seek further sanctions against TSI's counsel

2    should evidence come to light showing bad-faith misconduct on their part.

3                              **V.    CONCLUSION**

4           This Court should grant Swisher's motion for sanctions and order TSI to pay all

5    of the fees and costs incurred by Swisher in litigating this case from its inception

6    ($19,859,625.66) or, at a minimum, the fees and costs incurred by Swisher in litigating

7    (1) the antitrust and state-law claims and (2) the Rule 60 motion ($19,620,230.16).  In

8    the alternative, the Court should grant Swisher leave to conduct discovery into the

9    impact of TSI's criminal conduct.

10

11   Dated:  February 6, 2023

12                                              THEODORE J. BOUTROUS JR.
                                                DANIEL G. SWANSON
13                                              CYNTHIA E. RICHMAN
                                                MINAE YU
14                                              JULIAN KLEINBRODT

15                                              GIBSON, DUNN & CRUTCHER LLP

16                                              MICHAEL C. MARSH
                                                RYAN ROMAN
17
                                                AKERMAN LLP
18

19
                                                By: */s/        Theodore J. Boutrous Jr.*
20                                                     Theodore J. Boutrous Jr.

21

22                                              *Attorneys for Defendant*
                                                SWISHER INTERNATIONAL, INC.
23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

25

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Swisher International, Inc., certifies that this brief contains 8993 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 6, 2023

By: */s/        Theodore J. Boutrous Jr.*
Theodore J. Boutrous Jr.