MARK POE (S.B. #223714)
mpoe@gawpoe.com
RANDOLPH GAW (S.B. #223718)
rgaw@gawpoe.com
VICTOR MENG (S.B. #254102)
vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

THOMAS C. GOLDSTEIN (*pro hac*)
tgoldstein@goldsteinrussell.com
ERIC F. CITRON (*pro hac*)
ecitron@goldsteinrussell.com
GOLDSTEIN & RUSSELL, P.C.
7475 Wisconsin Ave., Suite 850
Bethesda, MD 20814
Telephone: (202) 362-0636
Facsimile: (866) 574-2033

Attorneys for Plaintiffs Trendsettah USA, Inc. and Trend Settah, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

TRENDSETTAH USA, INC. and TREND SETTAH, INC.

Plaintiffs,

v.

SWISHER INTERNATIONAL, INC.

Defendant.

Case No. 8:14-CV-01664-JVS (DFMx)

**TRENDSETTAH'S OPPOSITION TO SWISHER'S MOTION FOR SANCTIONS**

Judge:        The Hon. James V. Selna
Courtroom:  Courtroom 10C
Date:          March 27, 2023
Time:          1:30 p.m.

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ................................................................................... 1

BACKGROUND .................................................................................... 3

ARGUMENT ......................................................................................... 6

I.    SWISHER'S MOTION IS UNTIMELY BECAUSE IT IS BASED SOLELY ON INFORMATION KNOWN TO SWISHER PRIOR TO ENTRY OF FINAL JUDGMENT AND THE SECOND APPEAL. ................................. 6

    A.   This Court's 2020 Dismissal Order Forecloses Swisher's Motion. ........... 7

    B.   Even If Swisher's Motion Were Not Foreclosed By the 2020 Dismissal Order, It is Barred By Controlling Precedent. ......................................... 8

II.   SWISHER CANNOT SATISFY THE "HIGH THRESHOLD" REQUIRED FOR A FINDING OF BAD FAITH. ............................................................12

    A.   None of Trendsettah's Litigation Conduct Approaches Bad Faith...........14

    B.   None of Swisher's Cases Approving Inherent Sanctions is Remotely Like This One. ...............................................................................................18

III.  TRENDSETTAH HAD A VALID CLAIM FOR DAMAGES REGARDLESS OF ALRAHIB'S SCHEME WITH BRYANT. .............................................23

IV.   THERE IS NO JUSTIFICATION FOR FURTHER DISCOVERY, BUT IF THE COURT ALLOWS IT, IT SHOULD BE MUTUAL.............................26

CONCLUSION .......................................................................................28

CERTIFICATE OF COMPLIANCE......................................................... 1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Am. Unites for Kids v. Rousseau*,
    985 F.3d 1075 (9th Cir. 2021)..............................................................................12

*Ass'n of Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc.*,
    976 F.2d 541 (9th Cir. 1992)...............................................................................14

*Bass v. City of Sioux Falls*,
    232 F.3d 615 (8th Cir. 1999)...............................................................................15

*In re Benevento*,
    2013 WL 1292671 (S.D. Fla. Mar. 27, 2013).......................................................9

*Carpenter v. Merit Systems Protection Board*,
    111 F.3d 118 (Fed. Cir. 1997).............................................................................16

*In re Cellular 101, Inc.*,
    539 F.3d 1150 (9th Cir. 2008)...........................................................2, 3, 10, 11

*Dejoria v. Maghreb Petroleum Expl.*,
    2016 WL 4250488 (W.D. Tex. Aug. 11, 2016)......................................................9

*Fink v. Gomez*,
    239 F.3d 989 (9th Cir. 2001)..................................................................................3

*Free v. Abbott Lab'ys, Inc.*,
    164 F.3d 270 (5th Cir. 1999)...............................................................................11

*Goodyear Tire & Rubber Co. v. Haeger*,
    581 U.S. 101 (2017)..............................................................................9, 13, 14

*Hill v. Clark*,
    2012 WL 13018385 (N.D. Ga. Aug. 16, 2012).......................................................9

*Leon v. M.I. Quality Lawn Maint., Inc.*,
    2018 WL 6250529 (S.D. Fla. Nov. 29, 2018).........................................................9

*Lu v. United States*,
    921 F.3d 850 (9th Cir. 2019)...............................................................................12

*Manchester v. Sivantos GmbH*,
   No. 17-CV-5309-ODW-JEMX, 2018 WL 11347739 (C.D. Cal. Nov. 19, 2018) ........................................................................................... 12

*MGA Ent., Inc. v. Nat'l Prod. Ltd.*,
   No. 10-CV-07083-JAK-SSX, 2012 WL 4052023 (C.D. Cal. Sept. 14, 2012) .............................................................................................. 9

*Microsoft v. Baker*,
   137 S. Ct. 1702 (2017) ...................................................................... 10, 11

*Miller v. City of Los Angeles*,
   661 F.3d 1024 (9th Cir. 2011) .............................................................. 4, 15

*Peer v. Lewis*,
   606 F.3d 1306 (11th Cir. 2010) .................................................................. 9

*In re Ray*,
   951 F.3d 650 (5th Cir. 2020) ..................................................................... 8

*Prosser v. Prosser*,
   186 F.3d 403 (3d Cir. 1999) .................................................................. 8, 9

*Reich v. City of Elizabethtown*,
   945 F.3d 968 (6th Cir. 2019) .................................................................... 15

*Roy v. Bd. of Cnty. Comm'rs*,
   2011 WL 4904410 (N.D. Fla. Sept. 27, 2011) ........................................... 9

*Springs v. Gielow*,
   2016 WL 6093496 (N.D. Fla. July 26, 2016) ............................................. 9

*In re Szanto*,
   2020 WL 1170140 (D. Or. Mar. 10, 2020) ............................................... 11

*Trendsettah v. Swisher*,
   31 F.4th 1124 (9th Cir. 2022) ............................................................ *passim*

*USA Video Tech. Corp. v. Movielink, LLC*,
   2005 WL 3418407 (D. Del. Dec. 13, 2005) ............................................... 9

*Vikas WSP, Ltd. v. Econ. Mud Prod. Co.*,
   23 F.4th 442 (5th Cir. 2022) ................................................................... 12

*Wood v. GCC Bend, LLC*,
   422 F.3d 873 (9th Cir. 2005) ........................................................................... 3, 10

*Zambrano v. City of Tustin*,
   885 F.2d 1473 (9th Cir. 1989) ............................................................................... 13

**Florida State Cases**

*Deauville Hotel Mgmt., LLC v. Ward*,
   219 So. 3d 949 (Fla. Dist. Ct. App. 2017) ............................................................... 2

*Indian River Colony Club, Inc. v. Schopke Const. & Eng'g, Inc.*,
   619 So. 2d 6 (Fla. Dist. Ct. App. 1993) .................................................................. 2

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ................................................................ 12

# INTRODUCTION

Before explaining how none of Trendsettah's litigation conduct meets the "high threshold" of bad faith, it is necessary to step back from Swisher's hyperbole to assess what really happened in this case, where $35 million in antitrust liability has been eliminated, with only the contract verdict remaining.

As this Court found in ruling on post-trial motions, Swisher's witnesses "verbally conceded that Swisher's failure to deliver cigarillos was breach." Order re: JMOL at 18 (ECF No. 262). Swisher has never attempted to show how—had its counsel surfaced the issue of excise taxes in pretrial or trial proceedings—the exposure of Alrahib's scheme would have changed that concession, or shown that Swisher *did* fulfill the orders Trendsettah had placed.

Beyond being an admitted contract-breacher, Swisher is also a jury-adjudged, appellate-confirmed monopolist, who undertook years of anticompetitive actions against Trendsettah with no "legitimate business purpose," and with "the specific intent to monopolize that market." J.I. 29, 30 (ECF No. 208). Here too, Swisher has no explanation for how revelation of the tax evasion would mean that Swisher hadn't (1) intentionally shorted Trendsettah hundreds of millions of sticks under a requirements contract, (2) purposefully mis-filled Trendsettah's orders, (3) sabotaged its supply with "wet paper," or (4) put on witnesses who repeatedly lied about all of this. Nor can anyone explain how Alrahib's scheme would have meant that Swisher (A) had a different market share than it did, or (B) bestowed a "legitimate purpose" to any of Swisher's anti-competitive conduct. As the undersigned persuaded the jury at closing, "Swisher did it." Swisher now asks the Court to hold that despite Swisher's own admitted breach of contract and appellate-confirmed monopolistic conduct, Trendsettah owes *Swisher* a net $11 million.

Swisher's only argument—as it freely acknowledges, Mot. at 14, 18-22—is that this litigation was "baseless" because Trendsettah could prove no damages. We show in just six paragraphs in *Part III* why that argument is obviously wrong. For

TSI'S OPP. TO SANCTIONS MOT.
CASE NO. 8:14-CV-01664-JVS (DFMX)

one, it ignores Trendsettah's lost profits that arose from the unfulfilled *Swisher-manufactured* Splitarillos.  For another, it is based on Swisher's claim that this Court and the Ninth Circuit found that Dr. Cox's re-analysis of damages is the *only* permissible calculation, when both courts observed only that Cox had "opine[d] that" Trendsettah would have no damages.  Order Re: Rule 60 Mot. at 13 (ECF No. 426); *Trendsettah v. Swisher*, 31 F.4th 1124, 1129 (9th Cir. 2022).  Furthermore, under controlling precedent no actual damages are even required for Trendsettah to have prevailed on Swisher's (conceded) breach of contract.  *See, e.g.*, *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 956 n.3 (Fla. Dist. Ct. App. 2017).  So regardless of Alrahib's tax evasion, Trendsettah still would have filed, and it still would have won.

Beyond the failure of its central argument, Swisher's motion suffers from additional procedural and substantive problems.  On the procedural front, Swisher forfeited any right to take a third crack at negating the jury's verdict by not filing its motion before final judgment and the last appeal.  Swisher "elected to try to win its appeal with the arguments it had already briefed, presumably hoping that if it lost, it could try for a second bite at the apple by raising [this sanctions motion] afterwards." *In re Cellular 101, Inc.*, 539 F.3d 1150, 1155 (9th Cir. 2008).  "Regardless of [a litigant's] motives, we cannot permit the court to be subject to such manipulation." *Id.*

Swisher explicitly previewed the factual basis for this motion almost three years ago, prior to final judgment and appeal.  Opp. to Mot. to Dismiss at 2 (ECF No. 574-1) ("Swisher has a strong claim for attorney's fees as sanctions under Rule 37 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and/or the Court's inherent authority.")  To our knowledge—and as far as Swisher's citations reveal—this would be the first case in history to permit a party to bring an inherent sanctions motion based on information that was fully known to it (and indeed, explicitly threatened) prior to entry of final judgment and appeal concerning those very same factual issues.

And as far as we can tell, it would be contrary to the ruling of every court that *has* confronted such a situation. *See Part I.B.* (collecting cases). Swisher is plainly seeking "a second [actually a third] bite at the apple" to overcome the jury's verdict. *In re Cellular 101*, 539 F.3d at 1155. Even if this busy Court doesn't mind, the Ninth Circuit "cannot afford the luxury of reviewing the same set of facts in a routine case more than once without a seriously important reason." *Wood v. GCC Bend, LLC*, 422 F.3d 873, 882 (9th Cir. 2005). The litigation strategy of setting up appeal after appeal in hopes of finding a friendly panel is not a "seriously important reason" to "revisit the same facts—spun only slightly differently—in a successive appeal." *Id.*

Finally, on the substantive front, Swisher simply cannot meet the high standard for "bad faith" required to award it any amount in inherent sanctions. The evidence shows that Alrahib was the only Trendsettah witness who knew about his scheme with Tony Bryant, and Swisher still cannot identify *any* intentional misrepresentation that Alrahib made to Swisher or to the Court. There has never been a case holding that a party-witness is obligated to volunteer information he is not asked about, let alone that a failure to volunteer such information is "bad faith." Alrahib's failure to tell even Trendsettah's *own* lawyers and expert witness about his dealings might, at worst, be reckless (although there is likewise zero evidence that Alrahib knew the mechanics of McDuff's damages calculations). But "recklessness, without more, does not justify sanctions under a court's inherent power." *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001).

The Court should deny Swisher's motion, and proceed to the adjudication of Trendsettah's fees and entry of a third *final* judgment.

## BACKGROUND

Trendsettah filed this case nine years ago, seeking a range of compensatory, consequential, and punitive damages. Compl. *Prayer for Relief* (ECF No. 1). In discovery, the issue of federal excise taxes arose only once, in two of Swisher's document requests. Trendsettah's unknowing counsel first objected to those

requests, but upon pushback from Swisher's trial counsel, offered to produce exactly the requested documents.  Roman Decl. Ex. 14.  They told Swisher the decision was "up to you," and then requested Swisher's preference a second time, at which point *Swisher* elected "to remove the terms 'Tax*,' 'Excise,' and 'FET' from search terms."  *Id.* ¶15.  The issue of excise taxes on Splitarillos never again arose in discovery, including during Alrahib's 10-hour deposition, when Swisher was in possession of numerous excise tax invoices from Havana 59 that had been swept up in the collection, and when Swisher could inquire about excise taxes or any other topic it thought relevant.  Swisher also took the deposition of McDuff, free from any constraints.  McDuff had never given any consideration to excise taxes, ECF No. 454-5 (McDuff Decl. ¶4), and Swisher did not ask any questions whatsoever about them.  Meanwhile, Swisher had engaged Dr. Cox, who was "[s]pecifically" tasked to "review the … damages calculations and methodology used by Dr. McDuff to calculate damages."  ECF No. 410-7 at 3 (Cox report).  Cox nowhere suggested that excise taxes had any relevance to McDuff's damages or liability.  ECF Nos. 410-4, 410-6, 410-7 (Cox's three reports).

Before trial, Trendsettah's unknowing counsel made a motion to exclude "evidence that [Alrahib] failed to pay [state] excise taxes on tobacco products purchased through an Arizona Company and later resold in California."  ECF No. 163 at 3.  Nothing in that motion or order prohibited Swisher from inquiring at trial about excise taxes owing on Splitarillos.  *Miller v. City of Los Angeles*, 661 F.3d 1024, 1028, 1026 (9th Cir. 2011) (reversing an inherent sanctions award, explaining that *in limine* motions "constrain conduct only to the extent their words" say so, and offering: "[A] lesson for district judges:  Don't . . . rely on your own memory of what happened. . . . That's why we have transcripts.").

After Trendsettah won the verdict, Gibson Dunn appeared, and brought a successful post-trial motion to vacate the antitrust award.  In granting that motion, the Court affirmed the contract verdict, because Swisher had "verbally conceded that

Swisher's failure to deliver cigarillos was breach."  Order re: JMOL at 18 (ECF No. 262).

Two months after the entire verdict was reinstated on appeal, an AUSA in Florida (who was and remains the husband of an Akerman partner—a fact never disclosed by Swisher and only recently learned by Trendsettah's counsel[1]) decided to indict Alrahib.  That indictment (by the spouse of Trendsettah's civil adversary) was used to obtain vacatur of the entire verdict.  Order Re: Rule 60 (ECF No. 426).

In the ensuing weeks (following a six-week email exchange in which Swisher continuously denied having such documents, Decl. of Mark Poe ¶¶2-8, Ex. A) Trendsettah discovered that contrary to Swisher's foundational claim that "TSI prevented Swisher from obtaining TSI's false tax filings submitted to the government," Rule 60 Mot. at 7 (ECF No. 377), Swisher had in fact been in possession of *every one* of those filings since two months before trial, having subpoenaed them from Havana 59—the importer who was the statutory payor of excise taxes.  Swisher now says that it was "bad faith" for Trendsettah to file an ensuing motion based on that revelation.  Mot. at 16.  (But it was apparently "good faith" for Swisher's motion to falsely deny having those filings, and more "good faith" to repeat that false denial through six weeks' of email correspondence).  Swisher says it was also "bad faith" for Trendsettah to have thereafter accepted this Court's invitation to present that issue to the Ninth Circuit under section 1292(b).  *Id.* And it was also "bad faith" by Trendsettah to have then brought a second motion, when it was later revealed that contrary to Swisher's false foundational claim that Trendsettah had "withheld" documents related to excise taxes, Trendsettah had in fact produced 285 separate copies of the excise-tax invoices Havana 59 submitted to Trendsettah, without Swisher expressing any interest in them.  *Id.*

In filing those supposedly "bad faith" motions, Trendsettah submitted

---

[1] *See* https://www.theknot.com/us/julie-seider-and-chris-browne-oct-2015.

declarations from its counsel, Dr. McDuff, and every other Trendsettah witness, attesting that they had no knowledge of Alrahib's scheme, with McDuff adding: "If Swisher or its expert witness had ever raised any issue with respect to the impact of excise taxes on the cost of Trendsettah's imported cigars, I could have and would have neutrally evaluated their assertions."  ECF No. 454-5 ¶7 (McDuff); *see also* ECF Nos. 454-2 through 454-9 (the others).

By the summer of 2020, with essentially all of its operations frozen by the government and the pandemic, Trendsettah was unable to afford to replicate the $650,000 in costs it had taken to bring the case to trial.  ECF No. 565-3 ¶¶2-3. Accordingly, it elected to voluntarily dismiss with prejudice, to take an appeal of the Rule 60 orders.  Minute Order re Motion to Dismiss (ECF No. 591).  On appeal, Swisher argued at length that Trendsettah's dismissal had not created a "final judgment." *See* No. 20-56016, Dkt. 38 at 23-29.  In particular, Swisher told the appellate court that further proceedings would be needed "[i]f TSI's claims are reinstated <u>and additional</u> facts come to light." *Id.* at 27 (emphasis added).  The Ninth Circuit rejected Swisher's finality arguments, observing that "however we decide this appeal, the case will be over—either the jury's prior verdict will be reinstated or the district court's dismissal of Trendsettah's claims with prejudice will stand." *Trendsettah*, 31 F.4th at 1132.

## ARGUMENT

## I.  SWISHER'S MOTION IS UNTIMELY BECAUSE IT IS BASED SOLELY ON INFORMATION KNOWN TO SWISHER PRIOR TO ENTRY OF FINAL JUDGMENT AND THE SECOND APPEAL.

Swisher knew all the bases of its current motion before final judgment entered. As it declared more than a month prior to the entry of final judgment:  "Swisher has a strong claim for attorney's fees as sanctions under Rule 37 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and/or the Court's inherent authority."  Opp. to Mot. to Dismiss at 2 (ECF No. 574-1).  It continued:  "The Supreme Court has held

that such sanctions are particularly warranted where, as here, a litigant has engaged in fraud on the court." *Id.* Of course the appeal determined that Trendsettah had *not* committed "fraud on the court," *see Trendsettah*, 31 F.4th at 1134, but even still, Swisher's current attempt to achieve the same result dressed up as an argument about "bad faith" is untimely because it knew all of the same facts years ago, but chose to sit on its rights, so it could get a second bite at the apple after seeing how the appeal turned out.[2]

**A.   This Court's 2020 Dismissal Order Forecloses Swisher's Motion.**

Three years ago, when Swisher threatened to bring this motion, this Court wrote:

> Depending on the Ninth Circuit's disposition, the discovery now sought may well be relevant.   The Court finds that much of the discovery which Swisher now seeks would be relevant to <u>post-trial motions for sanctions</u> of various types.   Any motion pursuant to 28 U.S.C. § 1927, and perhaps others, would be informed by probing in greater detail conduct <u>amounting to fraud on Court</u>.  <u>Should the Ninth Circuit affirm</u>, the Court is likely to entertain post-judgment discovery in support of the various motions that might be brought.   <u>Should the Ninth Circuit remand for a new trial</u>, Swisher would have an opportunity renew its discovery requests.   <u>Of course, if the Ninth Circuit reinstated the original verdict, the issue would be moot</u>.

ECF No. 591 at 4 (emphases added).

Swisher wholly ignores this order, other than the words "'post-trial motions for various types.'" Mot. at 3.   But the order plainly provided that Swisher could

---

[2] At one point Swisher claims that its motion is also based on "additional evidence that came to light while this case was on appeal." Mot. at 12.  But if there is any such evidence, it is apparently so insignificant that it didn't warrant mention in the text of Swisher's brief.

potentially pursue sanctions if the Ninth Circuit either (1) affirmed "conduct amounting to fraud on the court," or (2) "remand[ed] for a new trial."  ECF No. 591 at 4.  The Ninth Circuit did neither of those things.  Instead, it found that there was *no* fraud on the court, and "reinstated the original verdict" for breach of contract, *id.*, declaring the case "over" as a result.  *Trendsettah*, 31 F.4th at 1132.

The great irony in Swisher's motion is that despite this Court ruling that reinstatement would render this motion "moot," Swisher's motion is seeking to negate the exact component of the verdict that the Ninth Circuit ordered reinstated.  Assuming the Court meant what it wrote three years ago, Swisher's sanctions motion seeking to yet again avoid that reinstated component of the verdict is "moot."  ECF No. 591 at 4.

### B.   Even If Swisher's Motion Were Not Foreclosed By the 2020 Dismissal Order, It is Barred By Controlling Precedent.

As noted, we have not found a single case where a litigant was first permitted to seek relief from judgment under Rule 60, go through a final judgment and appeal, and then on remand move to again avoid liability via a sanctions motion based on the exact same facts.  As it appears, Swisher has not found such a case either.[3]  But there are plenty of cases holding otherwise, and they uniformly hold that it cannot be done.  In *Prosser v. Prosser*, for example, the Third Circuit held that it was an abuse of discretion to award even a $25,000 sanction (let alone $20 million) thirty months after entry of final judgment when all of the same facts had been known beforehand, in part because:

> [R]esolution of the issue before the inevitable delay of the appellate
> process will be more efficient because of current familiarity with the
> matter.  Similarly, concurrent consideration of challenges to the merits

---

[3] The closest Swisher comes is *In re Ray*, 951 F.3d 650 (5th Cir. 2020).  But that concerned only an *interlocutory* appeal preceding the sanctions, and the sanctions pertained only to the lawyer's conduct, which "[t]he district court severed … from the [main] case."  *Id.* at 652-53.

and the imposition of sanctions avoids the invariable demand on two separate appellate panels to acquaint themselves with the underlying facts and the parties' respective legal positions.

186 F.3d 403, at 405 (3d Cir. 1999) (citation omitted).

The Eleventh Circuit agrees:  "where sanctionable conduct occurs and is discovered before final judgment, a motion for sanctions pursuant to the court's inherent power must be filed before entry of the court's final order." *Peer v. Lewis*, 606 F.3d 1306, 1315 n.10 (11th Cir. 2010) (citing *Prosser* and 2 James Wm. Moore et al., *Moore's Federal Practice* § 11.41[6] (3d ed. 2010)).  The district courts to have confronted this fact pattern agree.  *See Leon v. M.I. Quality Lawn Maint., Inc.*, 2018 WL 6250529, at *14 (S.D. Fla. Nov. 29, 2018); *Springs v. Gielow*, 2016 WL 6093496, at *2 (N.D. Fla. July 26, 2016), *Hill v. Clark*, 2012 WL 13018385, at *5 (N.D. Ga. Aug. 16, 2012); *Roy v. Bd. of Cnty. Comm'rs*, 2011 WL 4904410, at *10 (N.D. Fla. Sept. 27, 2011); *In re Benevento*, 2013 WL 1292671, at *9 (S.D. Fla. Mar. 27, 2013); *USA Video Tech. Corp. v. Movielink, LLC*, 2005 WL 3418407, at *2 n.4 (D. Del. Dec. 13, 2005); *see also Dejoria v. Maghreb Petroleum Expl.*, 2016 WL 4250488, at *49 (W.D. Tex. Aug. 11, 2016) (noting that under basic waiver principles, "an issue that could have been but was not raised on appeal is forfeited," in part to foster "judicial economy by forcing parties to raise issues whose resolution might spare the court and parties later rounds of remands and appeals.") (citation omitted).

Swisher will be able to find cases where sanctions motions were entertained after an appeal, but if the Court studies those cases, it will see that the motions were based on information that had *not* been known prior to final judgment.  *See, e.g.*, *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 104-05 (2017).  As another court in this District has explained:  "It is generally agreed that a motion for sanctions, regardless of the source of authority for the imposition of sanctions, must be timely filed."  *MGA Ent., Inc. v. Nat'l Prod. Ltd.*, No. 10-CV-07083-JAK-SSX, 2012 WL

4052023, at *4 (C.D. Cal. Sept. 14, 2012) (collecting cases, and deeming a motion for inherent sanctions untimely where it was filed six months after the defendant learned of its grounds).

Permitting seriatim challenges and appeals to a once-final judgment contravenes the core rationale of the finality doctrine, which is that "the whole case and every matter in controversy in it [must be] decided in a single appeal." *Microsoft v. Baker*, 137 S. Ct. 1702, 1712 (2017). While the issue does not appear to have specifically arisen in the Ninth Circuit, its precedent shows that it would agree with all of the courts where it has. In *Wood*, for example, the Ninth Circuit observed that Rule 1 "mandates" the "'just, speedy, and inexpensive determination of every action,'" and refused to adjudicate a partial judgment because "[w]e cannot afford the luxury of reviewing the same set of facts in a routine case more than once without a seriously important reason." 422 F.3d at 882-83.

The Ninth Circuit later ruled that a litigant's desire for a "second bite at the apple" is not a sufficiently important reason to permit a second appeal based on facts the party had known before the first appeal. *Cellular 101*, 539 F.3d at 1155. There, Cellular 101 was required to pay $200,000 to a creditor in bankruptcy proceedings. *Id.* at 1152. It appealed that order and lost. *Id.* at 1153. On remand, it raised a different argument to avoid the $200,000 claim, contending that it had been released by a settlement with the creditor's parent company. *Id.* It took a second appeal from the denial of that motion, which the Ninth Circuit rejected because "if that is true now, it was true when Cellular 101 appeared before this court the first time." *Id.* at 1155. The Court observed that had *all* of Cellular 101's arguments against the $200,000 award been presented, it "would have permitted the [appellate] court to determine, logically and properly, which issues it needed to reach and in what order they should be addressed," but that "Cellular 101 chose, instead, to arrogate to itself the power to make those judgments," by "elect[ing] to try to win its appeal with the arguments it had already briefed, presumably hoping that if it lost, it could try for a

second bite at the apple by raising the release defense afterwards." *Id.* at 1155.  The court held that it would not stand for "such manipulation" of appellate proceedings, and that "by failing to raise the release issue in the prior appeal, Cellular 101 waived its right to assert the defense in subsequent proceedings." *Id.*

Swisher's attempt to take multiple appeals in search of a friendly panel is even more manipulative than Cellular 101's.  There, the settlement arose *after* final judgment, while the appeal was pending.  Here, in contrast, Swisher knew all the details of (and indeed threatened) its inherent sanctions motion well *before* final judgment entered.  Its effort to find yet another means to avoid the jury's seven-year-old contract verdict (based on arguments that it previewed three years ago) is an affront to Rule 1, to all of the principles that underlie the finality doctrine, and a gross form of "panel shopping."  *Free v. Abbott Lab'ys, Inc.*, 164 F.3d 270, 272 (5th Cir. 1999).  Had Swisher filed its sanctions motion before final judgment entered, or even thereafter under the judgment's reservation of "continuing jurisdiction," ECF No. 596 at 7,[4] the last panel could have finally and completely resolved this interminable case by reviewing *all* of Swisher's arguments.  Looked at differently, that panel *did* finally and completely resolve this case, because Swisher forfeited the arguments it knew about but declined to present to that panel.  *Cellular 101*, 539 F.3d at 1155.

It is important to recognize that by bringing seriatim (this would be the third) challenges to the award of contract damages, Swisher has "arrogate[d] to itself" an asymmetrical advantage.  *Cellular 101*, 539 F.3d at 1155.  While Swisher only needs to win one of those appeals to achieve its desired outcome, Trendsettah must run the table.  Swisher's effort to manipulate appellate jurisdiction in that way is decidedly one-sided, which is yet another reason to prohibit it.  *Baker*, 137 S.Ct. at 1715.

---

[4] One of Swisher's own cases notes that a trial court can entertain inherent sanctions motions while a case is on appeal.  *In re Szanto*, 2020 WL 1170140, at *1 (D. Or. Mar. 10, 2020) (cited at Mot. at 20).  But Swisher wanted to wait to see what happened in the second appeal, to give it a crack at a third.

In that same vein, if Swisher is right that a party can hold back on a sanctions motion until after final judgment, and after seeing which way the wind blows on appeal, there is no jurisprudential reason why it couldn't repeat this pattern through at least two more "final" judgments and appeals.  As it pointed out back in 2020, it believes it has grounds for sanctions under Rule 11 and section 1927 as well.  Opp. to Mot. to Dismiss 2 (ECF No. 574-1).  By its rationale, if a third panel denies inherent sanctions, Swisher can seek Rule 11 sanctions on appeal to a fourth panel, and then seek section 1927 sanctions from a fifth panel, stringing out this litigation through the end of a second decade, consuming tens of millions more in fees, and hundreds more hours of the judiciary's time.  Swisher will of course disavow that intention, but the point is that if its view of finality and appellate jurisdiction is correct, there is no reason why it *couldn't*.  Swisher laments that this case has taken "nearly a decade."  Mot. at 1.  But it—or at least its lawyers—seemingly want to extend it into a second decade.  It is time to bring this case to a close, not prolong it with endless seriatim challenges to the verdict the jury prescribed seven years ago, and that the Ninth Circuit has *twice* affirmed.

## II.   SWISHER CANNOT SATISFY THE "HIGH THRESHOLD" REQUIRED FOR A FINDING OF BAD FAITH.

Even if the Court deems Swisher's waived (and "moot," Dismissal Order at 4) motion timely, it must be denied because none of the litigation conduct Swisher recites reaches the "high threshold" of bad faith sufficient to justify inherent sanctions.  *Lu v. United States*, 921 F.3d 850, 857 (9th Cir. 2019).  "Bad faith" means "dishonesty of belief, purpose, or motive."  Black's Law Dictionary (11th ed. 2019).  In the context of inherent sanctions, it "requires proof of bad intent or improper purpose."  *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021).  "Sanctions are serious business," *Vikas WSP, Ltd. v. Econ. Mud Prod. Co.*, 23 F.4th 442, 456 (5th Cir. 2022), and thus "[s]pecific evidence is necessary to prove bad faith, not accusations, suspicions and unfounded attributions of bad motive."  *Manchester*

*v. Sivantos GmbH*, No. 17-CV-5309-ODW-JEMX, 2018 WL 11347739, at *5 (C.D. Cal. Nov. 19, 2018).  "Finally, any sanction imposed must be proportionate to the offense and commensurate with principles of restraint and dignity inherent in judicial power." *Zambrano v. City of Tustin*, 885 F.2d 1473, 1480 (9th Cir. 1989).

If a court is to award sanctions, it "must determine which fees were incurred because of, and solely because of, the misconduct at issue." *Goodyear*, 581 U.S. at 104.  As the Supreme Court explained, that is *not* the same as incurring fees *during* the same time that a party was acting in bad faith—that kind of calculation "is a temporal limitation, not a causal one; and… it is wide of the mark[.]" *Id.* at 112-13. When the legal fees would have been incurred anyway to address non-frivolous claims and arguments, the requisite causal connection has not been met.  *Id.* at 109.

Here, Swisher's motion seeks all-or-nothing sanctions, asking the Court to order "TSI to pay all of the fees and costs incurred by Swisher in litigating this case from its inception ($19,859,625.66) or, at a minimum the fees and costs incurred by Swisher in litigating (1) the antitrust and state-law claims and (2) the Rule 60 motion ($19,620,230.16)."  Mot. at 25.  It is unclear what accounts for the $239,395.50 difference in those amounts, since "antitrust and state-law claims" were the only kind Trendsettah brought.  But in any event, because Swisher seeks sanctions essentially for the entirety of the case, its argument must be (and is, Mot. at 1, 3, 10-21) that but for Alrahib's tax evasion, Swisher would not have had to spend a penny defending against the contract or antitrust claims filed by Trendsettah.[5]

This standard is impossible to meet under *Goodyear* given that, as the Court recognized, Trendsettah indisputably proved Swisher breached its contracts. Additionally, a jury found—and the Ninth Circuit affirmed—that Trendsettah proved

---

[5] It should go without saying, but in Reply Swisher should not be permitted to propose alternative amounts of sanctions, predicated on discrete events or timeframes. Allowing it to do so for the first time in Reply would deprive Trendsettah of the opportunity to contest the specific propriety of any such components.

every element of *both* of its antitrust claims (monopolization and attempted monopolization), not just the element of antitrust damages.  Swisher's only attempt to meet *Goodyear* is by taking the position that but for the tax evasion, Trendsettah would have had no "lost profits," and thus the Complaint could not have been filed "by an attorney consistent with Rule 11."  Mot. at 18.  As previewed in the *Introduction*, the argument fails for a number of reasons, including (1) no damages at all are necessary under Florida law to prevail on breach of contract claims, (2) the damages alleged in the Complaint were not limited to "lost profits" as Swisher falsely contends, Mot. at 18:12, (3) Dr. Cox himself recognized that Trendsettah still had lost profits in 2013 even under his own (new) methodology; (4) even accounting for the underpaid excise taxes, Dr. McDuff's profit-per-stick calculation still would have been positive, *see* Decl. of DeForest McDuff ¶7; and (5) Dr. McDuff had an economic basis to opine as to Trendsettah's damages regardless of whether it suffered any lost profits.  *Id.* ¶¶9-10.  But before addressing those issues, we show that none of Trendsettah's conduct in this litigation approaches the type of "bad faith" required for inherent sanctions.

**A.   None of Trendsettah's Litigation Conduct Approaches Bad Faith.**

The first order of business is to separate Alrahib's *criminal* conduct (particularly the post-trial conduct) from the "litigation conduct" that took place in these proceedings, because only the latter is relevant to the question of bad faith. *Ass'n of Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc.*, 976 F.2d 541, 549 (9th Cir. 1992) (noting that "[t]his is the uniform view among the circuits").  Swisher seeks to poison the well by reciting at great length the details of the several criminal charges against Alrahib.  But he has been sentenced to 60 months for that conduct, and ordered to pay $9 million in restitution.  This motion is only about what happened in the *litigation*.

Focusing squarely on Trendsettah's litigation conduct shows that it did nothing even approaching the type of conduct that has been deemed "bad faith" in the

precedent.  For example, it has already been conclusively shown that neither Alrahib nor any other Trendsettah witness or counsel ever made a single "intentional misrepresentation" throughout this litigation.  *See* Order Re: Reconsideration Motion at 12 (certifying the § 1292(b) question of whether an "omission" can constitute fraud on the court).  With respect to Alrahib's conduct in the litigation, Swisher nowhere identifies where he was ever asked about federal excise taxes on Splitarillos.  So his alleged "bad faith" consists of his deposition testimony where he "expressed remorse"[6] for the state excise-tax evasion leading to his 2006 forfeiture action, without thereupon launching into an (unrequested) explanation of his dealings with Tony Bryant seven years later, about a completely different product, tax regime, and company.  Mot. at 16.

Swisher says that its questioning about the 2006 forfeiture gave Alrahib "ample opportunity—indeed a duty—to come clean in this litigation." *Id.*  But no case has *ever* suggested that party witnesses are expected to avail themselves of "opportunities" to assist their adversary by volunteering information that they think might be helpful, let alone that the failure to do so is "bad faith."  Similarly, one might expect Swisher's claim that there is "indeed a duty" to do so would be followed by a citation to legal authority.  But through three years of briefing Swisher has never identified one.

The real rule is that "deponents have no obligation to volunteer information the questioner fails to seek." *Reich v. City of Elizabethtown*, 945 F.3d 968, 976 (6th Cir. 2019); *see also Bass v. City of Sioux Falls*, 232 F.3d 615, 618 (8th Cir. 1999)

---

[6] The characterization is unsupported.  If one reviews the cited transcript pages (Yu Decl. Ex. M at 48:11-51:12), she will not see "remorse," but Alrahib's devil-may-care approach to taxes.  Nor can any of the words on those pages be construed as Alrahib "claim[ing] he had learned from his past errors."  Mot. 16.  This is why Swisher cites only the page range, without quoting the words.  As the Ninth Circuit explained in *Miller* when reversing an inherent sanctions award, legal rulings should not turn on recollections about what supposedly happened.  661 F.3d at 1028.  That is "why we have transcripts." *Id.*

(holding that deponents have "no duty to volunteer such information during the deposition absent a question from [examining] counsel seeking that information."); *Carpenter v. Merit Systems Protection Board*, 111 F.3d 118, 121 (Fed. Cir. 1997) ("The MSPB contends that [a witness]… should have volunteered that information at his deposition.  We find that position untenable.  Miller had no obligation to volunteer that information when no question eliciting that information was asked."). It would be astonishing (and unprecedented) to hold that a witness who follows this universal rule of deposition conduct commits "bad faith" that justifies $20 million (or any amount) in sanctions.

As for the rest of the conduct Swisher decries, the fact of the matter remains that there is zero evidence that any counsel or witness other than Alrahib was aware of his arrangement with Bryant to underpay taxes.  All of those counsel and witnesses have submitted sworn declarations to that fact.  ECF Nos. 454-2 through 454-9.  A lack of knowledge by all of those counsel and witnesses forecloses any finding of "bad intent or improper purpose."  *Rousseau*, 985 F.3d at 1090.  Those declarations are *evidence*, which cannot be overcome by Swisher's rank conjecture otherwise.  *See Perfect 10, Inc. v. Yandex N.V.*, 2013 WL 4028948, at *4 (N.D. Cal. Aug. 6, 2013) (rejecting the argument that a declarant "must have known" a particular fact because she swore under penalty of perjury that she hadn't).

Nevertheless, Swisher makes the wild accusations that "[t]he record is now clear that TSI's other executives and shareholders actively participated in the scheme" and that Trendsettah's counsel "turned a blind eye to the conduct."  Mot. at 13, 24.  The Court need only review the citations Swisher offers following those statements to see that they are completely unsupported.  For example, Swisher follows its contention that "the record is now clear that TSI's other executives and shareholders actively participated in the scheme" with a generalized citation to "Section II.B."  Mot. at 13.  From the portentous description that the record is "now clear," one is led to believe that Section II.B. contains some revelatory material

beyond what has been known for years. But nope; the *only* mention of Ramzy or Mousa Rahib in Section II.B. is that they had been aware of Alrahib's status as a confidential informant back in 2009-12. Mot. at 6. That fact has been known to Swisher since 2015, when Trendsettah turned over all of the documents showing that fact. Further proving the emptiness of Swisher's portentous "now clear" assertion is that the only two citations it offers for that point are the Alrahib transcript, and Exhibit 22 to the Yu Declaration, which was among the documents Swisher received in 2015, and was already "filed on July 6, 2020." Yu Decl. ¶28. So what new evidence do we have that makes it "now clear" that Mousa and Ramzy Rahib's declarations are perjurious? Absolutely none. Evaluation of inherent sanctions "requires proof" and "restraint," *Rousseau*, 985 F.3d 1088-90, not reckless allegations of criminal conduct and perjury, supported with nonsensical citations.[7]

The same goes for Swisher's absurd new claim that "Kureh had been a key player in TSI's fraud." Mot. at 14. If the Court is tempted to give this claim any credence, it is mandatory to review Exhibits 32-39 to the Yu Declaration, and page 114 of Alrahib's transcript, which are the only citations Swisher offers to support it. *Id.* As Ms. Yu notes, *all* of these documents were filed in this case nearly three years ago. Yu Decl. ¶¶23, 38-45. They are the most banal correspondence imaginable, and nothing about their content has changed in three years. It is incredibly reckless (indeed, sanctionable in its own right) for Swisher to accuse—in an unredacted public filing—an actively practicing CPA of participation in tax fraud on such thin "evidence." The Court should issue an order requiring Swisher to show cause for

---

[7] Swisher also asserts that Trendsettah's "intent to conceal its fraud from Swisher" is evidenced by an email where Alrahib asked his government handler whether she cared about the risk of his CI activities coming to light, and Alrahib forwarded her response to Rahib, to which Rahib responded: "Ok..I'll ask Stuart." Mot. at 14 (citing Yu Decl. Ex. 31). Swisher is thus inviting the Court to surmise—with zero evidence—that Alrahib's evasion scheme extended to include a CPA and lawyer in San Diego named Stuart Hurwitz. *See* http://cpaandlawoffices.com/.

how evidence that everyone had deemed innocuous three years ago is now sufficient grounds to accuse a licensed CPA of criminal tax fraud.  Fed. R. Civ. Proc. 11(c)(3).

The same goes for Swisher's reckless assertion that Gaw | Poe "turned a blind eye to the conduct."  Mot. at 24.  Words have meanings, and "turn a blind eye" means "to ignore something that you know is wrong."[8]  The only thing Swisher cites in support of this reckless contention is a hearing transcript where the undersigned says literally the opposite.  Yu Decl. Ex. 16 at 7:21-9:10.  Swisher's irresponsible accusation—again, in a public filing that will be reviewed by untold numbers of people in this high-profile case—would mean that the declarations that the undersigned and Mr. Gaw filed in this case are perjurious.  It is hugely unbecoming—perhaps especially for a famous lawyer—to casually accuse opposing counsel of perjury, particularly where the allegation is based on nothing but a hearing transcript that says nothing of the sort.  Indeed, Swisher's counsel and the Court witnessed that transcript first hand, yet when the Court thereafter inquired as to whether Swisher was suggesting that Trendsettah's counsel "were aware of the situation," Mr. Swanson responded:  "I am not suggesting that."  Yu Decl. Ex. 16 at 12:25-13:3.  Yet now—based on exactly the same transcript—Swisher *is* suggesting that.  None of the "evidence" has changed, but Swisher's story has changed in a desperate attempt to meet the legal standard.

**B.   None of Swisher's Cases Approving Inherent Sanctions is Remotely Like This One.**

One easy way to see that Trendsettah's conduct does not rise to the level of bad faith is to compare the facts of this case with those in the cases that Swisher relies upon.  Beginning at page 10 of its brief, those cases are:

- *Gomez v. Vernon*, 255 F.3d 1118, 1125 (9th Cir. 2001) (government counsel "authorized and encouraged prison employees 'to secretly search

---

[8] https://dictionary.cambridge.org/us/dictionary/english/turn-a-blind-eye.

1  for, inspect, examine, read, copy and then deliver ... confidential attorney-

2  client correspondence or documents' over a nine-month period")

3  • *Fink v. Gomez*, 239 F.3d 989, 990 (9th Cir. 2001) ( attorney "made reckless

4  misstatements of law and fact, and has done so for an improper purpose")

5  • *In re Itel*, 791 F.2d 672, 674 (9th Cir. 1986) (attorney for a class objector

6  filed objections "for the sole purpose of obtaining fee-related concessions

7  in connection with other litigation")

8  • *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 349 (9th Cir.

9  1995) (party and counsel for three years falsely claimed that documents had

10  burned in a fire, and "continuously lied about their existence and condition

11  under penalty of perjury")

12  • *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) (attorney

13  and client made fraudulent changes to a deposition transcript, then lied

14  about it)

15  • *Malhiot v. S. Cal. Retail Clerks Union*, 735 F.2d 1133, 1137-38 (9th Cir.

16  1984) (§1927 sanctions where briefs "contain many misrepresentations of

17  the record and an intentional misstatement of California law")

18  • *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1220 (9th

19  Cir. 2010) ("knowingly and recklessly pursuing a frivolous copyright

20  infringement claim" that was barred by controlling Indian law)

21  • *In re Ray*, 951 F.3d at 654 (party "and his wife committed perjury and [their

22  counsel] intentionally withheld evidence")

23  • *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1205 (Fed.

24  Cir. 2005) (counsel knew that "highly material false statements had been

25  made by a witness, in pleadings submitted to the court and in response to

26  discovery requests, and that highly material documents had not been

27  produced as required")

28

- *Meyer v. Gwinnett Cnty.*, 2021 WL 3716658, at *2-3 (N.D. Ga. July 26, 2021) (counsel and expert persuaded client to lie about his mental competence to toll the limitations period, where the client had emailed both of them "that's bullshit," and blamed counsel for simply missing the deadline)

- *Synergetics, Inc. v. Hurst*, 2007 WL 2422871, at *1-5 (E.D. Mo. Aug. 21, 2007) (with knowledge of counsel, party "conditioned the settlement of a separate lawsuit against [a witness] on [the witness's] agreement not to testify" for the party's adversary)

- *Ty Inc. v. Softbelly's Inc.*, 2005 WL 326974, at *1 (N.D. Ill. Feb. 9, 2005) (party discouraged witness from testifying, then "lied during the evidentiary hearing regarding the witness tampering")

- *Taylor v. Nat'l Collegiate Student Loan Tr. 2007-1*, 2021 WL 872494, at *4 (D. Utah Mar. 9, 2021) (party sought to set aside student loan by claiming identity theft, but later "acknowledged he took out the loan")

- *Englebrick v. Worthington Industries, Inc.*, 944 F. Supp. 2d 899, 902 (C.D. Cal. 2013) ("Plaintiffs admitted to testifying falsely regarding their history of meth use at their depositions and in a response to a request for admission.")

- *IV Sols., Inc. v. Off. Depot Emp. Welfare Benefit Plan*, 2009 WL 10314274, at *6 (C.D. Cal. May 13, 2009) ("undisputed evidence [that sole-owner of the party] falsified the purported ActSys invoice and provided perjured testimony at his deposition")

- *Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, No. 12-CV-6972-FMO-JEMX, 2015 WL 12732433, at *7-15 (C.D. Cal. Dec. 14, 2015) (owner of a cosmetics company fabricated three declarations, then with counsel sought to prevent the plaintiff from deposing the purported declarants)

- *Goodyear*, 581 U.S. at 105 (defendant "engaged in a 'years-long course' of bad-faith behavior," by falsely denying its possession of testing data for tire-tread separation, in "'repeated and deliberate attempts to frustrate the resolution of this case on the merits.'") (quoting district court findings)

- *CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, 2019 WL 6527951, at *11 (S.D. Cal. Dec. 4, 2019) (defendant intentionally "destroyed presumptively relevant documents and engaged in mass deletions across numerous devices during the pendency of this litigation" including deletions taking place after sanctions order was issued); *see also id.* at *9 (defendant's employee falsely attested under oath that he had not destroyed documents)

- *In re Szanto*, 2020 WL 1170140, at *8 (Bankr. D. Or. Mar. 10, 2020) ("Plaintiff's conduct in this adversary proceeding is the most egregious, abusive conduct this court has observed, both on the bench and as an attorney.")

Swisher's cited cases are presumably the ones it has found that are most favorable to its position.  But the Court will immediately see that *all* of its cases either (1) involve counsel, or (2) are based on perjurious testimony.  None of them is based on *unknowing* presentation of evidence, or suggests that it is bad faith for a deponent not to volunteer information that his examiner never requested.   Trendsettah challenges Swisher to—in Reply—specify for the Court which precedent is *most* analogous to Trendsettah's conduct here.  If Swisher accepts this challenge and the Court reviews the cited opinion itself, it will immediately see that the conduct in the two cases is worlds apart.  But Swisher will not accept the challenge, since doing so would be so damaging to its position.

Also worth examining is *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)—awarding $996,644.65 in attorney's fees as sanctions—but its factual pattern is not remotely similar to what occurred here.  Chambers and his counsel fraudulently

transferred property to a trust using a sham sale to frustrate the plaintiff's claim for specific performance of a purchase agreement, and Chambers then intentionally withheld this information from the court when directly queried by it as to whether he was contemporaneously negotiating to sell that property to a third-party. *Id.* at 37. Following a belated disclosure of this information, the court warned Chambers and his counsel, but he proceeded to disobey a preliminary injunction, was found in contempt, and then filed two meritless appeals of the contempt order. *Id.* at 37-38. "Undeterred, Chambers proceeded with 'a series of meritless motions and pleadings and delaying actions'" which "triggered further warnings from the court" including having the court sua sponte cancelling some depositions that Chambers had noticed of third parties. *Id.* at 38. The court then "again warned counsel that further misconduct would not be tolerated" to which, in response, Chambers attempted a further delaying action by submitting a meritless petition to the FCC. *Id.* at 38-39. Judgment was then entered against Chambers after trial, *but he was still not finished.* He again violated the court's injunctive orders and his counsel was *yet again warned* "that further sanctionable conduct would not be tolerated." *Id.* at 39. To which Chambers responded by *stealing property* in an attempt to frustrate the judgment. *Id.* Chambers topped things off by filing an appeal that the Court of Appeals *ruled from the bench following oral argument* to be frivolous. *Id.* at 40.

To suggest that this action is akin to *Chambers* is plain wrong, given that Alrahib's tax evasion does not concern the merits, was unbeknownst to all but one person, and where neither any Trendsettah witness nor counsel has disobeyed any court order or been warned by any court. Indeed, *the only judicial warnings have been to Swisher*, when the Ninth Circuit panel reprimanded its counsel for its misleading characterizations of the record, "every time I checked." *See* https://www.youtube.com/watch?v=_nh2KU2lWGQ at 26:45–27:50, 29:24–29:55, and 38:57–39:20.

The arguments by Swisher's post-trial counsel have already misled this Court

into reversal, twice, by two different panels.  Trendsettah respectfully asks the Court to carefully consider whether this time is any different.

## III.  TRENDSETTAH HAD A VALID CLAIM FOR DAMAGES REGARDLESS OF ALRAHIB'S SCHEME WITH BRYANT.

Swisher's motion is founded on its contention that but for Alrahib's scheme with Tony Bryant, Trendsettah "would have had no profits at all—and thus could not possibly have incurred lost profits as a result of Swisher's alleged misconduct."  Mot. at 1; 18-22 (contending that the absence of "lost profits" rendered this case "in complete bad faith").  It elaborates that "[t]he only injury TSI alleged in the Complaint was lost profits," and that but for the "fraudulent scheme," "this action would not (and could not) have been filed by an attorney consistent with Rule 11."  Mot. at 18.  All of this is wrong, in four ways.

**First**, Swisher's contention that "[t]he only injury TSI alleged in the Complaint was lost profits" is unequivocally false.  *Id.*  As alternatives to lost profits, the Complaint sought "diminution of [Trendsettah's] value," Compl. ¶¶66, 83; "restitution," ¶100; and in its *Prayer for Relief* Trendsettah requested "compensatory and treble damages," and "consequential damages."  (ECF No. 1).  Trendsettah specified no specific measure of damages at all for its antitrust claims, *id.* ¶¶47-59, because its experienced counsel know that section 4 of the Clayton Act permits a wide range of measures of antitrust damages.  *See, e.g.*, *Graphic Prod. Distributors, Inc. v. ITEK Corp.*, 717 F.2d 1560, 1579 (11th Cir. 1983) ("It is established beyond peradventure that going concern value and lost future profits are valid alternative measures of antitrust damages."); *Fishman v. Est. of Wirtz*, 807 F.2d 520, 551 (7th Cir. 1986) (noting that "[t]he concept of a 'yardstick' measure of damages, that is, linking the plaintiff's experience in a hypothetical free market to the experience of a comparable firm in an actual free market, is also well accepted.") (collecting cases). Since Swisher's entire argument is predicated on its false contention that Trendsettah pleaded only lost profits, there is hardly need to consider the matter further.

**Second**, Swisher's contention that Trendsettah had no lost profits is based exclusively on the short declaration that Dr. Cox submitted with Swisher's Rule 60 motion.  *See* ECF No. 377-2 (Cox declaration).  Swisher acts as if Cox's declaration is established fact, but neither this Court nor the Ninth Circuit said so; both recited only that Cox had "opine[d] that" under his revised calculations Trendsettah would have no lost profits.  Order Re: Rule 60 Mot. at 13 (ECF No. 426); *Trendsettah v. Swisher*, 31 F.4th 1124, 1129 (9th Cir. 2022).  The odd part of Cox's calculation is that instead of merely adjusting McDuff's calculation by adding a 52.75% excise tax to the cost of the Dominican-made cigars (as required by the excise-tax statute, 26 U.S.C. § 5701(a)(2)), Cox declares that McDuff was required to use the contract price for cigars that Trendsettah *purchased from Swisher* as a proxy for all of its imports from 2013-15 (without acknowledging that the contract price includes a built-in profit margin for Swisher).  Cox Decl. ¶ 29 (ECF No. 377-2).

Even then, the truth is that Cox still found "a small gross profit" per stick for the cigars that Trendsettah sold in 2013, which he calculated as "2.1%."  *Id.* ¶ 29 & Table 2.  He was only able to find zero damages by balancing the years of negative per-stick profitability against the year that by his own calculation was profitable.  *Id.* ¶¶ 43-44.  But back in the original trial Cox specifically told the jury that years with negative profit margins should be treated as "a zero percent margin."  Poe Decl. Ex. B (Cox Tr. at 135:7).  Swisher cites no authority suggesting that a plaintiff's years of positive damages should be reduced by its years of negative damages, much less that that is the only permissible thing for a jury to find.  Unless that is the *only* thing that a jury could have found, Swisher's argument that this case was baseless from its inception necessarily fails, even if Cox's new methodology were the only permissible way to measure damages.

And even then, had Alrahib's tax-evasion issues been known to Trendsettah, McDuff could have opined on any number of measures of damages other than a profit-per-stick calculation.  *See* McDuff Decl. ¶ 10.  For example, he could have

presented to the jury the "diminution in value" measure that the complaint had alleged. ECF No. 1 ¶¶66, 83. Or he could have presented a "yardstick" measure as the "compensatory damages" that Trendsettah pled. *Id.*, *Prayer for Relief*. No court has ever held that profit-per-widget is the only permissible measure of damages for antitrust or contract claims, or that such a plaintiff must be "profitable" overall to state a valid claim. A contrary rule—the one Swisher suggests—would mean that the more effectively a monopolist can suppress its competitor's profitability, the better it immunizes itself. The idea is preposterous.

**Third**, Swisher's argument fails as a matter of law because to prevail on breach of contract under Florida law, a plaintiff needn't prove any "actual damages." *Deauville Hotel Mgmt., LLC v. Ward*, 219 So.3d 949, 956 n.3 (Fla. Dist. Ct. App. 2017) (collecting cases): *see also Indian River Colony Club, Inc. v. Schopke Const. & Eng'g, Inc.*, 619 So.2d 6, 8 (Fla. Dist. Ct. App. 1993) (plaintiff entitled to nominal damages for breach of contract even without lost profits). Since Swisher's witnesses admitted its breach, Trendsettah still would have won the contract claims, even if Cox's (obviously wrong) new opinion were the only one for the jury to hear.

The **fourth** reason Swisher's no-damages argument fails is most obvious. This Court plainly didn't conclude in 2019 that Trendsettah was unable to prove *any* form of damages, otherwise it would have ordered judgment for Swisher on the spot. After all, that is the usual remedy for fraud on the court. 11 Wright & Miller, *Federal Practice and Procedure* § 2868 (3d ed. 2012). Presumably, the Court's view was that accounting for excise taxes was sufficiently problematic to require a new jury finding; not that Cox's revised opinion was unequivocally right, which is the only basis for Swisher's argument that it should get $20 million in "sanctions."

## IV. THERE IS NO JUSTIFICATION FOR FURTHER DISCOVERY, BUT IF THE COURT ALLOWS IT, IT SHOULD BE MUTUAL.

Swisher's final argument is that the "Court should grant Swisher leave to conduct further discovery," including of "any potentially sanctionable misconduct on the part of TSI's counsel." *Id.* at 24. For the reasons stated above, this Court should bring this case to a close. But if Swisher wants to keep running up the $25 million in fees it has already paid its lawyers, Trendsettah makes the following offer: Trendsettah's counsel will produce *every* email they've exchanged with their clients, Dr. McDuff, and third-party witnesses, if Swisher will do the same for its side. The case is long over, so there can be no harm in exchanging privileged communications. Doing so will finally get to the bottom of which side committed litigation misconduct.

Trendsettah's privileged/work-product communications will confirm that no one on Trendsettah's side other than Alrahib was ever aware of any excise-tax issues, or any relevance to this case. But Trendsettah expects the same documents from Swisher would show that it affirmatively *elected* not to inject tax issues into the case. Trendsettah is further confident that such discovery will show that Swisher knew of Alrahib's tax evasion long before the indictment, contrary to what its counsel repeatedly said to this Court, and carried into the Ninth Circuit proceedings. *See* Rule 60 Mot. at 1 (ECF No. 377). As Trendsettah learned only recently, the prosecutor who decided to indict Alrahib is married to an Akerman partner.[9]

Behind-the-scenes collaboration between Swisher and the government would explain why Alrahib was not indicted until two months after the Ninth Circuit re-instated Swisher's $44 million liability in February 2019, despite Alrahib's confession two years prior. Yu Decl. Ex. 18. It would also explain why the indictment was limited to the subset of excise-tax evasion relating only to *Swisher's* liability, rather than to Alrahib's far more recent (and then-ongoing) evasion through three

---

[9] *See* https://www.theknot.com/us/julie-seider-and-chris-browne-oct-2015; https://www.linkedin.com/in/julia-seider-browne-505a1b43/.

successive importers.  It would also explain why Alrahib was the *only* one of Bryant's clients the AUSA elected to indict, despite all of them engaging in the same manner of evasion.  ECF No. 448-1 to 448-6 (Havana 59's filings and summaries for its cigarillo clients).  It would also explain why, while submitting seven years of time records, Swisher omitted Akerman's entries between March 20, 2017 and June 28, 2019.  Decl. of Michael Marsh Exs. 3, 4 (ECF No. 702-5 at 108, 145).  By omitting those records, Trendsettah and the Court cannot see what Swisher's Florida counsel were working on in that crucial period from just before Alrahib's interview to just after his indictment, including whether the AUSA's wife recorded time on Swisher's behalf.  Gibson Dunn seems to have likewise excised the time records reflecting when *it* first learned about the basis for Alrahib's indictment.  Swanson Decl. Exs. 2, 3 (ECF No. 702-4) (omitting any entries for "review indictment" or the like until November 2021, two years later).  Absent advance knowledge, it is impossible to see how Swisher's Rule 60 motion could have sprung forth fully formed, without any of its counsel needing to so much as review the indictment it was based on.  And unlike Trendsettah's counsel and witnesses, Swisher's counterparts have never declared under oath that *they* were unaware of the underpayment of excise taxes on Trendsettah's imported cigars until the indictment was unsealed.

Swisher will undoubtedly reject Trendsettah's offer.  That should tell the Court all it needs to know, but if the Court is not yet done with this case and therefore grants Swisher's request for more discovery, it should clarify that such discovery is *mutually* available.  Swisher would be permitted to continue its hunt for (non-existent) evidence of knowledge by anyone other than Alrahib, and Trendsettah would be permitted to find out whether Swisher's Rule 60 motion was predicated on an intentional misrepresentation that it knew nothing of Alrahib's dealings until the indictment was unsealed.

Alternatively, the Court should join the Ninth Circuit in declaring this case "over."  The outcome would be that an established monopolist and contract breacher

owes damages for its breach, but escapes consequences for its anticompetitive conduct.  Swisher would thereby keep what the jury found were the supracompetitive prices that it charges consumers around the country.  On the other side of the ledger, Trendsettah's majority shareholders will have lost what the jury found should have been an additional $35 million in damages, while the only wrongdoer on Trendsettah's side will complete his sentence.

## CONCLUSION

For the foregoing reasons, the Court should deny Swisher's motion, but either (1) order both sides to produce all of their communications with their clients, experts, and the government, or (2) order that this case is over, beyond adjudication of prevailing-party fees and interest.

Dated:  February 27, 2023                    GAW | POE LLP


                                             By:  s/ Mark Poe
                                             Mark Poe
                                             Attorneys for Plaintiffs
                                             Trendsettah USA, Inc. and Trend Settah, Inc.

TSI'S OPP. TO SANCTIONS MOT.
CASE NO. 8:14-CV-01664-JVS (DFMX)

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Trendsettah USA, Inc. and Trend Settah, Inc., certifies that this brief contains 8,985 words, which

<u>X</u> complies with the word limit set by court order dated January 27, 2023.


Dated:  February 27, 2023                    GAW | POE LLP


                                             By:   <u>s/ *Mark Poe*</u>
                                             Mark Poe