THEODORE J. BOUTROUS JR.
  SBN 132099
  tboutrous@gibsondunn.com
DANIEL G. SWANSON
  SBN 116556
  dswanson@gibsondunn.com
MINAE YU
  SBN 268814
  myu@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

CYNTHIA E. RICHMAN
(admitted *pro hac vice*)
  crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
Telephone:  202.955.8234
Facsimile:   202.530.9691

JULIAN W. KLEINBRODT
  SBN 302085
  jkleinbrodt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission St., Suite 3000
San Francisco, CA  94105-0921
Telephone:  415.393.8200
Facsimile:   415.393.8306

MICHAEL C. MARSH
(admitted *pro hac vice*)
  michael.marsh@akerman.com
RYAN ROMAN
(admitted *pro hac vice*)
  ryan.roman@akerman.com
AKERMAN LLP
98 Southeast 7th Street, Suite 1100
Miami, FL  33131
Telephone:  305.374.5600
Facsimile:   305.374.5095

*Attorneys for Swisher International, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRENDSETTAH USA, INC. and TREND SETTAH, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>SWISHER INTERNATIONAL, INC.,<br><br>Defendant. | CASE NO. 8:14-cv-01664-JVS-DFM<br><br>**DEFENDANT SWISHER INTERNATIONAL, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR SANCTIONS**<br><br>**Hearing**<br>Judge:   Hon. James V. Selna<br>Date:    March 27, 2023<br>Time:   1:30 p.m.<br>Ctrm:   10C |

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ..................................................................................................... I

DISCUSSION .......................................................................................................... 2

    I.    The Court Should Award All of Swisher's Expenses From the Outset of This Litigation or, Alternatively, From The Beginning of Expert Discovery.................................................................................. 3

    II.   At a Minimum, the Court Should Award Swisher's Fees and Costs in the Four Categories Identified in Its Order. ........................................... 5

CONCLUSION ...................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chambers v. NASCO, Inc.*,
 501 U.S. 32 (1991) ................................................................................................ 2, 3

*Fox v. Vice*,
 563 U.S. 826 (2011) ..................................................................................................... 2

*Goodyear Tire & Rubber Co. v. Haeger*,
 581 U.S. 101 (2017) ...................................................................................... 1, 2, 3, 5, 7

*Trendsettah USA, Inc. v. Swisher Int'l, Inc.*,
 31 F.4th 1124 (9th Cir. 2022) ..................................................................................... 5

# INTRODUCTION

This Court in its tentative order finds that TSI engaged in a years-long pattern of bad-faith misconduct that went to the very heart of its case against Swisher. Tentative Order at 6–8; *see also* Dkt. 426 at 16 ("TSI engaged in misconduct that undermined the judicial process which went to the central issues in the case."); *id.* at 18 ("[T]he absence of this evidence of fraud from the record substantially interfered with Swisher's defense."). It has likewise preliminarily found that "Swisher is entitled to recover the fees and costs" that Swisher incurred as a result of that misconduct. Tentative Order at 11. And because TSI has waived any challenge to the reasonableness of Swisher's counsel's rates, *see* Dkt. 728; Dkt. 622 at 12 (noting on prior occasion that "Trendsettah does not challenge Swisher's proposed hourly rates for its attorney's fees"), the sole remaining question before the Court is which fees and costs Swisher "would not have incurred but for [TSI's] bad faith," *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 104 (2017).

For the reasons explained in Swisher's original briefing, this Court should award all of the expenses Swisher incurred from the outset of this litigation because no lawyer would have—or could have, consistent with Rule 11 of the Federal Rules of Civil Procedure—brought this case but for TSI's bad-faith concealment of its criminal tax-evasion scheme. As the Court acknowledged in its tentative order, "Trendsettah pursued its theory of damages at trial in bad faith because it knew its 'lost profits,' *the only theory of damages sought at trial*, were predicated on a fraud." Tentative Order at 6 (emphasis added). Moreover, it is difficult to conceive of an alternative theory of damages TSI might have pursued given that Akrum Alrahib, its former CEO, "admitted that the falsification of invoices and kickbacks were *the only reasons* why Trendsettah could 'compete in the marketplace[.]'" *Id.* (emphasis added). And even if there were some alternative damages theory TSI could have pursued when it initiated this action, it had definitively abandoned that theory by the time expert discovery commenced and TSI produced damages evidence concerning only lost profits. As a result, if the Court

declines to award Swisher all of the fees and costs it incurred from the outset of this litigation, it should at least award those fees and costs it incurred from the beginning of expert discovery.

While Swisher maintains that the Court should award all of the fees and costs it incurred litigating this case, Swisher also submits with this supplemental brief billing records breaking those fees and costs into the four categories requested by the Court: (1) fees preparing expert reports to rebut TSI's theory of lost profits ($185,433.50); (2) fees defending against TSI's theory of lost profits at trial ($1,549,991.73); (3) fees litigating and defending the Rule 60 motion ($6,542,489.95); (4) fees litigating and defending post-Rule 60 motion matters, except for those associated with Swisher's motion for attorney's fees and costs ($693,507.50), and (5) costs of $3,162,792.50. *See* Dkt. 745 at 1. Because the expenses in each of these categories were incurred defending against TSI's fraudulent lost-profits evidence, they are indisputably recoverable under the Court's inherent power to sanction bad-faith conduct.

Accordingly, the Court should award Swisher all of the fees and costs it incurred from the outset of this litigation—$19,859,625.66 in total—or, alternatively, from the beginning of expert discovery—$18,359,959.65 in total. At a minimum, it should award Swisher the fees and costs it incurred in each of the four categories identified by the Court—$12,134,215.20.

## DISCUSSION

Federal courts possess inherent authority "'to fashion an appropriate sanction for conduct which abuses the judicial process,'" including by shifting legal fees and costs the other side would not have paid "but for" the sanctioned misconduct. *Goodyear*, 581 U.S. at 107 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)). While "[t]he court's fundamental job is to determine whether a given legal fee . . . would or would not have been incurred in the absence of the sanctioned conduct," the Supreme Court has stressed that "trial courts undertaking that task 'need not, and indeed should not, become green-eyeshade accountants.'" *Id.* at 110 (quoting *Fox v. Vice*, 563 U.S.

826, 838 (2011)). Rather, the "'essential goal' in shifting fees is 'to do rough justice, not to achieve auditing perfection.'" *Id.* (quoting *Fox*, 563 U.S. at 838). In discharging this obligation, "a district court may take into account its overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* (cleaned up).

For that reason, when calculating a sanction, "[t]he court may decide, for example, that all (or a set percentage) of a particular category of expenses—say, for expert discovery—were incurred solely because of a litigant's bad-faith conduct." *Id.* And indeed, "the but-for standard even permits a trial court to shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop." *Id.*; *see, e.g.*, *Chambers*, 501 U.S. at 56 (affirming order "conclud[ing] that full attorney's fees were warranted due to the frequency and severity of Chambers' abuses of the judicial system and the resulting need to ensure that such abuses were not repeated").

## I. The Court Should Award All of Swisher's Expenses From the Outset of This Litigation or, Alternatively, From the Beginning of Expert Discovery.

The Supreme Court has squarely held that "[i]f a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may . . . make a blanket award" of fees and costs incurred by the defendant from the outset of litigation. *Goodyear*, 581 U.S. at 110. That is exactly what happened here: Damages are an essential element of each of the claims pleaded by TSI in its Complaint, but as the Court stated in its tentative order, "the only theory of damages sought at trial" was "predicated on a fraud." Tentative Order at 6; *see also* Dkt. 426 at 14 ("TSI presented to the jury and the Court a theory of 'lost profits' premised on inaccurate data which was a product of a fraudulent tax evasion scheme."); Dkt. 483 at 9–10 ("Because Mr. Alrahib's criminal conduct distorted Trendsettah's costs, prices, demand and profitability, there is no competent, non-speculative evidence to show that there was any injury or the extent of damages caused by Swisher's conduct."). Consequently, the Court should award Swisher the full amount of fees and costs it incurred from the outset of this case—$19,859,625.66—because all of those expenses were incurred as a direct

result of TSI's initiation of this sham litigation to recover its fraudulent lost-profits damages.

The Court's tentative order expressed a concern that the jury's finding for TSI precludes a conclusion that TSI initiated this action in bad faith. Tentative Order at 6 (reasoning that "it cannot be said that Trendsettah 'had no basis' to bring this action, even if its profitability was central to its theory of damages," because "Trendsettah ultimately prevailed and proved liability on both its antitrust claims and its breach-of-contract claim" (cleaned up)). But the jury reached its verdict only after a fatally flawed trial that was infected with TSI's fraud. The Court acknowledged as much in the tentative order, stating that, "[a]t trial, Trendsettah presented highly material and misleading documents, knowing that it would portray a false image of its profitability." *Id.* at 7. Moreover, the tentative order correctly identifies "Mr. McDuff's flawed expert opinion" as the key evidence "that ultimately persuaded the jury that Trendsettah had 'lost profits.'" *Id.* Simply put, the jury's verdict does not—and cannot—suggest that TSI had a valid basis for its claims absent TSI's bad-faith conduct because that verdict was itself the *product* of TSI's bad-faith conduct.

Moreover, even if the jury *could have* found Swisher liable absent TSI's misconduct, there is no reason to think that it *would have* done so. At the outset, no lawyer would even have agreed to file this case had TSI disclosed its massive fraud. And if the Complaint somehow had been filed, that disclosure would almost certainly have undermined TSI's own credibility and the credibility of its witnesses on all aspects of its claims. For example, the Court's Rule 60 Order emphasized that Alrahib "offered testimony regarding nearly [every] element of TSI's claims" and made his "credibility . . . central to the trial." Dkt. 426 at 13. If Swisher had the opportunity to impeach Alrahib based on his instrumental role in perpetrating TSI's massive tax fraud, that questioning would have destroyed TSI's entire case—liability as well as damages. But, as the Court recognized in the tentative order, TSI improperly induced the Court to "bar[] Swisher from being able to" impeach Alrahib by "mov[ing] to exclude evidence relating to tax

1  enforcement actions preceding the parties' relationship." Tentative Order at 7; *see also*
2  Dkt. 426 at 15 ("TSI also successfully moved *in limine* to exclude any evidence or ar-
3  gument regarding Alrahib's past tax-related enforcement actions, in part based on the
4  argument that Alrahib's tax evasion was merely past conduct that had no relevance to
5  this trial."). As the Ninth Circuit recognized, "Alrahib's concealment of his excise tax
6  fraud scheme and its impact on Trendsettah's competitive viability precluded Swisher's
7  defense to the antitrust claims from being fully and fairly presented." *Trendsettah USA,*
8  *Inc. v. Swisher Int'l, Inc.*, 31 F.4th 1124, 1137 (9th Cir. 2022) (cleaned up). Indeed, TSI
9  "d[id] not advance any contention that the jury would have reached the same verdict for
10 antitrust liability and damages if it were fully apprised of Alrahib's fraudulent evasion
11 of federal excise taxes." *Id.*

12 Even if there were some hypothetical, valid damages theory TSI could have as-
13 serted when it filed the Complaint, it had abandoned that claim by the time it served its
14 first expert report, advancing a theory of damages predicated entirely on fraudulent lost
15 profits and unequivocally abandoning any other basis for damages. Because the disclo-
16 sure of TSI's fraud at this point would have put an end to the litigation, the Court should
17 at least award Swisher all of the fees and costs it incurred from the beginning of expert
18 discovery. *See Goodyear*, 581 U.S. at 110–11 (noting that a court may "shift all of a
19 party's fees" from "some midpoint of a suit" if, for example, it "finds that a lawsuit,
20 absent litigation misconduct, would have settled at a specific time"). These fees and
21 costs total $18,359,959.65. *See* Declaration of Michael C. Marsh ("Marsh Decl.") ¶ 17;
22 Declaration of Daniel G. Swanson ("Swanson Decl.") ¶ 2; *id.* ¶¶ 17–22.

23 **II.    At a Minimum, the Court Should Award Swisher's Fees and Costs in the**
24 **       Four Categories Identified in Its Order.**

25 The Court ordered Swisher to submit "declarations calculating the fees and costs
26 incurred (1) for preparing any expert reports to rebut Trendsettah's theory of lost profits;
27 (2) at trial for defending against Trendsettah's theory of lost profits; (3) for litigating and
28 defending the Rule 60 motion; and (4) for litigating and defending any post-Rule 60

Motion litigation fees, except for its motion for attorney's fees and costs and its enforcement." Dkt. 745 at 1. Those declarations are attached hereto.

The table below summarizes the fees and costs Swisher incurred for each of the four categories identified by the Court:

| Category | Akerman Hours | Gibson Hours | Fees |
|---|---|---|---|
| Rebutting Expert Reports | 278.90 | n/a | $185,433.50 |
| Defending Lost Profits at Trial | 2,591.50 | n/a | $1,549,991.73 |
| Litigating the Rule 60 Motion | 364.70 | 6,858.40 | $6,542,489.95 |
| Litigating Post-Rule 60 Matters | n/a | 547.60 | $693,507.50 |
| Costs | | | $3,162,792.50 |
| **Total** | 3,235.10 | 7,406.00 | $12,134,215.20 |

Because none of these fees would have been incurred but for TSI's bad-faith conduct, the Court should, at a minimum, award Swisher sanctions in the full amount reflected by each of these categories—$12,134,215.20.

***Rebutting Expert Reports.*** Swisher's counsel, Akerman LLP, spent 278.90 hours on work rebutting TSI's lost-profits expert reports, at a cost of $185,433.50. *See* Marsh Decl. ¶¶ 6, 16.

These hours are more than reasonable considering the substantial work entailed. Among other things, Swisher's counsel (1) reviewed and analyzed three iterations of expert reports on lost-profits damages submitted by TSI's damages expert, Dr. DeForest McDuff, which totaled 805 pages, including appendices and exhibits; (2) prepared for and conducted a nine-hour deposition of Dr. McDuff, which yielded a 210-page transcript; (3) worked with Swisher's damages expert, Dr. Alan Cox, to prepare three reports rebutting TSI's claimed lost-profits damages, which totaled 358 pages, including appendices and exhibits; and (4) prepared for and defended TSI's seven-hour deposition of Dr. Cox, which yielded a 203-page transcript. *Id.* ¶ 6.

Swisher would not have incurred any of these fees but for TSI's bad-faith conduct.

As the Court acknowledged in its tentative order, TSI could not have presented *any* evidence of lost-profits damages but for its fraudulent concealment of its criminal tax-evasion enterprise because it *had* no lost profits absent that criminal enterprise: "Alrahib admitted that the falsification of invoices and kickbacks were the only reasons why Trendsettah could 'compete in the marketplace' and thereby earn 'profits' it alleged were deprived by Swisher's anticompetitive conduct." Tentative Order at 6.  Indeed, Dr. McDuff could only offer his lost-profits expert testimony because TSI "provided incomplete financial records to . . . Mr. McDuff, who relied on such misrepresentation." *Id.* at 7.

***Defending Lost Profits at Trial.*** Akerman LLP spent 2,591.50 hours defending TSI's lost-profits theory at trial, along with pre-trial work necessary to the trial presentation, at a cost of $1,549,991.73.  *See* Marsh Decl. ¶¶ 7–8, 16.

These hours encompass a broad range of tasks directly related to TSI's damages theory, including (1) preparing and filing a *Daubert* motion to exclude Dr. McDuff's expert report on lost-profits damages; (2) preparing and filing a motion *in limine* challenging the testimony of Salah Kureh, TSI's then-CEO, regarding lost profits; (3) opposing TSI's motion *in limine* seeking to exclude evidence of Alrahib's past history of tax fraud; (4) preparing for and conducting the examinations of Dr. McDuff and Dr. Cox regarding their expert opinions on lost profits; and (5) preparing for and conducting the examination of fact witnesses who offered testimony purporting to support TSI's lost-profits claim.  *Id.* ¶ 7 These hours also include numerous tasks in which lost profits were a central (but not exclusive) issue, including (6) preparing for and attending pre-trial conferences; (7) meeting and conferring with TSI's counsel on trial issues; (8) preparing a final pre-trial order; (9) preparing trial exhibits and demonstratives; (10) monitoring testimony throughout trial to incorporate into witness outlines; (11) preparing for and delivering opening and closing statements; and (12) researching and drafting jury instructions.  *Id.*

Swisher has applied a 30% discount to all of those expenses, which it believes

fairly apportions the amount of trial time that turned on TSI's fraudulent lost-profits theory. The Supreme Court has endorsed such an across-the-board discount, noting that "[t]he court may decide . . . that all (or a set percentage) of a particular category of expenses—say, for expert discovery—were incurred solely because of a litigant's bad-faith conduct," and that "such judgments, in light of the trial court's superior understanding of the litigation, are entitled to substantial deference on appeal." *Goodyear*, 581 U.S. at 110 (cleaned up).

Although some of these tasks occurred before trial formally commenced—including, for example, preparing a final pre-trial order and litigating various evidentiary motions—they are appropriately considered in the trial-expenses category because these tasks directly relate to whether and to what extent lost profits would be litigated at trial, and because they were necessary to Swisher's ability to present a defense to TSI's fraudulent damages theory. And there is no doubt that TSI's bad-faith conduct was a but-for cause of these trial expenses. Again, TSI's fraudulent lost-profits damages theory was "the *only* theory of damages sought at trial." Tentative Order at 6 (emphasis added). And the Court's tentative order recounts in detail how TSI improperly hid the fraudulent basis for this theory throughout the trial: "At trial, Trendsettah presented highly material and misleading documents, knowing that it would portray a false image of profitability." *Id.* at 7. Among other things, "[i]t offered into evidence Exhibits 135 and 136, which presented the inflated profit margins, despite knowing that these were false," and "put into evidence Mr. McDuff's flawed expert opinion that ultimately persuaded the jury that Trendsettah had 'lost profits' it knew were inflated based on the fraud on the government." *Id.*

**Litigating and Defending the Rule 60 Motion.** Swisher's counsel incurred a total of 7,223.10 hours litigating and defending the Rule 60 motion, at a cost of $6,542,489.95. This includes 364.70 hours incurred by Akerman LLP, at a cost of $312,897.20, *see* Marsh Decl. ¶¶ 9, 16, and 6,858.40 hours incurred by Gibson, Dunn & Crutcher LLP, at a cost of $6,229,592.75, *see* Swanson Decl. ¶¶ 8, 16.

Akerman's hours include time spent (1) preparing Swisher's Rule 60 motion, (2) opposing TSI's repeated efforts to overturn the Court's Rule 60 order; (3) resisting TSI's attempts to release Swisher's supersedeas bond; and (4) opposing TSI's efforts to obtain attorney's fees before the resolution of Swisher's Rule 60 motion. Marsh Decl. ¶¶ 10–12. These hours also include substantial tasks preparing for retrial, including (5) serving discovery on TSI in anticipation of retrial; (6) engaging in motions practice to compel that discovery; and (7) initiating two enforcement actions in the Southern District of Florida to obtain the requested discovery. *Id.*

Gibson Dunn's hours include time spent (1) preparing the Rule 60 motion; (2) opposing TSI's motion for certification under 28 U.S.C. § 1292(b); (3) opposing TSI's motion for reconsideration of the Court's order denying the motion for certification; (4) opposing TSI's motion for leave to file an interlocutory appeal in the Ninth Circuit; (5) opposing TSI's petition for a writ of mandamus in the Ninth Circuit; and (6) opposing TSI's second motion for reconsideration of the Court's order denying the motion for certification. Swanson Decl. ¶ 9. After TSI voluntarily dismissed the Complaint to manufacture appellate jurisdiction, Gibson Dunn spent a substantial amount of time (7) defending this Court's Rule 60 Order in the Ninth Circuit, (8) preparing a petition for rehearing or rehearing en banc; (9) preparing a motion to stay the mandate; (10) drafting a petition for a writ of certiorari; and (11) conducting *amicus* outreach efforts in support of that petition. *Id.* ¶¶ 10–13.

Needless to say, none of these expenses would have been incurred but for TSI's bad-faith concealment of its fraudulent tax-evasion scheme. In fact, the Court already preliminarily determined in its tentative order that "Swisher is entitled to recover the fees and costs incurred from . . . filing and defending the Rule 60 motion," including "for preparing the Rule 60 Motion and opposing the repeated efforts to overturn the Court's order granting relief from judgment." Tentative Order at 9 (cleaned up). As the Court explained, "[i]f Trendsettah had not presented the false information underlying its lost profits theory, the jury would not have awarded Trendsettah lost profits of

$14,815,492 on its antitrust claims, and Swisher would not have brought the Rule 60(b) motion for relief from this judgment." *Id.* And "[i]f Trendsettah had not presented its lost-profits theory based on the fraud, Swisher would not have needed to pursue discovery regarding the fraud, analyze its impact on the damages award, defend against Trendsettah's voluntary dismissal so that the case may be appealed, [or] defend against such appeal." *Id.* at 10. Although the Court stated in its tentative order that "Swisher has not identified the amounts incurred based on each of the foregoing categories," *id.*, Swisher has provided that information in this filing.

***Litigating and Defending Post-Rule 60 Motion Issues.*** Swisher's counsel at Gibson Dunn spent 547.60 hours litigating and defending post-Rule 60 motion matters, at a cost of $693,507.50. *See* Swanson Decl. ¶¶ 14, 16.

These hours include time spent (1) researching and drafting Swisher's motion for sanctions; (2) collecting and organizing nine years of billing records; (3) preparing Swisher's motion for setoff; (4) meeting and conferring regarding Swisher's post-Rule 60 motions and related matters; and (5) preparing for and arguing Swisher's motions. *Id.* Like the expenses that Swisher incurred litigating and defending the Rule 60 motion, these expenses are directly attributable to the fact that TSI engaged in bad-faith conduct that is sanctionable under the Court's inherent power. And like the expenses that Swisher incurred litigating and defending the Rule 60 motion, the Court has already preliminarily determined that they are recoverable. *See* Tentative Order at 10 ("If Trendsettah had not presented its lost-profits theory based on the fraud, Swisher would not have needed to . . . file the post-remand motions.").

## CONCLUSION

Swisher respectfully requests that the Court impose $19,859,625.66 in sanctions to compensate Swisher for all of the fees and costs it incurred from the outset of this litigation or, in the alternative, $18,359,959.65 to compensate Swisher for the fees and costs it incurred from the outset of expert discovery. At a minimum, the Court should award Swisher $12,134,215.20 in sanctions for the four categories of fees and costs

specified in its order.

Dated: May 15, 2023

                    THEODORE J. BOUTROUS JR.
DANIEL G. SWANSON
CYNTHIA E. RICHMAN
MINAE YU
JULIAN KLEINBRODT

GIBSON, DUNN & CRUTCHER LLP

MICHAEL C. MARSH
RYAN ROMAN

AKERMAN LLP


By: /s/   *Theodore J. Boutrous Jr.*
        Theodore J. Boutrous Jr.

*Attorneys for Defendant*
SWISHER INTERNATIONAL, INC.