MARK POE (S.B. #223714)
 mpoe@gawpoe.com
RANDOLPH GAW (S.B. #223718)
 rgaw@gawpoe.com
VICTOR MENG (S.B. #254102)
 vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

THOMAS C. GOLDSTEIN (*pro hac*)
 tgoldstein@goldsteinrussell.com
ERIC F. CITRON (*pro hac*)
 ecitron@goldsteinrussell.com
GOLDSTEIN & RUSSELL, P.C.
7475 Wisconsin Ave., Suite 850
Bethesda, MD 20814
Telephone: (202) 362-0636
Facsimile: (866) 574-2033

Attorneys for Plaintiffs Trendsettah USA, Inc. and Trend Settah, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| TRENDSETTAH USA, INC. and TREND SETTAH, INC.<br><br>Plaintiffs,<br><br>v.<br><br>SWISHER INTERNATIONAL, INC.<br><br>Defendant. | Case No. 8:14-CV-01664-JVS (DFMx)<br><br>**TRENDSETTAH'S MOTION FOR ATTORNEYS' FEES AND EXPENSES**<br><br>**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED]**<br><br>Judge:    The Hon. James V. Selna<br>Courtroom:  Courtroom 10C<br>Date:     October 2, 2023<br>Time:     1:30 p.m. |

1   ## NOTICE OF MOTION AND MOTION

2   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3   NOTICE IS HEREBY GIVEN that on October 2, 2023 at 1:30 p.m., or as soon

4   thereafter as the matter may be heard, before the Honorable James V. Selna, United

5   States District Court for the Central District of California, located in Courtroom 10C,

6   411 West Fourth Street, Santa Ana, California, plaintiffs Trendsettah USA, Inc. and

7   Trend Settah, Inc. (together, "Trendsettah") will, and hereby do, move for an order

8   awarding:

9   1.  Attorneys' fees to Trendsettah of $11,760,292; and

10   2.  $613,181.32 in disbursements incurred in prosecuting this action.

11   This motion is filed pursuant to the fee-shifting provision in the Private Label

12   Agreements between the parties; the Ninth Circuit's December 5, 2022 mandate;

13   Federal Rule of Civil Procedure 54(d), and Civil Local Rule 54-10.  This motion is

14   based on this Notice and the accompanying Memorandum of Points and Authorities;

15   the concurrently filed Declarations of Mark Poe, Eric Citron, Gerald Knapton; the

16   exhibits to those declarations, argument by counsel at the hearing before this Court;

17   and all papers and records in this matter.

18   This motion is made following the conference of counsel pursuant to Local

19   Rule 7-3 that took place on December 15, 2022.

20

21   Dated:  August 28, 2023                    GAW | POE LLP

22

23                                             By:    s/ *Mark Poe*
                                                     Mark Poe
24                                                   Attorneys for Plaintiffs

25

26

27

28

1

# <u>TABLE OF CONTENTS</u>

2

TABLE OF AUTHORITIES .................................**Error! Bookmark not defined.**

3

PROCEDURAL BACKGROUND ...........................................................................2

4

ARGUMENT ...........................................................................................................3

5

I.     THE COMPONENTS OF TRENDSETTAH'S REQUEST. ............................3

6

     A.    Attorneys' Fees ..................................................................................3

7

     B.    Disbursements and Costs ...................................................................4

8

II.    TRENDSETTAH'S REQUESTED HOURS AND RATES ARE
     REASONABLE. ...........................................................................................4

9

10

     A.    Trendsettah Is Entitled to Recover Its Attorney Fees Under the Fee-
     Shifting Provision of the PLAs. .................................................................4

11

     B.    Trendsettah's Counsel Expended A Reasonable Number of Hours. ..........5

12

     C.    The Rates Claimed By Trendsettah's Counsel Are Also Reasonable. .......7

13

     D.    Trendsettah's Lodestar Calculations ........................................................10

14

III.   TRENDSETTAH IS ENTITLED TO RECOVER ALL OF ITS
     DISBURSEMENTS, LESS HALF OF DR. MCDUFF'S FEES. ...................11

15

16

CONCLUSION .....................................................................................................12

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

5
*AdTrader, Inc. v. Google LLC,*
    2020 WL 1921774 (N.D. Cal. Mar. 24, 2020) ................................................. 8

6
*Armstrong v. Davis,*
7
    318 F.3d 965 (9th Cir. 2003) ............................................................................ 5

8
*Blum v. Stenson,*
    465 U.S. 886 (1984) .......................................................................................... 9
9

10
*Charlebois v. Angels Baseball LP,*
    993 F. Supp. 2d 1109 (C.D. Cal. 2012) ......................................................... 7

11
*Democratic Party of Washington State v. Reed,*
12
    388 F.3d 1281 (9th Cir. 2004) ......................................................................... 5

13
*Epic Games, Inc. v. Apple, Inc.,*
14
    2021 WL 6755197 (9th Cir. Dec. 8, 2021) .................................................... 9

15
*Google LLC v. Oracle Am., Inc.,*
16
    141 S. Ct. 1183 (2021) ..................................................................................... 9

17
*Masimo Corp. v. Tyco Health Care Group, L.P.,*
    No. 02-CV-4770-MRP, 2007 WL 5279897 (C.D. Cal. Nov. 5, 2007) ........... 6

18
*Missouri v. Jenkins,*
19
    491 U.S. 274 (1989) .......................................................................................... 7

20
*Moreno v. City of Sacramento,*
21
    534 F.3d 1106 (9th Cir. 2008) ......................................................................... 5

22
*Procaps S.A. v. Patheon Inc.,*
    No. 12-24356-CIV, 2017 WL 3536917 (S.D. Fla. Aug. 17, 2017) ................. 7
23

24
*Rutti v. Lojack Corp.,*
    No. 06-cv-350-DOC-JCX, 2012 WL 3151077 (C.D. Cal. July 31, 2012) ..... 8

25
*United States v. Washington,*
26
    235 F.3d 438 (9th Cir. 2000) ........................................................................... 7

27
*In re Washington Pub. Power Supply Sys. Sec. Litig.,*
28
    19 F.3d 1291 (9th Cir. 1994) ................................................................. 4, 7, 10

**Other State Cases**

*Florida Patient's Compensation Fund v. Rowe*,
    472 So.2d 1145 (Fla. 1985).............................................................. 5

*Standard Guar. Ins. Co. v. Quanstrom*,
    555 So. 2d 828 (Fla. 1990)............................................................... 5


**Other Authorities**

Rule 60.............................................................................................. 3

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Over this nearly nine-year litigation, Trendsettah's counsel has not received a penny of compensation for their efforts in proving the now indisputable facts that Swisher breached its contracts with Trendsettah, and violated Section 2 of the Sherman Act by undertaking a long series of anticompetitive efforts to ensure that consumers would continue to pay 2/99¢ for Swisher, cigars rather than 3/99¢ for the *identical* cigars made by Swisher and sold by Trendsettah.

Counsel are now entitled to collect their due, pursuant to the prevailing-party clause that Swisher drafted for inclusion in both iterations of the Private Label Agreement ("PLA") between the parties.  Under that clause, liability for fees was to be unrelated to any particular amount of money recovered by either side—it turned exclusively on which side proved "default" by the other side (or lack of "default").  *See* Poe Decl. Exs. A, B, at § 16.3.

For everything else that has happened over the seven years since the jury's verdict, Trendsettah's counsel clearly proved that Swisher "default[ed]" when it failed to deliver the 200 million cigarillos Swisher had been obligated to produce under the requirements contract between the two.  Indeed, this Court noted in its order on Swisher's JMOL motion that "it was verbally conceded that Swisher's failure to deliver cigarillos was breach."  Order re JMOL at 18 (ECF No. 262).

Now, Swisher must be held to the obligation that it freely undertook: to "expeditiously reimburse" Trendsettah for "reasonable attorneys' fees (including disbursements) incurred in pursuit of such judicial determination."  *Id.*

There should be few disputed issues on this motion, since the Court has already ruled on most of the principal disputes.  *See* Am. Order Granting Plaintiffs' Mot. to Extend Time, Amend J. and for Attorneys' Fees (hereafter "TSI Fees Order"), ECF No. 341.  Swisher did not appeal the following rulings from the Court's prior fees order, so they should now be taken as established:

- "Trendsettah's contract and antitrust claims were inextricably intertwined," such that Trendsettah's counsel are entitled to compensation for all time they expended other than the "separate and distinct amount of time" devoted "exclusively" to antitrust issues, *id.* at 7-9;

- Trendsettah is entitled under Florida law to recover fees for the reasonable time its attorneys expend seeking fee reimbursement, *id.* at 11-13;

- The PLA entitles Trendsettah to recover its "disbursements," but only half of the fees it paid to its expert Dr. McDuff, *id.* at 20.

Excluding the time devoted solely to antitrust matters, Gaw | Poe LLP seeks to recover for 8,754.1 hours of legal work over the last nine years, while Goldstein & Russell P.C. seeks recovery for the 1,657.7 hours of work it performed over the six years it has worked on the case. Multiplying those hours by the billing attorneys' reasonable rates yields a total of $11,760,292. Both the total number of hours and the total amount of the award compare favorably to what the Court had previously approved as reasonable totals for Swisher. *See* Decl. of Gerald Knapton ¶ 43; Order Regarding Motion for Attorney's Fees (hereafter, "Swisher Fees Order") (ECF No. 621). This is particularly true given that Trendsettah brings this motion following two-and-a-half additional years of work since the Court calculated Swisher's reasonable totals. *Id.*

**PROCEDURAL BACKGROUND**

Trendsettah won the jury's verdict on all claims that were tried, resulting in a judgment for $44,446,482.00. Judgment entered April 14, 2016 (ECF No. 216). The Court subsequently granted Swisher's motion for reconsideration of the prior summary judgment order, concluding that Swisher was entitled to judgment as a matter of law against Trendsettah's antitrust claims for both actual and attempted monopolization. Order entered Nov. 9, 2016 (ECF No. 274).

Trendsettah appealed the judgment against its antitrust claims, and Swisher cross-appealed, contending that the contract verdict should be vacated as well. ECF

No. 345. To assist on those appeals, Trendsettah engaged the renowned Washington, D.C.-based firm of Goldstein & Russell to serve as co-counsel with Gaw | Poe. On that first appeal, the Ninth Circuit agreed with Trendsettah, ordering reinstatement of the jury's entire verdict. *See* ECF No. 349 (Mem. Dispo.).

On remand, Swisher filed a motion under Rule 60(b)(2) and (3), and Rule 60(d)(3), to have the jury's verdict vacated for a second time, based on the indictment of Trendsettah's former CEO Akrum Alrahib for conspiring with a cigar importer called Havana 59 Cigar Company to evade a portion of the excise taxes due on the cigars that Havana 59 imported for Trendsettah. The Court granted that motion and ordered a new trial. ECF No. 426. After a number of intervening motions, Trendsettah elected to forgo a new trial in favor of voluntary dismissal to challenge the Court's several orders concerning Rule 60 relief, which the Court granted. ECF No. 591. On appeal, the Ninth Circuit concluded that Trendsettah had not committed "fraud on the court" under Rule 60(d)(3), but affirmed the vacatur of Trendsettah's antitrust verdict under Rule 60(b)(2) and (3). ECF No. 666 at 28. Accordingly, it held: "[W]e reverse the district court's dismissal of Trendsettah's breach of contract claims and remand with instructions to reinstate the jury's verdict on those claims. We affirm the district court's grant of Rule 60(b) relief as to Trendsettah's antitrust claims." *Id.* at 6.

## ARGUMENT

To facilitate the Court's review, Trendsettah first sets out each of the components of its fees and expenses request, then separately gives the legal justification for each.

## I.  THE COMPONENTS OF TRENDSETTAH'S REQUEST.

### A.  Attorneys' Fees

Trendsettah is entitled to a basic lodestar of $11,760,292 in fees, for the work of Gaw | Poe LLP and Goldstein & Russell, P.C. As contingency counsel, Trendsettah's counsel are entitled to recover at the *current* hourly rates for attorneys

of their experience, background, and skill.  *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) (holding that a court should "apply[] the attorneys' current rates to all hours billed during the course of the litigations.").  The claimed hours and rates for each attorney are set forth in Section I.D. below.  An analysis of those hours and rates, and an explanation of their reasonableness, is set forth in paragraphs 14-83 of the supporting expert declaration of Gerald Knapton, a partner in the Los Angeles office of Ropers, Majeski, Kohn & Bentley, who has nearly 30 years' experience in analyzing and opining on the reasonableness of attorney fee claims, including having been qualified as a testifying expert on fees on approximately 60 different matters.  *See* Decl. of Gerald Knapton Ex. 1.  In two of those matters, Mr. Knapton was engaged to testify as a fees expert on behalf of Gibson Dunn.  *Id.* at 8.

### B.   Disbursements and Costs

Trendsettah is entitled under the Private Label Agreements to recover its "disbursements" in this action, less half of Dr. McDuff's expert fees.  Fees Order at 20; Swisher Fees Order at 12-13; *see also* Poe Decl. Exs. A, B, at § 16.3.)  Such disbursements now total $613,181.32.  *See* Poe Decl. ¶ 4, Ex. C.

## II.   TRENDSETTAH'S REQUESTED HOURS AND RATES ARE REASONABLE.

### A.   Trendsettah Is Entitled to Recover Its Attorney Fees Under the Fee-Shifting Provision of the PLAs.

Swisher drafted the two PLAs to include a provision for the award of prevailing-party fees and costs.  Fees Order at 6 (quoting the provision).  The Court has already explained the scope of this provision through two orders, concluding that while the clause does not extend to work devoted "exclusively" to antitrust issues, it is otherwise very broad, to include both "fees on fees," (TSI Fees Order at 11-13), and the legal work related to the prevailing party's efforts to collect on a judgment.  Swisher Fees Order at 11.

Because the PLAs include a Florida choice-of law clause, this fees adjudication is governed by Florida law.  The Florida Supreme Court has adopted the "federal lodestar approach" in determining reasonable attorney fees.  *Florida Patient's Compensation Fund v. Rowe*, 472 So.2d 1145, 1150 (Fla. 1985); *Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828 (Fla. 1990).  Under Florida law (and federal law), the lodestar is calculated by multiplying the "number of hours reasonably expended" by a "reasonable hourly rate." *Id.* at 1150-51.  A lodestar fee award "should cover every item of service which, at the time rendered, would have been undertaken by a reasonably prudent lawyer to advance or protect his client's interest in the case at bar." *Armstrong v. Davis*, 318 F.3d 965, 971 (9th Cir. 2003).

**B.    Trendsettah's Counsel Expended a Reasonable Number of Hours.**

For a case that has lasted nearly nine years (so far), there can be no question that the overall number of hours expended by Trendsettah's counsel is reasonable. As the Ninth Circuit has explained, courts "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento,* 534 F.3d 1106, 1112-13 (9th Cir. 2008).  This is particularly true in contingency cases, where a lawyer faces keen incentives not to spend any more time necessary than to achieve the desired result.  As explained in *Moreno*, "lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees [because] the payoff is too uncertain, as to both the result and the amount of fee." *Id.* at 1112.  That "uncertainty" is on full display here, where for three years Trendsettah's counsel was faced with the likelihood of recovering nothing, despite having poured thousands of hours into the case.  But they persevered, and have now returned Trendsettah to the position of the prevailing party. They are now entitled to recover fees for their last nine years' worth of work.

As the Ninth Circuit has further noted, "there is one particularly good indicator of how much time is necessary . . . and that is how much time the other side's lawyers spent." *Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1287 (9th

Cir. 2004).  As of two years ago, Swisher reported that its two firms had recorded 19,648.9 hours on the case.[1]  *See* Swisher Mot. for Attorneys' Fees at 10 (ECF No. 605-1) (hereafter "Swisher Fee Mot.").  It claimed 11,792 hours as a reasonable number under the PLAs' fee-shifting provision, limited to the breach-of-contract claims.  *Id.* at 10-11.  As Mr. Knapton explains, Trendsettah's counsel had litigated the case far more efficiently, having by that point expended in pursuit of the contract claims just **56%** of the time that Swisher's counsel had.  Knapton Decl. ¶ 43.  And following two-and-a-half *additional* years of litigation, the two firms that represent Trendsettah claim reimbursement for just 10,411.8 hours.  That is, Trendsettah's counsel have now finally won the case, despite spending significantly less than half the time that Swisher's counsel "reasonably" expended to end up at with a loss.  *See* n.1, *infra*.

    While Swisher may be inclined to bicker with the claimed hours around the margins, Trendsettah does not anticipate that Swisher will seriously dispute the reasonableness of the total number of hours that Gaw | Poe and Goldstein & Russell expended on this case, given that Swisher's two firms "reasonably" expended far more hours, and staffed the case with far more attorneys.  *See*  Swisher Fees Mot. at 11, 17, 21 (showing that even after excluding 66 timekeepers, Swisher claimed time for 17 lawyers) (ECF No. 605-1).  The time claimed by Gaw | Poe and Goldstein & Russell is submitted as Exhibits 2 and 3, respectively, to the Knapton Declaration.

    One other data point as to the reasonableness of Trendsettah's claimed hours is apparent from a rare point of agreement between the parties.  As Swisher explained it its fees motion, both sides agree that this dispute is akin to *Masimo Corp. v. Tyco Health Care Group, L.P.*, No. 02-CV-4770-MRP (AJWx), 2007 WL 5279897 (C.D. Cal. Nov. 5, 2007), where the court approved "approximately 23,000 hours of work" as reasonable just to litigate the case through trial.  Swisher Fees Mot. at 15 (ECF

---

[1] As of February 2023, the two firms are up to 23,223.8 hours.  *See* Decl. of Michael Marsh ¶ 8 (ECF No. 704-4); Decl. of Daniel Swanson ¶ 8 (ECF No. 706).

No. 605-1).  Swisher then explained that *Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2017 WL 3536917 (S.D. Fla. Aug. 17, 2017) is "even more similar," since it involved overlapping contract and antitrust claims.  Swisher Fees Mot. at 15.  There, the court approved nearly 60,000 hours as a reasonable amount for four and a half years of litigation.  As Swisher noted, both sides here have "claim[ed] a fraction of the hours found reasonable in that case."  *Id.*  Ultimately, Swisher should be pleased with its counsel's work in avoiding the antitrust verdict, even if it is disappointed that Trendsettah is the prevailing party on the contract claims.  Regardless, Swisher can rest easy knowing that both its own counsel and Trendsettah's counsel expended far less time on this case than what has been deemed reasonable in "similar" disputes.

### C.   The Rates Claimed By Trendsettah's Counsel Are Also Reasonable.

Six years ago, when this case was in the same posture as it is now (*i.e.*, Trendsettah prevailing on the contract claims, with the antitrust verdict vacated), the Court considered Trendsettah's arguments as to the appropriate hourly rates for the Gaw | Poe attorneys, as well as Swisher's arguments against those rates.  TSI Fees Order at 14-16.

"Because this order was not appealed, it remains the law of the case."  *United States v. Washington*, 235 F.3d 438, 441 (9th Cir. 2000) (citing *Coleman v. Calderon*, 210 F.3d 1047, 1052 (9th Cir. 2000)).  However, when considering the appropriate rates to award contingency-fee counsel at the conclusion of long-running litigation, a court is to "apply[] the attorneys' current rates to all hours billed during the course of the litigations."  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994).  That rule stems from the Supreme Court's recognition in *Missouri v. Jenkins*, that "[c]learly, compensation received several years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings."  491 U.S. 274, 283 (1989).  Courts in this district naturally follow suit.  *See, e.g.*, *Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1119

n.6 (C.D. Cal. 2012) (observing that "for the fee award to be reasonable, it must be based on current, rather than historic, hourly rates.") (citing *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989) and collecting authority); *Rutti v. Lojack Corp.*, No. 06-cv-350-DOC-JCX, 2012 WL 3151077, at *11 (C.D. Cal. July 31, 2012) ("it is well-established that counsel is entitled to current, not historic, hourly rates.").

Accompanying this motion, Trendsettah submits a thorough and extensive declaration from Mr. Knapton, who proposes to again use the Real Rate Report as the touchstone for his opinions. As Mr. Knapton explains, however, the 2022 version of that survey only captures fees reported through June 2022, more than a year before this motion is to be heard, and in an environment of upwardly spiraling rates. *See* Knapton Decl. ¶¶ 67-68. Mr. Knapton opines that the reasonable rate for Mr. Gaw and Mr. Poe is $1,222/hour; for Mr. Song, Mr. Meng, and Ms. Vigo $1,000/hour; and for the contracted attorneys the first quartile rate for associates of $400/hour. *Id.* ¶¶ 69-70.

Mr. Knapton further observes two "real-world data points" to support his opinion of the reasonable rates for Gaw | Poe LLP in 2023. First, he references the fact that even as of March 2020 (more than three years ago) the Northern District of California approved rates of $1,000 for Gaw | Poe's name partners, and $855 for their highly experienced partners/Of Counsel, deeming such amounts "reasonable and comparable to the fees generally charged by attorneys with similar experience, ability, and reputation." *AdTrader, Inc. v. Google LLC*, 2020 WL 1921774, at *8 (N.D. Cal. Mar. 24, 2020). Knapton Decl. ¶ 70. Second, he notes that his proposed rates for Gaw | Poe are far below the current rates charged by Gibson Dunn partners—whose average rate is $█████/hour—and would place Gaw | Poe's name partners on par with senior *associates* from LA-based Gibson Dunn, whose rate is $█████/hour. *Id.* ¶ 71 (citing Decl. of Daniel Swanson in Supp. of Mot. for Sanctions Ex. 6 (ECF No. 702-4)). This despite Mr. Poe and Mr. Gaw having similar or better academic credentials than those senior associates, many trials under their belts, and roughly a

decade more experience. *Id.* ¶ 82. Indeed, Gaw | Poe began working on *this very case* before many of those associates had even graduated law school.

In light of those disparities, we must note that Swisher is poorly positioned to argue that Mr. Knapton's proposed rates for the Gaw | Poe attorneys are unreasonably high, given Swisher's successful assertion that the far higher rates it claims for its own attorneys are reasonable and "consistent with billing rates for attorneys with similar qualifications in the Los Angeles market." Mot. for Sanctions at 22 (ECF No. 702-1).

In contrast to Gaw | Poe, the Court has not previously ruled on the reasonable rates to apply to counsel from Goldstein & Russell. To determine a reasonable hourly rate, courts consider whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984). As the Court no-doubt knows, Goldstein & Russell is in rare company when it comes to "lawyers of reasonably comparable skill, experience, and reputation." *Id.* The firm routinely handles some of the most significant appellate work in the country, including the recent cases of *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183 (2021) (argued by Mr. Goldstein); *Georgia v. Public.Resource.Org,* Inc, 140 S. Ct. 1498 (2020) (argued by Mr. Citron); and *Epic Games, Inc. v. Apple, Inc.*, 2021 WL 6755197, at *1 (9th Cir. Dec. 8, 2021) (argued by Mr. Goldstein).

Given Goldstein & Russell's extremely distinguished "skill, experience, and reputation," *Blum*, 465 U.S. at 895-96 n.11, Mr. Knapton opines that the reasonable rates for the attorneys from Goldstein & Russell are the 2023 rates that they charge to clients who engage them on an hourly basis. Knapton Decl. ¶¶ 73-74. As an additional indicator of reasonableness, Mr. Knapton further observes that (with the sole exception of Mr. Goldstein, who is on par with Mr. Boutrous), Goldstein & Russell's 2023 hourly rates are significantly below the rates charged by their counterparts with Gibson Dunn. *Id.* ¶ 75 (citing Swanson Decl. Ex. 6 (ECF No. 702-

4)); *see also* Declaration of Eric Citron at ¶¶ 7-15 (describing the firm's credentials and accomplishments).

### D. Trendsettah's Lodestar Calculations

Mr. Knapton's declaration includes tables setting forth the lodestar calculations for Gaw | Poe and Goldstein & Russell, respectively. For Gaw | Poe, Mr. Knapton first replicates the same table found in the Court's January 2017 TSI Fees Order, updating it only with the 2023 rates, in keeping with *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1305:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Randolph Gaw | 755 | $1,222 | $922,610 |
| Mark Poe | 843.4 | $1,222 | $1,030,635 |
| Victor Meng | 1125.2 | $1,000 | $1,125,200 |
| Samuel Song | 231.1 | $1,000 | $231,100 |
| Contract Attorneys | 1079.2 | $400 | $431,680 |
| **Totals** | **4,033.9** | | **$3,741,225** |

Mr. Knapton then presents a separate table capturing Gaw | Poe's time from the end-date of the prior award through April 18, 2023:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Randolph Gaw | 442.3 | $1,222 | $540,491 |
| Mark Poe | 3345.9 | $1,222 | $4,088,690 |
| Victor Meng | 534.5 | $1,000 | $534,500 |
| Samuel Song | 217.6 | $1,000 | $217,600 |
| Flora Vigo | 174.9 | $1,000 | $174,900 |
| Rebecca Mance (paralegal) | 5 | $315 | $1,575 |

| Totals | 4,720.2 | | $5,557,755 |

Mr. Knapton next presents a table setting forth the lodestar for the work done by Goldstein & Russell (all of which came after the TSI Fees Order):

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Thomas Goldstein | 169.4 | $2,180 | $369,292 |
| Kevin Russell | 10 | $1,520 | $15,200 |
| Eric Citron | 1185 | $1,520 | $1,801,200 |
| Daniel Woofter | 15.8 | $1,080 | $17,064 |
| Charles Davis | 218.3 | $1,080 | $235,764 |
| Erica Evans | 59.2 | $385 | $22,792 |
| Totals | 1,657.7 | | $2,461,312 |

Finally, Mr. Knapton presents a table that combines the lodestar of the two firms:

| Firm | Hours | Total |
|---|---|---|
| Gaw \| Poe LLP | 8,754.1 | $9,298,980 |
| Goldstein & Russell P.C. | 1,657.7 | $2,461,312 |
| Totals | 10,411.8 | $11,760,292 |

*See* Knapton Decl. ¶¶ 77-80.

## III.   TRENDSETTAH IS ENTITLED TO RECOVER ALL OF ITS DISBURSEMENTS, LESS HALF OF DR. MCDUFF'S FEES.

In both the TSI Fees Order and the Swisher Fees Order, the Court recognized that the PLAs further entitle the party who proves default to recover all of its "disbursements." TSI Fees Order at 20; Swisher Fees Order at 12-13. In the TSI Fees Order, the Court allowed all of Trendsettah's claimed expenses, but excluded half of Dr. McDuff's expert witness fees. TSI Fees Order at 20. The net result was

$447,723.08, for expenses incurred through May 15, 2016. *Id.*; *see also* ECF No. 285-14 (listing Trendsettah's expenses by date).

Since that prior decision, Trendsettah has incurred an additional $165,458.24 in expenses, for a total of **$613,181.32**. Poe Decl. ¶ 4, Ex. C. Should Trendsettah incur further expenses between the date of this filing and issuance of the final judgment (such as travel costs for any oral argument on this and subsequent motions), Trendsettah will update this total by declaration.

## CONCLUSION

For the foregoing reasons, Trendsettah respectfully requests that the Court award attorney's fees in the amount of $11,760,292, and reimbursement of $613,181.32 in expenses. Trendsettah respectfully requests the opportunity to update these totals by declaration accompanying its reply brief, to include modest amounts of time recorded subsequent to the date of Mr. Knapton's analysis.

Dated:  August 28, 2023                         GAW | POE LLP


                                                By:    s/ *Mark Poe*
                                                Mark Poe
                                                Attorneys for Plaintiffs
                                                Trendsettah USA, Inc. and Trend
                                                Settah, Inc.