# Exhibit A

CASE NO. 14-cv-01664-JVS
Trendsettah
VS. Swisher
PLAINTIFF'S EXHIBIT 1
DATE _____ IDEN.
DATE _____ EVID.
BY _____
Deputy Clerk

## PRIVATE LABEL AGREEMENT

This Private Label Agreement, including the Exhibits ("Agree[ment]") [made this] 20 day of January, 2011, by and between TREND SETTAH, INC. [...] with offices at 6001 Slauson Avenue, Commerce, California (hereina[fter "TSI"]) and SWISHER INTERNATIONAL, INC., a Delaware corporation wi[th offices at ___] Street, Jacksonville, Florida (hereinafter referred to as "SWISHER").

### RECITALS:

WHEREAS, TSI is the owner of all rights, title and interest in and to the trademark "SPLITARILLOS" (the "Trademark") for use in conjunction with tobacco products including, without limitation, cigar products; and

WHEREAS, TSI desires to utilize the Trademark in conjunction with the sale of a private label brand of cigar products; and

WHEREAS, SWISHER is in the business of manufacturing, importing and distributing, among other things, cigar products; and

WHEREAS, SWISHER and TSI desire to enter into this Agreement to have SWISHER supply the private label cigar products described on Exhibit "A" hereto (the "Product") to TSI, upon the terms and conditions of this Agreement;

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein contained, it is mutually agreed as follows:

### ARTICLE I
### DEFINITIONS

1.1  The following terms used herein shall have the meanings defined below for the purpose of this Agreement:

(a)  "Effective Date" shall mean January 20, 2011.

(b)  "Exclusive" shall mean in relation to any right granted hereunder that the grantor shall not itself exercise that right, or license, assist or permit any other person to do so.

(c)  "Product" shall mean the cigar products bearing the Trademark which TSI may order from SWISHER, as described in the Product Schedule attached hereto and incorporated herein by reference as Exhibit "A", as it may be amended from time to time in accordance with the terms hereof by written agreement of the parties.

(d)  "Termination Date" shall mean the date upon which this Agreement is terminated or expires.

Exhibit A

EXHIBIT 3
Alrahib
12-2-15

## ARTICLE II
## LICENSE

2.1 Grant of License.

(a) TSI hereby grants to SWISHER the exclusive right, subject to the terms and conditions of this Agreement, to supply the Product to TSI for so long as this Agreement or any extension hereof is in full force and effect.

(b) SWISHER shall have a limited, restricted, exclusive license to use the Trademark in direct connection with the sale of the Product, and solely for such purpose, upon the terms and conditions set forth in Article VII hereof (the "License"). SWISHER acknowledges that the Trademark is the sole and exclusive property of TSI, that SWISHER shall not acquire a proprietary interest in the Trademark(s) or any other product specific logos, slogans, and other intangibles relating to the Products, and that all use of the Trademark(s) shall be for, and inure to the benefit of, TSI.

(c) SWISHER agrees that upon termination of this Agreement, it shall cease all use of the trade name and/or Trademark and deliver to TSI the logotype representations thereof.

## ARTICLE III
## ORDERS; TERMS AND CONDITIONS

3.1 Orders. SWISHER agrees to fill orders for the Product from TSI on the following terms and conditions:

(a) Price. SWISHER agrees to sell the Product to TSI during the first year of the Term at the prices set forth on Exhibit "B" less a discount calculated in accordance with Paragraph 3.1(b). Thereafter, such prices will be subject to change by SWISHER periodically on the same date and to the same extent that SWISHER changes the prices at which it sells other cigar products comparable to the Product; provided, however, that the Exhibit "B" prices may also be changed at any time upon the mutual consent of the parties hereto. Notwithstanding (and in addition to) the foregoing, SWISHER may increase the prices for the Product at any time during the term of this Agreement to reflect any increase in federal excise taxes thereon or in any other tax or fee that SWISHER may become obliged to pay under any law, rule or regulation with respect to the manufacture or sale of cigar products and/or to reflect increases in the cost of production as the result of changes to the packaging and labeling of the product pursuant to Section 4 hereof.

(b) Credit and Payment. TSI will make payment for all purchases by Electronic Funds Transfer ("EFT") within ten (10) days of the date of invoice, pursuant to the terms of SWISHER's EFT Program. TSI will receive a discount of 2% on any order for which payment is made in strict compliance with the foregoing terms. All orders of Product by TSI

-2-

hereunder are subject to approval and availability of credit and TSI's compliance with SWISHER's then-current credit terms and policies.

(c) <u>Inspection and Acceptance by TSI</u>. Notwithstanding any prior payment by TSI, all Products will be subject to final inspection and acceptance at TSI's specified destination upon delivery by SWISHER.

(d) <u>Returns</u>. SWISHER will not accept returns of the Product for any reason whatsoever, with the sole exceptions being Product damaged in shipping and/or defective at the time of delivery. It shall be the responsibility of TSI to inspect the Product at the time of delivery as provided for in Section 3.1(c), and to initiate the return process prior to further sale and/or distribution of the Product. TSI shall submit all claims regarding Product damaged in transit to SWISHER's Sales and/or Customer Service Departments for resolution pursuant to SWISHER's then-current policies and/or procedures.

(e) <u>Minimum Quantities</u>. TSI agrees to purchase from SWISHER a minimum of two thousand five hundred (2,500) cases per month or thirty thousand (30,000) master cases in the aggregate annually with purchase volume being audited quarterly.

(f) <u>Minimum Orders of SWISHER's Branded Products</u>. The parties acknowledge that TSI (and/or its related entity, Sunrise Tobacco, Inc. (hereafter "Sunrise")) is a distributor of certain of SWISHER's branded cigar products (the "Swisher Products"). As near as possible to the Effective Date, and in no event later than January 31, 2011, SWISHER will provide to TSI the average monthly volume, measured in dollars, of Swisher Products purchased by Sunrise during calendar year 2010. During the term of this Agreement and any renewals thereof, TSI and/or Sunrise shall submit monthly orders for a total quantity of Swisher Products which, measured in dollars, is equal to or exceeds seventy-five percent (75%) of the average monthly quantity of such Swisher Products ordered in calendar year 2010. SWISHER will review TSI's orders of Swisher Products (which shall be deemed to include Sunrise's orders) every six months during the term and any renewals thereof for purposes of determining its compliance with this Section 3.1(f). For so long as TSI remains in compliance with the requirements of this Section as well as Section 3.1(e) above, TSI will be entitled to receive one case of the Product free of charge for each 10 cases purchased at the price(s) established hereunder. Thus, for example, as long as TSI is meeting its requirements under this Section and Section 3.1(e), TSI will receive 250 cases free of charge in connection with its purchase of 2,500 cases. By way of further example, if TSI purchases 5,000 cases, they will receive 500 cases free of charge in connection with the purchase. It is expressly understood and agreed that the foregoing discount shall apply only to purchases of the Product manufactured hereunder for TSI, and not to purchases of Swisher Products. It is further expressly agreed that, in the event of a change to applicable tax laws or regulations which would impact the cost to SWISHER of providing the free Product as stated in this Section, SWISHER may, in its sole discretion, modify the quantity of free Product or otherwise modify this provision to offset and/or prevent any such increase in cost.

Exhibit A

(g)     Licensure of TSI; Shipping. TSI shall be responsible for maintaining any and all licenses and/or permits required by applicable federal, state and/or local laws or regulations and shall provide proof of same to SWISHER upon request. SWISHER will only ship Product to TSI at a single licensed address, to be designated by TSI prior to the first shipment of Product hereunder.

## ARTICLE IV
## PACKAGING AND LABELING; CHANGES

4.1     SWISHER agrees to package the Product in foil wrappers, packs, cartons, boxes and displays of the same type it uses to package its branded cigar products. All Products shall be packaged and prepared for shipment to prevent damage or deterioration and in accordance with all applicable laws, rules, and regulations of the United States and shall include, without limitation, all text, warnings, cautions and technical information required by law, rule or regulation. Except where required for compliance with law, SWISHER's name and/or address shall not appear on the Products or on any label or packaging for the Products.

4.2     TSI shall prepare all initial designs, labeling, mechanical drawings, and color comprehensions, including TSI's Trademark(s) for the Products (hereinafter referred to as the "Artwork"). TSI shall provide a proposed final PDF version of the designs and labeling and/or packaging to SWISHER in the form of an Adobe Illustrator EPS file or other agreed-upon file format, together with all supporting files for review by SWISHER. TSI shall bear all costs related to the set-up of the Artwork and the costs of any future changes to the Artwork or label or packaging, whether such changes are required by regulations or law, are changes agreed to by the parties, or are changes agreed to by the parties. This PDF approval is an interim approval and is subject to the final approval by SWISHER of the Proof (as defined in Paragraph 4.3 below) prior to final printing.

4.3     Subsequent to PDF approval and before initial printing, SWISHER shall provide a press proof or match print ("Proof") of the proposed Artwork to TSI for TSI's final review. SWISHER shall not affix the Artwork to the labels and packaging of the Products until SWISHER has received TSI's final written approval of the Proof (the "Final Art"). No changes may be made to the Final Art by SWISHER, unless such changes are required by law, regulation or other governmental action. Once the Final Art has been approved pursuant to this Section, in the event that (a) TSI desires to make changes to the packaging and labeling of the Product, or (b) changes to the packaging and labeling are required as the result of changes to applicable laws and/or regulations and/or other governmental or legal action, then such changes shall only be made after SWISHER has approved the new packaging and/or labeling, and TSI shall be solely responsible for any and all costs associated with the change to new packaging, including any increased cost of production (which shall be reflected in a change to the purchase price) as well as the cost of any packaging, labeling, and/or finished goods rendered obsolete by virtue of the change.

-4-

## ARTICLE V
## MARKETING AND PROMOTION

5.1 SWISHER's Marketing Obligations. SWISHER shall have no responsibility whatsoever for any advertisement or promotion of the Product. Any communication delivered to SWISHER about the Product (including without limitation communications from customers of TSI, wholesalers or retailers selling the Product, consumers of the Product, or governmental or regulatory bodies) shall be immediately forwarded to TSI; provided that SWISHER shall retain an archival copy of any such communication from any governmental or regulatory body.

5.2 Notice. TSI agrees to supply SWISHER with true and complete copies of any and all documentation of claims publicly made by TSI in relation to the Product as may be reasonably necessary to satisfy SWISHER and any governmental agencies for clearance.

## ARTICLE VI
## TRADEMARK

6.1 Grant of License. TSI grants to SWISHER a limited, restricted, exclusive license, for the period set forth in Article VIII hereof, to use the Trademark in the United States solely and in direct connection with the manufacturing and sale of the Product to TSI, as provided herein (the "License"). SWISHER acknowledges that its use of the Trademark shall not confer any proprietary right to the Trademark on SWISHER. SWISHER shall not reproduce the Trademark in any form other than that in which it has been registered and shall supply to TSI for approval samples of any proposed reproduction of the Trademark prior to the actual use or publication thereof.

6.2 Use of Trademark. SWISHER shall not change or alter the Trademark in any manner without TSI's prior written consent and, in the event SWISHER proposes any change or alteration, SWISHER shall submit to TSI, for its prior written approval, samples of such proposed change or alteration of the Trademark.

6.3 Termination of License. The License shall terminate automatically upon the expiration or earlier termination of this Agreement in accordance with the terms hereof.

6.4 Ownership of the Trademark. TSI is the legal and beneficial owner of the Trademark. The Trademark is a valid, subsisting and lawful Trademark and, for the remaining term of this Agreement, TSI will maintain its rights to use the Trademark.

6.5 Exclusive Rights. SWISHER acknowledges the sole and exclusive right of TSI (except for rights granted under this Agreement) to use the Trademark in connection with the Product and any other products to which it is or may be applied by TSI or its corporate affiliates. SWISHER represents, warrants and agrees that it shall not, either during the term of this

-5-

Agreement or after the expiration or other termination hereof, directly or indirectly contest or aid in contesting the validity, ownership or use of the Trademark by TSI or to take any action whatsoever in derogation of the rights claimed in the Trademark by TSI.

6.6 <u>Limited License</u>. SWISHER acknowledges and agrees that the License granted herein to use the Trademark is limited to the express purposes set forth in Section 6.1 above and that TSI, in its sole and absolute discretion, has the rights to use the Trademark or to license others to use the Trademark in connection with other products and services which TSI, in its sole and exclusive discretion, may determine from time to time.

6.7 <u>Right to Modify the Trademark</u>. TSI shall have the right at any time and from time to time, upon notice to the SWISHER, to make changes to the Trademark, all of which changes shall be as effective as if they were incorporated in this Agreement. TSI will use its best efforts to protect and preserve the integrity and validity of the Trademark.

6.8 <u>Infringement</u>. SWISHER shall notify TSI promptly of any claims or charges of trademark infringement against TSI or SWISHER, as well as any information SWISHER may have of any suspected infringement of the Trademark. SWISHER shall take no action with regard to such matters without the prior written approval of TSI, but shall cooperate fully with TSI in any such action.

6.9 <u>Indemnification</u>. TSI hereby indemnifies SWISHER and agrees to hold SWISHER harmless, at no cost or expense whatsoever, including but not limited to attorney's fees and court costs, of and from any claims or suits arising out of the use by SWISHER of the Trademark in strict compliance with the terms of this Agreement, provided that SWISHER shall notify TSI in writing promptly upon SWISHER's acquiring knowledge of any such claim or suit. TSI shall have the option to undertake and conduct the defense of, at any time prior to judgment, any claim or suit which may be subject to the indemnification provisions of this section. However, if TSI fails to take action after a reasonable demand has been made by SWISHER, then SWISHER has the right to conduct its own defense at the expense of TSI.

## ARTICLE VII
## TERM AND TERMINATION

7.1 <u>Commencement and Duration</u>. This Agreement shall be treated as having been entered into on the Effective Date and shall be for an initial period of two (2) years ending on the second anniversary of the Effective Date, and shall, subject to the provisions of this Sections VII, be subject to renewal for additional terms of one (1) year by written agreement of the parties.

7.2 <u>Termination on Breach</u>. In the event of any material breach of this Agreement, the non-breaching party may give notice to the other party requiring the breach to be remedied by that other party within thirty (30) days of the date of that notice. If the other party fails to comply with the notice, the non-breaching party may forthwith terminate the Agreement by giving notice to the other party, provided that the non-breaching party shall give such assistance as is reasonable to the other party to assist in the correction of the breach.

7.3 ~~Termination on Insolvency. This Agreement may be terminated forthwith on~~ summary notice in writing by either party in the event that the other party shall have a receiver, manager or administrator appointed over the whole or any substantial part of its assets or if any order shall be made or resolution passed for the administration or the winding up of the other party (except for the purpose of amalgamation or reconstruction) or if the other party shall enter into any composition or arrangement with its creditors or take any analogous action on account of debt or shall cease or threaten to cease to carry on business.

7.4 Termination on Minimum Orders. In the event SWISHER does not receive orders for at least two thousand five hundred (2,500) cases of Product per month and/or thirty thousand (30,000) cases of Product per year during the term or any renew thereof, SWISHER may terminate this Agreement on sixty (60) days prior written notice. Additionally, and notwithstanding TSI's compliance with the foregoing requirement and Section 3.1(d) hereof, in the event that TSI does not purchase the minimum volume of Swisher Product set forth in Section 3.1(e) hereof during any month of the term, SWISHER may terminate this Agreement on sixty (60) days prior written notice.

7.5 Termination Upon Sale of Trademark. TSI shall have the right to terminate this Agreement, upon ninety (90) days' prior written notice to SWISHER, if TSI enters into a bona fide, binding agreement to sell, transfer and assign all of its rights in the Trademark to a third party.

7.6 Consequences of Termination.

(a) On termination of this Agreement, the parties' rights and obligations hereunder shall cease except as expressly provided herein.

(b) As soon as practicable after the Termination Date, SWISHER shall make a final accounting and shall invoice TSI for all sums owed to SWISHER by TSI, which shall include the fees or prices associated with any finished Product as yet unshipped to TSI at the price(s) established pursuant to Section 3.1 hereof (as the same may have been theretofore modified under the terms of this Agreement), and at SWISHER's net acquisition cost, all inventories of packaging materials used in the production of the Product as well as all packaging materials which SWISHER shall have ordered and paid for but not received as of such date. TSI shall pay any amounts owing to SWISHER pursuant to this Section 7.6(b) promptly following receipt of such final invoice, such payment to be made in the manner provided for in Section 3.1(b) of this Agreement (except that, notwithstanding anything in Section 3.1(b) to the contrary, no cash discount shall be applied to such payment). Upon receipt of such payment, SWISHER shall ship to TSI, at TSI's expense, all inventories of finished product and/or packaging materials reflected in the accounting prepared by SWISHER as stated above.

ARTICLE VIII
CONFIDENTIALITY

Exhibit A

8.1 Both parties covenant and agree to keep and maintain the confidentiality of all technical information, trade secrets, manufacturing and packaging processes, and any other information which may be exhibited to or may otherwise become known to such party or its employees or agents in performing the activities herein contemplated; to use any such information so disclosed solely for the purpose of performing said party's obligation hereunder and for no other purpose; and not to disclose to any person, firm or corporation or in any manner use for said party's benefit or for the benefit of any other person, firm or corporation any knowledge or information acquired while doing business under this Agreement. Nothing herein contained shall be deemed to have the effect of divesting either party of its rights of ownership in any patent, trademark, process, formula, recipe, material or any other improvement or development of its own products or any other such material originally devised, invested or developed by said party.

## ARTICLE IX
## INDEMNITY

9.1 Each party shall save and hold harmless the other party from any and all claims, demands, actions or liabilities arising out of or in any manner related to said party's performance under this Agreement.

## ARTICLE X
## CHOICE OF LAW AND DISPUTES

10.1 This Agreement shall be governed by the laws of the State of Florida.

## ARTICLE XI
## FORCE MAJEURE; LIMITATION OF LIABILITY

11.1 If either party is prevented from performing any of its obligations hereunder by an occurrence beyond its reasonable control such as, but not limited to, acts of God, fire, flood, war, insurrection, terrorist activity, riot, earthquake, government regulations, strikes, or lack of common carrier facilities, then the affected party shall be excused from performance so long as such occurrence exists. Such obligations shall be fulfilled after the force majeure has ceased. The party claiming a force majeure shall immediately inform the other of the beginning and end of the force majeure on which it is relying. Notwithstanding the provisions set forth above, nothing herein contained shall be deemed to waive or affect the obligations of either party hereto to make payment to the other party when such payment becomes due.

11.2 In case these force majeure circumstances continue more than sixty (60) days, the parties shall discuss alternatives to the affected obligations under this Agreement.

## ARTICLE XII
## SOLE AGREEMENT

-8-

Exhibit A

12.1   This Agreement, including the Exhibits attached hereto and incorporated herein by reference, represents the entire agreement between the parties regarding the subject matter hereof, superseding all prior and contemporaneous agreements, contracts, negotiations and understandings between them. Neither party has made any representations or promises to the other which are not expressed in this Agreement. Notwithstanding the foregoing, and for the sake of clarity, it is expressly understood and agreed that the Credit Application and/or Agreement previously executed by TSI in relation to its purchases of, and payment for, Swisher Products shall remain in full force and effect.

12.2   No amendments, changes, revisions or discharges of this Agreement in whole or in part shall have any force or effect unless set forth in writing and signed by the parties hereto.

## ARTICLE XIII
## NOTICES

13.1   All notices under this Agreement shall be sent by overnight, registered or certified mail to the following:

| | |
|---|---|
| SWISHER: | Swisher International, Inc. |
| | 459 East 16th Street |
| | Jacksonville, Florida |
| | Attention: Senior Vice President - Sales |
| | |
| TSI: | Trend Settah, Inc. |
| | 6001 E. Slauson Avenue |
| | Commerce, CA 90040 |
| | Attention: Akrum N. Alrahib - President |

13.2   Any party hereto may change its address for the purpose hereof by written notice to the other party.

## ARTICLE XIV
## WAIVER

14.1   The waiver by SWISHER or TSI of any breach, default or omission in the performance or observance of any of the terms of this Agreement by SWISHER or by TSI (as the case may be) shall not be deemed to be a waiver of any other such breach, default or omission.

## ARTICLE XV
## ASSIGNMENT

15.1   *Assignment*. Neither party shall assign, mortgage or change any of its rights under this Agreement without the prior written consent of the other (such consent not to be unreasonably withheld or delayed) except that either party shall be permitted to assign all or part

of its rights under this Agreement to any majority owned subsidiary or affiliate company which ~~that party controls whether by way of shareholding, voting or contractual rights.~~

## ARTICLE XVI
## MISCELLANEOUS

16.1   Survival.  In the event that any provision of this Agreement or part thereof is held invalid or unenforceable for any reason by the judgment of a court or body of competent jurisdiction, such provision or part thereof shall be considered separate from remaining provisions of this Agreement which shall remain in full force and effect.

16.2   Invalidity.  In the event that any provision or part thereof fundamental to this Agreement is held to be invalid or unenforceable in the above case, this Agreement shall be amended by the inclusion of a valid substitute provision framed so as to have as nearly as possible an equivalent effect to the provision held invalid or unenforceable.

16.3   Attorneys' Fees.  In the event that either party shall bring any action upon any default in performance or observance of any covenant herein, the party judicially determined to be in such default shall indemnify the other against, or shall expeditiously reimburse such other party for, reasonable attorneys' fees (including disbursements) incurred in pursuit of such judicial determination; provided, however, that if no party is judicially determined to be in default, the party bringing such action shall indemnify the other party against, or shall expeditiously reimburse such other party for, reasonable attorneys' fees (including disbursements) incurred in defense of such action.

16.4   Headings.  All headings are included for ease of reference only and do not form part of this Agreement for the purposes of interpretation.

16.5   Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers as of the day and year first above written.

SWISHER INTERNATIONAL, INC.

By: _____
Paul R. Arvia
Senior Vice President - Sales

ATTEST:
_____

TREND SETTAH, INC.

By: _____
Akrum N. Alrahib
President

ATTEST:
_____

-11-

Exhibit A

# EXHIBIT "A"

## PRODUCTS

1. **Regular Cigarillos**
   (a) 60-count box
   (b) 25-count upright
   (c) 3-pack unit

2. **Grape Cigarillos**
   (a) 60-count box
   (b) 25-count upright
   (c) 3-pack unit

-12-

Exhibit A

## EXHIBIT "B"

### STARTING PRICE

Item

|  | Case | Box | Case Count |
|---|---|---|---|
| Regular Cigarillos: | | | |
| 60-count box | $489.98 | $12.25 | 2,400 |
| 25-count upright | $204.16 | $ 5.10 | 1,000 |
| 3-pack unit | $367.49 | $18.37 | 1,800 |
| Grape Cigarillos: | | | |
| 60-count box | $489.98 | $12.25 | 2,400 |
| 25-count upright | $204.16 | $ 5.10 | 1,000 |
| 3-pack unit | $367.49 | $18.37 | 1,800 |