MARK POE (S.B. #223714)
mpoe@gawpoe.com
RANDOLPH GAW (S.B. #223718)
rgaw@gawpoe.com
VICTOR MENG (S.B. #254102)
vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

THOMAS C. GOLDSTEIN (*pro hac*)
tgoldstein@goldsteinrussell.com
ERIC F. CITRON (*pro hac*)
ecitron@goldsteinrussell.com
GOLDSTEIN & RUSSELL, P.C.
7475 Wisconsin Ave., Suite 850
Bethesda, MD 20814
Telephone: (202) 362-0636
Facsimile: (866) 574-2033

Attorneys for Plaintiffs Trendsettah USA, Inc. and Trend Settah, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| TRENDSETTAH USA, INC. and TREND SETTAH, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>SWISHER INTERNATIONAL, INC.<br><br>Defendant. | Case No. 8:14-CV-01664-JVS (DFMx)<br><br>**DECLARATION OF ERIC CITRON IN SUPPORT OF TRENDSETTAH'S MOTION FOR ATTORNEYS' FEES AND EXPENSES**<br><br>Judge:      The Hon. James V. Selna<br>Courtroom: Courtroom 10C<br>Date:       October 2, 2023<br>Time:       1:30 p.m. |

I, Eric F. Citron, declare:

1. During the litigation of this case, I was a partner at Goldstein & Russell, P.C., in Bethesda, Maryland, and I served as counsel of for plaintiffs Trendsettah USA, Inc. and Trend Settah, Inc. ("TSI") in this action.[1] I submit this declaration in support of TSI's Motion for Attorney's Fees and Expenses in the above-captioned matter. I have personal knowledge of the matters stated herein except as otherwise stated and, if called as a witness, I could and would testify competently thereto.

2. Goldstein & Russell (G&R) was retained by TSI in this matter immediately after trial proceedings concluded in the district court. I assumed primary responsibility for TSI's strategy on the first appeal, drafting and filing the appellate briefs and any other appellate filings (like Rule 28(j) letters). I was also expected to provide oral argument for TSI until a medical event intervened, and my firm and I maintained a substantial role in preparations for oral argument. I worked on this matter with my associate Charles Davis, and junior attorney Erica Evans. My partners Thomas Goldstein and Kevin Russell provided additional assistance, including in the preparations for oral argument.

3. Following the first appeal, I assisted with subsequent proceedings in the Supreme Court, the district court, and the Ninth Circuit, along with my partner Thomas Goldstein. In that capacity, we filed briefs opposing certiorari in the Supreme Court, advised on and assisted in drafting motions papers in the district court, and drafted, edited, and filed the Ninth Circuit briefing in the second appeal. Mr. Goldstein argued the second appeal in the Ninth Circuit and I also assisted with preparation for oral argument. We have continued to assist in all subsequent proceedings.

---

[1] After our work on this matter concluded, Goldstein & Russell, P.C. was reorganized as Goldstein, Russell, & Woofter. I am currently Of Counsel at a different firm, Gupta Wessler P.C., located in Washington D.C.

4. Mr. Davis left the firm at the end of 2021. All other attorneys who substantially contributed to the litigation served through the firm's reorganization earlier this year.

5. As of their last day at the firm, our customary rates for these attorneys in commercial matters like this one were as follows:

- Mr. Davis: $1080/hour
- Mr. Citron: $1520/hour
- Mr. Russell: $1520/hour
- Ms. Evans: $385/hour
- Mr. Goldstein: $2180/hour

6. Because Mr. Goldstein only consulted periodically and did not keep time records associated with the initial appeal, we did not include any of Mr. Goldstein's time on the first appeal in our lodestar calculations.

### G&R Background and Experience

7. For many years, the partners at Goldstein & Russell have been regarded among the leading Supreme Court and Appellate Litigation practitioners in the United States. Over the past decade, its members have provided high-quality representation to clients in scores of cases at every stage of the Supreme Court process, and in high-stakes appeals in the Courts of Appeals as well. Throughout its existence, the firm was regularly counsel or co-counsel to clients in one out of every ten cases that the Court heard on the merits, often in association with the Harvard Supreme Court Litigation Clinic founded and run by the firm's partners. Collectively, the firm's lawyers have argued more than 75 cases on the merits and have filed in excess of 150 briefs in the Supreme Court.

8. G&R was accordingly recognized within the Supreme Court and Appellate bar in Washington, D.C., and in legal communities nationwide, as a leading practice. Among other recent accolades, the firm was named to the National Law Journal's 2018 "Appellate Hot List," based on its multiple victories in

important appeals that year. In addition to its Supreme Court appearances, Goldstein & Russell attorneys have appeared in some of the most prominent competition-law cases in the Courts of Appeals, including the appeal to the D.C. Circuit concerning the FCC's net-neutrality rules, the appeal to the D.C. Circuit concerning the AT&T/Time Warner merger, multiple appeals to the Second Circuit concerning the LIBOR-fixing MDL and the Visa/Mastercard Interchange litigation, the appeal of the FTC's case against Qualcomm in the Ninth Circuit, and the Ninth Circuit and Supreme Court stages of the antitrust dispute between Epic Games and Apple.

9. As these representative engagements demonstrate, G&R attorneys have extraordinary qualifications, which are described in further detail below.

10. I became an attorney at Goldstein & Russell in 2013, and a partner in 2016. I received my A.B. from Harvard College *summa cum laude* in 2003, and my J.D. from Yale Law School in 2007. I served as a law clerk for Justices Sandra Day O'Connor and Elena Kagan from 2012-2013 immediately before joining G&R. Before that, I served as a law clerk to Judge James Robertson of the United States District Court for the District of the District of Columbia in 2007-2008, and for Judge David S. Tatel of the United States Court of Appeals for the District of Columbia Circuit in 2008-2009. From 2009-2010, I served as Counsel to the Assistant Attorney General for the Antitrust Division at the U.S. Department of Justice. And from 2010-2012, I was a senior associate in the Appellate and Supreme Court practice at WilmerHale in Washington, D.C.

11. I have particularly unique and strong qualifications in appellate litigation in matters relating to antitrust and competition. For example, the government invited me to argue against the AT&T/Time Warner merger as an *amicus curiae* using some of the government's time in its D.C. Circuit appeal—a very rare occurrence in any case, let alone one of the more important merger cases of the decade. I also recently argued for the plaintiffs in an important Second

Circuit appeal from the LIBOR-fixing MDL, and was the architect of the litigation strategy that culminated in the Supreme Court overturning *Quill Corp. v. North Dakota* in 2018. Based on my antitrust credentials, I was invited to appear on two separate panels in the Federal Trade Commission's recent "Hearings on Competition and Consumer Protection in the 21st Century." I have been the leading brief author or advocate in several antitrust disputes where multiple billions of dollars in liability were at stake, including both the LIBOR-fixing MDL and the Visa/Mastercard Interchange MDL. My work has been featured in articles appearing in both the National Law Journal and Law360. And I teach Supreme Court and Appellate Litigation for Harvard Law School as an instructor in the Harvard Supreme Court Litigation Clinic.

12. Mr. Davis, who was a senior associate and provided critical support for my work on this case during the first appeal, was likewise an extraordinarily qualified attorney. Mr. Davis has a Ph.D. in biophysics, and earned his J.D. from George Washington University in 2013. At George Washington, he graduated first in his class and served as Editor-in-Chief of the law review. He clerked both for the then-Chief Judge of the Federal Circuit (Judge Kathleen M. O'Malley) and for Judge Karen LeCraft Henderson of the United States Court of Appeals for the District of Columbia Circuit. He began working at Goldstein & Russell in 2016, and prior to his clerkships, served as an associate at Covington & Burling LLP in Washington, D.C.

13. Ms. Evans, who provided paralegal and basic research support for the firm, likewise held extraordinary qualifications for her position. Ms. Evans received her J.D. at the George Washington University Law School, where she served as a Managing Editor of the George Washington International Law Review. Following law school, she served as an Appellate Specialist at Gibson, Dunn & Crutcher LLP, supporting the Appellate and Constitutional Law practice group. Thereafter, she led

1  the Research and Publication section of the Office of the Solicitor General for the
2  U.S. Department of Justice.

3      14.   Mr. Russell specializes in appellate practice in the federal courts,
4  particularly the U.S. Supreme Court.  He has argued more than a dozen merits cases
5  in the Supreme Court and served as counsel or co-counsel in nearly 50 others.  He is
6  currently an instructor in the Harvard Supreme Court Litigation Clinic, and
7  previously was an instructor in the Stanford Supreme Court Litigation Clinic for
8  eight years.  Earlier in his career, he clerked for Justice Steven G. Breyer.

9      15.   Finally, Mr. Goldstein is an extraordinarily accomplished appellate
10 advocate, best known as one of the nation's most experienced Supreme Court
11 practitioners. He has served as counsel to a party in well over 100 merits cases at the
12 Supreme Court, and he has argued nearly 50 merits cases himself. Only three
13 lawyers in the Court's modern history have argued more cases in private
14 practice.  He has been counsel on more successful petitions for certiorari over the
15 past decade than any other lawyer in private practice.  And over the past fifteen
16 years, his firm's petitions for certiorari were granted at a higher rate than any private
17 law firm or legal clinic.  Mr. Goldstein also became one of the leading advocates in
18 high-stakes antitrust litigation in recent years, arguing the Ninth Circuit appeals in
19 both the Qualcomm and Epic Games cases.

20     16.   I began working on this case, with support from Mr. Davis,
21 immediately following the notice of appeal in the first Ninth Circuit appeal.  In that
22 capacity, and with help from trial counsel, I drafted, edited, prepared, and filed both
23 the opening brief and the full-length reply/response brief.  This was more briefing
24 than is typical for an appeal because of Defendant's cross-appeal.  We were retained
25 on a contingent basis, and so were not guaranteed to realize any compensation on
26 this matter at all.

27     17.   This was a complex appeal that required a very large amount of work.
28 Because the case had been fully tried to a jury, we were required to familiarize

- 5 -

CITRON DECL.
CASE NO. 8:14-CV-01664-JVS (DFMX)

ourselves with the entire trial record, as well as the many rounds of briefing that occurred on the relevant issues in the trial court. There were also multiple procedural and substantive issues in the case, both on TSI's appeal and on Defendant's cross-appeal. The intensive record and legal research necessary to understand the case required a substantial investment of attorney time—as, of course, did the drafting work associated with preparing two full-length briefs.

18. For two reasons, the work that Goldstein & Russell performed on the first appeal cannot be meaningfully separated out as relating to either the contract issues or the antitrust issues that were presented. First, the majority of the work for new appellate counsel involves familiarizing oneself with all the issues and materials in the case (including the voluminous transcripts and district-court briefing in a case like this one), and forming strategic judgments about which issues to present and how they interact. That time would be necessary in any matter, without regard to what issues one side or the other ultimately chooses to present on appeal. Second, and critically, a key part of our appellate strategy in this case was to defeat defendants' arguments attacking the contract verdict by obtaining a reversal of the instructional-error decision respecting "refusals to deal" that served as the predicate for those arguments. That strategy ultimately proved successful in obtaining a final judgment in plaintiffs' favor on plaintiffs' contract claims.

19. At the oral argument stage for the first appeal, I provided substantial support to Mr. Poe as he prepared to argue the case. I suffered a very unexpected heart attack (at age 37) approximately one month before argument, and Mr. Poe and I determined that it would be in the client's best interest for Mr. Poe to argue. But because Mr. Poe had limited appellate experience, Goldstein & Russell invested substantial time and effort in mooting Mr. Poe and otherwise preparing him for argument. I also served as second chair at the oral argument.

20. Following the Ninth Circuit's decision on the first appeal, defendants filed a petition for certiorari. In order to expeditiously advance the case, I drafted

and filed a brief that successfully opposed Swisher's petition in only a few days. This resulted in far fewer hours being expended on that stage of the case than would ordinarily have been billed by another firm.

21. Thereafter, both I and Mr. Goldstein contributed substantially to the subsequent litigation in the district court relating to Swisher's efforts to obtain relief from judgment. In that capacity, we provided consultation, drafting and editing of motions papers, and legal research. Goldstein & Russell then led the subsequent appeal of those matters to the Ninth Circuit, which was argued by Mr. Goldstein. Goldstein & Russell then also devised led the subsequent, successful proceedings in the Supreme Court.

### **Attorney Time and Rates**

22. The final customary billing rate for each relevant G&R attorney is listed above. Those rates reflect the extraordinary qualifications of G&R and its attorneys, and its standing among a small set of elite appellate firms. Although the rates of comparable Washington D.C. or nationwide firms that possess Supreme Court and Appellate practices are not public, we are aware from bankruptcy cases and other instances where such firms have made public rate requests that our rates were almost always equal to or below the rates of comparable attorneys at comparable firms.

23. For example, in filing our initial application for attorneys' fees in this matter, we provided the example of Kirkland & Ellis rates in a then-recent bankruptcy matter (*In re: Energy Future Holding Corp.*, D. Del. No. 14-10979), where Kirkland & Ellis reported a blended partner rate of $1090.57. Ex. A. In that filing, appellate partners with qualifications and years of experience comparable to Mr. Citron's reported rates greater than or equal to his then-applicable rate. Meanwhile, appellate associates with *fewer* years of service than Mr. Davis reported much higher rates than Mr. Davis's rate. Examples like these indicate that Goldstein

& Russell rates are reasonable and competitive, and that its attorneys' qualifications justify the customary rates set forth in this declaration.

24. Although we have not conducted an exhaustive search of current public rate filings, there are several ready indications that the customary rates reported herein remain reasonable – and perhaps even below those charged by attorneys with similar qualifications. One particularly useful example is the rates claimed by defendants' own attorneys in this litigation. As explained in Trendsettah's supporting brief, the 2023 rates submitted (and approved by this Court) for Gibson Dunn partners Richard Parker, Daniel Swanson, Jeffrey Krause, Thomas Hungar, Cynthia Richman, and Amir Tayrani are significantly higher than the rate claimed for my time, despite our similar credentials. Mr. Goldstein's 2023 rate of $2160/hr is comparable to Mr. Boutros's customary rate, and is also well below court approved rates of similarly qualified Supreme Court litigators in Washington, D.C., for example, a bankruptcy-court approved rate of $2465/hour for Neal Katyal.

25. In our experience, Goldstein & Russell also tended to charge net fees for appeals that were lower than or comparable to other firms with similar qualifications because our cases are staffed quite leanly. For example, nearly all of the work in this matter was conducted by only three attorneys. That is much more efficient than a team of five or more attorneys working on a single appeal, as is more common at larger firms. This allows firms like Goldstein & Russell to keep total hourly fees relatively low as well, because it avoids expensive meetings and repetition of the same work through multiple sequential rounds of editing.

26. Goldstein & Russell's time recorded to this matter is being submitted as Exhibit 3 to the declaration of the fees expert Gerald Knapton. In my experience, the total attorney hours expended on this appeal are comparable to or below what we would expect to spend on appeals of the scope and complexity at issue here, including the litigation in the district court and Supreme Court that also proceeded alongside the two Ninth Circuit appeals.

27. Notably, this time sheet omits any charges for Mr. Goldstein's time on the first appeal. Mr. Goldstein actively participated in strategy for this appeal and in reviewing draft briefs and discussing tactical issues. But because Mr. Goldstein did not have any principal role in the case or serve as a "mooter" for oral argument preparation, he did not record any of this time. As a result, we have not included any time for Mr. Goldstein in the lodestar calculations for this case. Given Mr. Goldstein's extraordinary qualifications (and resulting rates), this results in a substantial write down of G&R's lodestar.

28. Having reviewed the totals reflected in our timesheets, and based on my experience in other appeals, I can say with confidence that the total time and attorney charges associated with this appeal are at or below the numbers I would expect for this firm in comparable cases. I exercised billing judgment in the preparation of this time sheet, including the omission of unproductive time. Based on my experience with and inside comparable, elite appellate practices in Washington, D.C., I also believe that these totals are comparable to or lower than the totals that would be accrued by other, comparable firms.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 28th, 2023, in Washington, D.C.

_____
Eric Citron