UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:14-cv-01664-JVS(DFMx) | Date | August 24, 2023 |
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. | | |

Present: The Honorable   **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**   **[IN CHAMBERS] <u>Order Regarding Motion for Sanctions [704] Requests for Hearing [764, 765] [PUBLIC]</u>**

Defendant Swisher International, Inc. ("Swisher") moves for sanctions against Plaintiffs Trendsettah USA, Inc. and TrendSettah, Inc. (collectively, "Trendsettah") in the amount of $19,859,625.66 for costs and fees incurred defending against Trendsettah's "bad-faith conduct" throughout the litigation.  (Mot., Dkt. No. 704.)  Trendsettah opposed.  (Opp'n, Dkt. No. 728.)  Swisher replied.  (Reply, Dkt. No. 735.)

The Court issued a Tentative Order on April 13, 2023.  The parties appeared for oral argument on April 17, 2023.  Following the hearing, the Court requested supplemental briefing, calculating fees and costs incurred: (1) for preparing any expert reports to rebut Trendsettah's theory of lost profits; (2) at trial caused by defending against Trendsettah's theory of lost profits; (3) for litigating and defending the Rule 60 Motion; and (4) for litigating and defending any post-Rule 60 Motion litigation fees, except for its motion for attorney's fees and costs and its enforcement.  (April 18, 2023 Order, Dkt. No. 745.)

Swisher filed a supplemental brief on May 15, 2023.  (Swisher's Supplemental Brief ("Supp. Swisher Br."), Dkt. No. 754.)  Trendsettah filed a supplemental brief in response.  (Trendsettah's Supplemental Brief ("Supp. Trendsettah Br."), Dkt. No. 759-1 (sealed).)  Trendsettah has also filed requests for additional oral argument.  (Requests for Hearing, Dkt. Nos. 764–65.) The Court **DENIES** these requests.   The parties have already appeared for oral argument and were provided an additional opportunity for briefing.  Oral argument will not be helpful.

For the following reasons, the Court **GRANTS** in part and **DENIES** in part the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS(DFMx) | Date | August 24, 2023 |
|---|---|---|---|
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. | | |

motion for sanctions.

## I. BACKGROUND

The facts and procedural posture are well known to the Court and the parties. The Court recites the relevant facts only as necessary to resolve the present motion.

In 2016, the jury found in favor of Trendsettah on both its contract and antitrust claims, awarding it $9,062,679 on its contract claims and $14,815,492 on its antitrust claims. (Dkt. Nos. 206, 207.) These amounts were based on the lost profits calculations presented at trial through Trendsettah's financial records. (Declaration of Minae Yu ("Yu Decl.") 10, Dkt. No. 703-1.) But it was later discovered that Trendsettah's founder and then-CEO, Akrum Alrahib, had fraudulently evaded federal excise taxes to lower Trendsettah's costs, with the obvious effect on profits.

At trial, Trendsettah's expert, Dr. McDuff quantified profits lost due to Swisher's conduct based on Trendsettah's actual profits. Because Trendsettah avoided paying millions in taxes, its actual profits were inflated. This allowed Trendsettah to sell products at artificially low prices in order to compete in the market. The fraud impacted cigarillos that were imported into the United States, impacting the cigars shipped or manufactured from Productos del Tabaco in the Dominican Republic to the United States. (See Minae Decl., Ex. 3, Declaration of Alan Cox ("Cox Decl.") ¶¶ 11–15, Dkt. No. 703-3.) Between 2012 and 2015, 63.3% of Trendsettah's cigars sold. (Id. ¶¶ 19–20.) McDuff did not account for excise taxes on the products sold by Trendsettah. Had he done so, his analysis would have been different, although the parties disagree what that analysis would have produced.

This Court granted Swisher's motion for Rule 60(b)(2) and (b)(3) relief from the entire judgment based on newly discovered evidence and fraud. (Rule 60 Order, Dkt. 426, at 18.) The Court then dismissed the entire action with prejudice in order to allow the Ninth Circuit to review the Court's Rule 60 rulings. (Dkt. No. 591). Accordingly, the Court entered a new judgment, finding in favor of Swisher on all claims. (Judgment ¶ 1, Dkt. No. 596.)

The Ninth Circuit agreed with the Court's Rule 60 Order in part. Trendsettah USA, Inc. v. Swisher Int'l, Inc. (Trendsettah II), 31 F.4th 1124 (9th Cir. 2022). It

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS(DFMx) | Date | August 24, 2023 |
|---|---|---|---|
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. | | |

"reverse[d] the district court's dismissal of [Trendsettah]'s breach of contract claims and remand with instructions to reinstate the jury's verdict on those claims. . . . [and] affirmed the district court's grant of Rule 60(b) relief as to [Trendsettah]'s antitrust claims." Id. at 1128. Accordingly, the Court's order vacating judgment on Trendsettah's antitrust claims was upheld, but the jury's verdict in 2016 on the contract claim would be reinstated. See id. The Ninth Circuit indicated that the Court's subsequent dismissal of all claims effectively put an end to the antitrust claim. See id. at 1132 ("[H]owever we decide this appeal, the case will be over—either the jury's prior verdict will be reinstated or the district court's dismissal of Trendsettah's claims with prejudice will stand."). Thus, while Trendsettah "prevailed" on its contract claim, it can no longer recover on its antitrust claims.

On December 5, 2022, the Ninth Circuit issued its mandate. (Dkt. No. 673.) The Court held a status conference on January 9, 2023. (Dkt. No. 678.) The parties agreed that in light of the mandate, there will be no further trial. (See Dkt. No. 691.) Two days later on January 11, 2023, the Ninth Circuit denied Trendsettah's motion to amend the mandate. (Dkt. No. 682.)

Swisher now moves for sanctions based on the legal fees and costs it would not have paid "but for" having to defend against Trendsettah's misconduct. (Mot. 9, Dkt. No. 704.) It moves for sanctions pursuant to the Court's "inherent authority." (Id.)

## II. LEGAL STANDARD

There are three bases on which a court may levy sanctions: "(1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power." Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001).

A federal court possesses inherent powers, "not conferred by rule or statute," to "fashion an appropriate sanction for conduct which abuses the judicial process," which includes an attorney's fee award. Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 107 (2017) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 44–55 (1991)). A court must find either: "(1) a willful violation of a court order; or (2) bad faith." Am. Unites for Kids v. Rousseau, 985 F.3d 1075, 1090 (9th Cir. 2021). Bad faith conduct requires

Case 8:14-cv-01664-JVS-DFM   Document 775   Filed 08/24/23   Page 4 of 20   Page ID
#:42430

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS(DFMx) | Date | August 24, 2023 |
|---|---|---|---|
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. | | |

proof of bad intent or improper purpose. Id. An explicit finding that the sanctioned party's conduct was tantamount to bad faith is required. Id.; see also Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997) (citation omitted).

Such sanctions against a bad actor are limited to the legal fees the innocent party would not have incurred "but for" the misconduct. Goodyear, 581 U.S. at 104, 108. Such an award is intended to be compensatory, not punitive. Id. at 108–09. This "granular inquiry" requires a court to evaluate the close causal link between the misconduct and the "individual expense items or categories of such items." Lu v. United States, 921 F.3d 850, 863 (9th Cir. 2019).

But in "exceptional cases" in which the bad faith activity can be traced to the start of the entire litigation, a court may award fees "in one fell swoop" without having to trace each legal fee to a specific bad act. Chambers, 501 U.S. at 1187; Lu, 921 F.3d at 863. To make a blanket award, a court must "explain why the entirety of the case, or some portion of the case, was initiated in 'complete bad faith.'" Lu, 921 F.3d at 863. An "exceptional case" exists where a litigant's "bad faith conduct is pervasive and egregious." Harkey v. Beutler, 817 F. App'x 389, 392 (9th Cir. 2020).

### III. DISCUSSION

#### A. Swisher's Motion Is Not Untimely

Trendsettah first argues that the instant motion is barred by (1) the Court's August 16, 2020 Order ("Dismissal Order"), (Dkt. No. 591), and (2) "controlling precedent." (Opp'n 7–8, Dkt. No. 728.) The Court disagrees.

##### 1. The Court's Dismissal Order Does Not Preclude Swisher from Bringing a Sanctions Motion

Nothing in the Court's Dismissal Order limits Swisher's ability to bring a motion for sanctions. (See Dismissal Order 3–4, Dkt. No. 591.) Rather, the Court considered, as a condition of dismissal, whether it would retain jurisdiction to consider attorneys' fees and costs based on Swisher as the prevailing party and based on the two Private Label Agreements ("PLA") with Trendsettah. (See id.) The same is true when the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS(DFMx) | Date | August 24, 2023 |
|---|---|---|---|
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. | | |

considered granting further discovery with respect to fee motions brought pursuant 28 U.S.C. § 1927.  (See id. at 4.)  There, the Court merely found that discovery "may be relevant" if Ninth Circuit chose not to reinstate the original verdict.  (Id.)  If the Ninth Circuit chose to reinstate the original verdict—which it did not do with respect to the antitrust claims, Trendsettah II, 31 F.4th at 1138—this would moot the issue of fees awarded under section 1927.  (See id.)

    2.  No "Controlling Precedent" Bars the Court from Imposing Sanctions Motion After Entry of Final Judgment

  Contrary to Trendsettah's assertion, "controlling precedent" does not bar the Court, pursuant to its inherent authority, from considering imposing sanctions after entry of final judgment.

  The only binding authority cited by Trendsettah, In re Cellular 101, Inc., 539 F.3d 1150, 1155 (9th Cir. 2008), is not directly applicable.  In re Cellular addressed neither the timing of a sanctions motion nor the court's ability to impose sanctions pursuant to its inherent authority after judgment has been entered.  See id.  In In re Cellular, a debtor's failure to notice the appellate court of the parties' settlement, entered into during the appeal, precluded the debtor from asserting an affirmative defense of settlement in a later proceeding.  Id. at 1157.  The notice of settlement could have mooted the appeal, so the debtor had a duty to inform the appellate court of the same.  Id. at 1153–54.  But the debtor "rolled the dice" and chose to proceed with the appeal on other grounds.  Id.  The Ninth Circuit, unaware of the settlement and its impact on the appeal, ultimately decided against the debtor.  Id.  That decision was "the law of the case, and [the debtor] may not now attack it on a ground that it had a fair opportunity to argue previously."  Id. at 1156.  The debtor's attempt to invoke the defense of settlement after losing its claim on appeal amounted to a "second bite at the apple."  Id. at 1155.

  Nothing in In re Cellular precludes, as a matter of law, the Court from considering sanctions pursuant to its inherent authority after a final judgment has been entered.  The issues decided were separate and distinct from those raised here.  There, the Ninth Circuit addressed the consequence of a party's failure to raise an issue consequential to the appeal.  The issue of settlement was part and parcel of the debtor's administrative claim that was the subject of the appeal.  Id. at 1153.  Because it had the potential to moot the claim, the debtor had a duty to inform the court of the settlement.  Id. at 1155.  Because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS(DFMx) | Date | August 24, 2023 |
|---|---|---|---|
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. | | |

the debtor chose not to, it waived its right to raise that defense. Here, nothing raised in Swisher's motion for sanctions would likewise have been consequential to Trendsettah's appeal. See Trendsettah II, 31 F.4th at 1138. So, Swisher did not "waive or forfeit" its right to pursue sanctions.

The debtor made a strategic error by choosing to pursue its appeal over raising an issue that could have resolved the appeal. Swisher was not faced with a similar choice. For instance, it was not forced to choose between pursuing relief through a motion and an appeal; or between sanctions and attorneys' fees on other grounds. It was Trendsettah who voluntarily dismissed the case under Fed. R. Civ. P. 41(a)(2), to which Swisher agreed only with certain conditions. (See Dismissal Order 1.) This included preserving its right to pursue fees and costs under the Court's inherent authority. (Id. at 2.) The Court explicitly noted that Trendsettah could *not* use its voluntarily dismissal as a bar to Swisher's recovery of attorney's fees. (Dkt. No. 596, at 6.) Therefore, Trendsettah's argument that Swisher could have brought its sanctions motions prior to entry of judgment is misplaced.

The only out-of-circuit authority cited by Trendsettah that might be instructive is the Prosser v. Prosse, 186 F.3d 403 (3d Cir. 1999). In Prosser, the Third Circuit saw "no reason" why it should not extend the Rule 11-sanctions deadline, i.e., before entry of final order, to sanctions ordered pursuant to a court's inherent powers. Id. at 406. But in Prosser, a lower court waited two and half years before imposing sanctions on its own motion pursuant to its inherent authority. Id. at 406. A delay of such length diluted the "exemplary function" of sanctions to deter parties and attorneys' bad behavior. Id. Here, the purpose of sanctions sought is not punitive, but rather, compensatory. And there is no unexplained delay of a similar sort. Thus, Prosser's reasoning does not apply.

Absent controlling precedent stating otherwise and given the unique procedural posture of the case, the Court finds that it has inherent authority to consider the instant motion for sanctions.

### B.  *Swisher Is Entitled to Sanctions*

Swisher seeks a blanket award for all its (1) costs for having to defend against the entire lawsuit and in the alternative, (2) costs for having to defend against (a) the antitrust and state-law claims and (b) the Rule 60 motion. (Mot. 18, 21.) If the Court awards the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS(DFMx) | Date | August 24, 2023 |
|---|---|---|---|
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. | | |

latter, Swisher requests an award of expenses incurred for defending the contract claims. (Id. at 21.)

       1.      <u>Trendsettah Did Not File Lawsuit in Bad Faith</u>

When Trendsettah filed suit in October 2014, it complained that Swisher's restriction of cigarillo output beginning in 2012 was anticompetitive and in breach of the parties' contract. (Complaint ¶¶ 25, 31, 34, 35, 44.) It claimed Swisher's refusal to deal with Trendsettah after January 2014 was also anticompetitive. (<u>Id.</u> ¶ 54.) Trendsettah claimed it suffered "millions of dollars of lost profits" from Swisher's conduct. (<u>Id.</u> ¶ 7.) Unbeknownst to Swisher at the time, Trendsettah had already begun evading federal excise taxes on imported cigarillos. (Dkt. No. 379-1.) This fraud allowed Trendsettah to lower its costs beginning in 2013 "in order to compete" "in the marketplace." (Yu Decl., Ex. 18, at 65:25; 119:1–6.) Without such fraud, Trendsettah likely would have gone out business by "early 2014" because it would have been forced to increase prices or shut down completely. (Cox Decl. ¶ 45.)

Now Swisher argues the lawsuit should never have been brought because Trendsettah could not have claimed injury in good faith. In its view, the "fundamental thesis" of its complaint was that Trendsettah was "injured" through lost profits. It argues that the fraud infected liability on both antitrust and contract claims because without injury, Trendsettah could not have brought the claims in the first place.

To obtain a blanket award for all its costs against the entire lawsuit, Swisher must establish that the "entirety of the case" was initiated in "complete bad faith." <u>Lu</u>, 921 F.3d at 863. Bad faith requires proof of "bad intent or improper purpose." <u>Am. Unites for Kids</u>, 985 F.3d at 1090. The Ninth Circuit has never resolved "whether a bad faith finding must be supported by clear and convincing evidence, or whether a lesser quantum of evidence suffices" when imposing sanctions pursuant to a court's inherent authority. <u>Haeger v. Goodyear Tire & Rubber Co.</u>, 793 F.3d 1122, 1131 (9th Cir. 2015). <u>But cf. Ahearn ex rel. NLRB v. Int'l Longshore & Warehouse Union, Locs. 21 & 4</u>, 721 F.3d 1122, 1129 (9th Cir. 2013) (requiring clear and convincing evidence for a finding of civil contempt). This Court has typically applied the clear and convincing standard. <u>See also</u> <u>Singh v. Holder</u>, 649 F.3d 1161, 1165 n.7 (9th Cir. 2011) (defining clear and convincing evidence "between a preponderance of the evidence and proof beyond a reasonable doubt").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS(DFMx) | Date | August 24, 2023 |
|---|---|---|---|
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. | | |

Trendsettah knew that its "profits" were not lost exclusively as a result of Swisher's conduct in 2013. At this time, Trendsettah was artificially boosting demand and cutting costs to compete in the marketplace. At oral argument, Trendsettah suggested there simply was no bad faith conduct because the fraudulent tax scheme occurred "outside" litigation. The Court categorically rejects this position. Trendsettah's bad faith "outside-litigation" conduct was grafted into its complaint from the start. But it was not necessarily fatal to the merits of its lawsuit. There is no doubt that Trendsettah knew that its "profits" were based—in part—on a lie.

But this does not mean that Trendsettah's entire lawsuit was brought in bad faith. Trendsettah's claims of injury from breach of contract and anticompetitive conduct stretched back to 2012, before the fraudulent scheme was initiated. At least on the contract claim, 200 million cigarillos were to be manufactured exclusively by Swisher, so the fraud could not have affected these amounts. At a minimum, Trendsettah had valid claims for the two years prior to the fraud. Therefore, it cannot be said that Trendsettah "had no basis" to bring this action, even if profitability was central to its theory of damages. The fraud infected Trendsettah's damages, but not necessarily its liability. Had the jury been afforded the benefit of revised expert opinions on the fraud's impact, the jury could have awarded damages only for the portion caused by anticompetitive conduct or no damages at all.

Accordingly, the Court declines to make a blanket award ($19,859,625.66) for defending against the entirety of the lawsuit. Chambers, 501 U.S. at 1187; Lu, 921 F.3d at 863.

   2. <u>Trendsettah Pursued a Lost-Profits Theory of Damages at Trial in Bad Faith</u>

The Court agrees Trendsettah pursued its theory of damages at trial in bad faith because it knew its "lost profits," the only theory of damages it sought at trial, were generated from fraud. (Dkt. No. 208, at 59, 67–68.) Alrahib worked together with an importer of the cigarillos to generate and receive false invoices. This allowed Trendsettah to be billed for only a fraction of the taxes owed on the Splitarillos and receive kickbacks from the taxes that the importer evaded. (Yu Decl., Dkt. No. 703, at

Case 8:14-cv-01664-JVS-DFM   Document 775   Filed 08/24/23   Page 9 of 20   Page ID
#:42435

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS(DFMx) | Date | August 24, 2023 |
|---|---|---|---|
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. | | |

495, 470, 472, 474.) Alrahib admitted that the falsification of invoices and kickbacks were the only reasons why Trendsettah could "compete in the marketplace" and thereby incur "profits" it alleged were deprived by Swisher's anticompetitive conduct. (Id. at 476–77 (admitting that Trendsettah would only be able to "actually make some money on [its] products" by virtue of the kickback arrangement).)

Alrahib's statements, knowledge, and actions taken as Trendsettah's CEO are imputed to Trendsettah. E.g., Bank of N.Y. v. Fremont Gen. Corp., 514 F.3d 1008, 1016 (9th Cir. 2008); In re Walldesign, Inc., 872 F.3d 954, 970 (9th Cir. 2017). Trendsettah does not dispute this. (See Opp'n 3.) It cannot distance itself from Alrahib by pointing to the lack of knowledge of other senior executives. Alrahib's admissions establish that Trendsettah knew that the invoices were false. Knowing that the false invoices were in its possession, Trendsettah successfully fought the disclosure of documents relating to federal excise taxes when asked in discovery to produce such documents. (See Dkt. No. 426; Roman Decl. ¶¶ 6, 10, 23, 25, 32, Dkt. No. 704-3.) It misrepresented that its payment of federal excise taxes had "no bearing on any issues in this lawsuit." (Ex. 5, Roman Decl.) Trendsettah's CFO, Salah Kureh, testified that Trendsettah's financial records contained "accurate information" and that Swisher could "absolute" rely on it to calculate "monthly profits." (Ex. 22, Roman Decl.) While the evidence does not support that Kureh personally knew about the falsified invoices, Alrahib did. Because Alrahib's knowledge of the fraud is imputed to Trendsettah as a corporation, Trendsettah knew that these representations were incorrect. Then, it provided incomplete financial records to its economic expert, Mr. McDuff, who relied on such misrepresentation. (Ex. 4, at 42–48, Yu Decl.)

At trial, Trendsettah presented highly material and misleading documents, knowing that it would portray a false image of its profitability. It offered into evidence Exhibits 135 and 136, (see Dkt. No. 379-21, at 193–96), which presented the inflated profit margins, despite knowing that these were false. Then, it put Mr. McDuff's flawed expert opinion into evidence. This ultimately persuaded the jury that Trendsettah had "lost profits" it knew were stolen from the government. (See generally Dkt. No. 426 (discussing the materiality of fraud).) Whether Alrahib personally understood how Dr. McDuff calculated lost profits is immaterial; Alrahib knew those "profits" were falsely inflated. It is black-letter law that a "corporation acts by its officers and agents," so "their purposes, motives, and intent are just as much those of the corporation as the things

Case 8:14-cv-01664-JVS-DFM   Document 775   Filed 08/24/23   Page 10 of 20   Page ID #:42436

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS(DFMx) | Date | August 24, 2023 |
|---|---|---|---|

| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. |
|---|---|

done." N.Y. Cent. & Hudson River R.R. Co. v. United States, 212 U.S. 481, 492–93 (1909).

Whether Alrahib was "asked about federal excise taxes" and therefore committed perjury is not dispositive. (Opp'n 15.) This ignores that Swisher was unable to pursue this line of questioning because the Court had barred Swisher from doing so—only after Trendsettah moved to exclude evidence relating to Alrahib's history of tax evasion. (Dkt. Nos. 112, 163.) Moreover, sanctions are justified if Trendsettah acted "for an improper purpose—even if the act consists of making a *truthful statement* or a non-frivolous argument or objection." Fink, 239 F.3d at 992 (citations omitted) (emphasis added); cf. In re Ray, 951 F.3d 650, 653 (5th Cir. 2020) (upholding sanctions imposed after a Rule 60(b) finding had been made because the sanctioned party "sat silently" as a material misstatement was made about the circumstances of a hospital visit while "withholding" documents showing the "real reason" for the visit). Trendsettah improperly claimed it lost profits, when reality, it knew that those "lost profits" were directly generated from fraud.

Trendsettah factually disputes Dr. Cox's revised profits calculation, arguing that there was "a small gross profit" for cigars sold in 2013. (Opp'n 23–25.) Because it *could* have pursued an alternative theory of damages that might have been unaffected by the fraud, it argues, it had some theoretical basis for lost profits. (See id.) This argument holds Swisher to too high a standard. A finding of bad faith does not require the "legal and factual basis" of its lost profits claim be "totally frivolous." Fink, 239 F.3d at 992. Swisher need only establish that Trendsettah pursued its claim for an "improper purpose." Id.; see also, e.g., In re BCB Contracting Servs., No. 22-60014, 2022 U.S. App. LEXIS 35409, at *4 (9th Cir. Dec. 22, 2022) ("[I]mproper conduct need not be entirely without merit to warrant a finding of bad faith."). The fact remains is that Trendsettah, whether it could have presented its damages in alternative ways, chose to claim lost profits based on the inflated prices it knew to be inaccurate. This was improper.

Swisher contends that it is entitled to recover fees relating to having to defend against its contract claims because Trendsettah's lost-profits damages were also awarded for its contract claims. While Dr. McDuff relied on the same financial records when calculating the lost-profits damages on the contract claim, (see Dkt. No. 379-21, at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS(DFMx) | Date | August 24, 2023 |
|---|---|---|---|
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. | | |

180–81), the Ninth Circuit has mandated that the jury's verdict on the breach-of-contract claim be reinstated in its entirety, Trendsettah II, 31 F.4th at 1128. Because Trendsetttah is entitled to recover this damage award, the Court concludes that Swisher is barred from recovering a sanction award based on the contract claim.

      C.    *Attorney's Fees Necessitated From Bad-Faith Conduct*

Swisher seeks to recover attorney's fees and costs in the amount of either (1) $18,359,959.65 for fees incurred from the beginning of expert discovery or (2) $12,134,215.20 for fees incurred for preparing expert reports, defending against the Rule 60 motion, litigating and defending against post-Rule 60 motions except for Swisher's motion for attorney's fees. Trendsettah has not challenged the reasonableness of Swisher's counsel's rates. (See Dkt. Nos. 728; 622).

      1.    Preparation of Expert Reports

Swisher seeks a total of $185,433.50 for 279.90 hours of work rebutting Trendsettah's lost-profits expert reports. (Supp. Swisher Br. 6; Supplemental Declaration of Michael Marsh ("Supp. Marsh Decl.") ¶ 6, Dkt. No. 754-5.) This work includes analyzing three iterations of expert reports submitted by Dr. McDuff, preparing and conducting a nine-hour deposition of Dr. McDuff, working with Dr. Cox in preparing three rebuttal reports, and defending Dr. Cox's deposition. (Supp. Marsh Decl. ¶ 6.)

It appears that Swisher seeks to be compensated for *all* expert-related work in this matter, irrespective of the affected lost-profits analysis. But it does not follow that but for Trendsettah's misrepresentation of its finances, Swisher would not have undertaken any of this work. Dr. McDuff provided numerous opinions unrelated to analysis of lost profits in his report that were relevant to other issues. (McDuff Sec. Supp. Report 47, Dkt. No. 375-1.) And a closer look reveals that the parties' expert analyses of the lost-profits theory based on the Dominican-imported cigars were relatively limited. Analysis of lost profits on these imported cigars constituted only 2% of Dr. McDuff's report, 0% of Dr. Cox's rebuttal, and 0% of the experts' depositions. (Id.; see also Supp. Trendsettah Br. 2–3). In the end, only $927.16 of Dr. McDuff's work was expended, which was based on the portion of his report dedicated to the lost-profits analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS(DFMx) | Date | August 24, 2023 |
|---|---|---|---|
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. | | |

Swisher makes no effort to identify the work Dr. Cox expended on analyzing or rebutting Dr. McDuff's lost-profits analysis. (See Supp. Marsh Decl. ¶ 6.)

The Court declines to award attorney's fees to Swisher for the preparation of its expert reports.

        2.        <u>Defending Against Trendsettah's Theory of Lost Profits at Trial</u>

Swisher argues that 2,591.50 hours ($1,549,991.74) were spent defending against Trendsettah's theory of lost profits at trial. (<u>Id</u> ¶ 7.) This includes five categories of tasks "directly related" to the damages theory and seven categories of tasks in which lost profits was a central but not exclusive issue. (<u>Id.</u>) Swisher does not break down the number of hours attributable to each category.

*Daubert Motion.* First, Swisher's <u>Daubert</u> motion to exclude Dr. McDuff's expert report was not related to damages. (Dkt. No. 109.) Swisher sought to exclude his opinions relating to Trendsettah's monopoly claim, <u>i.e.</u>, his opinions with respect to the relevant product and geographic markets and the probability of Swisher obtaining monopoly power. (<u>See</u> <u>id.</u>) Accordingly, Swisher should not be awarded for fees under this category.

*In Limine Motion.* Second, Swisher brought a motion *in limine* to exclude Trendsettah's then-CFO, Mr. Kureh, from offering testimony relating to lost profits based on his lack of preparation to testify at his Rule 30(b)(6) deposition. (Dkt. No. 108.) It sought to preclude Trendsettah from offering testimony that exceeded the scope of his testimony provided at the deposition. (<u>Id.</u> at 1.) Swisher does not explain how this motion was "directly related" to the lost-profits issue or more importantly, why the motion would not have been brought absent the bad-faith conduct at issue. Indeed, the basis for this motion was the witness's lack of preparation, and the relief sought was to limit the scope of testimony at trial, which the Court granted. (<u>See</u> Dkt. No. 163, at 8.) Thus, Swisher should not be awarded for fees under this category.

*Defending Against in Limine Motion.* Third, Swisher seeks fees for having to defend against Trendsettah's motion to exclude Mr. Alrahib's past history of failing to pay excise taxes on tobacco products resold to California. (<u>See</u> Dkt. No. 112.) The Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS(DFMx) | Date | August 24, 2023 |
|---|---|---|---|
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. | | |

has explained in great detail why Trendsettah's motion to exclude and efforts to remove search terms related to federal excise taxes directly led to Swisher's inability to question Mr. Alrahib about the fraud. This "line of questioning that, absent perjury, would likely have led to the disclosure of the fraudulent scheme." (Order at 11–12.) Swisher was barred from the opportunity to do so only because the Court had granted Trendsettah's motion. Therefore, Swisher could not challenge Mr. Alrahib's credibility at trial on this basis. Nor could it challenge Dr. McDuff's analysis of lost profits based on the failure to incorporate federal excise taxes. Obviously, had Trendsettah not brought its motion, Swisher would not have needed to oppose it.

Trendsettah argues that Swisher would have needed to defend against such motion anyway. (See Supp. Trendsettah Br. 4 ("Shifting fees under this category would require the Court to find that if Alrahib's conduct had been known, Trendsettah's counsel wouldn't have filed a motion to exclude these past bad acts, thereby sparing Swisher the need to oppose it.")) It seems to take the position that its counsel would have filed this motion anyway—even if counsel knew about Trendsettah's tax fraud on the imported cigarillos.

The Court finds Trendsettah's argument unavailing. Accordingly, the Court finds the hours expended on defending against its *in limine* motion to exclude Mr. Alrahib's testimony as reasonable.

*Preparation for and Conducting Trial Testimony.* Fourth, Swisher seeks to recover fees for having to prepare and conduct examinations of Dr. McDuff, Dr. Cox, and fact witnesses on lost profits. (Supp. Marsh Decl. ¶¶ 7–8; see also Marsh Decl., Ex. 3, Dkt. No. 702-5.) Trendsettah argues that testimony of lost profits affected only a *de minimis* amount of trial testimony: 35 pages of Dr. McDuff's testimony and only 12 pages of Dr. Cox's testimony out of a 1,726-page trial transcript (totaling 2.7% of the trial transcript). (See Poe Decl. ¶¶ 3–4; Exs. B, C; Supp. Trendsettah Br. 4–5.) Based on the foregoing, only $41,849.76 is attributable to the work related to the affected trial testimony. (Supp. Trendsettah Br. 7.) The Court agrees that hours incurred preparing for and conducting examinations of Dr. McDuff and Dr. Cox are reasonable. But Swisher has not identified the number of hours based on these examinations alone. (See Supp. Marsh Decl. ¶ 7.) Accordingly, the Court will award Swisher fees based on Trendsettah's calculation (2.7% or $41,849.76) for preparing and conducting trial testimony.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:14-cv-01664-JVS(DFMx) | Date | August 24, 2023 |
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. | | |

*Other.*  Finally, the Court denies Swisher's request in regard to the remaining categories[1] for similar reasons.  (See Supp. Swisher Br. 7)  These are general trial-related tasks, and Swisher makes no effort to separate the tasks related to the lost-profits claim from unrelated tasks.

Swisher applies a 30% discount, bringing the total to 2,591.50 hours.  (Supp. Marsh Decl. ¶ 8)  This 30% reduction accounts for the four out of seven days of trial "that would not have occurred but for Plaintiffs' lost profits theory" and assumes fact witness testimony would likely have been streamlined.  (See id.)  But according to Swisher's counsel, this percentage deduction accounts for *all* tasks under this category (i.e., preparing the *Daubert* motion, defending against the motion *in limine*, preparing for the pretrial conference, etc.)—not just those incurred at trial.  (See Marsh Decl. ¶ 8; Supp. Marsh Decl. ¶ 8.)  Thus, applying Swisher's 30% percentage deduction would overstate the number of hours the Court has found to have been reasonably incurred.

Because Swisher made no effort apportioning the hours spent on each category of work, the Court is unable to determine what percentage of 2,591.50 hours is attributable only to tasks relating to opposing Trendsettah's motion *in limine*.  (See Supp. Swisher Br. 7–8; Supp. Marsh Decl., Ex. A, Dkt. No. 753-3, at 4–25.)  Therefore, the Court is only able to award Swisher **$41,849.76** based on the hours of trial testimony relating to lost profits.

### 3. Litigating and Defending Rule 60(b) Motion

Swisher seeks to be compensated for a total of 7,223.1 hours ($6,542,489.95) for work related to preparing and defending the Rule 60 Motion, post-Rule 60 trial preparation, opposing the motion to dismiss, preparing a judgment, postjudgment discovery on the fraud, defending the Court's Order in the Ninth Circuit, and preparing

---

[1] Swisher has requested to be compensated for having "prepared for and attended the pretrial conference; met and conferred with Plaintiffs' counsel on various trial issues; researched and drafted jury instructions; prepared a final pretrial order; prepared trial exhibits and demonstratives; attended jury selection; monitored testimony throughout trial to incorporate into witness outlines; and prepared for and delivered an opening statement and closing arguments."  (Supp. Marsh Decl. ¶ 7.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:14-cv-01664-JVS(DFMx) | Date | August 24, 2023 |
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. | | |

the petition for certiorari. (Supp. Swisher Br. 8; Supplemental Declaration of Daniel Swanson ("Supp. Swanson Decl.") ¶¶ 9, 10–13, Dkt. No. 754-1; Supp. Marsh Decl. ¶¶ 16–17.)

The following table summarizes the category of fees requested by Swisher:

| TABLE 1. **Hours with 10% Discount** | | |
|---|---|---|
| **Category** | **GDC Hours** | **Ackerman Hours** |
| **Rule 60 Motion**: preparing, briefing, researching Rule 60 Motion, defending against motions for reconsideration, reviewing documents to analyze fraud, working with Dr. Cox to assess financial impact, opposing attempts to release bond, opposing attempts for attorney's fees before the Court's Rule 60 Motion, opposing petition to the Ninth Circuit. (Supp. Swanson Decl. ¶ 9; Supp. Marsh Dec. ¶ 10.) | 1,751.50 ($1,511,871.85) | 170 ($153,741.90) |
| **Post Rule 60 Trial Preparation**: fact development, discovery, expert and consultants; serving discovery, motions to compel discovery, preparation of contempt or sanctions, subpoenas, working with experts like damages and forensic accounting and private investigator. (Supp. Swanson Decl. ¶ 10; Supp. Marsh Dec. ¶ 11.) | 2,653.20 ($2,089,030.40) | 176.90 ($141,942.70) |
| **Motion to Dismiss and Judgment:** opposing motion, requesting conditions, preparing proposed judgment, legal research. (Supp. Swanson Decl. ¶ 11; Supp. Marsh Dec. ¶ 12.) | 344.60 ($305,898.50) | 17.80 ($17,212.60) |
| **Post Judgment Discovery**: enforcing a subpoena to enforce Swisher's fees and costs, obtain additional information, etc. (Supp. Swanson Decl. ¶ 12.) | 563.50 ($564,532.50) | n/a |
| **Ninth Circuit Appeal:** legal research, preparing motions, briefs, record; preparing and attending oral argument; petition for *en banc* review, preparing motion to stay; *amicus* outreach efforts. (Supp. Swanson Decl. ¶ 13.) | 1545.50 ($1,358,154.00) | n/a |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS(DFMx) | Date | August 24, 2023 |

| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. |

| | | |
|---|---|---|
| **Petition for Cert.**: preparing for writ of certiorari. (See Supp. Swanson Decl. ¶ 13.) | 332.80 ($400,105.50) | n/a |
| **Total** | 6,858.40 ($6,229,592.75) | 364.70 ($312,897.20) |

 Had Trendsettah not presented the false information underlying its lost profits theory, the jury would not have awarded Trendsettah lost profits of $14,815,492 on its antitrust claims. Of course, the jury could have awarded Trendsettah some measure of damages. But at a minimum, Trendsettah concedes that it would not have pursued lost profits. (See Opp'n 24–25.) Accordingly, Swisher would not have needed to bring its Rule 60 motion for relief from this judgment. It should be entitled to the fees incurred for preparing and litigating the Rule 60 Motion, time spent on fact development and discovery, and working with experts and consultants to perform a fraud analysis of Trendsettah's financial record. Such work was necessary to analyze the scope and financial impact of Trendsettah's fraud on its claims. And but for Trendsettah's presentation of false information at trial, Swisher would not have needed to defend against Trendsettah's voluntary dismissal so that the case may be appealed.

 Trendsettah opposes Swisher's request to recovery any fees subsequent to August 16, 2019, when the Court entered its ruling on the Rule 60(b) Motion. It urges the Court to limit any award to only fees Swisher incurred in setting aside the verdict via its Rule 60 motion. (Supp. Trendsettah Br. 9–10.) It contends Swisher is entitled to only a fraction of what it has requested. (See Declaration of Mark Poe ("Poe Decl.") ¶ 7 Dkt. No. 760; id., Exs. G–I.)

 First, Trendsettah argues it is too late to pursue these fees. (See Supp. Trendsettah Br. 8.) But Trendsettah's reliance on In re Yagman, 796 F.2d 1165, 1183–84 (9th Cir. 1986) for this proposition is misplaced. Sanctions in In re Yagman were intended to deter attorney misconduct during trial, not to compensate a party injured by misconduct. Id. at 1184. Therefore, any concern with the failure to award sanctions "contemporaneously with the offending misconduct" is not present here. Id. at 1183–84.

 Second, relying on Ty Inc. v. Softbelly's, Inc., 517 F.3d 494, 496, 499–500 (7th Cir. 2008), Trendsettah contends Swisher should not be compensated for holding back its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:14-cv-01664-JVS(DFMx) | Date | August 24, 2023 |
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. | | |

"fee-shifting request as insurance against an unfavorable outcome on fraud-on-the court." (Id. at 10.)  It argues that Swisher could have sought fees in conjunction with its Rule 60 motion but chose not to. (See id.)  In other words, it argues the $6.5 million in fees Swisher now seeks is a result of Swisher's tactical decision, not Trendsettah's conduct.  In Ty, 517 F.3d 494, the Seventh Circuit restored a damages award against a sanctioned party but merely offset this amount by the attorney's fees incurred by the party seeking sanctions.  There is nothing relevant about Ty, contrary to what Trendsettah represents.

Third, Trendsettah argues it makes little sense to punish it for "*successfully* appealing and reversing the $10 million judgment against it" or for seeking, in good faith, reconsideration of the Court's August 19, 2019 Order.  (Supp. Trendsettah Br. 10.)  The Court agrees in part.  Of course, Trendsettah had a right to seek reconsideration of and to appeal the Court's order.  But the question is not whether Trendsettah's subsequent actions were *also* brought in bad faith.  Rather, the Court must identify only legal expenses that the Swisher would not have incurred but for the misconduct, i.e., presenting false evidence at trial.  See Goodyear, 581 U.S. at 109.

Generally, fees incurred as a result of a nonfrivolous appeal are not incurred "but for" the bad conduct.  Cf. Xue Lu, 921 F.3d at 864.  For that reason, the Court declines to compensate Swisher for *all* its efforts opposing Trendsettah's efforts subsequent to the Court's Rule 60 order.  But Trendsettah was not entirely successful on appeal.  Ultimately, Trendsettah was wrong to have presented its lost profits calculation.  To account for Trendsettah's partial success, the Court will apply a 50% deduction because it was successful on half of the issues appealed to the Ninth Circuit.

Additionally, the Court agrees that opposing attempts to release bond or Trendsettah's motion for attorney's fees were not incurred but for Trendsettah's bad faith misconduct.  The Court had awarded reasonable attorney's fees based on the PLA, (Dkt. No. 622), and this fee award may ultimately be vacated.  And in all likelihood, Swisher would have incurred some costs in reference to a fee motion, whether it would have been for pursuing fees or defending against them.  Therefore, it is not the case that Swisher would not have incurred fees for relating to a motion for attorney's fees but for Trendsettah's misconduct.  Because of Swisher's block-billed entries, it is impossible to discern what fees were attributable to these categories alone.  (See Poe Decl., Ex. G.) Trendsettah's calculations exclude entries after the date of the Rule 60 Order.  (See Poe

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:14-cv-01664-JVS(DFMx) | Date | August 24, 2023 |
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. | | |

Decl. ¶ 7.) The Court has reviewed Swisher's billing records and has identified only 52 out of 4,426 entries (or 1.2%) that reflect tasks related to the bond and attorney's fee motion. (See Supp. Swanson Decl., Exs. A–B; Supp. Marsh Decl., Ex. A.) The Court will apply an additional 1.2% deduction for these hours.

Trendsettah's calculations[2] understate what is owed to Swisher. Nearly all time entries after August 16, 2019, were excluded. (See Poe Decl., Exs. G–I.) Applying a 51.2% deduction to Swisher's fee request, which already includes a 10% discount, the Court concludes that Swisher is entitled to **$3,231,990.04** under this category.

   4.  Post-Remand Fees

Finally, Swisher seeks $693,507.50 (547.60 hours) for hours spent on post-remand tasks, including researching and drafting the instant fee motion, collecting and organizing nine years of billing records, preparing the motion for set off, and arguing the motions. (Supp. Swisher Br. 10.)

Trendsettah argues this category impermissibly "sweeps in *all* of Gibson's time from the denial of Swisher's second *certiorari* bid on December 5, 2022 through January 31, 2023." (Supp. Trendsettah Br. 12.) It reviewed all time entries for those that are unrelated to sanctions. (Id. (citing Swanson Decl., Ex. B, at 52–62); Declaration of Mark Poe ("Poe Decl.") ¶ 8, Dkt. No. 760; Poe Decl., Ex. H.) It argues the total number of entries related to sanctions (less 10% for block-billing) is $202,751.10. (Poe Decl. ¶ 8, Ex. H, at 4–10.) The Court sees no issue with Trendsettah's analysis. Accordingly, the Court awards Swisher **$202,751.10** for bringing the instant sanctions motion.

  D.  *Swisher's Costs*

---

  [2] Trendsettah's calculations are as follows: (1) $401,439.60 (482.60 hours) for fees discovering Alrahib's misconduct and Rule 60 Motion (Poe Decl., Ex. G); (2) $49,188.15 for the same (id., Ex. H); (3) $4,482.45 for entries post August 16, 2019, relating to Rule 60 motion alone (id.); (4) $202,715.10 for total sanctions motion (id.); and (5) $57,492.27 for Ackerman's hours related to Rule 60 (id., Ex. I). The total, including post-remand motion fees, is $715,317.57. The total excluding post-remand motion fees is $512,602.47. (Poe Decl. ¶ 7.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS(DFMx) | Date | August 24, 2023 |
|---|---|---|---|
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. | | |

Swisher seeks recovery of $3,162,792.50 of costs "for preparing expert reports to rebut Plaintiffs' theory of lost profits, defending against Plaintiffs' theory of lost profits at trial, litigating and defending Swisher's Rule 60 Motion, and post-Rule 60 work necessitated by the Court's August 19 Order." (Mot. 23; Swanson Decl. ¶ 17; Swanson Decl., Ex. C.) Trendsettah contends only $144,159.44 is owed to Swisher because a majority of items were insufficiently detailed to indicate the purpose for they were incurred. (Poe Decl. ¶ 9, Ex. J.)

Some of Trendsettah's objections are without merit.  For example, it objects to fees related to courier and delivery services because the description lacked any reference to "lost profits." But a cross reference to the docket shows that these copies relate to Rule-60–related filings.  It is also unreasonable to require Swisher to prove that each of its "Westlaw research or printing costs" was related to "lost profits" alone.  The Court has no reason to doubt Swisher's representation that these were relevant and necessary research costs.  But Swisher is not entitled to be reimbursed for routine discovery or trial-related tasks it would have incurred anyway.  As the Court noted above, only a fraction of parties' experts' analyses related to the lost-profits theory.  Thus, the Court will not award Swisher its fees requested under its e-discovery, deposition, expert, or trial consultant categories. Accordingly, the Court awards Swisher costs of **$466,725.78**.

## IV.  Conclusion

The Court **GRANTS** in part and **DENIES** in part the motion.  Trendsettah pursued and presented its lost-profits theory at trial in bad faith because it knew its lost-profits calculation was based on fraud.  Accordingly, it had no basis to claim that it lost profits exclusively due to Swisher's anticompetitive conduct.  Accordingly, the Court awards Swisher $3,476,590.90 in fees and $466,725.78 in costs.  (See Appendix.)  **IT IS SO ORDERED.**

## Appendix

| Total of Fees and Costs Awarded | | |
|---|---|---|
| **Category** | **Requested** | **Allowed** |
| **Attorney's Fees** | | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:14-cv-01664-JVS(DFMx) | Date | August 24, 2023 |
|---|---|---|---|
| Title | Trendsettah USA Inc., et al. v. Swisher Int'l Inc. | | |

| | | |
|---|---|---|
| Preparation of Expert Reports | $185,433.50 | $0 |
| Defending Against Lost Profits at Trial | $1,549,991.74 | $41,849.76 |
| Litigating and Defending Rule 60 Motion | $6,542,489.95 | $3,231,990.04 |
| Post-Remand Motion | $693,507.50 | $202,751.10 |
| Total: | $8,971,422.69 | **$3,476,590.90** |
| **Costs** | | |
| Copy & Printing | $8,029.85 | $8,029.85 |
| Courier & Delivery | $1,905.49 | $1,905.49 |
| Library & Database | $413,854.85 | $413,854.85 |
| Process Server | $26,842.35 | $26,842.35 |
| e-Discovery | $291,305.45 | $0 |
| Experts & Consultants | $2,270,307.24 | $0 |
| Trial Consultant | $100,436.20 | $0 |
| Filing Fees | $1,737.66 | $1,737.66 |
| Deposition | $34,017.83 | $0 |
| Hearing Transcript Cost | $1,222.84 | $1,222.84 |
| Travel | $13,132.74 | $13,132.74 |
| Total: | $3,162,792.50 | **$466,725.78** |